**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| TIMOTHY MICHAEL HESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WARREN COUNTY, Kentucky; | ) | |
| Kentucky State Police Trooper | ) | |
| AARON TUCKER, *in his individual* | ) | |
| *capacity;* and Warren County | ) | |
| Regional Jail Employees MELISSA | ) | Case No.:  1:20-cv-48-GNS |
| CAUSEY, and ANDREW COOPER, | ) | |
| *in their individual capacities;* and | ) | JURY TRIAL DEMANDED |
| other unknown employees of the | ) | |
| Kentucky State Police and Warren | ) | |
| County Regional  Jail, *in their* | ) | |
| *individual capacities,* | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, TIMOTHY MICHAEL HESTON, by his attorneys, LOEVY & LOEVY, and complains of Defendants WARREN COUNTY, Kentucky State Police Trooper AARON TUCKER, Warren Regional Jail Captain MELISSA CAUSEY, Warren County Regional Jail Deputy ANDREW COOPER, and other unknown officers from the Kentucky State Police and the Warren County Regional Jail, and states as follows:

### INTRODUCTION

1.      Timothy "Michael" Heston was a popular, athletic, well-liked teenager. He had many friends and continues to have a loving, supportive family.

2.     He graduated from high school and attended college.

3.     But, his life as he knew it changed in 2013; it was then, at the age of twenty (20), that Michael was first diagnosed with Schizophrenia. Since, he has experienced times of paranoia, hallucinations, depression, and mania.

4.     For years, intermittently, Michael responded well to antipsychotic medications, specifically 28-day injections of Abilify, and was able to keep the symptoms of his mental illness at bay. Unfortunately, there have been times in which Michael's schizophrenic symptoms have resurfaced.

5.     Michael was actively psychotic and walking along the side of Interstate 65 in Bowling Green, Kentucky on March 17, 2019, responding to the "machines that had taken over his body" and attempting to get to Tennessee for his son's birthday, when he first encountered Defendant Kentucky State Police (KSP) Trooper Aaron Tucker.

6.     Defendant Tucker transported Michael to the Warren County Regional Jail (WCRJ) where he brutally assaulted Michael in the sally port of the jail.

7.     Defendant Tucker, who is Caucasian, physically attacked Michael, who is bi-racial, without provocation, warning or justification and then fabricated a report about the assault.

8.     At the time of the attack, Michael was handcuffed and unable to protect himself.

9.     The attack was captured on the jail's video recording system.

10.     Upon information and belief, the KSP conducted an internal investigation of Defendant Tucker's actions in this case and fired him from their employment.

11.     Upon information and belief, KSP withheld this exculpatory information from the prosecution, the defense, and the Court.

12.     Additionally, while incarcerated at the WCRJ, jail staff placed Michael in a restraint chair.

13.     While Michael was physically restrained, Defendant Melissa Causey tased Michael, first with probes to his upper thigh area and then with a drive stun to his right shoulder/clavicle area.

14.     In a subsequent incident in which jail deputies placed Michael in a restraint chair, Defendant Andrew Cooper drive stunned Michael on the right side of his neck.

15.     Michael now brings this action, brought pursuant to 42 U.S.C. S 1983, for violations of his constitutional rights, seeking some measure of redress for the wrongful and unjustified actions of Defendants Tucker, Causey, and Cooper against a mentally-ill individual who was unable to protect himself and the resulting injuries he suffered.

## JURISDICTION AND VENUE

16.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the U.S. Constitution.

17.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

18.     Venue is proper under 28 U.S.C. § 1391(b) and (c). On information and belief, the events giving rise to the claims asserted herein all occurred within this district. In addition, Defendant Warren County is a government in this district.

### THE PARTIES

19.     Plaintiff, Timothy "Michael" Heston, is a bi-racial 27-year-old male who currently resides in Louisville, Kentucky.

20.     At all relevant times, Defendant Aaron Tucker, Badge No. 490, was an officer with the Kentucky State Police. Defendant Tucker is sued in his individual capacity and acted under color of law and within the scope of his employment in engaging in the actions alleged in this complaint.

21.     At all relevant times, Defendant Melissa Causey was a Captain at the Warren County Regional Jail. Defendant Causey is sued in her individual capacity and acted under color of law and within the scope of her employment in engaging in the actions alleged in this complaint.

22.     At all relevant times, Defendant Andrew Cooper was a Deputy at the Warren County Regional Jail. This Defendant is sued in his individual capacity and acted under color of law and within the scope of his employment in engaging in the actions alleged in this complaint.

23.     Defendant Warren County is a governmental entity of the Commonwealth of Kentucky. Defendant Warren County is responsible for the policies, practices, and customs of the WCRJ.

## FACTUAL ALLEGATIONS

### Plaintiff Suffers from Mental Illness

24.     Tragically, Michael Heston suffers from mental illness.

25.     He was diagnosed with the onset of Schizophrenia in 2013 at the age of twenty (20). Subsequent diagnoses include Bipolar Disorder and Paranoid Personality Disorder.

26.     At times, he suffers from hallucinations, delusions, and paranoia.

### Plaintiff's Initial Encounter with KSP Defendant Tucker

27.     Michael was actively suffering from the symptoms of his mental illness on March 17, 2019, when he first encountered KSP Defendant Tucker.

28.     Michael was walking down the side of the interstate in Bowling Green, Kentucky, attempting to get to Tennessee for his son's birthday, when Defendant Tucker approached him.

29.     Ultimately, Defendant Tucker placed Michael under arrest, handcuffed him behind his back, and transported him to the WCRJ.

### KSP Defendant Tucker Brutally Attacked Plaintiff

30.     When they arrived in the sally port of the jail at approximately 7:40 pm on March 17, 2019, Defendant Tucker opened the door of his cruiser, ordering

Michael to exit the vehicle. Michael immediately complied. Michael remained handcuffed behind his back.

31.    As Defendant Tucker escorted Michael toward the door of the jail, Michael stumbled as he stepped up on a curb.

32.    Instead of steadying Michael, Defendant Tucker forcefully threw him in a corner against the wall.

33.    Immediately thereafter, Defendant Tucker began brutally attacking Michael, who was handcuffed and unable to defend himself.

34.    Defendant Tucker struck Michael in the face with a pair of steel-toed boots that Michael had been carrying when arrested.

 

35.    Thereafter, Defendant Tucker dropped the boots and punched Michael in the face, close-fisted, multiple times.









36.    Unsatisfied with the blows to Michael's face, Defendant Tucker repeatedly beat Michael in the chest with a closed fist.



37.    Defendant Tucker then viciously inflicted knee strikes to Michael's face and chest before throwing him onto the concrete floor. The knee strikes were so forceful, in fact, that upon information and belief, Defendant Tucker injured his knee when inflicting them.



38.    The assault ended when correctional officers "heard a thud" and rushed to the sally port, assisting Defendant Tucker in "restraining" Michael by holding him down on the concrete floor.



39.     At no point during this assault was Michael resisting or able to protect himself.

**KSP Defendant Tucker Fabricated a Report about the Attack**

40.     After the attack, Defendant Tucker fabricated a report about what occurred.

41.     Specifically, Defendant Tucker falsely stated that Michael "tensed up his muscles in his arms" and attempted to pull away from him before he threw him into the corner. Additionally, Defendant Tucker falsely stated that Michael used his shoulders and head to push back against Tucker, that Michael hit Defendant Tucker in the side of his face with his head, and that Michael attempted to spit on him.

42.     None of these allegations were true.

**Defendant Tucker Charged Michael with a Multitude of Offenses**

43.     Defendant Tucker falsely initiated charges against Michael for multiple offenses. The charges included: stopping/standing/parking on a limited access highway, first-degree disorderly conduct, menacing, resisting arrest, third-degree terroristic threatening, misrepresenting military status, and third-degree assault.

**KSP Defendant Tucker's Assault was Video Recorded**

44.     Defendant Tucker's assault of Michael was captured on the jail's video surveillance system.

45.     That recording demonstrates what truly occurred – that Defendant Tucker attacked a handcuffed man who was unable to protect himself and then lied about it.

**KSP Defendant Tucker's Assault was Unjustified and Excessive**

46.     At no point during Michael's encounter with Defendant Tucker did Michael take any action that would justify the use of excessive force employed by Defendant Tucker.

47.     Physically assaulting a handcuffed, stumbling, mentally-ill individual is objectively unreasonable.

48.     Defendant Tucker's use of excessive force against Michael was unjustified, unconstitutional and unlawful.

**KSP Defendant Tucker was Fired as a Result of His Actions in this Case**

49.     Upon information and belief, KSP conducted an internal investigation into Defendant Tucker's assault on Michael and subsequent fabricated report.

50.     Upon information and belief, KSP terminated Defendant Tucker's employment as a result of the assault and fabricated report.

**KSP Withheld Exculpatory Evidence Regarding the Attack**

51.     Despite the exculpatory nature of the video – demonstrating Michael's innocence to the charges falsely brought against him by Defendant Tucker – and KSP's knowledge of the video, KSP did not disclose the existence of the video or its contents to the prosecutor, defense counsel or the Court.

### The WCRJ Defendants Also Physically Assaulted Michael

52.    On March 18, 2019, at approximately 2:45 am – six hours after being assaulted by Defendant Tucker - jail staff ordered Michael to dress into a jail uniform. As he did so, Captain Melissa Causey stood with her taser drawn. WCRJ Deputies exited the restroom with Michael with no incident.

53.    After placing Michael into an isolation cell, Defendant Causey saw what she thought to be urine coming from under the cell door. As a result, Defendant Causey ordered Michael to step away from the door and place his hands against the wall. Michael complied.

54.    WCRJ Deputies escorted Michael to the restraint chair without incident. Michael sat in the restraint chair and placed his hands in the arm straps. WCRJ Deputies secured the arm straps around Michael with no incident. Defendant Causey secured the chest straps with no incident.

### Defendant Causey Employed Excessive Force

55.    As a WCRJ Deputy secured Michael's leg in the leg restraint, Michael kicked his other leg. Thereafter, Defendant Causey pulled her taser and deployed probes into Michael's right upper thigh. She immediately followed with a drive stun to Michael's shoulder and clavicle area.



56.    The use of force employed by Defendant Causey was unjustified and excessive.

57.    She utilized no corrective measures before deploying the taser and drive-stunning Michael.

58.    Physically tasing a restrained, mentally-ill individual is objectively unreasonable.

59.    Defendant Causey's use of excessive force against Michael was unjustified, unconstitutional and unlawful.

### Defendant Cooper Employed Excessive Force Against Michael

60.    On March 19, 2019, Defendant Cooper also used excessive force against Michael – again while Michael was restrained.

61.    WCRJ Deputies assisted Defendant Cooper in placing Michael in the restraint chair because Michael did not give him the dental bridge out of his mouth.

62.     Although mechanically restrained, Defendant Cooper drive stunned Michael to the right side of his neck causing the dental bridge to "shoot out of his mouth."

63.     The use of force employed by Defendant Cooper was unjustified and excessive. He utilized no corrective measures before deploying the taser and drive-stunning Michael.

64.     Physically tasing a restrained, mentally-ill individual is objectively unreasonable.

65.     Defendant Cooper's use of excessive force against Michael was unjustified, unconstitutional and unlawful.

### The Charges Against Plaintiff Were Dismissed

66.     As a result of the charges brought against Michael by Defendants Tucker and Causey, Michael spent eleven months incarcerated in the WCRJ.

67.     On February 19, 2020, the Warren Circuit Court entered an Order dismissing all charges against Michael.

### PLAINTIFF'S DAMAGES

68.     The Defendants' actions imposed substantial harm upon Timothy "Michael" Heston during and after they employed excessive force upon him.

69.     Michael was handcuffed when assaulted by Defendant Tucker and mechanically restrained when assaulted by Defendants Causey and Cooper. He was unable to protect himself from the force imposed upon him.

70.     As a result of the force used against him, Michael suffered physical pain and injuries.

71.     Additionally, the Defendants' action caused Michael severe mental and emotional distress. He has suffered from loss of sleep, anxiety, and depression. He stopped eating for a period.

72.     Because of the charges brought against him by Defendant Tucker and Causey, Michael spent close to a year incarcerated at the WCRJ before the Warren Circuit Court dismissed all charges against him.

73.     During that time, he was often kept in isolation, deprived of the mental-health treatment and medical injections he needed. As a result, his symptoms of his mental illness only grew worse.

## PLAINTIFF'S FEDERAL CLAIMS

### Count I – 42 U.S.C. § 1983
### Excessive Force

74.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

75.     As described in the preceding paragraphs, the conduct of Defendants Tucker, Causey and Cooper toward Plaintiff Michael Heston pre-trial constitutes excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

76.     The misconduct described in this Count was objectively unreasonable and undertaken for the very purpose of causing Michael harm and not in a good faith effort to maintain or restore security or discipline.

77.     The Defendants' use of force was undertaken with malice, willfulness, and reckless indifference to the rights of Michael.

78.     As a result of Defendants Tucker, Causey and Cooper's unjustified and excessive force, Michael suffered pain and injuries, including physical injuries and emotional distress.

### Count II – 42 U.S.C. § 1983

### Conspiracy

79.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

80.     Defendants reached an agreement among themselves to deprive Michael of his constitutional rights and to protect one another from liability for depriving Michael of his rights, as described in the paragraphs above.

81.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

82.     The misconduct described in this Court was undertaken intentionally and with malice and reckless indifference to the rights of Michael.

83.     As a direct and proximate result of illicit agreement referenced above, Michael's rights were violated, and he suffered pain and injuries, including physical injuries and emotional distress.

### Count III - 42 U.S.C. § 1983
### *Monell* Claim Against Defendant Warren County

84.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.     The misconduct described in this Count those above were undertaken pursuant to the policies of the Warren County Regional Jail, described above, which were ratified by policymakers for the Warren County Government with final policymaking authority.

86.     As such, Warren County is also liable, in that:

a.  As a matter of both policy and practice, Warren County encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control and discipline its correctional officers such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, Warren County facilitates the very type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Warren County Regional Jail employees to believe their actions will never be meaningfully scrutinized and, in that way, directly encouraging future uses of excessive force such as those Plaintiff complains of;

c.  Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, upon information and belief, deputies and employees of the WCRJ abuse citizens in a manner similar to that alleged by Michael on a regular basis, yet the supervisory staff at the WCRJ investigates employee misconduct and makes findings

of wrongdoing in a disproportionately small number of cases;

87.     As a result of Warren County's policies and practices, and the unjustified and unreasonable conduct of Defendants Causey and Cooper, Michael has suffered injuries, including physical and severe emotional and psychological distress.

88.     The policies and practices described in this Count were maintained and implemented by the Warren County Government with deliberate indifference to Michael's constitutional rights.

89.     As a direct and proximate result of the Warren County Government's actions, Michael's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

90.     The Warren County Government is therefore liable for the misconduct committed by its employees.

### Count IV – 42 U.S.C. § 12101 *et seq.*
### American with Disabilities Act

91.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

92.     Congress enacted the Americans with Disabilities Act (ADA) "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

93.     Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity. 42 U.S.C. § 12132.

94.     Michael was wholly dependent on the WCRJ for basic daily needs and appropriate accommodations, including a reasonably safe jail environment in which to live, where the manifestations of his mental illness would not place him in danger of violent physical discipline or reprisal.

95.     To prevent discrimination, 28 C.F.R. § 35.130(b)(7) requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the pubic entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."

96.     Warren County and the WCRJ are public entities as defined in 42 U.S.C. § 12131(1).

97.     At all times relevant to this Complaint, in light of his mental illness, Michael was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

98.     Due to his mental illness, Michael had a mental impairment that substantially limited one or more major life activities, including but not limited to thinking, working, interacting with others, and controlling his behavior. During Michael's arrest and incarceration, this disability was open and obvious.

99.     Under Title II of the ADA and 28 C.F.R. § 35.130(a), the WCRJ was responsible for ensuring that individuals in its custody with known disabilities are provided with reasonable accommodations to prevent discrimination on the basis of

their disabilities, including by ensuring that its officers are trained to recognize and accommodate manifestations of mental illness as just that, rather than as insolence, defiance, or threats to prison order that merit physical discipline or reprisal; and by aggressively disciplining officers who attack mentally ill prisoners when their mental illness manifests in apparent insolence or defiance.

100.    Such accommodations are reasonable and, if provided to a mentally-ill prisoner like Michael, would have enhanced his quality of life by protecting him from physical attacks resulting from manifestation of his mental illness.

101.    But, the WCRJ failed to accommodate Michael's disability; to the contrary it discriminated against him because of his disability by failing to train its officers or to discipline its staff for such attacks.

102.    Furthermore, the March 18th and 19th physical attacks by the individual defendants described herein was intentionally discriminatory. The individual defendants knew that Michael was mentally ill, they knew his demeanor towards them was a manifestation of his mental illness, and yet, they purposefully attacked him out of dislike for his demeanor, depriving him of a reasonably safe jail environment. Warren County and the WCRJ are liable for this deprivation of Michael's rights as a disabled person.

103.    As a result of the WCRJ's failure to provide reasonable accommodations for Michael's mental illness, and instead discriminating against Michael because of his mental illness, Michael suffered physical, emotional and psychological injuries, as described in this Complaint.

## STATE LAW CLAIMS

### Count V – State Law
### Assault and Battery

104.    Each paragraph of this Complaint is incorporated as if fully stated herein.

105.    In the manner described more fully above, Defendants Tucker, Causey, and Cooper intentionally and impermissibly harmed and wounded Michael Heston. Defendants Tucker, Causey and Cooper intentionally and impermissibly physically assaulted Michael. Each of these actions amount to assault and battery under Kentucky law.

106.    The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

107.    As a result of these actions, Michael suffered injuries, including physical pain, and severe emotional and psychological distress.

### Count VI – State Law
### Intentional Infliction of Emotional Distress

108.    Each paragraph of this Complaint is incorporated as if fully stated herein.

109.    In the manner described more fully above, the Defendants intentionally and impermissibly harmed and wounded Michael Heston.

110.    Defendants' actions set forth above were rooted in an abuse of power or authority.

111.   Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

112.   The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

113.   As a direct and proximate result of these actions, Michael suffered injuries, including physical pain, and severe emotional and psychological distress.

## Count VII – State Law
## Respondeat Superior

114.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

115.   In committing the acts alleged in the preceding paragraphs, Defendants Causey and Cooper were employees and agents of the WCRJ, acting at all relevant times within the scope of their employment.

116.   Defendant Warren County is liable as principals for all state law torts committed by their agents.

## Count VIII – State Law
## Indemnification

117.   Each of the paragraphs of this Complaint are incorporated as if fully stated herein.

118.    During all times relevant to this Complaint, Defendants Causey and Cooper were employees of Warren County and acted within the scope of their employment in committing the acts described herein.

119.    Kentucky Law, Ky. Stat. 65.2005, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, WARREN COUNTY, Kentucky State Police Trooper AARON TUCKER, Warren Regional Jail Captain MELISSA CAUSEY, Warren County Regional Jail Deputy ANDREW COOPER, and other unknown officers from the Kentucky State Police and the Warren County Regional Jail, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Amy Robinson Staples
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Michael Kanovitz
Elliot Slosar
Amy Staples
LOEVY & LOEVY
311 N. Aberdeen, 3rd
Floor Chicago, IL 60607
312-243-5900
Fax: 312-243-5902