

LOUISVILLE   LEXINGTON   LONDON   FLORENCE   CINCINNATI   INDIANAPOLIS   ORLANDO   JACKSONVILLE   TAMPA

# KENTUCKIANA
## — COURT REPORTERS —

## CASE NO. 1:20-CV-0048-GNS

## TIMOTHY MICHAEL HESTON

## V.

## AARON TUCKER, ET AL.

### DEPONENT:

### JASON  RIGSBY

### DATE:

### September 29, 2022



a courtroom
**powerhouse**

✉ schedule@kentuckianareporters.com
☎ 877.808.5856  |  502.589.2273

www.kentuckianareporters.com

1                 IN THE UNITED STATES DISTRICT COURT

2                 WESTERN DISTRICT OF KENTUCKY

3                      AT BOWLING GREEN

4                 CHIEF JUDGE GREG N. STIVERS

5                 MAG. H. BRENT BRENNENSTUHL

6                 CASE NO. 1:20-CV-0048-GNS

7

8                 TIMOTHY MICHAEL HESTON,

9                         Plaintiff

10

11                            V.

12

13                 AARON TUCKER, ET AL.,

14                        Defendants

15

16

17

18

19

20

21

22

23    DEPONENT: JASON RIGSBY

24    DATE:      SEPTEMBER 29, 2022

25    REPORTER: MAGGIE PATTERSON



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFF, TIMOTHY MICHAEL HESTON:

Molly Campbell, Esquire

Elliot Slosar, Esquire

Loevy & Loevy

311 North Aberdeen Street

3rd Floor

Chicago, Illinois 60607

Telephone No.: (312) 243-5900

E-mail: campbell@loevy.com

E-mail: elliot@loevy.com

(Appeared via videoconference)

ON BEHALF OF THE DEFENDANTS, MELISSA CAUSEY, WARREN

COUNTY, KENTUCKY, AND ANDREW COOPER:

Charles E. English, Jr., Esquire

English, Lucas, Priest & Owsley, LLP

1101 College Street

Bowling Green, Kentucky 42191

Telephone No.: (270) 780-6500

E-mail: benglish@elpolaw.com

(Appeared via videoconference)

Page 3

APPEARANCES (CONTINUED)

ON BEHALF OF THE DEFENDANT, AARON TUCKER:

Matt Feltner, Esquire

Caldwell & Feltner Law Offices, PLLC

606 Master Street

Corbin, Kentucky 40701

Telephone No.: (606) 521-7043

E-mail: mattfeltner@kcmmlaw.com

(Appeared via videoconference)

Page 4

INDEX

| | Page |
|---|---|
| PROCEEDINGS | 6 |
| DIRECT EXAMINATION BY MS. CAMPBELL | 7 |

EXHIBITS

| Exhibit | Page |
|---|---|
| 1 - Rigsby Personnel File | |
| - WarrenCounty1203 - 1590 | 90 |
| 2 - Incident Report - March 18, 2019 | |
| - Warren County0018 | 55 |
| 3 - Incident Report - March 19, 2019 | |
| - Warren County0019 - 0020 | 67 |
| 4 - Incident Report - March 19, 2019 | |
| - Warren County0021 | 80 |
| 5 - Incident Report - June 28, 2019 | |
| - Warren County0027- 0028 | 85 |

Page 5

STIPULATION

The VIDEO deposition of JASON RIGSBY was taken at

KENTUCKIANA COURT REPORTERS, 730 WEST MAIN STREET, SUITE

101, LOUISVILLE, KENTUCKY 40202, via videoconference in

which all participants attended remotely, on THURSDAY

the 29th day of SEPTEMBER 2022 at 9:33 a.m.; said

deposition was taken pursuant to the FEDERAL Rules of

Civil Procedure. The oath in this matter was sworn

remotely pursuant to FRCP 30.

It is agreed that MAGGIE PATTERSON, being a Notary

Public and Court Reporter for the State of KENTUCKY, may

swear the witness.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 4 of 432 PageID #: 2020
The Deposition of JASON RIGSBY, taken on September 29, 2022

6..9

Page 6

1          PROCEEDINGS
2      COURT REPORTER:  We're now on the record.  My
3  name is Maggie Patterson.  I'm the video technician
4  and court reporter today, representing Kentuckiana
5  Reporters, located at 30 South Wacker Drive, 22nd
6  Floor, Chicago, Illinois 60606.  Today is the 29th
7  day of September 2022.  The time is 9:34 a.m.  We
8  are convened via videoconference to check the
9  deposition of Jason Rigsby in the matter of Timothy
10  Michael Heston versus Aaron Tucker et al., pending
11  in the United States District Court, Western
12  District of Kentucky at Bowling Green.  Case number
13  1:20-CV-0048-GNS.  Will counsel please state their
14  appearance, how you are attending, and the location
15  you're attending from, starting with plaintiff's
16  counsel?
17      MS. CAMPBELL:  Molly Campbell appearing for
18  Plaintiff Michael Heston.  And I'm appearing
19  remotely from Fairway, Kansas.
20      MR. SLOSAR:  Elliot Slosar also appearing
21  remotely for the plaintiff.
22      MR. ENGLISH:  My name is Buzz English.  I am
23  appearing in Bowling Green, Kentucky with Major
24  Rigsby. I represent the Warren County Regional Jail
25  and its employees.

Page 7

1      MR. FELTNER:  Matt Feltner, Caldwell & Feltner
2  Law Offices.  I represent Defendant Aaron Tucker.
3  I'm appearing remotely from my office in Hyden,
4  Kentucky.
5      COURT REPORTER:  Thank you.  And Mr. Rigsby,
6  will we please state your full name for the record?
7      THE WITNESS:  Jason Daniel Rigsby.
8      COURT REPORTER:  Thank you.  And do all parties
9  agree that the witness is, in fact, Mr. Rigsby?
10      MS. CAMPBELL:  Yes.
11      MR. ENGLISH:  Yes.
12      COURT REPORTER:  Thank you.  All right.  And
13  sir, will you please raise your right hand for me?
14  Do you solemnly swear or affirm that the testimony
15  you're about to give is the truth, the whole truth,
16  and nothing but the truth?
17      THE WITNESS:  I do.
18      COURT REPORTER:  Thank you.
19          DIRECT EXAMINATION
20  BY MS. CAMPBELL:
21      Q   All right.  Good morning, Mr. Rigsby.  I'm
22  Molly Campbell.  I represent the plaintiff in this case.
23  And before we get started, do you have my screen pinned
24  on yours?  I'm going to be showing you some documents,
25  and it's easier to do that if I'm pinned.  Do you know

Page 8

1  how to do that?
2      A   I don't know.
3      MR. ENGLISH:  I think we have it.
4      Q   Okay.  If you have any trouble, just let me
5  know, and we can pause and make sure we get that sorted
6  out for you, okay?
7      A   Okay.
8      Q   Mr. Rigsby, have you ever been deposed before?
9      A   I have.
10      Q   When?  When did you –– were you deposed?
11      A   It's been a few years ago.  I can't recall.
12      Q   Can you tell me the circumstances of that
13  deposition?
14      A   Once, it was a civil matter, which was between
15  me and another motor vehicle, and I think there was
16  another use of force situation with the jail.
17      Q   What was [sic] that use of force situation
18  entail?
19      A   I can't recall.
20      Q   Did someone sue you for a use of force?
21      A   I can't recall.
22      Q   All right.  So let me just go through the
23  rules quickly.  Make sure you answer all questions
24  verbally because the court reporter is taking down
25  everything that you say; does that sound fair?

Page 9

1      A   Sure.
2      Q   And I'm sure that I will ask you a confusing
3  question today, so if you don't understand something
4  that I ask you, just ask me to rephrase it, and I'll be
5  happy to do that, okay?
6      A   Okay.
7      Q   And the flip side of that, if I do ask you a
8  question and you answer it, then I'll assume that you
9  understood what I'm asking, fair?
10      A   Okay.
11      Q   And I don't anticipate that we'll be here too
12  long today, but if you do need a break at any point,
13  just let me know, and we will be happy to take a break,
14  fair?
15      A   Okay.
16      Q   And the only thing I ask is if there's a
17  pending question, just answer the question, and then we
18  can take that break.  All right.
19      A   Okay.
20      Q   And finally, you may hear an attorney here
21  object.  If you hear an objection, there's no judge here
22  to rule out objections, so in almost all circumstances,
23  unless someone tells you not to, you'll just go ahead
24  and answer the question after the objections.  Sound
25  fair?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 10

1    A    Okay.
2    Q    Major Rigsby, do you have any health
3  conditions that would affect your ability to testify
4  today?
5    A    I do not.
6    Q    Are you taking any medications that might
7  affect your memory?
8    A    I am not.
9    Q    You're not taking any medications that might
10  affect your ability to testify today?
11    A    I am not.
12    Q    And as far as education, do you have a high
13  school degree?
14    A    I do.
15    Q    And where did you graduate from high school?
16    A    Warren Central High School.
17    Q    When did you graduate?
18    A    2002.
19    Q    Do you have any college education?
20    A    I do.
21    Q    Where did you get your degree from?
22    A    I have a --
23    Q    Let me ask -- I guess I should back up.  Do
24  you have a degree?
25    A    I do.

Page 11

1    Q    And where's your degree from?
2    A    I have an associate's degree through Southern
3  Kentucky -- South Central Kentucky Community College,
4  and I have a bachelor's degree from Western Kentucky
5  University.
6    Q    And what's your associate's degree in?
7    A    It's an Associate's to Arts.
8    Q    Is there any more specific degree or did you
9  have a particular course that you studied?
10    A    It was basically just a general -- general
11  education associated with the arts before I went on to a
12  four-year college.
13    Q    When did you get your associate's degree?
14    A    2015.
15    Q    And when did you get -- you mentioned you also
16  had a bachelor's degree.  When did you get your
17  bachelor's degree?
18    A    2019.
19    Q    And that was from Western Kentucky you said?
20    A    Yes, ma'am.
21    Q    And what was your bachelor's degree in?
22    A    Business Administration.
23    Q    Do you have any other formal education?
24    A    No, ma'am.
25    Q    And so you were -- I take it you were working

Page 12

1  at the jail during the time that you were getting your
2  associates and bachelor's degree; is that correct?
3    A    That is correct.
4    Q    So were you doing part-time school?
5    A    Yes, I had part-time school.
6    Q    All right.  So you're currently employed at
7  the Warren County Regional Jail, correct?
8    A    That's correct.
9    Q    And what's your current position?
10    A    I am the chief deputy of administration.
11    Q    What do you do as the chief deputy of
12  administration?
13    A    I handle HR issues.  I handle the payroll,
14  benefits, employee records, records of custodian, a few
15  other HR-related issues and things.
16    Q    Do you supervise anyone?
17    A    I do.  I have a front office staff that I
18  oversee.
19    Q    How many staff members?
20    A    It's about five.
21    Q    And what does it mean -- what does front
22  office staff mean?
23    A    The front office staff handles any property
24  that come in -- in and out of the jail from the window
25  far as, like, money dropped off for books, for the

Page 13

1  canteen account, for phone card purchases.  We handle a
2  collection of jail fees and just daily administrative
3  accounting work for the jail.
4    Q    And so it sounds like you don't actually --
5  you're less working -- you don't -- let me strike that.
6  Do you currently interact with inmates in your current
7  role?
8    A    I do, but it's very seldom.
9    Q    And what circumstances might you interact with
10  an inmate in your current job?
11    A    Currently, it would be if I need to -- to get
12  something notarized, I notarize on behalf of the inmate.
13  And then if there's an issue with the, like, the
14  inmate's account, I would explain the money
15  transactions, or if they purchased a phone card and it
16  didn't work, I would oversee getting that phone card
17  replaced, things like that.
18    Q    And how long have you been in this
19  administrative role?
20    A    One year and six months, I believe.
21    Q    So since about early 2021?
22    A    That sounds correct.
23    Q    And do you report directly to the jailer?
24    A    I do.
25    Q    And the jailer is currently Jailer Harmon?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
— COURT REPORTERS —

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 6 of 432 PageID #: 2022
The Deposition of JASON RIGSBY, taken on September 29, 2022

14..17

Page 14

1    A    That's correct.

2    Q    All right.  And so before your current role,
3  what was your job?

4    A    I was the chief deputy of operations.

5    Q    And what did you do as the chief deputy of
6  operations?

7    A    I would answer inmate grievances.  I made the
8  employee schedule for the day-to-day operations, make
9  sure staff levels are correct.  I ordered any items for
10  operation purposes such as wipes, oranges, hygiene item,
11  or any of those types of day-to-day functions that the
12  inmate would need.  I would oversee disciplinary actions
13  with the staff if there was issues with the staff that
14  needed to be addressed.  And I think that's about it for
15  the operations part.

16    Q    You mentioned grievances.  Is that from
17  inmates or from staff?

18    A    Both.  But mostly inmates.

19    Q    Would that be things like excessive force
20  grievances?

21    A    Yes.  The inmate is allowed to grieve any
22  issue they -- they want to grieve on, so --

23    Q    And what would -- what is your -- or what is
24  your process for -- well, I'll back up.  Did you
25  investigate those grievances?

Page 15

1    A    Yes.  It was required to in investigate at
2  times.  Yes.

3    Q    What was the process for investigating
4  grievances?

5    A    Typically, I would start with video if -- if
6  it was available.  Sometimes you'd have to interview
7  staff and other inmates, other sources of information,
8  review phone calls, review their account to see what
9  kind of transactions they were doing.  It just depends
10  on what the type of grievance was about.

11    Q    And how long did you do that job?

12    A    Also about a year-and-a-half.

13    Q    In your year-and-a-half, did you ever deal
14  with grievances?  So you mentioned that during that time
15  you would deal with grievances that might involve
16  something like excessive force, correct?

17    A    That is correct.

18    Q    Did you ever determine that an officer had
19  used excessive force in the jail?

20    A    Typically, the determination would be left up
21  to the jailer.  If I saw something that needed to be
22  brought to his attention, I would take it to -- to him
23  and we would review it as a team.

24    Q    Understood.  So you would gather the
25  information and present that information to the jailer?

Page 16

1    A    That's correct.

2    Q    And the jailer then would ultimately determine
3  whether any discipline was warranted?

4    A    That's correct.

5    Q    All right.  And you also reported to Jailer
6  Harmon while you were in that role?

7    A    That's correct.

8    Q    All right.  And so before you were chief
9  deputy for administration, what was your previous role?

10    A    I was the first shift captain, the first shift
11  supervisor.

12    Q    And so captain means that you would supervise
13  that shift?

14    A    That's correct.

15    Q    And you said first shift.  What hours is that?

16    A    That's 7:00 a.m. to 3:00 p.m.

17    Q    How many deputies would -- did you supervise
18  as a captain?

19    A    That would be roughly 15 to 19.  It depended
20  on the staff levels that day.

21    Q    So that would be per day, there would be 15 to
22  19 deputies working in the jail that you were
23  responsible for?

24    A    That's correct.

25    Q    And how long were you the first shift captain?

Page 17

1    A    A few years.  I can't remember.  I can't
2  remember exactly how long I was.  It was a few years.

3    Q    All right.  And as a captain, what were your
4  supervisory duties specifically over the deputies?

5    A    I would make the daily shift assignment sheet
6  where the deputy was actually going to work that day.  I
7  would oversee the paperwork and the booking office,
8  checked the headcounts to make sure they were done
9  correctly, assigned cell searches for staff to go do, be
10  there for any assistance for any issues that would come
11  up as far as medical emergencies or any other incidences
12  that would happen throughout the jail.

13    Q    And before you were a captain supervising the
14  first shift, what did -- what was your job?

15    A    I was also a captain on third shift for close
16  to six years.

17    Q    And third shift entailed what hours?

18    A    11:00 p.m. to 7:00 a.m.

19    Q    And how many deputies typically worked the
20  third shift at any given -- on any given day?

21    A    11 to 13.

22    Q    All right.  And before you supervised the
23  third shift, what was your job at the jail?

24    A    I was a assistant supervisor or a lieutenant
25  on first shift.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 7 of 432 PageID #: 2023
The Deposition of JASON RIGSBY, taken on September 29, 2022

18..21

Page 18

1    Q    What were your duties as an assistant
2  supervisor?
3    A    Assistant the supervisor with any issues that
4  he would delegate to me, oversee the headcounts,
5  basically -- actually, be on the headcount to make sure
6  the headcount was being properly.  Again, assist on the
7  -- on the floor with any new intakes coming in and out
8  of the jail and be there to assist the supervisor
9  mainly.
10   Q    So would it be fair to describe that that
11 would be sort of a middle management position between
12 the shift supervisor and the deputies?
13   A    That's correct.
14   Q    All right.  And before you were assistant
15 supervisor, you were, in fact, a deputy, correct?
16   A    I was a training sergeant before then.
17   Q    Okay.  And what did you do as a training
18 Sergeant?
19   A    Trained new staff on the daily operations on
20 how to conduct jail business.
21   Q    And was that a promotion from a deputy?
22   A    That was.
23   Q    And when did you start at the jail as a
24 deputy?
25   A    2006.

Page 19

1    Q    What were your duties as a deputy?
2    A    To process release, transport inmates, conduct
3  headcounts, serve trays, do checks on inmates every 15
4  to 20 minutes, conduct watch jurors every hour, walking
5  perimeters, checking for any incidences that need to be
6  addressed.  There's several different -- run control
7  boards, intercom, speaker, if the inmate had a need, if
8  they need toilet paper or something of that nature make
9  -- get those items for the inmate.  I think that's about
10 it for deputy position.
11   Q    And how long were you a deputy before you
12 started training?
13   A    About a year and a couple months.
14   Q    And what -- Why did you apply for a job at the
15 jail in the first place?
16   A    I had just gotten out of the Marine Corps, and
17 I had several friends that were working there and they
18 suggested coming to work there.
19   Q    How long were you in the Marine Corps?
20   A    I did eight years in the reserve.
21   Q    What were your duties in the -- as a reserve
22 in the Marine Corps?
23   A    I was a M1A1 Abrams tank mechanic and tank
24 operator.
25   Q    Sorry.  You were a -- I didn't catch that.  Can

Page 20

1  you say that again?
2    A    A M1A1 Abrams tank mechanic and operator.
3    Q    Okay.  Is that a specific kind of tank that
4  you're talking about?
5    A    Yes.
6    Q    Okay.  And when you were hired at the jail in
7  2006, did you receive any training?
8    A    When I was hired at the jail?
9    Q    Yes.
10   A    Yes.  A four-week training course.
11   Q    Tell me about that four-week training course.
12   A    Typically, the first week is what we could
13 call a rover position or a deputy who works on the
14 floor.  That's learning how to process, release inmates,
15 conduct pat downs, and strip searches, conduct -- back
16 then, I don't believe we did the fingerprints.  The
17 arresting officer still did, but eventually we ended up
18 having to learn how to do fingerprints, escort inmates
19 from point A to point B throughout the jail, conduct
20 headcounts, learn how to do cell searches.  That's
21 basically -- that's most of the rover positions for the
22 first week.  The second week is in pod operations.
23 That's going to be learning how to run the control board
24 that opens up the doors to the cell blocks.  That's
25 monitoring the staff of the admin -- the inmates in the

Page 21

1  -- in the housing areas.  Audio surveillance was mostly
2  the thing back then in 2006.  Now we have cameras, but
3  mostly it was audio alarms back then.  Oversee the
4  trustee inmate workers, make sure that the trustees
5  wasn't trying to pass contraband, take care of any
6  issues that the inmates may need, such as toilet paper
7  or hygiene items, cleaning supplies, things of that
8  nature.  The third week was a mixture of Class D work
9  release inmate work where you sign inmates in and out to
10 work and search them when they came back from work.
11 Also, H dorm, which is a -- where we house the federal
12 inmates.  That unit does not have a control board. You
13 have to get the doors open through another remote
14 location inside the building.  So it's a little bit
15 different than in a pod area.  And then the fourth week
16 was inmate control, which controls all the doors inside
17 the building, has all the camera fed into the area, and
18 documents all the in-and-out movement of the facility,
19 and documents any incidents that happened inside the
20 facility.
21   Q    So it sounds like you remember that training
22 pretty well.  Has that training remained consistent
23 since 2006?
24   A    Some parts of it have remained consistent. We,
25 of course, add on details or remove material as it



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 22

1    becomes obsolete.  Obviously, some of the functions have
2    changed over 16 years since I've started working there.
3    And some of the things -- like I said, we didn't have
4    cameras when I first started in 2006.  Now we have
5    camera feeds that are recording.  So some of the
6    technology has changed, some of the practices have
7    changed.  And, of course, we readapt that training as
8    those changes take place.
9        Q    So and it also sounds like this was -- would
10   you categorize this as on-the-job training?
11       A    Yes.
12       Q    So who -- would it be more -- more senior
13   deputies who would teach you how to do these things?
14       A    That's correct.  It would be the training
15   sergeant.
16       Q    And did you receive any classroom training
17   when you were trained back in 2006?
18       A    I would've received some classroom training
19   throughout the year, but not during the initial four
20   weeks.
21       Q    What kind of classroom training did you
22   receive beyond your initial start date?
23       A    It would've been deputy -- the required deputy
24   jailer training for the year.  I -- I can't recall
25   exactly how many hours that was back then.  It's -- it's

Page 23

1    24 now, but back then, I can't remember exactly how many
2    hours it was.  Classroom portion would've been
3    bloodborne pathogen, wearing protective equipment such
4    as gloves and stuff like that when dealing with inmates
5    or unknown substances.  We would've had a mental health
6    training.  We should have had a suicide prevention
7    training.  Let's see.  There should be -- there was a
8    bunch of different other training.  I can't recall.  I'd
9    have to look at my training record to -- to know what
10   those were.
11       Q    You mentioned mental health training.  Can you
12   tell me about that?
13       A    Yes.  The mental health training is set up to
14   enlighten deputies on behaviors and characteristics that
15   could result -- that means the person has a mental
16   illness and refer them to medical.
17       Q    What kinds of things did you learn might be
18   signs of mental illness?
19       A    I would say probably erratic behavior or
20   hallucinations, seeing things, stuff like that.  A lot
21   of behaviors mimic drug use.  So, I mean, I can't recall
22   all the details of mental health training.
23       Q    And would that training that you received back
24   when you started, would deputies through to the present
25   day have received similar training?

Page 24

1        A    Yes, they should.
2        Q    So there has there been mental health training
3    since at least 2006?
4        A    There has.
5        Q    And what -- are you able to tell me, is that
6    one classroom session that deputies attend?
7        A    There is a online version of it to take online
8    through Crimcast.  We also have PowerPoints and material
9    for the training sergeant to go over with deputies in
10   the middle of the four week training.
11       Q    So who conducts this?  Explain to me what this
12   online training through Crimcast is.
13       A    Who leads it?
14       Q    Yeah.  What is it?
15       A    It's -- it's a -- pretty much a -- you -- you
16   can log on and then it's, like, an online course like
17   you take in college.  It has material that you read and
18   review, and then it gives you questions to answer at the
19   end of it.
20       Q    And what kind of time period are we talking,
21   did this online training last?
22       A    I would say maybe a few hours.  I can't recall
23   exactly how long it is.
24       Q    And I think you mentioned there were some
25   materials that deputies had.  What was it?  Sorry, what

Page 25

1    was the other component that you mentioned?
2        A    We have a PowerPoint that we -- that we have
3    that we received.  And I think there's a couple other --
4    I think it's two PowerPoints, maybe.  I can't recall
5    exactly.
6        Q    And is that something that all deputies have
7    received since at least 2006?
8        A    I can't say that they've received it since
9    2006.  It's definitely something that we have
10   incorporated into the training within the last year or
11   so.
12       Q    Just -- okay.  So just within the last year
13   you have started doing these PowerPoints?
14       A    That's correct.
15       Q    And what do the PowerPoints consist of?
16       A    They are slides that have information about
17   mental health.
18       Q    What kind of information do they have?
19       A    I mean, I can't recall all the information and
20   details.
21       Q    Okay.  But that was not in place back in 2019?
22       A    No, I don't believe it was.
23       Q    What prompted the jail to start these
24   PowerPoints?
25       A    We just figured they would be a more broader

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 9 of 432 PageID #: 2025
The Deposition of JASON RIGSBY, taken on September 29, 2022
26..29

Page 26

1  education as far as the four-week training course.
2      Q    And when you say we, who are you talking
3  about?
4      A    The administration, the jailer, and the chief
5  deputies.
6      Q    All right.  And going back to an earlier topic
7  that I think I asked you about, I just want to ask a
8  follow-up that I -- you mentioned that you're -- you
9  were in charge of grievances and discipline and that you
10 would conduct the investigation to see what had
11 occurred; is that right?
12     A    That's correct.
13     Q    Have you ever, for the year-and-a-half that
14 you were doing that, did you ever recommend discipline
15 against an officer to the jailer?
16     A    I'm sure it's possible that I have.  I -- I
17 can't recall.
18     Q    So it's possible.  But you can't recall any
19 specific instances where you did, in fact, recommend
20 discipline?
21     A    I'm sorry.  Can you reword that?  I was trying
22 to recall --
23     Q    You can't -- sorry, let me start over.  You
24 can't recall any specific instances where you
25 recommended to the jailer that an officer be disciplined

Page 27

1  for his or her conduct?
2      A    That's correct.  I can't recall any specific
3  instances, no.
4      Q    Do you recall any instances where you
5  recommended to the jailer that an officer not be
6  disciplined for his or her conduct?
7      A    No, I've always left that decision to the --
8  to the jailer.
9      Q    Did he ever ask for your recommendation on
10 what -- on whether you thought this, it warranted
11 discipline?
12     A    I think he has asked us for opinions on if we
13 feel like it was a justified response far as the
14 disciplinary actions.
15     Q    Do you recall any in specific instances where
16 he asked you that question?
17     A    No, not specific.  No.
18     Q    Now, since you've been employed at the jail,
19 have you ever used a -- a restraint chair for an inmate?
20     A    Yes, I have.
21     Q    How frequently?
22     A    I would say when I was a floor deputy or a
23 supervisor, actually working on the floor and not in an
24 administrative position, I would say probably once or
25 twice a week on average, maybe.

Page 28

1      Q    And what were the circumstances where you
2  would use a restraint chair on an inmate?
3      A    Typically, self-harming behavior or in an
4  event where a force option, such as a taser or OC had to
5  be deployed in order to prevent further uses of force.
6      Q    Okay.  So there's two things there.  One would
7  be self-harm, right?
8      A    Yes.
9      Q    So that would be -- would that be, like, if an
10 inmate was suicidal?  Is that what you're saying?
11     A    I wouldn't say just being suicidal.  I would
12 say actually trying to commit suicide, or a situation of
13 that nature, or if they committed some kind of act that
14 we deemed was a suicide attempt.
15     Q    Okay.  So they -- number one would be an
16 inmate was actually taking action to harm themselves?
17     A    That's correct.
18     Q    And then the second one was to prevent an
19 escalation of force?  Is that what you're saying?
20     A    To provide a de-escalation of force.
21     Q    To provide a de-escalation of force.  Can you
22 tell me more about that?
23     A    Typically, practice is, if we have to use a
24 force option such as a taser or OC pepper spraying, from
25 my experience, after a force option of that -- such as

Page 29

1  that has been used, and if you isolate the inmate, they
2  continue to strike the door, or bang on the door, or
3  create other situations where they -- we have to use
4  force again.  So in order to prevent that use of force
5  again, we -- we put them in a restraint chair in order
6  to prevent that force, so nothing will happen.
7      Q    And you said that while you were a floor
8  deputy, that would be maybe a once or twice a week
9  occurrence?
10     A    That's correct.
11     Q    And how long would you typically leave an
12 inmate restrained?
13     A    Typically, four hours.
14     Q    Why four hours?
15     A    That just -- that's just what's been decided
16 through the practice of the jail, I believe.
17     Q    So that was the practice that you learned when
18 you first became a jail -- a deputy?
19     A    That's correct.
20     Q    Who enlightened you on the four-hour time
21 period?
22     A    I can't recall who -- who told me that.
23     Q    So that was just how things were done, was
24 inmates were left in the restraint chair for four hours?
25     A    Yes, that's correct.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON  RIGSBY, taken on September 29, 2022

30..33

Page 30

1    Q    Was there any customization for what was going
2  on with the inmate?
3    A    The -- there was always delegation.  They're
4  left up to the supervisor.
5    Q    Did you ever decide that you were going to
6  leave an inmate in the restraint chair for more or less
7  time than four hours based on what was going on?
8    A    There were times.  Typically, we would still
9  at least allow the inmate access to a toilet or exercise
10  the limbs before that decision was made, or at least
11  attempted to allow the inmates to do that.  Sometimes
12  the inmate would not allow it because of their behavior,
13  and safety and security had to supersede letting them
14  out.  So that did happen from time to time.
15    Q    And who made that decision on whether this
16  person could be let out to say, use the toilet?
17    A    Typically, the supervisor would make that
18  decision.  They would usually be involved with that
19  decision making.
20    Q    So if you were a deputy, you had a -- one of
21  your inmates was in their restraint chair, you would
22  need to go to the supervisor to have that person let out
23  for any period of time?
24    A    That's correct.  Typically, the supervisor
25  would be involved in that decision.

Page 31

1    Q    Did a supervisor need to be involved in the
2  decision to put an inmate in the restraint chair in the
3  first place?
4    A    Not necessarily.  A deputy could -- make --
5  use the discretion if -- based off the practices of the
6  jail.  If the deputy used force and the supervisor
7  happened to not be around, they knew that the practice
8  was to go ahead and place them in the chair in case --
9  in order to prevent uses of force, other -- other uses
10  of force.
11    Q    All right.  So what if you -- let's say that
12  you're trying to prevent an additional use of force or
13  whatever, and an inmate is in the restraint chair and
14  the inmate seems calmed down within 30 minutes?  Would
15  you still need to leave them in for four hours, or would
16  that -- could that inmate be released?
17    MR. ENGLISH:  Objection to the hypothetical
18  question and so forth.  If you have an opinion, you
19  -- if you've got enough facts, you can answer.
20    A    Can you rephrase the question again or repeat
21  it?
22  BY MS. CAMPBELL:
23    Q    Yeah, I'm just, kind of, trying to understand
24  the policy here and this four-hour practice.  And how --
25  so my question is, let's say you had, just a --

Page 32

1  hypothetically, you had an inmate who maybe had calmed -
2  - who was in the restraint chair and had calmed down
3  after, say, 30 minutes.  Would that four-hour practice
4  still be applicable, or would that be a situation where
5  that person could be released once they calmed down?
6    MR. ENGLISH:  I object to the hypothetical
7  question.  If you have enough facts, you can answer
8  it.  If you don't have enough facts --
9    A    Okay.  I think it would be safe to say that
10  with my experience, an inmate who calmed down within 30
11  minutes is most likely trying to manipulate me into
12  letting him out of the chair.  And then -- which would
13  again, lead to use of force again.  So with my
14  experience, I would probably decide to leave that person
15  in the chair for a little bit longer period of time than
16  30 minutes.  With my experience, I have removed inmates
17  from the chair before the four-hour period based off
18  their behavior for an extended period of time.
19  BY MS. CAMPBELL:
20    Q    And what does extended period of time mean to
21  you?
22    A    Roughly, I would say probably an hour to two
23  to three.  I would usually make a decision about every
24  hour when I was a supervisor.
25    Q    All right.  So it's -- it sounds like the

Page 33

1  four-hour practice was the standard at the Warren County
2  Regional Jail going back to 2006; is that fair?
3    A    I could say that's fair.
4    Q    And has that continued through to the present
5  day?
6    A    That's correct.
7    Q    And there were -- that's a pretty hard and
8  fast rule?  There are not a lot of exceptions to that
9  rule, fair?
10    A    The exception would -- would totally be at the
11  discretion of the supervisor.
12    Q    Now, were you trained on using the restraint
13  chair?
14    A    Yes.
15    Q    And what's -- what did that training entail?
16    A    It was hands-on training.  Later on, we
17  received additional training for the wrap device.  But
18  the restraint chair was a hands-on training.
19    Q    And when did you receive that training?
20    A    I can't recall.
21    Q    Okay.  So hands-on training, meaning that was
22  part of the on-the-job -- some sort of on-the-job
23  training that you received?
24    A    That's correct.
25    Q    And what did that hands-on training consist



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON RIGSBY, taken on September 29, 2022

34..37

Page 34

1  of?

2      A    It consisted of showing us how the restraint
3  chair worked, how to safely place a -- a subject in for
4  both member safety, for the deputy safety, and the
5  inmate safety, how to properly restrain the restraints
6  to make sure they wasn't too tight.  That's -- that's
7  about it.

8      Q    So the hands-on training sounds like it was
9  mostly how to actually use the restraint chair for an
10 inmate; is that fair?

11     A    That's fair.

12     Q    Did you receive any training on the
13 circumstances in which it was proper to confine an
14 inmate to a restraint chair?

15     A    Like the -- like -- no, I can't say I have
16 received any formal training on that, no.

17     Q    Did you receive any training on the duration
18 that you could leave an inmate confined to a restraint
19 chair?

20     A    Not that I can recall.

21     Q    It was -- what you learned was just that the
22 practice of the jail was four hours?

23     A    Correct.

24     Q    Did you receive any training on tasing an
25 inmate who was confined to a restraint chair?

Page 35

1      A    Like, while they're restrained?

2      Q    Yes.

3      A    I can't recall if there was anything specific
4  about being restrained or not in taser training.

5      Q    All right.  And do you carry a taser as a jail
6  employee?

7      A    I do.

8      Q    And you've carried a taser throughout your
9  career there?

10     A    Most of the career, yes.

11     Q    Was there some time that you did not?

12     A    At the beginning, the 2006, tasers were not
13 common use in the -- the jail setting, a very expensive
14 device and the jail couldn't afford it.  I believe we
15 had some, but they were mainly restricted to the CERT
16 team.  And then as the devices became more available,
17 eventually the supervisors had them only.  And then the
18 -- it migrated into the floor staff had them as well.

19     Q    And when did tasers become pervasive in the
20 jail?  When did everyone have them?

21     A    To this day, not everyone has one.

22     Q    So I guess -- I guess I should ask a better,
23 more specific question.  When did they become more
24 commonplace to where all the deputies had them?

25     A    I would say probably, the later part of the

Page 36

1  2000s.  I can't give a specific year, but before 2010.

2      Q    Did you ever use your taser?

3      A    Yes.

4      Q    How many times?

5      A    I can't recall.

6      Q    Was it common for you to use your taser?

7      A    I wouldn't say it was common, but I wouldn't
8  say it was uncommon.

9      Q    So ballpark, how many times a week?

10     A    I wouldn't say it was weekly.

11     Q    So it was not a weekly occurrence.  Was it a
12 monthly occurrence?

13     A    Maybe a bi-monthly occurrence.

14     Q    Okay.  So every two weeks would be your
15 estimate on how frequently you used your taser?

16     A    I would say closer to probably, four to six.

17     Q    Okay.  Four to six times a month.  And during
18 what --

19          MR. ENGLISH:  Four to six weeks.

20          Okay.

21     A    Maybe one deployment every four to six weeks.

22     Q    Understood.  And during what periods of your
23 career was that?

24     A    I can't recall exactly when I first became an
25 -- an end-user certified.  I would -- I would guess that

Page 37

1  it was around the 2009, 2010 time frame.

2      Q    And you mentioned you became a certified user.
3  Is that -- that's a requirement before you can use a
4  taser; is that correct?

5      A    Yes.  So you have to go through the tasers
6  course before you can become a user.

7      Q    And what did that -- was that -- what did that
8  training consist of?

9      A    A six-hour course for taser about the
10 technology itself, how to deploy the taser, smart-use
11 considerations.  You had to fire two cartridges at a
12 target, and volunteer exposures.

13     Q    And what was that last thing?

14     A    Volunteer exposures.

15     Q    What does that mean?

16     A    Being exposed to the effects of the taser.

17     Q    Does that mean that you are personally tased?

18     A    You have the option.

19     Q    Did you take that option?

20     A    Yes, I have been exposed four times.

21     Q    Was that all through training?

22     A    That's all through training.

23     Q    And was that the -- my understanding is that
24 there's a -- two modes on the taser.  One would be the
25 probes, and one would be the drive stun.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Page 38

1    A    That's correct.
2    Q    Is that correct?
3    A    That's correct.
4    Q    Have you been both -- I'm not sure how you say
5  it, but have you had the probes and the drive stun?
6    A    I have.
7    Q    And what did those feel like?
8    A    They don't feel pleasant.
9    Q    And so did you receive any training on your
10 taser through the jail, or was this a separate
11 certification that you had to receive?
12   A    I've had it through the jail and a separate
13 certification.
14   Q    And what was the training that the jail
15 provided you?
16   A    The six-hour course from a taser instructor --
17 that a jail employee became a taser instructor and
18 instructed the end user to use the taser.
19   Q    And did you receive any training on
20 circumstances where it's appropriate to use a taser?
21   A    Yes.
22   Q    What -- tell me about that training?
23   A    During the taser training, they have a, what
24 they call smart-use considerations, and typically, avoid
25 certain populations such as pregnant or elderly

Page 39

1  subjects, if you can.  Be mindful of people in elevated
2  positions.  Be mindful of -- it's preferred that if the
3  person is actively resisting before you use the taser,
4  and situations like that.  That's -- I think that's most
5  of them.
6    Q    And you say be mindful when people are in an
7  elevated position?
8    A    Yes, because if you deploy a taser and
9  they're, let's say, above a stairwell, they can fall
10 down the stairs.
11   Q    I understand what you mean by that.  All
12 right.  And did your training include information about
13 when it was appropriate to use a drive stun versus
14 deploying probes?
15   A    They didn't really specify on that.  Taser
16 typically recommends to use the probes because the drive
17 stun is just pain compliance.
18   Q    And so in what circumstances would it be
19 appropriate to use the probe versus the drive stun?
20   A    I'm not sure that the -- the -- the training
21 tells you which one to use on what situation.
22   Q    All right.  So you didn't learn that in
23 training.  Do you have independent knowledge of that,
24 based on your experience?
25   A    Not that I know of.

Page 40

1    Q    So how do you know whether to use the -- to
2  deploy the probes or drive stun someone?
3    A    It would be the discretion of the officer
4  that's using it in order to gain compliance.
5    Q    Well, okay.  So how do you exercise that
6  discretion?  What's the appropriate mode to use in what
7  circumstances?
8    A    Like I said, it depends on the situation.  I
9  -- I wouldn't -- I'd have to have more examples to -- in
10 order to tell you which one to use.
11   Q    Well, give me an example of when you would use
12 the probes.
13   A    Typically, if -- if you need to have distance
14 between you and the subject because of their behavior
15 would be a better reason to use the probes.
16   Q    So you would use the probes when there's some
17 distance between you and the subject because the probes
18 will shoot from the taser; is that correct?
19   A    Well, that's correct, because obviously, the
20 drive stun's not going to work unless you're close to
21 the person.
22   Q    All right.  Fair enough.  And so the drive
23 stun would be used if you are close to the person?  Is
24 that the only distinguishing factor between the two?
25   A    No, there's other reasons that you may use

Page 41

1  drive stun, such as a person's clutched onto something
2  and won't let go, because the probes will make -- if
3  they work correctly, it's going to cause neuromuscular
4  incapacitation, and they wouldn't be able to let go,
5  versus the drive stun causes pain compliance and it's
6  going to make them want to let go.
7    Q    Okay.  So the distinguishing factor between
8  the two, the probes are going to incapacitate someone,
9  versus the drive stun is pain compliance?
10   A    That's correct.
11   Q    Is that a correct summary?
12   A    That's correct.
13   Q    Now, did you receive any training on the
14 appropriate duration of a drive stun?
15   A    I believe the taser automatically cycles for
16 five seconds.
17   Q    Now, after that five seconds, is it true that
18 you can just immediately reengage the taser?
19   A    Yes, but you're supposed to reassess the
20 situation.
21   Q    Okay.  So your answer would be yes.  You
22 received training that one drive stun, or one cycle
23 would be the appropriate duration?
24   A    That's correct.
25   Q    And was that through your training at the jail

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON RIGSBY, taken on September 29, 2022

42..45

Page 42

1  that you are aware of that?
2      A    I believe that is actually through taser.  The
3  -- the correct action is to let the -- to cycle for the
4  five-second cycle and try to gain control of the subject
5  while they're under the effects of the taser.
6      Q    And you said that was from your taser
7  certification class?
8      A    That's correct.
9      Q    And I think you testified about how frequently
10  you used your taser.  How frequently did you observe
11  tasing occur at the jail?
12      A    I would say it's probably a similar time
13  frame.  It's -- it's used, but it's not used all the
14  time.  It's actually a pretty good deterrent.  Typically,
15  when an inmate sees the taser is present, they want to
16  comply.  So I -- I see the taser presented and turned on
17  way more times than I see it actually get deployed.
18      Q    And from your perspective, has that been
19  consistent since tasers became more commonplace in the
20  jail around 2010?
21      A    Yes, that would be consistent.
22      Q    And so you would say once every four to six
23  weeks?  Was that what you testified to earlier?
24      A    I'd say once -- one -- once every four to six
25  weeks for actual deployment.  I would say it gets

Page 43

1  presented way more often than that.
2      Q    Presented, but not used?
3      A    Presented, but not used, yes.
4      Q    All right.  Now, did you ever tase an inmate
5  who was secured in a restraint chair?
6      A    You'd have to elaborate more on being secured.
7      Q    So an inmate is strapped into a restraint
8  chair.
9      A    Completely, or semi -- semi strapped?
10      Q    Either one.
11      A    If there's some type of limb that's still
12  unrestrained that could be used to -- to actively resist
13  our efforts to try to place them in restraint, yes, I
14  could see -- I have deployed tasers.
15      Q    You have deployed your taser in that
16  circumstance?
17      A    Yes, if they're actually resisting while we're
18  trying to put them in the restraint chair.
19      Q    And how -- how frequently did that occur?
20      A    It wasn't very common.
21      Q    And what do you mean by wasn't very common?
22      A    Maybe, two or three times a year.
23      MR. ENGLISH:  If you know.
24      THE WITNESS:  Yeah.
25      MR. ENGLISH:  Don't guess.  Don't speculate.

Page 44

1      THE WITNESS:  Yeah.
2      MR. ENGLISH:  If you have a -- if you know, but
3  don't guess.
4      A    I -- I, yeah, I would -- I would -- that's all
5  I can give, is a guess.
6  BY MS. CAMPBELL:
7      Q    Okay.  So what about when an inmate is totally
8  secured in a restraint chair?
9      A    Typically, I would try to avoid the use -- use
10  of a taser.
11      Q    Did you ever tase somebody who was secured in
12  a restraint chair?
13      A    I don't recall ever doing it.
14      Q    And why would you avoid using a taser in that
15  circumstance?
16      A    I would see if I could find other options or
17  wait, but that's not always plausible.
18      Q    I didn't catch the last part of that.
19      A    But that's not always plausible to wait.
20      Q    To wait for what?
21      A    Until they want to comply.
22      Q    So -- okay.  I'm not sure I understand your
23  answer here.  So you personally have never tased someone
24  who is in a restraint chair, secure -- fully secured in
25  a restraint chair?

Page 45

1      A    To my knowledge, I have not, no.
2      Q    And why not?
3      A    Because I felt like I've -- could have waited,
4  or just didn't feel the need to.
5      Q    Was that something that you were trained not
6  to do by the jail?
7      A    No, I can't say it was something I was trained
8  not to do.
9      Q    So that was just your personal practice?
10      A    Yes.
11      Q    Did you see other officers tase inmates who
12  were fully secured in a restraint chair?
13      A    I can't recall if I have or not.
14      Q    Were there any policies and procedures at the
15  jail that discussed tasing inmates who were secured in
16  restraint chairs?
17      A    Not to my knowledge.
18      Q    So there was no guidance one way or the other
19  on the practice of tasing inmates who are in restraint
20  chairs?
21      A    No, that would be at the discretion of the
22  user.
23      Q    Now, you mentioned that you, personally, had
24  been tased as a part of your training, and that that did
25  not feel good, I think was your testimony, right?

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of JASON RIGSBY, taken on September 29, 2022

46..49

Page 46

1    A    That's correct.
2    Q    Did you notice any lingering effects after you
3 were tased, either from the drive stun or the probes?
4    A    I believe one time I had a charley horse in my
5 leg, or a cramp in my leg.
6    Q    And was that from a drive stun or probes?
7    A    I believe that one was from probes.
8    Q    Were you able to move normally after you were
9 tased?
10   A    After the probe hit with the, I was not able
11 to control my reactions.
12   Q    And so how long did it take you to feel that
13 -- to feel normal again?
14   A    After the cycle was completed, I would say a
15 few -- a few seconds, except for the event where I had
16 the muscle cramp.
17   Q    And how long did that muscle cramp last?
18   A    A few minutes after I stretched it out.
19   Q    All right.  Now, when you were hired at the
20 Warren County Regional Jail in 2006, were you provided
21 with a copy of the policies and procedures?
22   A    Yes, I was.
23   Q    Was this in the form of a manual?
24   A    Yes, it was.
25   Q    A hard copy, I assume?

Page 47

1    A    Yes.
2    Q    Who provided that to you?
3    A    The jailer.
4    Q    And did you review that manual?
5    A    I did.
6    Q    Was there any process for making sure that you
7 did, in fact, review the manual?
8    A    I believe we probably signed something saying
9 that we received it and reviewed it.
10   Q    And was there any process for making sure that
11 you understood the jail's policies and procedures?
12   A    Not that I recall.
13   Q    Were you provided with any instruction about
14 the jail's policies and procedures?
15   A    Like, as a former class?
16   Q    Sure.
17   A    I believe I probably -- I might have some time
18 during my career, but I can't recall back to 2006.
19   Q    So you don't recall actually receiving any
20 kind of training on the jail's policies or procedures?
21   A    Not -- in 2006, I don't recall doing that, no.
22   Q    Did you receive any -- do you recall any
23 training on the policies and procedures since 2006?
24   A    I'm sure that I received some training over
25 policy and procedures since 2006.

Page 48

1    Q    And you say you're sure that you did.  Do you
2 actually remember that you did, or are you guessing that
3 you probably did?
4    A    No, I remember that I received training on the
5 policy and procedures.  I just don't remember exactly
6 when it happened.
7    Q    Okay.  Do you remember anything else about
8 that?  You -- you're saying you remember that some sort
9 of training occurred.  You don't remember when.  Is
10 there anything else you can tell me about that training?
11   A    No.
12   Q    Now, have there been any changes to the
13 policies and procedures manual since you started working
14 at the jail?
15   A    Yes.
16   Q    And what were those changes?
17   A    I can't recall.  That's 16 years.  That's too
18 many.
19   Q    And how were you made aware that there were
20 changes?
21   A    Typically, by e-mail.
22   Q    And did you have to do anything to verify that
23 you read the new policies?
24   A    Not that I recall.
25   Q    So it sounds like updates would go out by

Page 49

1 e-mail, and there was no further action required on your
2 part, correct?
3    A    That sounds correct.
4    Q    Now, there was a policies and procedures
5 manual in place at the Warren County Jail in March 2019,
6 correct?
7    A    Correct.
8    Q    And were there any policies or procedures
9 governing how to interact with inmates who displayed
10 signs of mental illness?
11   A    Not to my knowledge.
12   Q    Was there any policy requiring an assessment
13 of inmates mental health at the time of booking?
14   A    Can you re-ask that one?  I'm sorry.
15   Q    Was there any policy requiring an assessment
16 of an inmate's mental health at the time of booking?
17   A    Only if they answered a question that would --
18 during the intake questionnaire that would make us
19 believe that they may have some kind of mental issue.
20   Q    Was there any policy and procedure about
21 recognizing mental illness in inmates?
22   A    I'm sorry.  Can you re-ask that one again,
23 too?
24   Q    Were there any policies and procedures about
25 recognizing signs of mental illness in inmates?



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON RIGSBY, taken on September 29, 2022

50..53

Page 50

1      A    No.
2      Q    Were there any policies or procedures
3  instructing you what to do if an inmate displayed signs
4  of mental illness?
5      A    If we suspected that a person may have a
6  mental health issue, they were referred to medical.
7      Q    And the way that you would suspect a person
8  had mental health issues would be some sort of
9  self-reporting on their intake?
10     A    Either a self-reporting on intake or
11  documentation off an observation check, a check sheet,
12  observing their behavior, or incident reports.
13     Q    Now, did you personally interact with inmates
14  who had mental illness during your time as a — working
15  at the jail?
16     A    I'm sure that I have, but I don't know if
17  anyone is certified, or diagnosed, or — that's
18  typically out of my realm.
19     Q    All right.  So you didn't have any personal
20  practice for interacting with an inmate that you
21  believed had mental illness?
22     A    That I believe may have had?
23     Q    Yes.
24     A    There were several of them that I believe had
25  mental health issues.

Page 51

1      Q    So in those circumstances where you had an
2  inmate, you believed that person might have a mental
3  illness, did you have any special practice for dealing
4  with that inmate versus how you might deal with a regular
5  inmate?
6      A    No.
7      Q    All right.  Now shifting to Mr. Heston,
8  specifically.  Were you present at the jail when he
9  arrived on March 17, 2019?
10     A    I was not.
11     Q    And because that was not — well, at that time
12  —
13     A    I believe that was Sunday.
14     Q    That was a Sunday.  And so you were not
15  working that day?
16     A    That's correct.
17     Q    All right.  Do you know KSP Officer Tucker?
18     A    I do not.
19     Q    All right.  And so that was a Sunday night, I
20  believe, that he was brought in; does that sound correct
21  to you?
22     A    That — that sounds correct, but I don't know.
23     Q    And so did you then arrive on Monday morning?
24
25

Page 52

1      A    Yes, that's correct.
2      Q    And when you arrived from your shift, did you
3  learn — did you learn — when you arrived for your
4  shift on Monday, did you learn that there had been an
5  altercation in sally port between Mr. Heston and Officer
6  Tucker?
7      A    I don't recall if I knew that or not.  I think
8  I do recall there was an incident with involving him and
9  staff.
10     Q    But you don't remember any specifics?  Well,
11  let me strike that.  Did you hear about this incident
12  when you arrived at the jail the next day?
13          MR. ENGLISH:  Excuse me.  Which instance are
14     you talking about?  With Tucker or with staff?
15     Q    I'm talking about — let me back up a little
16  bit and make sure we're clear.  So I'm talking about
17  Michael Heston was brought in on Sunday night.  Did you
18  hear about any interaction between — any altercation
19  between him and KSP officer Tucker?
20     A    I can't recall if I heard anything about him
21  and KSP or not.
22     Q    Okay.  But you do think you heard something
23  about an incident between Heston — between Mr. Heston
24  and jail staff?  Is that what you're saying?
25     A    That's correct.

Page 53

1      Q    Okay.  And what do you remember about that?
2      A    I don't know all the details.  That — just
3  that there was some kind of incident between him and
4  staff members that I needed to use extra precautions
5  around Mr. Heston.
6      Q    And do you know who those staff members were
7  — are that you're referring to?
8      A    I would assume it was Captain Causey and
9  Captain Norris.
10     Q    And what are you basing that statement off of?
11     A    Just pure recollection.  Typically, we had a
12  shift pass along for incidences and the people housed in
13  the booking area that we would pass on from one shift
14  supervisor to the next.
15     Q    Okay.  So at the shift pass along, you think
16  you learned about this altercation involving Melissa
17  Causey and Norris?
18     A    Yes, I believe so.
19     Q    Okay.  And so who filled you in on that
20  information?
21     A    It should have been whoever of ours was
22  leaving as the captain on shift.  It should have been
23  Captain Causey.
24     Q    Okay.  And so you're saying should have been,
25  as in that's it would've happened, but you don't

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 54

1  specifically remember that had happened?
2      A    Yes, correct.
3      Q    Okay.  I just want to make sure I'm
4  understanding what you're actually remembering and what
5  you're basing off of just the practices of how things
6  worked.  All right.  So can you recall anything else
7  that Melissa Causey told you during that pass along?
8      A    No, I -- I don't recall any of that.
9      Q    Did she tell you anything about Mr. Heston's
10 mental illness issues?
11     A    No, Not that I know of.
12         MS. CAMPBELL:  All right.  And can we just take
13 a quick break here?  I need to use the restroom.
14         THE WITNESS:  Okay.
15         COURT REPORTER:  Off the record.  Time is 10:36
16 and we are off the record.
17         (OFF THE RECORD)
18         COURT REPORTER:  We are back on the record for
19 the deposition of Jason Rigsby.  My name is Maggie
20 Patterson.  We are being -- this is being conducted
21 by videoconference.  Today is September 29, 2022.
22 The time is 10:48.
23 BY MS. CAMPBELL:
24     Q    All right.  Mr. Rigsby, so getting back into
25 it.  So now in March, 2019, you also personally

Page 55

1  interacted with Mr. Heston; is that correct?
2      A    Yes, that's correct.
3      Q    Okay.  I'm going to show you a report here.
4  Are you able to see that on your screen?
5      A    Yes, I am.
6      Q    Okay.  I'm going to -- this is what's been
7  marked as Exhibit 2.  The Bates stamp is Warren County
8  18.  Mr. Rigsby, do you recognize this document?
9         (EXHIBIT 2 MARKED FOR IDENTIFICATION)
10     A    Yes, I do.
11     Q    And is this a report that you created?
12     A    Yes, I did.
13     Q    And it looks like -- do you need me to zoom in
14 a little bit?  Is it hard for you to see, or is that
15 okay?
16     A    Yeah, it's kind of hard to read.
17     Q    Okay.  Let me make it -- I know it's small
18 font.  Is that better?
19     A    Yes, that's better.
20     Q    Okay.  And you created this report on
21 March 18, 2019 at 14:31; is that correct?
22     A    That sounds correct.
23     Q    And that would be 2:31 p.m. normal time?
24     A    Yes.  2:00 p.m.  Yeah.
25     Q    Okay.  Now, so on March 18, 2019 at 2:00 p.m.,

Page 56

1  Mr. Heston was striking the door of his cell, correct?
2      A    Yes.
3      Q    Okay.  So he was obviously in a cell at the
4  time, correct?
5      A    Correct.
6      Q    And were you able to see inside that cell?
7      A    I can't recall.
8      Q    Okay.  Do you have any independent
9  recollection of this incident?
10     A    Not much, no.
11     Q    Okay.  What -- when you say not much, what do
12 you mean by that?
13     A    Situations like this happen very, very
14 frequently at the jail, so --
15     Q    So you don't have any independent recollection
16 of this specific incident?
17     A    That's correct.
18     Q    Okay.  And so according to your report,
19 Mr. Heston was upset because his clothes didn't fit?
20     A    Yes.
21     Q    And so he was striking the door in a way that
22 could cause harm to his person?
23     A    That's correct.
24     Q    And do you have any memory of what you meant
25 exactly by that?

Page 57

1      A    When I use that phrase, it means he's striking
2  it hard enough where I feel like you could fracture a
3  wrist or an ankle.
4      Q    Okay.  And how long did this go on?
5      A    I can't recall.
6      Q    And then he began throwing water under his
7  cell door?
8      A    That's correct.
9      Q    And do you have any memory of how much water
10 we're talking about here?
11     A    No, I can't recall how much.
12     Q    And he had, I guess -- would it be standard
13 for an inmate to have a cup in the cell?
14     A    Yes.
15     Q    How big is that cup?
16     A    I don't know how many ounces it is.  It's
17 about -- a coffee cup, larger coffee cup.
18     Q    Okay.  And so apparently Mr. Heston was not in
19 a restraint chair when this was going on?
20     A    While he was in the cell?  No, he was not in a
21 restraint chair.
22     Q    And were you aware that he had previously been
23 in a restraint chair that day?
24     A    I can't recall.
25     Q    Would that be information that you would learn

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

The Deposition of JASON RIGSBY, taken on September 29, 2022

58..61

Page 58

1  in the pass along meeting?
2      A    That's correct.
3      Q    So that information about whether someone was
4  in a restraint chair that was — that would be something
5  that would typically be passed along to the next
6  supervisor?
7      A    That is correct.
8      Q    And would you also learn the amount of time —
9  not just the fact that they had been in the restraint
10  chair, but the amount of time that they had been in the
11  restraint chair?
12      A    Yes, correct.
13      Q    And was there a log where you would be able to
14  check information about how long someone had been in the
15  restraint chair?
16      A    Yes.  The inmates in the restraint chair had
17  to be checked on every 15 to 20 minutes.
18      Q    Inmates in the restrain chair had to be
19  checked on every 15 to 20 minutes?
20      A    That's correct.
21      Q    Okay.  And then was there a — some sort of
22  written record that existed saying Inmate X has been in
23  a restraint chair for this long, and documenting when
24  that person is checked on?
25      A    There should be.

Page 59

1      Q    And where was that kept?
2      A    It would've been kept in the records area.
3      Q    And would that be something that you would
4  have access to throughout your shift?
5      A    Yes.
6      Q    Okay.  And so every time that that inmate was
7  checked on, that log — the officer should update that
8  log?
9      A    That's correct.
10      Q    Okay.  And inmates being checked on every 15,
11  20 minutes, what does a check consist of?
12      A    Looking for signs of life, making sure that
13  the inmate's live, breathing, typically documenting
14  their behavior or what they're doing if it's inside of a
15  cell, it would be what they're doing.  But involving the
16  restrain chair, obviously, their type of behavior, if
17  they're making threats, yelling profanities, trying to
18  resist the restraints, things like that.
19      Q    Would the checking officer actually go into
20  the cell, or was this something that was viewed from a
21  camera?
22      A    It would be viewed — typically, while in
23  observation, it would be through the window of the cell
24  door.  And then if the restraint chair, I believe at the
25  time, it was beside the booking area, but around main

Page 60

1  control.  It was almost, kind of, in the hallway.
2      Q    Okay.  And so checking for breathing, would
3  somebody have to actually go and make sure this person
4  was breathing, or is that something you could observe
5  through a window?
6      A    You would look for the chest rising and
7  falling, typically, through the window.
8      Q    Okay.  So you didn't have to go in and, like,
9  physically interact with this inmate and make sure that
10  he or she was breathing?
11      A    That's correct.
12      Q    If you could see that they're — well, let me
13  strike that.  Okay.  And you said that should be done
14  every 15 to 20 minutes?
15      A    That's correct.
16      Q    And I think you testified the amount of time
17  that inmates were — the standard was that they would be
18  in there in the restraint chair for four hours at a
19  time?
20      A    Yes.
21      Q    Now did you — was there any range of motion
22  exercises that needed to be conducted at any point?
23      A    Typically, at four-hour mark, you would — you
24  would assess if the person could come out of the chair
25  or not.  If it was determined that it was unsafe for

Page 61

1  them to come out of the chair, typically, a range of
2  motion would be given if we could conduct it safely and
3  access to a toilet if we could do so safely.
4      Q    Okay.  So tell me — elaborate on the range of
5  motion exercises.
6      A    Typically, removing one arm at a time from the
7  soft restrains, allowing them to physically move that
8  limb around.
9      Q    Okay.  So you would remove their arms and
10  allow them to physically move.  What about their legs?
11      A    Yes, legs too.
12      Q    And what was the purpose of that?
13      A    To keep blood flow throughout the body to
14  prevent, I guess, prevent clots.  I'm not a medical
15  professional, so —
16      Q    And was that something that you received
17  training to do, those range of motion exercises?
18      A    Yes, that's correct.
19      Q    And are you familiar with any safety hazards
20  with using restraint chairs for extended periods of
21  time?
22      A    Am I knowledgeable of any of them —
23      Q    Yes.
24      A    — or — no, I'm not.
25      Q    All right.  And so getting back to this

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Page 62

1  incident, let me show you this again.  All right.  So --
2  all right.  So we talked about how, according to your
3  report, Mr. Heston began filling his cup and throwing
4  water under the cell door.  And so he was ordered to
5  place his hands on the wall.  And according to your
6  report, he complied with that order, correct?
7      A    Yes.
8      Q    And you then unholstered your taser and
9  activated, correct?
10     A    That's correct.
11     Q    And what does it mean, laser only?
12     A    That means that the taser was on, but I did
13 not deploy it.  Laser only is -- on the taser, you have
14 a function where the -- it shows a red laser or a red
15 dot for your aim reference, and that was enough to gain
16 compliance in this situation.
17     Q    And now -- and you say in your report that you
18 had -- due to inmate Heston's previous incidents, you
19 unholstered your taser, correct?
20     A    That's correct.
21     Q    All right.  And what previous incidents are we
22 talking about?
23     A    Best of my recollection, that's the incident
24 between Ms. Causey and Captain Norris.
25     Q    Okay.  And that is an incident that you

Page 63

1  learned about through the pass along meeting?
2      A    That's correct.
3      Q    And you weren't actually present for that
4  incident with Captain Causey, right?
5      A    No, I was not.
6      Q    All right.  And then you ordered Mr. Heston to
7  sit in the restraint chair?
8      A    Yes, that's correct.  We should have escorted
9  him to the restraint chair.
10     Q    And was the restraint chair, to your
11 knowledge, was that already in the cell?
12     A    I can't recall if that -- where it was at --
13 at the moment.
14     Q    Okay.  And you ordered him in the restraint
15 chair because he'd been dumping water from his cup?
16     A    No, I ordered him to the restraint chair
17 because he was banging on the door in a manner that
18 could cause harm to himself.
19     Q    And was it standard practice at the Warren
20 County Regional Jail to confine an inmate to a restraint
21 chair for that kind of behavior?
22     A    Yes, because if he fractures his hand or
23 fractures his wrist, I'll have to take an inmate out of
24 the jail into an unsecured environment, which is very
25 dangerous for staff.

Page 64

1      Q    And before putting Mr. Heston in the restraint
2  chair, did you attempt any kind of verbal de-escalation
3  of the situation?
4      A    Yes, I probably -- I would've warn him to stop
5  striking the cell door.
6      Q    And you're saying you would have, meaning you
7  don't have any specific recollection, but it would've
8  been your practice to tell him to stop banging on the
9  door?
10     A    That is correct.
11     Q    Would it have been your practice to give him a
12 chance to comply with that?
13     A    That's correct.
14     Q    All right.  And it looks like deputies Hussey
15 and Blair secured Mr. Heston in the restraint chair
16 while you covered him at taser point?
17     A    Yes, that's correct.
18     Q    And Mr. Heston complied with sitting in the
19 chair?
20     A    Yes, he did.
21     Q    And covering at taser point, that means you
22 had your taser activated, but you did not deploy it.  Am
23 I interpreting that correctly?
24     A    That is correct.
25     Q    And is that standard practice at the jail when

Page 65

1  you're putting an inmate in a restraint chair?
2      A    It depends on the situation.  I believe with
3  the -- with inmate Heston's behavior leading to being
4  placed in a restraint chair and the previous incidences,
5  I feel like it was justified.
6      Q    But that's not something that would
7  necessarily always occur, fair?
8      A    That's correct.  We wouldn't -- that wouldn't
9  always be required, no.
10     Q    All right.  And then Mr. Heston was secured
11 without incident?
12     A    That's correct.
13     Q    He did not resist you?
14     A    Not to my recollection, he did not.
15     Q    All right.  And then so fair to summarize that
16 after he stopped banging on the door, he had no further
17 misbehavior during this interaction.  Is that fair to
18 summarize?
19     A    Not to my recollection, he did not.
20     Q    Okay.  So then Mr. Heston was placed in the
21 visitation holding room?
22     A    I can't recall.  Is that -- is that -- if
23 that's what the report says, yes.
24     Q    Yeah.  Let me --
25     A    Yes.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON RIGSBY, taken on September 29, 2022

66..69

Page 66

1    Q    I just want to make sure I'm correct as well.
2  So — and he was still confined to the restraint chair
3  at that point, correct?
4    A    That's correct.
5    Q    Okay.  And did you leave him there then for
6  four hours?
7    A    I can't recall.
8    Q    Okay.  So you don't have any independent
9  recollection of how long Mr. Heston was left in the
10 restraint chair after this incident?
11   A    No, I do not remember.
12   Q    Okay.  Do you have any independent
13 recollection of him being monitored while he was in the
14 restraint chair?
15   A    Not independent recollection, no.  It is the
16 practice to conduct checks, though.
17   Q    And if he was in the visitation holding room
18 — well, he was in the visitation holding room, those
19 are checks that would've been conducted by camera?
20   A    In person, by a deputy.
21   Q    Okay.  And is there a window into the
22 visitation holding room that you would be able to see
23 him?
24   A    Yes, there is.
25   Q    And it would've been a deputy's

Page 67

1  responsibility, not your personal responsibility, to
2  conduct those checks?
3    A    That's correct.
4    Q    And did you make sure, was it your
5  responsibility to actually make sure that the deputies
6  conducted those checks?
7    A    I would periodically spot check forms to make
8  sure that the — we was trying to be in compliance, yes.
9    Q    All right.  And then the next day you had
10 another interaction with Mr. Heston; is that correct?
11   A    I believe so.
12   Q    Okay.  And before I move on to that, did you
13 have any further interactions with Mr. Heston that day,
14 after this incident with the water and the putting him
15 in the restraint chair?
16   A    Not that I remember.
17   Q    Okay.  Okay.  Are you able to see my screen
18 again?
19   A    Yes, ma'am.
20   Q    Okay.  I've marked this Exhibit 3.  The Bates
21 stamp is Warren County 19 to 20.  All right.  And you
22 mention — so you had this encounter with Mr. Heston,
23 and specifically, Mr. Heston had some sort of
24 altercation with another inmate?
25             (EXHIBIT 3 MARKED FOR IDENTIFICATION)

Page 68

1    A    Yes.
2    Q    And is this your report on that incident?
3    A    Yes.
4    Q    Okay.  And are you able to see this okay on my
5  screen?
6    A    Yes, ma'am.
7    Q    All right.  And your report is dated
8  March 19, 2019, at 10:32 a.m.?
9    A    That's correct.
10   Q    All right.  So on March 19th at 9:53 a.m. you
11 responded to a physical altercation between Mr. Heston
12 and another inmate named Auktavian Pruitt; is that
13 correct?
14   A    That's correct.
15   Q    Okay.  How did you learn about this incident?
16   A    I believe — I can't — I can't recall
17 exactly.  I think there was an all call, but I can't
18 recall.
19   Q    And what does an all call mean?
20   A    A deputy observes something, a fight,
21 typically, or a medical emergency, and they announce for
22 all deputies to respond to the area.
23   Q    And an all call, that would involve something
24 like 13 to 15 deputies?
25   A    No, on the floor, actually, as a rover,

Page 69

1  roughly four to five, plus the assistant supervisor and
2  the supervisor, and if any of the chief deputies wanted
3  to respond.
4    Q    Understood.  And so would these folks listed
5  as witnesses, would those be the people that responded
6  to this call?
7    A    Yes.
8    Q    And so that would include Deputy Embry,
9  correct?
10   A    That's correct.
11   Q    And Deputy Hussey?
12   A    That's correct.
13   Q    And Deputy Taylor?
14   A    That's correct.
15   Q    And Deputy White?
16   A    That's correct.
17   Q    And then I think Talana Lasley, is she a
18 nurse?
19   A    That's correct.
20   Q    Okay.  Now, do you have any independent
21 recollection of this incident?
22   A    Yes, I do.
23   Q    Okay.  And how — what is — how is it that
24 you remember this incident?
25   A    I remember responding while escorting inmate

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 20 of 432 PageID #: 2036
The Deposition of JASON  RIGSBY, taken on September 29, 2022

70..73

Page 70

1 Heston.  He turned and strikes Deputy White in the face
2 and I deployed my taser.
3    Q    Okay.  And so -- and this -- before all that
4 went down, both inmates were removed from the cell, and
5 Mr. Heston was escorted to booking at that point?
6    A    Yes, I believe so.
7    Q    Okay.  Do you have any independent
8 recollection of actually escorting, I guess, taking him
9 out of the cell?
10    A    No, I don't.
11    Q    Okay.  And was he restrained in any way while
12 you were escorting him to booking?
13    A    Not to my recollection, he was not.
14    Q    All right.  And so then he was physically
15 taken to the ground during that encounter?
16    A    Yes, to -- to my recollection.  Yes, he was.
17    Q    Sorry.  When I say he, I mean Mr. Heston.
18    A    Yes.
19    Q    Okay.  And who took him to the ground?
20    A    I can't recall.  It would be -- let's see,
21 what's -- I'd have to look at the report to see who --
22 what happened there.
23    Q    I'm not sure that it says in the report, so
24 I'm just asking based on your -- if you had independent
25 memory of all that transpired.

Page 71

1    A    I -- I can't recall how.
2    Q    All right.  And then you deployed your taser
3 on Mr. Heston's upper left leg?
4    A    That sounds correct.
5    Q    And Mr. Heston was on the ground when you
6 tased him, correct?
7    A    I believe so, yes.
8    Q    Okay.  And where exactly on his upper left leg
9 did you tase him?
10    A    I can't recall.
11    Q    Did you have any training about where you
12 should or should not, tase individuals?
13    A    Yes, I have.  There is preferred target areas.
14    Q    What are those preferred target areas?
15    A    From the back, anything from the neck and
16 down, from the front, anything from the abdomen down,
17 avoiding the genital area.
18    Q    Okay.  And did you have training on what areas
19 you should avoid?
20    A    Yes.
21    Q    What are those areas?
22    A    The head and neck, avoid the chest area close
23 to the heart, and avoid the genitals.
24    Q    And where did that training come from?
25    A    From taser.

Page 72

1    Q    From your taser certification?
2    A    That's correct.
3    Q    Okay.  And you got a good connection with the
4 probes; is that correct?
5    A    I believe I had to follow up with what we call
6 a three-point drive stun because the probes were too
7 close together.
8    Q    All right.  So the probes are too close
9 together.  What does that mean?
10    A    If the probes are too close together, it
11 simulates a drive stun because there's not enough spread
12 between the two contacts.  So in order to create the
13 spread that's required, you have to follow up with a
14 three-point drive stun with the probes connected, and
15 that causes neuromuscular incapacitation.
16    Q    Right, so if -- you're saying that you tased
17 him, and the probes connected, but were not far enough
18 apart?
19    A    Correct.
20    Q    So what -- if the probes aren't -- that -- if
21 the probes aren't far enough apart, does that fail to
22 incapacitate someone?
23    A    It -- it fails to cause neuromuscular
24 incapacitation.  Yes.
25    Q    Okay.  And so when that happens, then you

Page 73

1 follow up with a drive stun?
2    A    Yes.  It's called a three-point drive stun.
3    Q    And why is it called a -- what's it -- is
4 there a difference between a regular drive stun and a
5 three-point drive stun?
6    A    Yes.  The regular drive stun does not have
7 probes involved.
8    Q    Okay.  So a three-point drive stun does have
9 probes involved?
10    A    Correct.
11    Q    And what is the consequence of a three-point
12 drive stun?
13    A    It -- it achieves the same consequence as a
14 probed impact that has a foot spread or greater.
15    Q    A foot spread?
16    A    Yes.  There has to be at least -- according to
17 taser training, I believe it's over a one-foot spread
18 between the two probes in order to cause NMI or
19 neuromuscular incapacitation.
20    Q    Okay.  So how many probes -- if you tase
21 somebody, how many probes deploy?
22    A    Two.
23    Q    Two.  And those probes have to be at least one
24 foot apart to cause neuromuscular incapacitation?
25    A    Correct.



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 21 of 432 PageID #: 2037
The Deposition of JASON RIGSBY, taken on September 29, 2022
74..77

Page 74

1    Q    Okay.  And if that — if they are not one foot
2  apart, then you have to follow up with a three-point
3  drive stun to cause the incapacitation that you're
4  trying to create?
5    A    Correct.
6    Q    And when you follow up with a three-point
7  drive stun, is that still the pain compliance technique
8  of a regular drive stun, or is this something different?
9    A    No.  It's — it's trying to achieve
10  incapacitation.
11    Q    Does it cause pain?
12    A    Yes.
13    Q    Does it cause the same pain as a drive stun?
14    A    Leaving the two probes close together would
15  have the same pain as a drive stun.  The — following up
16  with a three-point would result to the pain that you
17  would receive for a neuromuscular incapacitation.
18    Q    Okay.  So basically, you're experiencing both
19  the neuromuscular incapacitation from the probes and the
20  pain from a drive stun, fair?
21    A    Not for the entire cycle.  I would say it
22  would start with the drive stun pain, and end with a
23  neuromuscular incapacitation pain.
24    Q    Okay.  And so how long would that sequence
25  last?

Page 75

1    A    Five seconds for one cycle.
2    Q    Did you administer one cycle?
3    A    In my recollection, yes.
4    Q    All right.  And so after you administered this
5  three-point drive stun, Mr. Heston was then placed in
6  mechanical restraints and escorted to the restraint
7  chair?
8    A    Yes.
9    Q    Sorry.  Do you need me to put that back up?
10    A    Yes.  That sounds correct.
11    Q    Okay.  And mechanical restraints, meaning
12  handcuffs?  Is that what that means?
13    A    Correct.
14    Q    Any other kind of restraint?
15    A    Not to my recollection, no.
16    Q    Okay.  And your report also says that
17  Mr. Heston was passively resisting when being escorted
18  to the restraint chair?
19    A    That's correct.
20    Q    What does that mean?
21    A    He was dead weight.  He was not assisting our
22  efforts trying to get him to the restraint chair.
23    Q    And when you say "dead weight," what do you
24  mean by that?
25    A    That means that he was not helping us trying

Page 76

1  to — or going to the restraint chair.  He wasn't
2  standing on his own power, or walking on his own power,
3  or anything like that.
4
5
6    Q    And was that from the consequences of having
7  just been the subject of a three-point drive stun?
8    A    I couldn't testify if that is or not.
9    Q    Okay.  So you're not sure one way or the other
10  of why Mr. Heston was passively resisting?
11    A    That's correct.
12    Q    All right.  And then your report — from your
13  report — well, let me ask one more question on that.  So
14  do you have independent recollection of him passively
15  resisting?
16    A    Yes, vaguely.
17    Q    Okay.  And while the deputies were trying to
18  secure Mr. Heston in a chair, he began resisting?
19    A    That's correct.
20    Q    And what was he doing to resist?
21    A    I can't recall correct — exact details.
22    Q    Okay.  And at this point, were all of these
23  individuals, Embry, Hussey, Taylor, White, you — is
24  everybody still involved, or had some of these people —
25  were no longer with Mr. Heston?

Page 77

1    A    I'm not for sure all the ones who were still
2  involved.  I'm not for sure if Mike White was still
3  recovering from being struck in the face or not.  Sorry.
4  I can't really recall who was involved.
5    Q    To your knowledge, was he injured during this?
6    A    Who?
7    Q    Mike White.
8    A    To my knowledge, he had pain and swelling in
9  his face.
10    Q    And you don't recall whether he continued to
11  assist after that point?
12    A    I can't recall.
13    Q    All right.  And while Mr. Heston is being
14  secured, he's still handcuffed at this point, right?
15    A    Correct.
16    Q    And did the deputies still have control over
17  him?
18         MR. ENGLISH:  Objection.  What do you mean by
19  control?
20    Q    I mean, I'm just asking your opinion on —
21  you've been in — you've worked in the jail for a long
22  time.  Did they have control?
23    A    I would say they probably had control while he
24  was passive resisting.
25    Q    Okay.  And you don't have any independent

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON RIGSBY, taken on September 29, 2022

78..81

Page 78

1  recollection of how many deputies were securing
2  Mr. Heston at this point?
3      A   No, I do not.
4      Q   Okay.  All right.  And so then you tased
5  Mr. Heston a second time?
6      A   Yes.  After removing the mechanical
7  restraints, trying to go down to a softer level of
8  restraint, he began resisting our efforts, and I believe
9  I gave another cycle.
10     Q   Okay.  And you say going down to a softer
11  level of restraints, you're talking about taking him
12  from the handcuffs into the restraint chair?
13     A   That's correct.
14     Q   And he — Mr. Heston was sitting in the
15  restraint chair when you tased him —
16     A   Yes.
17     Q   — correct?
18         And had he been secured yet?
19     A   No.  We were in the process of trying to
20  secure him.
21     Q   All right.  And so you delivered an additional
22  three-point cycle to Mr. Heston's upper back, with
23  probes still attached, correct?
24     A   Correct.
25     Q   Can you explain to me what that means?

Page 79

1      A   The probes, from the initial engagement with
2  the taser, were still in the leg, and then I followed up
3  with a three-point to the upper shoulder area.
4      Q   Okay.  And so the probes were still in his leg
5  from the previous taser.  Are these, like, metal probes?
6  Can you explain to me how those attach?
7      A   Yes.  They are metal probes with hooks and
8  wires.
9      Q   And so would that be painful to have a probe
10  still attached to your leg, even if there's not
11  electricity going through it?
12     A   I would assume so.
13     Q   All right.  So you tased him with the probes,
14  and then followed up with a — another three-point
15  cycle?
16     A   Yes.
17     Q   Okay.  And that would be the same process that
18  we talked about earlier, where the probes caused the
19  incapacitation, and then the drive stun causes the pain
20  compliance?
21     A   It would be the same situation as having a
22  spread between both contacts.  The probes and the drive
23  stun causes neuromuscular incapacitation.
24     Q   Okay.  And pain, right?
25     A   I'm sorry.  What?

Page 80

1      Q   And it also causes pain?
2      A   Yes.  Yes.
3      Q   Now, where on Mr. Heston's upper back did you
4  do this three-point cycle?
5      A   I can't recall which side.  I can tell you my
6  practice would normally be to go to one of the shoulder
7  blades at the top.
8      Q   All right.  And that successfully
9  incapacitated Mr. Heston, and you were able to secure
10  him in the chair?
11     A   That sounds correct, yes.
12     Q   And you then removed the probes?
13     A   That's correct.
14     Q   All right.  And then Mr. Heston was left in
15  the restraint chair again after this incident?
16     A   Yes, after being checked by medical.
17     Q   And was anyone monitoring him during this?
18     A   Deputies would've been conducting their
19  15-to 20-minute checks.
20     Q   And how long did you leave Mr. Heston in the
21  restraint chair?
22     A   I can't recall.
23     Q   Okay.  There's another report I'll show you.
24  This is what I've marked Exhibit 4, and it is Warren —
25  It's Bates stamped Warren County 21.  Are you able to

Page 81

1  see that on my screen?
2         (EXHIBIT 4 MARKED FOR IDENTIFICATION)
3      A   Yes.
4      Q   Okay.  And this is a report that appears to be
5  from Deputy Bryant.  Let me scroll down for you.  To
6  your knowledge, have you seen this report before?
7      A   I can't say that I have.
8      Q   All right.  Well, according to this report,
9  Deputy Bryant and four other deputies, Meredith, Harper,
10  Thomas, and Blair went to remove Mr. Heston from the
11  restraint chair on March 19, 2019, at 18:43; is that
12  correct?
13     A   Yes.  That's what it says.
14     Q   Okay.  And did you supervise these deputies?
15     A   These deputies?  No.
16     Q   Who supervised them?
17     A   At this time, it looks like it's Jeff Bryant.
18     Q   Okay.  So would this be a different shift,
19  then, that we're talking about?
20     A   Yes.  This is a second shift.
21     Q   All right.  And to your knowledge, had
22  Mr. Heston been in the restraint chair since the 10:30
23  a.m.
24         incident earlier?
25     A   I can't recall.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON RIGSBY, taken on September 29, 2022

82..85

Page 82

1    Q    Okay.  So you don't have any knowledge whether
2  he had been removed from the restraint chair or not
3  before these deputies removed him from the restraint
4  chair?
5    A    That's correct.  I can't remember.
6    Q    Now, it looks like Deputy Bryant's report also
7  references Life Skills?  Are you familiar with that?
8    A    I'm familiar with Life Skills.
9    Q    It says that Life Skills directed that
10  Mr. Heston be dressed in a suicide smock right here?
11   A    Okay.
12   Q    Now, can you explain what Life Skills is?
13   A    They are counselors -- therapists, I believe,
14  that assess inmates for if they are suicidal or not.
15   Q    All right.  Is their sole role -- their sole
16  job is to determine whether an inmate is suicidal?
17   A    To my knowledge.
18   Q    Do they anything else mental-health related?
19   A    I mean, I don't really know if they do or not.
20   Q    Okay.  I'm just asking to your -- as an
21  employee of the jail, to your knowledge.  Did you talk
22  to anyone from Life Skills about Mr. Heston?
23   A    Nott that I can recall.
24   Q    And did anyone at Life Skills or otherwise
25  ever tell you that Mr. Heston was suffering from mental

Page 83

1  illness?
2    A    Not that I can recall.
3    Q    And did you observe any signs of mental
4  illness in Mr. Heston?
5    A    Not to my knowledge.  I'm not certified to
6  diagnose that.
7    Q    But just as a lay-person, did you observe any
8  signs that might have signaled to you that there was a
9  problem?
10   A    No, not to my knowledge.
11   Q    Did you learn any information about
12  Mr. Heston's mental health after your interactions with
13  him?
14   A    Yes, I believe I did.
15   Q    What did you learn?
16   A    That he has some type of mental illness.
17   Q    And when did you learn that?
18   A    I can't recall.
19   Q    How did you learn that?
20   A    I can't recall.
21   Q    Would that be, like, through this lawsuit you
22  learned that, or you learned that in the course of your
23  employment at the jail?
24   A    I would say I would have learned it through my
25  employment through the jail, but I can't recall when or

Page 84

1  who told me.
2    Q    Did the jail have any process in place that
3  would've allowed you to learn when inmates had mental
4  health conditions?
5    A    Other than the shift pass along, no.
6    Q    And did the shift pass along have any formal
7  structure to it?
8    A    There was a documented paper, and typically a
9  15 -- 10- to 15-minute meeting between the supervisors
10  at shift change.
11   Q    And were there specific topics that were
12  always covered during these meetings, or was it a more
13  informal, hey, this is what's going on?
14   A    Typically, the jail population at the time,
15  and who's housed in the -- in the medical and
16  observation areas, and the booking area, and detox area.
17   Q    And there was no specific discussion about
18  any, kind of, inmates who were suffering from mental
19  health issues?
20   A    There was not a dedicated area for mental
21  health issues as a subject line, but it doesn't discard
22  that it could not be brought up.
23   Q    Understood.  All right.  And you may have
24  answered this earlier, and I apologize if you have, but
25  did you have any training on recognizing signs of mental

Page 85

1  illness in an inmate?
2    A    Like, for trying to recognize mental illness?
3    Q    Yeah.
4    A    There was a mental illness training.  Yes.
5    Q    And remind me when you had that training?
6    A    I can't recall.
7    Q    Okay.  All right.  And then in June 2019, you
8  learned that Mr. Heston had allegedly been making
9  threats toward other inmates; is that correct?
10   A    In June?
11   Q    Yes, or at any -- at any point, did you learn
12  that Mr. Heston had allegedly been making threats to
13  other inmates?
14   A    I can't recall.
15   Q    Okay.  I can show you -- let me show you what
16  I've marked as Exhibit 5.  It's Bates stamped Warren
17  County 27, 28.  Are you able to see that on my screen?
18        (EXHIBIT 5 MARKED FOR IDENTIFICATION)
19   A    I am.
20   Q    All right.  And is this a report that you
21  created?
22   A    Yes.
23   Q    And it's dated, June 20, 2019?
24   A    That's correct.
25   Q    And so based on this report, you learned that



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

The Deposition of JASON  RIGSBY, taken on September 29, 2022

86..89

Page 86

1  Mr. Heston had allegedly been making threats toward
2  inmates?
3      A    Yes.  It appears so.
4      Q    But you don't have any independent
5  recollection of any kind of alleged threats?
6      A    I don't have any, no.
7      Q    Okay.  Did you have any personal knowledge
8  about these alleged threats?
9      A    Personal knowledge?  No, other than it looks
10 like we received a letter.
11     Q    Okay.  So this was never anything that you,
12 personally, witnessed?
13     A    No.
14     Q    And do you know the nature of these alleged
15 threats?
16     A    I do not.
17     Q    And did you personally discuss these threats
18 with Mr. Heston or any inmates?
19     A    Not to my recollection.
20     Q    Okay.  And it appears from your reports that
21 all inmates in the cell were offered protective custody?
22     A    Yes.
23     Q    And would this be this list right here?  Would
24 those be all of the inmates that were also in the cell?
25     A    Yes.

Page 87

1      Q    Okay.  And just for -- we're looking at this
2  list of subjects with numbers and names.  Those would be
3  the other inmates?
4      A    Correct.
5      Q    And all inmates declined protective custody?
6      A    That's what the report says.  I can't recall.
7      Q    Okay.  And what is -- can you explain what
8  protective custody means?
9      A    It means -- it's an opportunity to get out of
10 the cell that you're currently housed in.  In this
11 situation, if it was already a protective custody cell,
12 you know, it would be isolation and booking until we
13 could find another appropriate housing area.
14     Q    Okay.  And what does it mean -- I believe it
15 says that Mr. Heston was placed in observation?
16     A    Yes.
17     Q    And what does that mean?
18     A    He was placed in booking to be observed for
19 his behavior.
20     Q    Okay.  And when he is placed in booking, that
21 means he's alone in a cell during that period?
22     A    Not necessarily.  He could be placed in an
23 observation area with other inmates.
24     Q    Okay.  And that would be somewhere that the
25 deputies would keep a closer eye on him?

Page 88

1      A    Correct.  They would have been conducting
2  15- to 20-minute checks.
3      Q    Besides the two times that -- well, let me
4  strike that.  The times -- besides the two interactions
5  that we talked about with Mr. Heston, did you have any
6  other interactions with him?
7      A    Not that I can recall.
8      Q    Were you present any other times that
9  Mr. Heston was tased?
10     A    I can't recall.
11     Q    All right.  Well, that might be all the
12 questions that I have.  If you could just give me five
13 minutes to just make sure I haven't missed anything, but
14 we might be done here.
15     A    Okay.
16          MR. ENGLISH:  Thank you.
17          COURT REPORTER:  All right.  The time is 11:32
18     and we are off the record.
19          (OFF THE RECORD)
20          COURT REPORTER:  We are back on the record for
21     the deposition of Jason Rigsby, being conducted by
22     videoconference.  My name is Maggie Patterson.
23     Today is September 29, 2022.  The time is 11:43.
24 BY MS. CAMPBELL:
25     Q    All right.  Mr. Rigsby, just a couple of

Page 89

1  questions for you that I think I missed earlier.  Did
2  you ever talk to a Sargent Chambers from KSP about a
3  use-of-force investigation he was conducting?
4      A    Not that I can recall.
5      Q    Were you ever made aware that Sargent Chambers
6  was conducting an investigation involving Michael
7  Heston?
8      A    I know I remember getting information about
9  KSP conducting an investigation into the incident in the
10 sally port, but I do not remember if it was Sargent
11 Chambers or -- or who was conducting the investigation.
12     Q    Where do you remember learning that
13 information?
14     A    I believe the jailer advised me that KSP was
15 investigating the situation, but I can't remember --
16     Q    The jailer advised you?
17     A    The jailer.
18     Q    When did the jailer tell you that?
19     A    I can't remember when he told me that.
20     Q    Did you learn anything about this during your
21 pass along meeting at any point?
22     A    Not to my recollection.
23     Q    Okay.  That's all the questions I have, and so
24 if anyone else does, please go ahead.
25          MR. SLOSAR:  I don't have any questions.

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 25 of 432 PageID #: 2041
The Deposition of JASON RIGSBY, taken on September 29, 2022
90..91

Page 90

1      MR. ENGLISH:  No more questions.  I guess that
2  means we're done.
3      COURT REPORTER:  All right.  The time is 11:34.
4  This concludes the deposition.  We're off record.
5      (EXHIBIT 1 MARKED FOR IDENTIFICATION)
6      (DEPOSITION CONCLUDED AT 11:34 A.M.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 91

1           CERTIFICATE OF REPORTER
2         COMMONWEALTH OF KENTUCKY AT LARGE
3
4  I do hereby certify that the witness in the foregoing
5  transcript was taken on the date, and at the time and
6  place set out on the Title page hereof by me after first
7  being duly sworn to testify the truth, the whole truth,
8  and nothing but the truth; and that the said matter was
9  recorded digitally by me and then reduced to typewritten
10 form under my direction, and constitutes a true record
11 of the transcript as taken, all to the best of my skill
12 and ability.  I certify that I am not a relative or
13 employee of either counsel, and that I am in no way
14 interested financially, directly or indirectly, in this
15 action.
16
17
18
19
20
21
22  MAGGIE PATTERSON,
23  COURT REPORTER/NOTARY
24  MY COMMISSION EXPIRES ON: 06/16/2026
25  SUBMITTED ON: 06/24/2022

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

_____

**Exhibits**
_____

**Exhibit1_
Rigsby** 90:5

**Exhibit2_
Rigsby** 55:7,9

**Exhibit3_
Rigsby** 67:20,
25

**Exhibit4_
Rigsby** 80:24
81:2

**Exhibit5_
Rigsby** 85:16,
18

_____

**1**
_____

**1** 90:5

**10-** 84:9

**10:30** 81:22

**10:32** 68:8

**10:36** 54:15

**10:48** 54:22

**11** 17:21

**11:00** 17:18

**11:32** 88:17

**11:34** 90:3,6

**11:43** 88:23

**13** 17:21 68:24

**14:31** 55:21

**15** 16:19,21
19:3 58:17,19
59:10 60:14
68:24 84:9

**15-** 88:2

**15-minute**
84:9

**15-to** 80:19

**16** 22:2 48:17

**17** 51:9

**18** 55:8,21,25

**18:43** 81:11

**19** 16:19,22
67:21 68:8
81:11

**19th** 68:10

**1:20-CV-0048-
GNS** 6:13

_____

**2**
_____

**2** 55:7,9

**20** 19:4 58:17,
19 59:11 60:14
67:21 85:23

**20-minute**
80:19 88:2

**2000s** 36:1

**2002** 10:18

**2006** 18:25
20:7 21:2,23
22:4,17 24:3
25:7,9 33:2
35:12 46:20
47:18,21,23,25

**2009** 37:1

**2010** 36:1 37:1
42:20

**2015** 11:14

**2019** 11:18
25:21 49:5 51:9
54:25 55:21,25
68:8 81:11
85:7,23

**2021** 13:21

**2022** 6:7 54:21
88:23

**21** 80:25

**22nd** 6:5

**24** 23:1

**27** 85:17

**28** 85:17

**29** 54:21 88:23

**29th** 6:6

**2:00** 55:24,25

**2:31** 55:23

_____

**3**
_____

**3** 67:20,25

**30** 6:5 31:14
32:3,10,16

**3:00** 16:16

_____

**4**
_____

**4** 80:24 81:2

_____

**5**
_____

**5** 85:16,18

_____

**6**
_____

**60606** 6:6

_____

**7**
_____

**7:00** 16:16
17:18

_____

**9**
_____

**9:34** 6:7

**9:53** 68:10

_____

**A**
_____

**a.m.** 6:7 16:16
17:18 68:8,10
81:23 90:6

**Aaron** 6:10 7:2

**abdomen**
71:16

**ability** 10:3,10

**Abrams** 19:23
20:2

**access** 30:9

**59:4 61:3**

**account** 13:1,
14 15:8

**accounting**
13:3

**achieve** 74:9

**achieves**
73:13

**act** 28:13

**action** 28:16
42:3 49:1

**actions** 14:12
27:14

**activated** 62:9
64:22

**actively** 39:3
43:12

**actual** 42:25

**add** 21:25

**additional**
31:12 33:17
78:21

**addressed**
14:14 19:6

**admin** 20:25

**administer**
75:2

**administered**
75:4

**administration**
11:22 12:10,12
16:9 26:4

**administrative**
13:2,19 27:24

**advised** 89:14,
16

**affect** 10:3,7,
10

**affirm** 7:14

**afford** 35:14

**agree** 7:9

**ahead** 9:23
31:8 89:24

**aim** 62:15

**alarms** 21:3

**alleged** 86:5,8,
14

**allegedly** 85:8,
12 86:1

**allowed** 14:21
84:3

**allowing** 61:7

**altercation**
52:5,18 53:16
67:24 68:11

**amount** 58:8,
10 60:16

**ankle** 57:3

**announce**
68:21

**anticipate** 9:11

**apologize**
84:24

**apparently**
57:18

**appearance**
6:14

**appearing**
6:17,18,20,23
7:3

**appears** 81:4
86:3,20

**applicable**
32:4

**apply** 19:14

**area** 21:15,17
53:13 59:2,25
68:22 71:17,22
79:3 84:16,20
87:13,23

**areas** 21:1
71:13,14,18,21
84:16

**arm** 61:6

**arms** 61:9

**arresting**
20:17



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

arrive 51:23

arrived 51:9
52:2,3,12

arts 11:7,11

assess 60:24
82:14

assessment
49:12,15

assigned 17:9

assignment
17:5

assist 18:6,8
77:11

assistance
17:10

assistant
17:24 18:1,3,14
69:1

assisting
75:21

associate's
11:2,6,7,13

associates
12:2

assume 9:8
46:25 53:8
79:12

attach 79:6

attached 78:23
79:10

attempt 28:14
64:2

attempted
30:11

attend 24:6

attending
6:14,15

attention
15:22

attorney 9:20

audio 21:1,3

Auktavian
68:12

automatically
41:15

average 27:25

avoid 38:24
44:9,14 71:19,
22,23

avoiding 71:17

aware 42:1
48:19 57:22
89:5

---

**B**

bachelor's
11:4,16,17,21
12:2

back 10:23
14:24 20:15
21:2,3,10
22:17,25 23:1,
23 25:21 26:6
33:2 47:18
52:15 54:18,24
61:25 71:15
75:9 78:22 80:3
88:20

ballpark 36:9

bang 29:2

banging 63:17
64:8 65:16

based 30:7
31:5 32:17
39:24 70:24
85:25

basically
11:10 18:5
20:21 74:18

basing 53:10
54:5

Bates 55:7
67:20 80:25
85:16

began 57:6
62:3 76:18 78:8

beginning
35:12

behalf 13:12

behavior
23:19 28:3
30:12 32:18
40:14 50:12
59:14,16 63:21
65:3 87:19

behaviors
23:14,21

believed 50:21
51:2

benefits 12:14

bi-monthly
36:13

big 57:15

bit 21:14 32:15
52:16 55:14

blades 80:7

Blair 64:15
81:10

blocks 20:24

blood 61:13

bloodborne
23:3

board 20:23
21:12

boards 19:7

body 61:13

booking 17:7
49:13,16 53:13
59:25 70:5,12
84:16 87:12,18,
20

books 12:25

Bowling 6:12,
23

break 9:12,13,
18 54:13

breathing
59:13 60:2,4,10

broader 25:25

brought 15:22
51:20 52:17
84:22

Bryant 81:5,9,

17

Bryant's 82:6

building 21:14,
17

bunch 23:8

business
11:22 18:20

Buzz 6:22

---

**C**

Caldwell 7:1

call 20:13
38:24 68:17,19,
23 69:6 72:5

called 73:2,3

calls 15:8

calmed 31:14
32:1,2,5,10

camera 21:17
22:5 59:21
66:19

cameras 21:2
22:4

Campbell 6:17
7:10,20,22
31:22 32:19
44:6 54:12,23
88:24

canteen 13:1

captain 16:10,
12,18,25 17:3,
13,15 53:8,9,
22,23 62:24
63:4

card 13:1,15,16

care 21:5

career 35:9,10
36:23 47:18

carried 35:8

carry 35:5

cartridges
37:11

case 6:12 7:22
31:8

catch 19:25
44:18

categorize
22:10

caused 79:18

Causey 53:8,
17,23 54:7
62:24 63:4

cell 17:9 20:20,
24 56:1,3,6
57:7,13,20
59:15,20,23
62:4 63:11 64:5
70:4,9 86:21,24
87:10,11,21

Central 10:16
11:3

CERT 35:15

certification
38:11,13 42:7
72:1

certified 36:25
37:2 50:17 83:5

chair 27:19
28:2 29:5,24
30:6,21 31:2,8,
13 32:2,12,15,
17 33:13,18
34:3,9,14,19,25
43:5,8,18 44:8,
12,24,25 45:12
57:19,21,23
58:4,10,11,15,
16,18,23 59:16,
24 60:18,24
61:1 63:7,9,10,
15,16,21 64:2,
15,19 65:1,4
66:2,10,14
67:15 75:7,18,
22 76:1,18
78:12,15 80:10,
15,21 81:11,22
82:2,4

chairs 45:16,
20 61:20

Chambers

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

89:2,5,11

chance 64:12

change 84:10

changed 22:2, 6,7

characteristics 23:14

charge 26:9

charley 46:4

check 6:8 50:11 58:14 59:11 67:7

checked 17:8 58:17,19,24 59:7,10 80:16

checking 19:5 59:19 60:2

checks 19:3 66:16,19 67:2,6 80:19 88:2

chest 60:6 71:22

Chicago 6:6

chief 12:10,11 14:4,5 16:8 26:4 69:2

circumstance 43:16 44:15

circumstances 8:12 9:22 13:9 28:1 34:13 38:20 39:18 40:7 51:1

civil 8:14

class 21:8 42:7 47:15

classroom 22:16,18,21 23:2 24:6

cleaning 21:7

clear 52:16

close 17:15 40:20,23 71:22 72:7,8,10 74:14

closer 36:16 87:25

clothes 56:19

clots 61:14

clutched 41:1

coffee 57:17

collection 13:2

college 10:19 11:3,12 24:17

commit 28:12

committed 28:13

common 35:13 36:6,7 43:20,21

commonplace 35:24 42:19

Community 11:3

completed 46:14

Completely 43:9

compliance 39:17 40:4 41:5,9 62:16 67:8 74:7 79:20

complied 62:6 64:18

comply 42:16 44:21 64:12

component 25:1

CONCLUDED 90:6

concludes 90:4

conditions 10:3 84:4

conduct 18:20 19:2,4 20:15,19 26:10 27:1,6 61:2 66:16 67:2

conducted 54:20 60:22

66:19 67:6 88:21

conducting 80:18 88:1 89:3,6,9,11

conducts 24:11

confine 34:13 63:20

confined 34:18,25 66:2

confusing 9:2

connected 72:14,17

connection 72:3

consequence 73:11,13

consequences 76:6

considerations 37:11 38:24

consist 25:15 33:25 37:8 59:11

consisted 34:2

consistent 21:22,24 42:19, 21

contacts 72:12 79:22

continue 29:2

continued 33:4 77:10

contraband 21:5

control 19:6 20:23 21:12,16 42:4 46:11 60:1 77:16,19,22,23

controls 21:16

convened 6:8

copy 46:21,25

Corps 19:16,

19,22

correct 12:2,3, 7,8 13:22 14:1, 9 15:16,17 16:1,4,7,14,24 18:13,15 22:14 25:14 26:12 27:2 28:17 29:10,19,25 30:24 33:6,24 34:23 37:4 38:1,2,3 40:18, 19 41:10,11,12, 24 42:3,8 46:1 49:2,3,6,7 51:16,20,22 52:1,25 54:2 55:1,2,21,22 56:1,4,5,17,23 57:8 58:2,7,12, 20 59:9 60:11, 15 61:18 62:6, 9,10,19,20 63:2,8 64:10, 13,17,24 65:8, 12 66:1,3,4 67:3,10 68:9, 13,14 69:9,10, 12,14,16,19 71:4,6 72:2,4, 19 73:10,25 74:5 75:10,13, 19 76:11,19,21 77:15 78:13,17, 23,24 80:11,13 81:12 82:5 85:9,24 87:4 88:1

correctly 17:9 41:3 64:23

counsel 6:13, 16

counselors 82:13

County 6:24 12:7 33:1 46:20 49:5 55:7 63:20 67:21 80:25 85:17

couple 19:13 25:3 88:25

court 6:2,4,11

7:5,8,12,18 8:24 54:15,18 88:17,20 90:3

covered 64:16 84:12

covering 64:21

cramp 46:5,16, 17

create 29:3 72:12 74:4

created 55:11, 20 85:21

Crimcast 24:8, 12

cup 57:13,15, 17 62:3 63:15

current 12:9 13:6,10 14:2

custodian 12:14

custody 86:21 87:5,8,11

customization 30:1

cycle 41:22 42:3,4 46:14 74:21 75:1,2 78:9,22 79:15 80:4

cycles 41:15

_____

D

daily 13:2 17:5 18:19

dangerous 63:25

Daniel 7:7

date 22:22

dated 68:7 85:23

day 6:7 16:20, 21 17:6,20 23:25 33:5 35:21 51:15

Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

52:12 57:23 67:9,13

**day-to-day** 14:8,11

**de-escalation** 28:20,21 64:2

**dead** 75:21,23

**deal** 15:13,15 51:4

**dealing** 23:4 51:3

**decide** 30:5 32:14

**decided** 29:15

**decision** 27:7 30:10,15,18,19, 25 31:2 32:23

**declined** 87:5

**dedicated** 84:20

**deemed** 28:14

**Defendant** 7:2

**degree** 10:13, 21,24 11:1,2,4, 6,8,13,16,17,21 12:2

**delegate** 18:4

**delegation** 30:3

**delivered** 78:21

**depended** 16:19

**depends** 15:9 40:8 65:2

**deploy** 37:10 39:8 40:2 62:13 64:22 73:21

**deployed** 28:5 42:17 43:14,15 70:2 71:2

**deploying** 39:14

**deployment**

36:21 42:25

**deposed** 8:8, 10

**deposition** 6:9 8:13 54:19 88:21 90:4,6

**deputies** 16:17,22 17:4, 19 18:12 22:13 23:14,24 24:6, 9,25 25:6 26:5 35:24 64:14 67:5 68:22,24 69:2 76:17 77:16 78:1 80:18 81:9,14, 15 82:3 87:25

**deputy** 12:10, 11 14:4,5 16:9 17:6 18:15,21, 24 19:1,10,11 20:13 22:23 27:22 29:8,18 30:20 31:4,6 34:4 66:20 68:20 69:8,11, 13,15 70:1 81:5,9 82:6

**deputy's** 66:25

**describe** 18:10

**details** 21:25 23:22 25:20 53:2 76:21

**determination** 15:20

**determine** 15:18 16:2 82:16

**determined** 60:25

**deterrent** 42:14

**detox** 84:16

**device** 33:17 35:14

**devices** 35:16

**diagnose** 83:6

**diagnosed** 50:17

**difference** 73:4

**DIRECT** 7:19

**directed** 82:9

**directly** 13:23

**discard** 84:21

**disciplinary** 14:12 27:14

**discipline** 16:3 26:9,14,20 27:11

**disciplined** 26:25 27:6

**discretion** 31:5 33:11 40:3,6 45:21

**discuss** 86:17

**discussed** 45:15

**discussion** 84:17

**displayed** 49:9 50:3

**distance** 40:13,17

**distinguishing** 40:24 41:7

**District** 6:11, 12

**document** 55:8

**documentatio n** 50:11

**documented** 84:8

**documenting** 58:23 59:13

**documents** 7:24 21:18,19

**door** 29:2 56:1, 21 57:7 59:24 62:4 63:17

64:5,9 65:16

**doors** 20:24 21:13,16

**dorm** 21:11

**dot** 62:15

**downs** 20:15

**dressed** 82:10

**drive** 6:5 37:25 38:5 39:13,16, 19 40:2,20,22 41:1,5,9,14,22 46:3,6 72:6,11, 14 73:1,2,4,5,6, 8,12 74:3,7,8, 13,15,20,22 75:5 76:7 79:19,22

**dropped** 12:25

**drug** 23:21

**due** 62:18

**dumping** 63:15

**duration** 34:17 41:14,23

**duties** 17:4 18:1 19:1,21

———

**E**

**e-mail** 48:21 49:1

**earlier** 26:6 42:23 79:18 81:24 84:24 89:1

**early** 13:21

**easier** 7:25

**education** 10:12,19 11:11, 23 26:1

**effects** 37:16 42:5 46:2

**efforts** 43:13 75:22 78:8

**elaborate** 43:6

61:4

**elderly** 38:25

**electricity** 79:11

**elevated** 39:1, 7

**Elliot** 6:20

**Embry** 69:8 76:23

**emergencies** 17:11

**emergency** 68:21

**employed** 12:6 27:18

**employee** 12:14 14:8 35:6 38:17 82:21

**employees** 6:25

**employment** 83:23,25

**encounter** 67:22 70:15

**end** 24:19 38:18 74:22

**end-user** 36:25

**ended** 20:17

**engagement** 79:1

**English** 6:22 7:11 8:3 31:17 32:6 36:19 43:23,25 44:2 52:13 77:18 88:16 90:1

**enlighten** 23:14

**enlightened** 29:20

**entail** 8:18 33:15

**entailed** 17:17



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

entire 74:21

environment 63:24

equipment 23:3

erratic 23:19

escalation 28:19

escort 20:18

escorted 63:8 70:5 75:6,17

escorting 69:25 70:8,12

estimate 36:15

et al 6:10

event 28:4 46:15

eventually 20:17 35:17

exact 76:21

EXAMINATION 7:19

examples 40:9

exception 33:10

exceptions 33:8

excessive 14:19 15:16,19

Excuse 52:13

exercise 30:9 40:5

exercises 60:22 61:5,17

exhibit 55:7,9 67:20,25 80:24 81:2 85:16,18 90:5

existed 58:22

expensive 35:13

experience 28:25 32:10,14,

16 39:24

experiencing 74:18

explain 13:14 24:11 78:25 79:6 82:12 87:7

exposed 37:16,20

exposures 37:12,14

extended 32:18,20 61:20

extra 53:4

eye 87:25

_____

**F**

_____

face 70:1 77:3, 9

facility 21:18, 20

fact 7:9 18:15 26:19 47:7 58:9

factor 40:24 41:7

facts 31:19 32:7,8

fail 72:21

fails 72:23

fair 8:25 9:9,14, 25 18:10 33:2, 3,9 34:10,11 40:22 65:7,15, 17 74:20

Fairway 6:19

fall 39:9

falling 60:7

familiar 61:19 82:7,8

fast 33:8

fed 21:17

federal 21:11

feeds 22:5

feel 27:13 38:7, 8 45:4,25 46:12,13 57:2 65:5

fees 13:2

felt 45:3

Feltner 7:1

fight 68:20

figured 25:25

filled 53:19

filling 62:3

finally 9:20

find 44:16 87:13

fingerprints 20:16,18

fire 37:11

fit 56:19

five-second 42:4

flip 9:7

floor 6:6 18:7 20:14 27:22,23 29:7 35:18 68:25

flow 61:13

folks 69:4

follow 72:5,13 73:1 74:2,6

follow-up 26:8

font 55:18

foot 73:14,15, 24 74:1

force 8:16,17, 20 14:19 15:16, 19 28:4,5,19, 20,21,24,25 29:4,6 31:6,9, 10,12 32:13

form 46:23

formal 11:23 34:16 84:6

forms 67:7

four-hour 29:20 31:24 32:3,17 33:1 60:23

four-week 20:10,11 26:1

four-year 11:12

fourth 21:15

fracture 57:2

fractures 63:22,23

frame 37:1 42:13

frequently 27:21 36:15 42:9,10 43:19 56:14

friends 19:17

front 12:17,21, 23 71:16

full 7:6

fully 44:24 45:12

function 62:14

functions 14:11 22:1

_____

**G**

_____

gain 40:4 42:4 62:15

gather 15:24

gave 78:9

general 11:10

genital 71:17

genitals 71:23

give 7:15 36:1 40:11 44:5 64:11 88:12

gloves 23:4

good 7:21

42:14 45:25 72:3

governing 49:9

graduate 10:15,17

greater 73:14

Green 6:12,23

grievance 15:10

grievances 14:7,16,20,25 15:4,14,15 26:9

grieve 14:21, 22

ground 70:15, 19 71:5

guess 10:23 35:22 36:25 43:25 44:3,5 57:12 61:14 70:8 90:1

guessing 48:2

guidance 45:18

_____

**H**

_____

hallucinations 23:20

hallway 60:1

hand 7:13 63:22

handcuffed 77:14

handcuffs 75:12 78:12

handle 12:13 13:1

handles 12:23

hands 62:5

hands-on 33:16,18,21,25 34:8



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**happen** 17:12 29:6 30:14 56:13

**happened** 21:19 31:7 48:6 53:25 54:1 70:22

**happy** 9:5,13

**hard** 33:7 46:25 55:14,16 57:2

**harm** 28:16 56:22 63:18

**Harmon** 13:25 16:6

**Harper** 81:9

**hazards** 61:19

**head** 71:22

**headcount** 18:5,6

**headcounts** 17:8 18:4 19:3 20:20

**health** 10:2 23:5,11,13,22 24:2 25:17 49:13,16 50:6, 8,25 83:12 84:4,19,21

**hear** 9:20,21 52:11,18

**heard** 52:20,22

**heart** 71:23

**helping** 75:25

**Heston** 6:10,18 51:7 52:5,17,23 53:5 55:1 56:1, 19 57:18 62:3 63:6 64:1,15,18 65:10,20 66:9 67:10,13,22,23 68:11 70:1,5,17 71:5 75:5,17 76:10,18,25 77:13 78:2,5,14 80:9,14,20 81:10,22 82:10,

**22,25** 83:4 85:8,12 86:1,18 87:15 88:5,9 89:7

**Heston's** 54:9 62:18 65:3 71:3 78:22 80:3 83:12

**hey** 84:13

**high** 10:12,15, 16

**hired** 20:6,8 46:19

**hit** 46:10

**holding** 65:21 66:17,18,22

**hooks** 79:7

**horse** 46:4

**hour** 19:4 32:22,24

**hours** 16:15 17:17 22:25 23:2 24:22 29:13,14,24 30:7 31:15 34:22 60:18 66:6

**house** 21:11

**housed** 53:12 84:15 87:10

**housing** 21:1 87:13

**HR** 12:13

**HR-RELATED** 12:15

**Hussey** 64:14 69:11 76:23

**Hyden** 7:3

**hygiene** 14:10 21:7

**hypothetical** 31:17 32:6

**hypothetically** 32:1

**I**

**IDENTIFICATION** 55:9 67:25 81:2 85:18 90:5

**Illinois** 6:6

**illness** 23:16, 18 49:10,21,25 50:4,14,21 51:3 54:10 83:1,4,16 85:1,2,4

**immediately** 41:18

**impact** 73:14

**in-and-out** 21:18

**incapacitate** 41:8 72:22

**incapacitated** 80:9

**incapacitation** 41:4 72:15,24 73:19,24 74:3, 10,17,19,23 79:19,23

**incidences** 17:11 19:5 53:12 65:4

**incident** 50:12 52:8,11,23 53:3 56:9,16 62:1, 23,25 63:4 65:11 66:10 67:14 68:2,15 69:21,24 80:15 81:24 89:9

**incidents** 21:19 62:18,21

**include** 39:12 69:8

**incorporated** 25:10

**independent** 39:23 56:8,15 66:8,12,15 69:20 70:7,24 76:14 77:25

86:4

**individuals** 71:12 76:23

**informal** 84:13

**information** 15:7,25 25:16, 18,19 39:12 53:20 57:25 58:3,14 83:11 89:8,13

**initial** 22:19,22 79:1

**injured** 77:5

**inmate** 13:10, 12 14:7,12,21 19:7,9 21:4,9, 16 27:19 28:2, 10,16 29:1,12 30:2,6,9,12 31:2,13,14,16 32:1,10 34:5, 10,14,18,25 42:15 43:4,7 44:7 50:3,20 51:2,5 57:13 58:22 59:6 60:9 62:18 63:20,23 65:1,3 67:24 68:12 69:25 82:16 85:1

**inmate's** 13:14 49:16 59:13

**inmates** 13:6 14:17,18 15:7 19:2,3 20:14, 18,25 21:6,9,12 23:4 29:24 30:11,21 32:16 45:11,15,19 49:9,13,21,25 50:13 58:16,18 59:10 60:17 70:4 82:14 84:3,18 85:9,13 86:2,18,21,24 87:3,5,23

**inside** 21:14, 16,19 56:6 59:14

**instance** 52:13

**instances** 26:19,24 27:3, 4,15

**instructed** 38:18

**instructing** 50:3

**instruction** 47:13

**instructor** 38:16,17

**intake** 49:18 50:9,10

**intakes** 18:7

**interact** 13:6,9 49:9 50:13 60:9

**interacted** 55:1

**interacting** 50:20

**interaction** 52:18 65:17 67:10

**interactions** 67:13 83:12 88:4,6

**intercom** 19:7

**interpreting** 64:23

**interview** 15:6

**investigate** 14:25 15:1

**investigating** 15:3 89:15

**investigation** 26:10 89:3,6,9, 11

**involve** 15:15 68:23

**involved** 30:18,25 31:1 73:7,9 76:24 77:2,4

**involving** 52:8 53:16 59:15



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

89:6

**isolate** 29:1

**isolation** 87:12

**issue** 13:13
14:22 49:19
50:6

**issues** 12:13,
15 14:13 17:10
18:3 21:6 50:8,
25 54:10 84:19,
21

**item** 14:10

**items** 14:9 19:9
21:7

---

**J**

**jail** 6:24 8:16
12:1,7,24 13:2,
3 15:19 16:22
17:12,23 18:8,
20,23 19:15
20:6,8,19 25:23
27:18 29:16,18
31:6 33:2 34:22
35:5,13,14,20
38:10,12,14,17
41:25 42:11,20
45:6,15 46:20
48:14 49:5
50:15 51:8
52:12,24 56:14
63:20,24 64:25
77:21 82:21
83:23,25 84:2,
14

**jail's** 47:11,14,
20

**jailer** 13:23,25
15:21,25 16:2,5
22:24 26:4,15,
25 27:5,8 47:3
89:14,16,17,18

**Jason** 6:9 7:7
54:19 88:21

**Jeff** 81:17

**job** 13:10 14:3
15:11 17:14,23
19:14 82:16

**judge** 9:21

**June** 85:7,10,
23

**jurors** 19:4

**justified** 27:13
65:5

---

**K**

**Kansas** 6:19

**Kentuckiana**
6:4

**Kentucky**
6:12,23 7:4
11:3,4,19

**kind** 15:9 20:3
22:21 24:20
25:18 28:13
31:23 47:20
49:19 53:3
55:16 60:1
63:21 64:2
75:14 84:18
86:5

**kinds** 23:17

**knew** 31:7 52:7

**knowledge**
39:23 45:1,17
49:11 63:11
77:5,8 81:6,21
82:1,17,21
83:5,10 86:7,9

**knowledgeabl
e** 61:22

**KSP** 51:17
52:19,21 89:2,
9,14

---

**L**

**larger** 57:17

**laser** 62:11,13,
14

**Lasley** 69:17

**Law** 7:2

**lawsuit** 83:21

**lay-person**
83:7

**lead** 32:13

**leading** 65:3

**leads** 24:13

**learn** 20:18,20
23:17 39:22
52:3,4 57:25
58:8 68:15
83:11,15,17,19
84:3 85:11
89:20

**learned** 29:17
34:21 53:16
63:1 83:22,24
85:8,25

**learning** 20:14,
23 89:12

**leave** 29:11
30:6 31:15
32:14 34:18
66:5 80:20

**leaving** 53:22
74:14

**left** 15:20 27:7
29:24 30:4 66:9
71:3,8 80:14

**leg** 46:5 71:3,8
79:2,4,10

**legs** 61:10,11

**letter** 86:10

**letting** 30:13
32:12

**level** 78:7,11

**levels** 14:9
16:20

**lieutenant**
17:24

**life** 59:12 82:7,
8,9,12,22,24

**limb** 43:11 61:8

**limbs** 30:10

**lingering** 46:2

**list** 86:23 87:2

**listed** 69:4

**live** 59:13

**located** 6:5

**location** 6:14
21:14

**log** 24:16 58:13
59:7,8

**long** 9:12 13:18
15:11 16:25
17:2 19:11,19
24:23 29:11
46:12,17 57:4
58:14,23 66:9
74:24 77:21
80:20

**longer** 32:15
76:25

**lot** 23:20 33:8

---

**M**

**M1a1** 19:23
20:2

**made** 14:7
30:10,15 48:19
89:5

**Maggie** 6:3
54:19 88:22

**main** 59:25

**Major** 6:23
10:2

**make** 8:5,23
14:8 17:5,8
18:5 19:8 21:4
30:17 31:4
32:23 34:6
41:2,6 49:18
52:16 54:3
55:17 60:3,9
66:1 67:4,5,7
88:13

**making** 30:19
47:6,10 59:12,
17 85:8,12 86:1

**management**
18:11

**manipulate**

32:11

**manner** 63:17

**manual** 46:23
47:4,7 48:13
49:5

**March** 49:5
51:9 54:25
55:21,25 68:8,
10 81:11

**Marine** 19:16,
19,22

**mark** 60:23

**marked** 55:7,9
67:20,25 80:24
81:2 85:16,18
90:5

**material** 21:25
24:8,17

**materials**
24:25

**Matt** 7:1

**matter** 6:9 8:14

**meaning** 33:21
64:6 75:11

**means** 16:12
23:15 57:1
62:12 64:21
75:12,25 78:25
87:8,9,21 90:2

**meant** 56:24

**mechanic**
19:23 20:2

**mechanical**
75:6,11 78:6

**medical** 17:11
23:16 50:6
61:14 68:21
80:16 84:15

**medications**
10:6,9

**meeting** 58:1
63:1 84:9 89:21

**meetings**
84:12

**Melissa** 53:16



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

54:7

**member** 34:4

**members** 12:19 53:4,6

**memory** 10:7 56:24 57:9 70:25

**mental** 23:5, 11,13,15,18,22 24:2 25:17 49:10,13,16,19, 21,25 50:4,6,8, 14,21,25 51:2 54:10 82:25 83:3,12,16 84:3,18,20,25 85:2,4

**mental-health** 82:18

**mention** 67:22

**mentioned** 11:15 14:16 15:14 23:11 24:24 25:1 26:8 37:2 45:23

**Meredith** 81:9

**metal** 79:5,7

**Michael** 6:10, 18 52:17 89:6

**middle** 18:11 24:10

**migrated** 35:18

**Mike** 77:2,7

**mimic** 23:21

**mindful** 39:1,2, 6

**minutes** 19:4 31:14 32:3,11, 16 46:18 58:17, 19 59:11 60:14 88:13

**misbehavior** 65:17

**missed** 88:13 89:1

**mixture** 21:8

**mode** 40:6

**modes** 37:24

**Molly** 6:17 7:22

**moment** 63:13

**Monday** 51:23 52:4

**money** 12:25 13:14

**monitored** 66:13

**monitoring** 20:25 80:17

**month** 36:17

**monthly** 36:12

**months** 13:20 19:13

**morning** 7:21 51:23

**motion** 60:21 61:2,5,17

**motor** 8:15

**move** 46:8 61:7,10 67:12

**movement** 21:18

**muscle** 46:16, 17

_____

**N**

**named** 68:12

**names** 87:2

**nature** 19:8 21:8 28:13 86:14

**necessarily** 31:4 65:7 87:22

**neck** 71:15,22

**needed** 14:14 15:21 53:4 60:22

**neuromuscular** 41:3 72:15,23 73:19,24 74:17, 19,23 79:23

**night** 51:19 52:17

**NMI** 73:18

**normal** 46:13 55:23

**Norris** 53:9,17 62:24

**notarize** 13:12

**notarized** 13:12

**notice** 46:2

**Nott** 82:23

**number** 6:12 28:15

**numbers** 87:2

**nurse** 69:18

_____

**O**

**object** 9:21 32:6

**objection** 9:21 31:17 77:18

**objections** 9:22,24

**observation** 50:11 59:23 84:16 87:15,23

**observe** 42:10 60:4 83:3,7

**observed** 87:18

**observes** 68:20

**observing** 50:12

**obsolete** 22:1

**OC** 28:4,24

**occur** 42:11 43:19 65:7

**occurred** 26:11 48:9

**occurrence** 29:9 36:11,12, 13

**offered** 86:21

**office** 7:3 12:17,22,23 17:7

**officer** 15:18 20:17 26:15,25 27:5 40:3 51:17 52:5,19 59:7,19

**officers** 45:11

**Offices** 7:2

**on-the-job** 22:10 33:22

**one-foot** 73:17

**online** 24:7,12, 16,21

**open** 21:13

**opens** 20:24

**operation** 14:10

**operations** 14:4,6,8,15 18:19 20:22

**operator** 19:24 20:2

**opinion** 31:18 77:20

**opinions** 27:12

**opportunity** 87:9

**option** 28:4,24, 25 37:18,19

**options** 44:16

**oranges** 14:10

**order** 28:5 29:4,5 31:9 40:4,10 62:6 72:12 73:18

**ordered** 14:9 62:4 63:6,14,16

**ounces** 57:16

**oversee** 12:18 13:16 14:12 17:7 18:4 21:3

_____

**P**

**p.m.** 16:16 17:18 55:23,24, 25

**pain** 39:17 41:5,9 74:7,11, 13,15,16,20,22, 23 77:8 79:19, 24 80:1

**painful** 79:9

**paper** 19:8 21:6 84:8

**paperwork** 17:7

**part** 14:15 33:22 35:25 44:18 45:24 49:2

**part-time** 12:4, 5

**parties** 7:8

**parts** 21:24

**pass** 21:5 53:12,13,15 54:7 58:1 63:1 84:5,6 89:21

**passed** 58:5

**passive** 77:24

**passively** 75:17 76:10,14

**pat** 20:15

**pathogen** 23:3

**Patterson** 6:3 54:20 88:22

**pause** 8:5

**payroll** 12:13

**pending** 6:10 9:17



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

people 39:1,6
53:12 69:5
76:24

pepper 28:24

perimeters
19:5

period 24:20
29:21 30:23
32:15,17,18,20
87:21

periodically
67:7

periods 36:22
61:20

person 23:15
30:16,22 32:5,
14 39:3 40:21,
23 50:5,7 51:2
56:22 58:24
60:3,24 66:20

person's 41:1

personal 45:9
50:19 67:1
86:7,9

personally
37:17 44:23
45:23 50:13
54:25 86:12,17

perspective
42:18

pervasive
35:19

phone 13:1,15,
16 15:8

phrase 57:1

physical 68:11

physically
60:9 61:7,10
70:14

pinned 7:23,25

place 19:15
22:8 25:21
31:3,8 34:3
43:13 49:5 62:5
84:2

plaintiff 6:18,

21 7:22

plaintiff's 6:15

plausible
44:17,19

pleasant 38:8

pod 20:22
21:15

point 9:12
20:19 60:22
64:16,21 66:3
70:5 76:22
77:11,14 78:2
85:11 89:21

policies 45:14
46:21 47:11,14,
20,23 48:13,23
49:4,8,24 50:2

policy 31:24
47:25 48:5
49:12,15,20

population
84:14

populations
38:25

port 52:5 89:10

portion 23:2

position 12:9
18:11 19:10
20:13 27:24
39:7

positions
20:21 39:2

power 76:2

Powerpoint
25:2

Powerpoints
24:8 25:4,13,
15,24

practice 28:23
29:16,17 31:7,
24 32:3 33:1
34:22 45:9,19
50:20 51:3
63:19 64:8,11,
25 66:16 80:6

practices 22:6

31:5 54:5

precautions
53:4

preferred 39:2
71:13,14

pregnant
38:25

present 15:25
23:24 33:4
42:15 51:8 63:3
88:8

presented
42:16 43:1,2,3

pretty 21:22
24:15 33:7
42:14

prevent 28:5,
18 29:4,6 31:9,
12 61:14

prevention
23:6

previous 16:9
62:18,21 65:4
79:5

previously
57:22

probe 39:19
46:10 79:9

probed 73:14

probes 37:25
38:5 39:14,16
40:2,12,15,16,
17 41:2,8 46:3,
6,7 72:4,6,8,10,
14,17,20,21
73:7,9,18,20,
21,23 74:14,19
78:23 79:1,4,5,
7,13,18,22
80:12

problem 83:9

procedure
49:20

procedures
45:14 46:21
47:11,14,20,23,
25 48:5,13

49:4,8,24 50:2

PROCEEDING
S 6:1

process 14:24
15:3 19:2 20:14
47:6,10 78:19
79:17 84:2

profanities
59:17

professional
61:15

promotion
18:21

prompted
25:23

proper 34:13

properly 18:6
34:5

property 12:23

protective
23:3 86:21
87:5,8,11

provide 28:20,
21

provided
38:15 46:20
47:2,13

Pruitt 68:12

purchased
13:15

purchases
13:1

pure 53:11

purpose 61:12

purposes
14:10

put 29:5 31:2
43:18 75:9

putting 64:1
65:1 67:14

_____

Q

question 9:3,8,

17,24 27:16
31:18,20,25
32:7 35:23
49:17 76:13

questionnaire
49:18

questions
8:23 24:18
88:12 89:1,23,
25 90:1

quick 54:13

quickly 8:23

_____

R

raise 7:13

range 60:21
61:1,4,17

re-ask 49:14,
22

reactions
46:11

read 24:17
48:23 55:16

readapt 22:7

realm 50:18

reason 40:15

reasons 40:25

reassess
41:19

recall 8:11,19,
21 22:24 23:8,
21 24:22 25:4,
19 26:17,18,22,
24 27:2,4,15
29:22 33:20
34:20 35:3
36:5,24 44:13
45:13 47:12,18,
19,21,22 48:17,
24 52:7,8,20
54:6,8 56:7
57:5,11,24
63:12 65:22
66:7 68:16,18
70:20 71:1,10
76:21 77:4,10,
12 80:5,22



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

81:25 82:23
83:2,18,20,25
85:6,14 87:6
88:7,10 89:4

**receive** 20:7
22:16,22 33:19
34:12,17,24
38:9,11,19
41:13 47:22
74:17

**received** 22:18
23:23,25 25:3,
7,8 33:17,23
34:16 41:22
47:9,24 48:4
61:16 86:10

**receiving**
47:19

**recognize** 55:8
85:2

**recognizing**
49:21,25 84:25

**recollection**
53:11 56:9,15
62:23 64:7
65:14,19 66:9,
13,15 69:21
70:8,13,16
75:3,15 76:14
78:1 86:5,19
89:22

**recommend**
26:14,19

**recommendati
on** 27:9

**recommended**
26:25 27:5

**recommends**
39:16

**record** 6:2 7:6
23:9 54:15,16,
17,18 58:22
88:18,19,20
90:4

**recording** 22:5

**records** 12:14
59:2

**recovering**

77:3

**red** 62:14

**reengage**
41:18

**refer** 23:16

**reference**
62:15

**references**
82:7

**referred** 50:6

**referring** 53:7

**Regional** 6:24
12:7 33:2 46:20
63:20

**regular** 51:4
73:4,6 74:8

**related** 82:18

**release** 19:2
20:14 21:9

**released** 31:16
32:5

**remained**
21:22,24

**remember**
17:1,2 21:21
23:1 48:2,4,5,7,
8,9 52:10 53:1
54:1 66:11
67:16 69:24,25
82:5 89:8,10,
12,15,19

**remembering**
54:4

**remind** 85:5

**remote** 21:13

**remotely** 6:19,
21 7:3

**remove** 21:25
61:9 81:10

**removed**
32:16 70:4
80:12 82:2,3

**removing** 61:6
78:6

**repeat** 31:20

**rephrase** 9:4
31:20

**replaced** 13:17

**report** 13:23
55:3,11,20
56:18 62:3,6,17
65:23 68:2,7
70:21,23 75:16
76:12,13 80:23
81:4,6,8 82:6
85:20,25 87:6

**reported** 16:5

**reporter** 6:2,4
7:5,8,12,18
8:24 54:15,18
88:17,20 90:3

**Reporters** 6:5

**reports** 50:12
86:20

**represent** 6:24
7:2,22

**representing**
6:4

**required** 15:1
22:23 49:1 65:9
72:13

**requirement**
37:3

**requiring**
49:12,15

**reserve** 19:20,
21

**resist** 43:12
59:18 65:13
76:20

**resisting** 39:3
43:17 75:17
76:10,15,18
77:24 78:8

**respond** 68:22
69:3

**responded**
68:11 69:5

**responding**
69:25

**response**
27:13

**responsibility**
67:1,5

**responsible**
16:23

**restrain** 34:5
58:18 59:16

**restrained**
29:12 35:1,4
70:11

**restrains** 61:7

**restraint** 27:19
28:2 29:5,24
30:6,21 31:2,13
32:2 33:12,18
34:2,9,14,18,25
43:5,7,13,18
44:8,12,24,25
45:12,16,19
57:19,21,23
58:4,9,11,15,
16,23 59:24
60:18 61:20
63:7,9,10,14,
16,20 64:1,15
65:1,4 66:2,10,
14 67:15 75:6,
14,18,22 76:1
78:8,12,15
80:15,21 81:11,
22 82:2,3

**restraints** 34:5
59:18 75:6,11
78:7,11

**restricted**
35:15

**restroom**
54:13

**result** 23:15
74:16

**review** 15:8,23
24:18 47:4,7

**reviewed** 47:9

**reword** 26:21

**Rigsby** 6:9,24
7:5,7,9,21 8:8
10:2 54:19,24

55:8 88:21,25

**rising** 60:6

**role** 13:7,19
14:2 16:6,9
82:15

**room** 65:21
66:17,18,22

**roughly** 16:19
32:22 69:1

**rover** 20:13,21
68:25

**rule** 9:22 33:8,9

**rules** 8:23

**run** 19:6 20:23

_____

**S**

**safe** 32:9

**safely** 34:3
61:2,3

**safety** 30:13
34:4,5 61:19

**sally** 52:5
89:10

**Sargent** 89:2,
5,10

**schedule** 14:8

**school** 10:13,
15,16 12:4,5

**screen** 7:23
55:4 67:17 68:5
81:1 85:17

**scroll** 81:5

**search** 21:10

**searches** 17:9
20:15,20

**seconds**
41:16,17 46:15
75:1

**secure** 44:24
76:18 78:20
80:9

**secured** 43:5,6
44:8,11,24



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

45:12,15 64:15 65:10 77:14 78:18

**securing** 78:1

**security** 30:13

**sees** 42:15

**seldom** 13:8

**self-harm** 28:7

**self-harming** 28:3

**self-reporting** 50:9,10

**semi** 43:9

**senior** 22:12

**separate** 38:10,12

**September** 6:7 54:21 88:23

**sequence** 74:24

**sergeant** 18:16,18 22:15 24:9

**serve** 19:3

**session** 24:6

**set** 23:13

**setting** 35:13

**sheet** 17:5 50:11

**shift** 16:10,13, 15,25 17:5,14, 15,17,20,23,25 18:12 52:2,4 53:12,13,15,22 59:4 81:18,20 84:5,6,10

**shifting** 51:7

**shoot** 40:18

**shoulder** 79:3 80:6

**show** 55:3 62:1 80:23 85:15

**showing** 7:24

34:2

**shows** 62:14

**sic** 8:17

**side** 9:7 80:5

**sign** 21:9

**signaled** 83:8

**signed** 47:8

**signs** 23:18 49:10,25 50:3 59:12 83:3,8 84:25

**similar** 23:25 42:12

**simulates** 72:11

**sir** 7:13

**sit** 63:7

**sitting** 64:18 78:14

**situation** 8:16, 17 28:12 32:4 39:21 40:8 41:20 62:16 64:3 65:2 79:21 87:11 89:15

**situations** 29:3 39:4 56:13

**six-hour** 37:9 38:16

**Skills** 82:7,8,9, 12,22,24

**slides** 25:16

**Slosar** 6:20 89:25

**small** 55:17

**smart-use** 37:10 38:24

**smock** 82:10

**soft** 61:7

**softer** 78:7,10

**sole** 82:15

**solemnly** 7:14

**sort** 18:11 33:22 48:8 50:8 58:21 67:23

**sorted** 8:5

**sound** 8:25 9:24 51:20

**sounds** 13:4, 22 21:21 22:9 32:25 34:8 48:25 49:3 51:22 55:22 71:4 75:10 80:11

**sources** 15:7

**South** 6:5 11:3

**Southern** 11:2

**speaker** 19:7

**special** 51:3

**specific** 11:8 20:3 26:19,24 27:2,15,17 35:3,23 36:1 56:16 64:7 84:11,17

**specifically** 17:4 51:8 54:1 67:23

**specifics** 52:10

**speculate** 43:25

**spot** 67:7

**spraying** 28:24

**spread** 72:11, 13 73:14,15,17 79:22

**staff** 12:17,19, 22,23 14:9,13, 17 15:7 16:20 17:9 18:19 20:25 35:18 52:9,14,24 53:4,6 63:25

**stairs** 39:10

**stairwell** 39:9

**stamp** 55:7 67:21

**stamped** 80:25 85:16

**standard** 33:1 57:12 60:17 63:19 64:25

**standing** 76:2

**start** 15:5 18:23 22:22 25:23 26:23 74:22

**started** 7:23 19:12 22:2,4 23:24 25:13 48:13

**starting** 6:15

**state** 6:13 7:6

**statement** 53:10

**States** 6:11

**stop** 64:4,8

**stopped** 65:16

**strapped** 43:7, 9

**stretched** 46:18

**strike** 13:5 29:2 52:11 60:13 88:4

**strikes** 70:1

**striking** 56:1, 21 57:1 64:5

**strip** 20:15

**struck** 77:3

**structure** 84:7

**studied** 11:9

**stuff** 23:4,20

**stun** 37:25 38:5 39:13,17,19 40:2,23 41:1,5, 9,14,22 46:3,6 72:6,11,14 73:1,2,4,5,6,8,

12 74:3,7,8,13, 15,20,22 75:5 76:7 79:19,23

**stun's** 40:20

**subject** 34:3 40:14,17 42:4 76:7 84:21

**subjects** 39:1 87:2

**substances** 23:5

**successfully** 80:8

**sue** 8:20

**suffering** 82:25 84:18

**suggested** 19:18

**suicidal** 28:10, 11 82:14,16

**suicide** 23:6 28:12,14 82:10

**summarize** 65:15,18

**summary** 41:11

**Sunday** 51:13, 14,19 52:17

**supersede** 30:13

**supervise** 12:16 16:12,17 81:14

**supervised** 17:22 81:16

**supervising** 17:13

**supervisor** 16:11 17:24 18:2,3,8,12,15 27:23 30:4,17, 22,24 31:1,6 32:24 33:11 53:14 58:6 69:1,2



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 37 of 432 PageID #: 2053
The Deposition of JASON RIGSBY, taken on September 29, 2022
103

**supervisors** 35:17 84:9

**supervisory** 17:4

**supplies** 21:7

**supposed** 41:19

**surveillance** 21:1

**suspect** 50:7

**suspected** 50:5

**swear** 7:14

**swelling** 77:8

---

**T**

**taking** 8:24 10:6,9 28:16 70:8 78:11

**Talana** 69:17

**talk** 82:21 89:2

**talked** 62:2 79:18 88:5

**talking** 20:4 24:20 26:2 52:14,15,16 57:10 62:22 78:11 81:19

**tank** 19:23 20:2,3

**target** 37:12 71:13,14

**tase** 43:4 44:11 45:11 71:9,12 73:20

**tased** 37:17 44:23 45:24 46:3,9 71:6 72:16 78:4,15 79:13 88:9

**taser** 28:4,24 35:4,5,8 36:2,6, 15 37:4,9,10, 16,24 38:10,16, 17,18,20,23

39:3,8,15 40:18 41:15,18 42:2, 5,6,10,15,16 43:15 44:10,14 62:8,12,13,19 64:16,21,22 70:2 71:2,25 72:1 73:17 79:2,5

**tasers** 35:12, 19 37:5 42:19 43:14

**tasing** 34:24 42:11 45:15,19

**Taylor** 69:13 76:23

**teach** 22:13

**team** 15:23 35:16

**technician** 6:3

**technique** 74:7

**technology** 22:6 37:10

**tells** 9:23 39:21

**testified** 42:9, 23 60:16

**testify** 10:3,10 76:8

**testimony** 7:14 45:25

**therapists** 82:13

**thing** 9:16 21:2 37:13

**things** 12:15 13:17 14:19 21:7 22:3,13 23:17,20 28:6 29:23 54:5 59:18

**Thomas** 81:10

**thought** 27:10

**threats** 59:17 85:9,12 86:1,5, 8,15,17

**three-point** 72:6,14 73:2,5, 8,11 74:2,6,16 75:5 76:7 78:22 79:3,14 80:4

**throwing** 57:6 62:3

**tight** 34:6

**time** 6:7 12:1 15:14 24:20 29:20 30:7,14, 23 32:15,18,20 35:11 37:1 42:12,14 46:4 47:17 49:13,16 50:14 51:11 54:15,22 55:23 56:4 58:8,10 59:6,25 60:16, 19 61:6,21 77:22 78:5 81:17 84:14 88:17,23 90:3

**times** 15:2 30:8 36:4,9,17 37:20 42:17 43:22 88:3,4,8

**Timothy** 6:9

**today** 6:4,6 9:3,12 10:4,10 54:21 88:23

**toilet** 19:8 21:6 30:9,16 61:3

**told** 29:22 54:7 84:1 89:19

**top** 80:7

**topic** 26:6

**topics** 84:11

**totally** 33:10 44:7

**trained** 18:19 22:17 33:12 45:5,7

**training** 18:16, 17 19:12 20:7, 10,11 21:21,22 22:7,10,14,16, 18,21,24 23:6,

7,8,9,11,13,22, 23,25 24:2,9, 10,12,21 25:10 26:1 33:15,16, 17,18,19,21,23, 25 34:8,12,16, 17,24 35:4 37:8,21,22 38:9,14,19,22, 23 39:12,20,23 41:13,22,25 45:24 47:20,23, 24 48:4,9,10 61:17 71:11,18, 24 73:17 84:25 85:4,5

**transactions** 13:15 15:9

**transpired** 70:25

**transport** 19:2

**trays** 19:3

**trouble** 8:4

**true** 41:17

**trustee** 21:4

**trustees** 21:4

**truth** 7:15,16

**Tucker** 6:10 7:2 51:17 52:6, 14,19

**turned** 42:16 70:1

**type** 15:10 43:11 59:16 83:16

**types** 14:11

**typically** 15:5, 20 17:19 20:12 28:3,23 29:11, 13 30:8,17,24 38:24 39:16 40:13 42:14 44:9 48:21 50:18 53:11 58:5 59:13,22 60:7,23 61:1,6 68:21 84:8,14

---

**U**

**ultimately** 16:2

**uncommon** 36:8

**understand** 9:3 31:23 39:11 44:22

**understanding** 37:23 54:4

**understood** 9:9 15:24 36:22 47:11 69:4 84:23

**unholstered** 62:8,19

**unit** 21:12

**United** 6:11

**University** 11:5

**unknown** 23:5

**unrestrained** 43:12

**unsafe** 60:25

**unsecured** 63:24

**update** 59:7

**updates** 48:25

**upper** 71:3,8 78:22 79:3 80:3

**upset** 56:19

**use-of-force** 89:3

**user** 37:2,6 38:18 45:22

---

**V**

**vaguely** 76:16

**vehicle** 8:15

**verbal** 64:2

**verbally** 8:24



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

Case 1:20-cv-00048-GNS-HBB   Document 87   Filed 07/23/24   Page 38 of 432 PageID #: 2054
The Deposition of JASON RIGSBY, taken on September 29, 2022
104

**verify** 48:22

**version** 24:7

**versus** 6:10 39:13,19 41:5,9 51:4

**video** 6:3 15:5

**videoconference** 6:8 54:21 88:22

**viewed** 59:20, 22

**visitation** 65:21 66:17,18, 22

**volunteer** 37:12,14

_____

**W**

**Wacker** 6:5

**wait** 44:17,19, 20

**waited** 45:3

**walking** 19:4 76:2

**wall** 62:5

**wanted** 69:2

**warn** 64:4

**warranted** 16:3 27:10

**Warren** 6:24 10:16 12:7 33:1 46:20 49:5 55:7 63:19 67:21 80:24,25 85:16

**watch** 19:4

**water** 57:6,9 62:4 63:15 67:14

**wearing** 23:3

**week** 20:12,22 21:8,15 24:10 27:25 29:8 36:9

**weekly** 36:10,

11

**weeks** 22:20 36:14,19,21 42:23,25

**weight** 75:21, 23

**Western** 6:11 11:4,19

**White** 69:15 70:1 76:23 77:2,7

**window** 12:24 59:23 60:5,7 66:21

**wipes** 14:10

**wires** 79:8

**witnessed** 86:12

**witnesses** 69:5

**work** 13:3,16 17:6 19:18 21:8,9,10 40:20 41:3

**worked** 17:19 34:3 54:6 77:21

**workers** 21:4

**working** 11:25 13:5 16:22 19:17 22:2 27:23 48:13 50:14 51:15

**works** 20:13

**would've** 22:18,23 23:2,5 53:25 59:2 64:4,7 66:19,25 80:18 84:3

**wrap** 33:17

**wrist** 57:3 63:23

**written** 58:22

_____

**Y**

**year** 13:20

19:13 22:19,24 25:10,12 36:1 43:22

**year-and-a-half** 15:12,13 26:13

**years** 8:11 17:1,2,16 19:20 22:2 48:17

**yelling** 59:17

_____

**Z**

**zoom** 55:13



Kentuckiana Reporters
P.O. Box 3983
Louisville, KY 40201

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com



**EXHIBIT**
**1**

# WARREN COUNTY REGIONAL JAIL
## MANUAL OF POLICY AND PROCEDURES
### 3.03 - EMPLOYEE CODE OF ETHICS

**POLICY:**

The Warren County Regional Jail has established and maintains a Code of Ethics that promotes professionalism and integrity, and governs the conduct of Departmental staff. This code of conduct addresses expected conduct on duty or off duty as it relates to staff, inmates, inmates' families, and the general public. This policy is not totally inclusive of all conduct that could cause adverse publicity or negative attitudes toward the Department and Warren County, but should provide structured guidelines toward the goal of professionalism.

**DEFINITIONS:**

Dereliction: Abandoning/neglect of duty or responsibilities.

General Public: Is totally inclusive of all court officials, law enforcement personnel, and citizenry.

Inmate: Any person incarcerated by the Warren County Regional Jail or released by the Department, former inmates, or inmates from other known correctional facilities.

Neglect: Failure to perform, especially through carelessness.

On Duty: Departmental personnel working a specified scheduled time, performing his/her duties and responsibilities.

Off Duty: Departmental personnel not working.

Personnel/Employee: Any person involved in providing supervision and/or services for the inmate population. Departmental employees, interns, service contractors, volunteers, and staff from other County agencies are included in this definition.

Contraband: Any illegal items, such as drugs and weapons, or any item prohibited in the secure area of the jail.

**PROCEDURES:**

1. General Statement: It is essential that all personnel refrain from engaging in any activities which would adversely affect the security, safety, integrity, or reputation of this Department, Warren County, or its employees. Each employee is expected to be above reproach; each employee's actions, official or personal, are closely scrutinized by the general public because of the nature of employment, creating a higher standard. Therefore, each employee should be aware of his/her actions and the possible consequences.

2. Rules of Conduct:
   a. Each employee's conduct should be guided by this policy, which is consistent with the Department's Policy and Procedure, memos, and County Personnel Regulations.
   b. The Department expects and requires that all personnel maintain an exemplary standard of personal integrity and ethical conduct in their relationships with other personnel, inmates, and the general public. The following Departmental rules are designed to serve as a professional standard governing personnel conduct.
   c. The Department also recognizes that personnel possess certain basic, individual rights.

3. Specific Departmental Rules: Rights enhances the integrity of the Department and further promotes the goal of furnishing the community the highest quality of public service.

4. Conformance to Law:
   a. Personnel are required to adhere to Departmental Policy and Procedure, County Personnel Regulations, City and County Ordinances, State Statutes, and all other laws applicable to the general public.
   b. All personnel who are involved in a legal action where they are the defendant of a criminal or civil action and a legal process (i.e. warrant, criminal or civil summons) has been served, are required to file a report through the chain of command to the Jailer or Chief Deputies as soon as possible.

WarrenCounty1203

5. Compliance with Orders:
   a. Any Personnel who willfully disobeys or disregards a direct order, oral or written, of a superior are considered insubordinate.
   b. In the event of conflicting orders, personnel respectfully calls to the attention of the superior giving the last order of conflict. If the latter superior does not change the order, it is obeyed, and the personnel are thereafter relieved of the responsibility for disobedience of the first order.
   c. Superiors are not to issue any order which they know would require a subordinate to commit any illegal, immoral, or unethical acts.
   d. Personnel are not required to obey any order which they know would require them to commit immoral or unethical acts.
   e. Personnel are truthful in all verbal and non-verbal communication with others in this Department.

6. Conduct Unbecoming:
   a. No personnel commits any act which constitutes conduct unbecoming of Departmental personnel. Conduct unbecoming includes, but is not limited to, any criminal act, and/or dishonest or improper conduct.
   b. Examples of conduct unbecoming including lying in a Departmental investigation, excessive absenteeism, using profane language in public, verbal threats directed towards another person, assault on fellow personnel, sexual harassment, and failure to cooperate with an internal investigation.
   c. Personnel treat other personnel with respect and courtesy. Profane, demeaning, insulting, and threatening language directed toward other personnel is not tolerated. Personnel never engage in argument or shouting match with other personnel.

7. Dereliction of Duty: Dereliction of duty on the part of any employee is cause for disciplinary action up to, and including, dismissal. The following acts or omissions shall constitute dereliction of duty, but are not exclusive:
   a. Failure to obey an order or willful, serious or repeated violations of any rule, regulation, or policy of the Department.
   b. Failure to properly report an incident occurring within the Department that is a violation of the Department's Policy and Procedure.
   c. Absence without authorized leave, including a failure to report to duty on time, or leaving a place of duty or assignment without the authorization of a supervisor.
   d. Failure to assist or support a fellow officer or failure to perform duties without a valid reason.
   e. Sleeping on duty.
   f. Failure to complete or unauthorized absence from required training.
   g. Displaying a reluctance to properly perform assigned duties or acting in a manner tending to bring discredit upon the employees of the Department. Failure to exercise due diligence and interest in pursuit of duties.
   h. Encouraging others, by words or actions, not to perform their duties.
   i. Making false accusations against an employee of this Department.

8. Neglect of Duty:
   a. Personnel are expected to maintain sufficient competency to properly perform their duties and to assume the responsibilities set forth in their job descriptions.
   b. Employees are expected to perform their duties in a manner which tends to establish and maintain the highest standards of efficiency in carrying out the functions of their job and the objectives of the Department.
   c. Incompetence may be demonstrated by lack of knowledge of the application of Departmental Policy and Procedures required to be enforced, and/or an unwillingness or inability to perform one's tasks, as assigned by proper authority.
   d. Failure to consistently conform to work standards established for the employee's rank, grade, or position will be deemed incompetence.
   e. Failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving the employee's attention is deemed incompetence.
   f. Failure to perform their supervisory, administrative, or decision-making responsibilities in an acceptable or suitable manner as set forth in one's job description, Policy and Procedure, directives, or other regulations or policies, are deemed incompetence.
   g. Absence without leave or unexcused absence from assigned duties or tour of duty is incompetence and neglect of duty.
   h. Repeated poor evaluations are deemed incompetence.
   i. A record of repeated infractions of the Departmental Policies and Procedures will be viewed as incompetence and neglect of duty.

Ch. 3- 4

9. <u>Use of Force:</u> Employees use force only in accordance with the law and Departmental Policy and Procedures and only the minimum force necessary under the circumstances to control the situation or to protect themselves and/or others from harm. No employee will use force in a discriminatory manner.

10. <u>Integrity of the Reporting System:</u> Employees shall submit all necessary reports in accordance with established Departmental Policies and Procedures. Reports submitted by employees shall be accurate, complete, and timely. Reports are to be legible.

11. <u>Punctuality:</u>
    a. Employees are required to be punctual in reporting for duty at the time and place specified by the Jailer, Chief Deputies, or Supervisors.
    b. No employee can be absent from duty without leave or without authorization from the Jailer, Chief Deputies, or Supervisors.

12. <u>Attentiveness to Duty/Use of Alcohol and/or Drugs:</u>
    a. To ensure each employee's own protection and the protection of fellow employees, inmates and other, employees are required to remain awake and alert while on duty.
    b. Employees will not bring into or store alcoholic beverages in any facility of the Department or in any Department vehicle, except for those alcoholic beverages which are properly tagged, marked, and held as evidence.
    c. Employees cannot drink intoxicating beverages while on duty; cannot appear for duty, or be on duty while under the influence of intoxicants to any degree whatsoever. Employees cannot have the odor of intoxicants on their breath or person.
    d. Employees are prohibited from consuming alcoholic beverages within eight (8) hours of reporting for scheduled duty.
    e. Alcoholic beverages are not to be purchased or consumed while wearing any part of the Departmental-issued uniform. Employees are prohibited from operating a Departmental vehicle while, or within eight (8) hours after, consuming alcoholic beverages.
    f. Employees taking prescription narcotics or prescription medications that alters their ability to perform duties will notify their Supervisor, Chief Deputies, or Jailer of the medication prescribed. Employees shall list and report these to the Jailer.
    g. The employee does not have to inform the Supervisor, Chief Deputies, or Jailer of the nature of an ailment, or reason for the medication. The employee is referred to the Jailer if other information needs to be relayed to the Department.

13. <u>General Rules of Conduct:</u>
    a. Personnel are prohibited from involvement in the following activities with inmates, inmates' families, or friends of inmates; soliciting, bartering, accepting any gift, personal favor or loan, selling goods, loaning money, or any other activity which may have an adverse effect on duty performance and/or the Department. When employees are approached as indicated above, a report shall be forwarded without delay via the chain of command to the Jailer, Chief Deputy, or Shift Supervisor.
    b. No personnel are allowed to bring or permit others to bring contraband into the facilities, nor is any contraband to be given to or made accessible to inmates. Anything not issued to inmates or authorized for their use is considered as contraband.
    c. Personnel are prohibited from giving any inmate any item of value, such as money, clothing, jewelry, etc.
    d. No personnel shall grant or promise special privileges or favors to an inmate that is not available to all inmates.
    e. All personnel use discretion and judgment and are selective in information which they provide inmates concerning the department and personnel. Personnel do not talk to inmates about Department staff members. Privileged personnel matters affecting staff members communicated to inmates and Departmental personnel creates an adverse effect on morale and reduces inmate/staff respect for the Department.
    f. Personnel are prohibited from sharing inmate information to another inmate without authorization from Jailer, Chief Deputies, or Supervisors.

Ch. 3- 5

g. Personnel are prohibited from:
1) Discriminating against any inmate on the basis of race, religion, creed, gender, national origin, sexual orientation or other individual characteristics.
2) Employing corporal punishment or unnecessary physical force.
3) Subjecting inmates to any form of unwarranted physical or mental abuse.
4) Engaging in critical discussions of staff members or inmates in the presence of inmates, or other staff.
5) Inquiring about, disclosing, or discussing details of an inmate's crime other than as may be absolutely necessary in performing official duties.
6) Bringing any type of recording device into any area of the jail for any purpose unless so authorized by the Jailer.

h. Removal of County property from the Departmental facilities without proper authority is prohibited.

14. Relationship of Personnel with Inmates:
a. Personnel have the responsibility to take care of the needs of the inmates.
b. Brutality in the treatment of the inmates is not tolerated and is cause for dismissal and probable criminal charges.
c. Only a minimum amount of force is used to control an unruly inmate. Personnel should not strike or lay their hands on an inmate except to defend themselves, prevent an escape, prevent injury or damage to person or property, quell a disturbance, or search an inmate.
d. Personnel treat inmates with respect, courtesy, and firmness. Profane, demeaning, insulting, and threatening language directed toward an inmate is not tolerated. Personnel never engage in an argument or shouting match with an inmate.
e. A good staff/inmate relationship is crucial to effective discipline and order. In most instances, inmates respond to orders given in an effective manner. Personnel shall never be intimidated by inmates.

15. Association of Personnel with an Inmate or with an Inmate's Family or Friends:
a. Personnel limit their association with an inmate's visitors to that communication which is required to perform their official duties. Personnel are not to visit incarcerated inmates, unless approved by the Jailer.
b. Visitors are treated respectfully and with courtesy even though firmness is occasionally required.
c. Departmental personnel are prohibited from establishing a personal relationship with an inmate beyond what is required to perform official duties. The intent of this policy is clearly to prohibit staff personnel from establishing social contacts and personal relationships with inmates. Each violation of this policy is reviewed on a case-by-case basis and may cause for disciplinary action, including dismissal.
d. Departmental personnel shall not; unless approved by the Jailer.
1) Correspond with inmates by letter or phone.
2) Bring anything to an inmate.
3) Take anything from the jail that belongs to an inmate.

16. Abuse of Position:
a. Employees are prohibited from using their official position, official identification cards, or badges for personal or financial gain, or to receive special favors.
b. Employees do not lend their identification cards, badges, weapons, or other official or Department items or equipment to any unauthorized employee or non-employee.
c. Employees do not allow any reproduction of official Department identification cards or badges. Employees do not give or lend an official Department photograph or document to other law enforcement or judicial agencies, unless permitted by Department policy or approved by the Jailer or Chief Deputies.
d. Employees shall not permit or authorize the use of their name, photograph, or official title which identifies them as Officers in connection with testimonials or advertisement of any commodity or commercial enterprise without prior approval of the Jailer or Chief Deputies.

17. Official Identification:
a. Employees will carry their official Department identification on their person at all times, except when impractical or dangerous to their safety.
b. Employees will furnish their name and badge number to any person requesting that information, except when impractical or dangerous to their safety, or when such information would constitute a physical threat to the employee.

Ch. 3- 6

WarrenCounty1206

18. Soliciting or Accepting Gifts:

Employees of the Department do not solicit or accept for themselves or others, either directly or indirectly, any gift, gratuity, subscription or donation, or any other material thing, without the expressed permission of the Jailer or Chief Deputies.

19. Gratuities, Gifts, Bribes, and/or Rewards:

Employees will not solicit or accept for themselves or others any gratuity, gift, bribe, or reward in anticipation of or as a result of their actions as an employee of Warren County, which is contrary to any local, state, or federal law. Employees shall not solicit or accept for themselves or others any gratuity or gift not afforded the general public.

20. Visiting Prohibited Establishments:

Employees shall not knowingly visit, enter, or frequent a house of prostitution, gambling house, liquor house, drug house, or house where prescription drugs are handled illegally, or other establishment wherein the laws of the United States of America, the Commonwealth of Kentucky, or the local jurisdiction are violated, except in the performance of their official duty or while acting under proper and specific order from a superior officer in response to a need for immediate official action.

21. Gambling:

Employees shall not engage or participate in any form of illegal gambling where the laws of the United States of America, the Commonwealth of Kentucky, or the local jurisdiction are violated.

22. Associations:

Employees avoid associations or dealing with persons whom they know, or should know, are racketeers, sexual offenders, gamblers, suspected or known felons, persons under criminal investigation or indictment, or who have a reputation in the community for past or present involvement in felonious or criminal behavior, except as necessary in the performance of official duties, or where unavoidable because of personal relationships to the employee.

23. Additional Considerations:

a. Employees are asked to maintain a telephone at their residence and inform the Department of their telephone number. Any change of a telephone number and address will be communicated to the Department.

b. No employees of the Department will engage in any employment other than in the capacity of an employee of the Warren County Jail without the prior written approval of the Jailer.

c. Drug and Alcohol Testing of Staff:
   1) All staff of the Warren County Regional Jail shall submit to test request by their supervisory staff.
   2) Test shall be for the purpose of determining illegal drug or alcohol content of the staff person.
   3) Test will be of the nature necessary to determine illegal drug or alcohol content of the staff person.
   4) For the purpose of this policy, the abuse of prescription drugs will be classified as illegal drugs.
   5) Failure to submit to a requested test will result in immediate termination of employment.
   6) If test results indicate positive use of illegal drugs or alcohol, the staff person's employment will be terminated immediately.

d. Violations: All employee violations of the Code of Ethics shall be documented by the Jailer and made part of the employee's permanent personnel file and subject to immediate dismissal.

**I have read and have had the Warren County Regional Jail's Code of Ethics explained to me. I understand that I am subject to immediate dismissal for any violation of the Code of Ethics**

_Jason Ryan_
Employee's Signature

_Stephen Harmon_
Jailer's Signature

_5-19-2022_
Date

_5/19/22_
Date

Ch. 3- 7

WarrenCounty1207

# Certificate of Training

## TruNarc

This is to certify that

## Jason Rigsby Major

has successfully completed the Thermo Scientific TruNarc Analyzer Operational
Training Course

***Inam Khan, Training Manager***
***Thermo Fisher Scientific***

*Inam Khan*

**4/28/2022**

Thermo Fisher Scientific
2 Radcliff Road
Tewksbury, MA  01876

TruNarc Code
3 -3 -1 -2

**ThermoFisher**
SCIENTIFIC

www.thermoscientific.com/ahura

WarrenCounty1208



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Warren County Regional Jail Training Report

Date: _____4/28/2022_____

Employee: _____Jason Rigsby_____

Badge Number: _____673_____

Instructor: _____Russell Johnson_____

Badge Number: _____

Location of Training: _____Classroom_____

WCRJ Policy Number: _____

Training Completed: _____TRUNARC fimilarization and use_____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _____Jason Rigsby_____     Date: _____4/28/2022_____

Supervisor Signature: _____     Date: _____4/28/2022_____

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

# Certificate of Training



## PepperBall

# INSTRUCTOR – ARMORER

*This is to certify that*

Jason Rigsby

*of the*

Warren County Regional Jail

*Has successfully completed the PepperBall Instructor / Armorer Training Course*

Mike Cantrell

**Master Instructor**

16 HOURS CREDIT

3/22/2022

**Date**

Expires 3/22/2024

*Carl Sims*

Carl Sims, Director of Training

PepperBall is a Division of United Tactical Systems, LLC.

# **GLOCK** CERTIFICATE
## Armorer's Course - 8 Hrs



**PERFECTION**



*Jason Rigsby*

has participated and successfully completed the GLOCK Armorer's Course
2/1/2022

Joseph Parent III
Director of Training

Valid until   2/1/2025

Jason Rigsby
GLOCK Certified Armorer

WarrenCounty1211

# HEARTSAVER

## Heartsaver®
## First Aid CPR AED



American Heart Association.

Jason Rigsby

**has successfully completed the cognitive and skills evaluations in accordance with the curriculum of the American Heart Association Heartsaver First Aid CPR AED Program.**
**Optional modules completed:**

Heartsaver Total, Exam

**Issue Date**

1/26/2022

**Training Center Name**

Western Kentucky University

**Training Center ID**

KY01345

**Training Center City, State**

Bowling Green, KY

**Training Center Phone Number**

(270) 745-3762

**Renew By**

01/2024

**Instructor Name**

Lana Bennett

**Instructor ID**

01200846815

**eCard Code**

226012285370

**QR Code**



To view or verify authenticity, students and employers should scan this QR code with their mobile device or go to www.heart.org/cpr/mycards.

© 2021 American Heart Association. All rights reserved.   20-3002  1/21

WarrenCounty1212



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Warren County Regional Jail Training Report

Date: _____1/26/2022_____

Employee: _____Jason Rigsby_____          Badge Number: _____623_____

Instructor: _____Brian McPherson_____          Badge Number: _____659_____

Location of Training: _____Class D Classroom_____

WCRJ Policy Number: _____

Training Completed: _____CPR, First AID, and AED_____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _____          Date: _____1/26/2022_____

Supervisor Signature: _____          Date: _____1/26/2022_____

920 Kentucky Street │ Bowling Green, Kentucky 42101 │ Phone: 270.843.4606 │ Fax: 270.843.5317
warrencountyjail.com │ WarCoJail@ky.gov

WarrenCounty1213



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Assigned Departmental Property Signature Form

Date: _1-28-22_

Employee: _Jason Rigsby_          Badge No.: _673_

Property Issued:

_Gun Box Key 26-2_

_____

_____

_____

_____

Upon my termination or resignation from the Warren County Regional Jail, I am aware that I am responsible for turning in the above listed property before my last check can be received. By my signature, I am accepting responsibility for the above listed property and shall notify my supervisor if any of the above listed property should be lost, stolen, or damaged.

Employee Signature: _Jason Rigsby_          Date: _1-28-2022_

Supervisor Signature: _Stephen Harmon_          Date: _1-28-22_

Rev 2/2019

920 Kentucky Street  |  Bowling Green, Kentucky 42101  |  Phone: 270.843.4606  |  Fax: 270.843.5317
warrencountyjail.com  |  WarCoJail@ky.gov

WarrenCounty1214

# HEARTSAVER

## Heartsaver®
## First Aid CPR AED


American
Heart
Association.

Jason Rigsby

**has successfully completed the cognitive and skills evaluations
in accordance with the curriculum of the American Heart Association
Heartsaver First Aid CPR AED Program.**
**Optional modules completed:**

Heartsaver Total, Exam

**Issue Date**

1/26/2022

**Training Center Name**

Western Kentucky University

**Training Center ID**

KY01345

**Training Center City, State**

Bowling Green, KY

**Training Center Phone
Number**

(270) 745-3762

**Renew By**

01/2024

**Instructor Name**

Lana Bennett

**Instructor ID**

01200846815

**eCard Code**

226012285370

**QR Code**



To view or verify authenticity, students and employers should scan this QR code with their mobile device or go to www.heart.org/cpr/mycards.

© 2021 American Heart Association. All rights reserved.   20-3002  1/21

WarrenCounty1215

**AXON ACADEMY**

THIS CERTIFICATION IS HEREBY GRANTED TO

# Jason Rigsby

The above named is certified as an instructor for TASER Energy Weapons and may certify and train others under Axon's guidelines for TASER Energy Weapon Users.

TOTAL HOURS OF INSTRUCTION: 16 HOURS

In witness whereof, Axon Enterprise, Inc. has caused this certificate to be signed by its authorized representative.

VALID FOR 2 YEARS FROM THE DATE OF COMPLETION

Andy Wrenn
VP: Head of Training

02/08/2024

Expiration Date



WarrenCounty1216

# Warren County Regional Jail

## Stephen Harmon, Jailer

TO:  Greg Burrell, County Treasurer

FROM:  Stephen Harmon, Jailer

DATE:  9/28/2021

SUBJECT:  Budget / Salary Amendment

Effective 9/27/2021, Warren County Fiscal Court approved a WCRJ Budget Amendment. Jason Rigsby will now have a salary of ███████████████

Stephen Harmon, Jailer

Cc:  Judge Buchanon
      WCRJ Personnel File

WarrenCounty1217



*Continuing Professional Education Certificate*

## JASON RIGSBY

**Topic**           **Presenter**           **Field of Study**

**2021 County Audit Conference**     **Auditor of Public Accounts**     **Government**

**Conference Date**         **CPE Credits**         **Date Issued**

**September 22, 2021**

| | |
|---|---|
| **Auditing** | 4.5 |
| **Fraud** | 1.5 |
| **IT** | 1.0 |

**September 28, 2021**

_____
*Auditor of Public Accounts*

_____
*Assistant State Auditor*

# CERTIFICATE

## PROUDLY PRESENTED TO

*Jason Rigsby*

Kentucky - VINELink/VINEWatch Training Webinar
- Sept. 23, 2021 at 10 AM Eastern Time

Sep 23, 2021

Date of Completion

*Karen Adams*

Organizer

 VINE®

WarrenCounty1219

# Warren County Regional Jail
## Chief Deputy Schedule's
## Effective 9/27/2021

Major Brian McPherson – 0630 to 1430

Major Amir Ziga – 0730 to 1530

Major Kim James – 0800 to 1600

Major Jason Rigsby – 0800 to 1600

Per Jailer Stephen Harmon

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT

Page ___1___ of ___1___

**NAME OF STAFF:** ___Unknown___

**DATE:** ___8-31-2021___                    **TIME:** ___1300___

**DETAILS OF INCIDENT:** On the above date and approximate time, Captain Taylor Tanner received a phone call form Federal Public Defender Office (Walter) inquiring about if their phone number was being recorded or not. After reviewing the managed phone numbers it was determined that the phone number (502-584-0525) was in the managed numbers, but no filters where active and the description stated "Friends and Family". Captain Tanner change the filters to make all future calls not be recorded for attorney client privilege. After reviewing the activity of the phone number it was determined that the calls have been recorded for some time. I called Securus and spoke with Shardai Jamison regarding the phone calls and advised that all calls from 502-584-0525 where subject to attorney client privilege and that Securus need to correct the status of these past calls to private. Shardai advised that she changed them and gave a ticket number of 0436 2973.

**REPORTING DEPUTY:**    **Major Jason Rigsby**

**STAFF MEMBER:**    ___Unknown___

**SHIFT SUPERVISOR:**    **Major Jason Rigsby**

**CHIEF DEPUTY:**    **Major Jason Rigsby**

**JAILER:**    **Stephen Harmon**



# Warren County Regional Jail

## Stephen Harmon, Jailer

### Assigned Departmental Property Signature Form

Date: _8-13-2021_

Employee: _Juson Rigsby_                   Badge No.: _673_

Property Issued:

_1- Warren Co. Regional Jail metal badge_

_____

_____

_____

_____

Upon my termination or resignation from the Warren County Regional Jail, I am aware that I am responsible for turning in the above listed property before my last check can be received.  By my signature, I am accepting responsibility for the above listed property and shall notify my supervisor if any of the above listed property should be lost, stolen, or damaged.

Employee Signature: _Juson Rigsby_                   Date: _8-13-2021_

Supervisor Signature: _Kimberly K James_          Date _8-13-21_

Rev 2/2019

WarrenCounty1222

## Commonwealth of Kentucky
### Michael G. Adams, Secretary of State

Secretary of State
P. O. Box 821
Frankfort, KY 40602-0821
(502) 564-3490
http://www.sos.ky.gov

### Notary Public Certificate

### Commission Number KYNP35479

# Michael G. Adams
# SECRETARY OF STATE

*To all Whom These Presents Shall Come, Know Ye That:*

## Jason Daniel Rigsby

*having been duly qualified, is hereby appointed and commissioned*

# NOTARY PUBLIC

*In and for the State At Large and is hereby vested with full power and authority to execute and discharge the duties of the said office according to law, and to have and to hold the same, with all the rights and emoluments thereunto legally appertaining for a term of four years beginning August 20, 2021 and ending August 20, 2025.*



*In testimony whereof, I have caused these letters to be made patent, and the seal of the Commonwealth to be hereunto affixed. Done at Frankfort on August 20, 2021, and in the 230th year of the Commonwealth.*

*Michael G. Adams*

*Secretary of State*

WarrenCounty1223

**Rigsby, Jason  (WARCO)**

| | |
|---|---|
| **From:** | SOS Notary |
| **Sent:** | Monday, August 23, 2021 8:50 AM |
| **To:** | Rigsby, Jason  (WARCO) |
| **Subject:** | Your notary application has been approved. |

## From the Office of Kentucky Secretary Of State, Michael G. Adams

Dear Jason Rigsby,

You have been appointed to the office of notary public. Your notary commission certificate of appointment has been forwarded to your county clerk. Contact the county clerk for instructions on how to complete the following:

1. Post bond (Must be 4-year notary public surety bond in the amount of $1,000)
2. Pay the county clerk recording fee of $19
3. Take the Oath of Office
4. Pick up your certificate

For additional information regarding these requirements, you should directly contact your county clerk.

**County of Commission: Warren**
**Phone Number: 270-843-5308**
**Effective Date of Commission: 08/20/21**



**WarrenCounty1224**



Email: amooneyhan@cmmoore.com
Phone: (270)843-9054

August 27, 2021

Jason Rigsby
920 Kentucky St.
Bowling Green, KY 42101

Dear Jason Rigsby:

Thank you for your order.  Attached please find your bond.  Sign the bond on the designated Principal line and make a copy for your records. File the original signed bond at:

Kentucky Secretary of State Notary Commissions

700 Capital Ave., Suite 86

Frankfort, KY 40602

Thank you for choosing Charles M. Moore Ins. Agency.

Sincerely,

Charles M. Moore Ins. Agency

MBS0004734

MBA_NOTARY_COVERLETTER200

WarrenCounty1225

WarrenCounty1226

**RLI**®

P.O. BOX 3967 PEORIA, IL  61612-3967
P: (800)645-2402 E: suretytx@rlicorp.com
RLISURETY.COM

# Kentucky Notary
# Public Instructions

Policy:  _____ MBS0004734 _____

## Within 30 days of your appointment, you must:

1. File the notary bond at the County Clerk's Office.
2. Take the Oath of Office at the County Clerk's Office.
3. File and record the appointment at the County Clerk's Office (with $19 filing fee).
4. County Clerk will provide your certificate of appointment.

## Haven't ordered your notary stamp yet?  Let us handle it for you!

**Step 1.**   Call the RLI Surety Notary Department at **(800)331-4929 ext. 2201** to order your notary package of choice.  Please have your credit card or banking information ready.  Options include:

| Stamp | Stamp & Journal | Notary Stamp Options |
|---|---|---|
| Includes choice of Standard or Deluxe Self-Inking Notary Stamp | Includes choice of Standard or Deluxe Self-Inking Notary Stamp and Notary Journal | |
| ☐ **Standard** $23.50    ☐ **Deluxe** $28.50 | ☐ **Standard** $28.50    ☐ **Deluxe** $33.50 | Standard        Deluxe |

Package prices include economy shipping.

**Step 2.**   After placing your notary package order, send a copy of your Notary Commission Certificate to the RLI Surety Notary Department by one of the following methods.  **IMPORTANT:  Step 1 <u>MUST</u> be completed before submitting a copy of your Notary Commission Certificate.**

- Email to:   notarybond@rlicorp.com
- **OR**
- Fax to:     (309)683-1610

**Step 3.**   You are done!  We do the rest.  You will receive your notary materials within 14 days of submitting a copy of your Notary Commission Certificate.

## Thank you for choosing RLI Surety!

M1601619

# POWER OF ATTORNEY

## RLI Insurance Company

9025 N. Lindbergh Dr.  Peoria, IL 61615
Phone:  800-645-2402

***Know All Men by These Presents:***

Bond No.  MBS0004734

That this Power of Attorney is not valid or in effect unless attached to the bond which it authorizes executed, but may be detached by the approving officer if desired.

That the _____ **RLI Insurance Company** _____, a corporation organized and existing under the laws of the State of _____ Illinois _____, and authorized and licensed to do business in all states and the District of Columbia does hereby make, constitute and appoint: _____ **Barton W. Davis** _____ in the City of _____ Peoria _____, State of _____ Illinois _____, as it's true and lawful Agent and _____ **Vice President** _____, with full power and authority hereby conferred upon him/her to sign, execute, acknowledge and deliver for and on its behalf as Surety, for the following described bond.

**Principal:**   Jason Rigsby
**Obligee:**   Kentucky Secretary of State Notary Commissions
**Type Bond:**   Notary Public
**Bond Amount:**   $  1,000.00
**Effective Date:**   August 20, 2021

The acknowledgement and execution of such bond by the said Attorney in Fact shall be as binding upon the Company as if such bond had been executed and acknowledged by the regularly elected officers of the Company.

The _____ **RLI Insurance Company** _____ further certifies that the following is a true and exact copy of a Resolution adopted by the Board of Directors of _____ **RLI Insurance Company** _____, and now in force to-wit:

"All bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys in Fact or Agents who shall have authority to issue bonds, policies or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile."

IN WITNESS WHEREOF, the _____ **RLI Insurance Company** _____ has caused these presents to be executed by its _____ Vice President _____ with its corporate seal affixed this _____ 20th _____ day of _____ August _____, 2021 .

State of Illinois
County of Peoria   } SS

RLI Insurance Company

By: _B. W. D._
Barton W. Davis                                    Vice President

On this _____ 20th _____ day of _____ August _____, 2021 , before me, a Notary Public, personally appeared _____ Barton W. Davis _____, who being by me duly sworn, acknowledged that he signed the above Power of Attorney as the aforesaid officer of the _____ **RLI Insurance Company** _____ and acknowledged said instrument to be the voluntary act and deed of said corporation.

### CERTIFICATE

I, the undersigned officer of _____ **RLI Insurance Company** _____ do hereby certify that the attached Power of Attorney is in full force and effect and is irrevocable; and furthermore, that the Resolution of the Company as set forth in the Power of Attorney, is now in force. In testimony whereof, I have hereunto set my hand and the seal of the _____ **RLI Insurance Company** _____ this 20th day of _____ August _____, 2021 .

RLI Insurance Company

By: _Catherine D. Glover_
Catherine D. Glover                            Notary Public

By: _Jeffrey D. Fick_
Jeffrey D. Fick                                    Corporate Secretary

CATHERINE D. GLOVER
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
March 24, 2024

A0006221_SUBS

**RLI**®

P.O. BOX 3967 PEORIA, IL  61612-3967
P: (800)645-2402 E: suretytx@rlicorp.com
**RLISURETY.COM**

# KENTUCKY NOTARY PUBLIC
# ERRORS & OMISSIONS POLICY

Bond No.  MBS0004734

**Item 1.**  **RLI Insurance Company** (the "Company") will pay on behalf of
Name of Insured:  Jason Rigsby

Principal Address:  920 Kentucky St.
Bowling Green, KY 42101

obligated to pay by reason of liability for breach of duty while acting as a duly commissioned and sworn Notary Public, claim for which is made against the Insured by reason of any negligent act, error or omission, committed or alleged to have been committed by the Insured, arising out of the performance of notarial service for others in the Insured's capacity as a duly commissioned and sworn Notary Public.

**Item 2.**  **POLICY PERIOD:** This policy applies only to negligent acts, errors or omissions which occur during the policy period and then only if claim, suit or other action arising therefrom is commenced during the policy period or within the applicable Statute of Limitations pertaining to the Insured.

The Policy Period is  August 20, 2021  to  August 20, 2025 .

**LIMITS OF LIABILITY INCLUDING DEFENSE COSTS:** The total liability of the Company for all loss (defined below) for all claims under this insurance inculding defense costs (defined below) shall not exceed the amount of
Seven Thousand Five Hundred  and 00/100  Dollars ( $   7,500.00   ).
(NOT VALID IF FILLED IN FOR MORE THAN $50,000)
This limit shall apply in the aggregate so that the Company's total liability for all claims and/or defense costs shall in no event exceed this amount.

**I.**  **DEFENSE SETTLEMENT:** With respect to such insurance as is afforded by this Policy, the Company shall, provided the policy limit has not been exhausted, defend, in the Insured's name and behalf, any claim or suit against the Insured alleging such negligent act, error or omission and seeking damages on account thereof, even if such claim or suit is groundless, false or fraudulent. The Company, in the Insured's name and behalf, shall have the right to make such investigation, negotiation and  settlement of any claim or suit as it may deem expedient.

**II.**  **DEFINITIONS:** Wherever used in this policy, these words shall have the following meanings:

(a)    "Defense costs" shall mean any and all:  (1) expenses, including attorneys' or investigators' fees,paid or incurred by the Company in the investigation, settlement or defense of claims or suits; (2) costs taxed against the Insured in a suit defended by the Company; (3) premiums for bonds required in a suit defended by the Company, which bonds the Company shall have no obligation to furnish, but only for bonds up to the Company's limit of liability; (4) interest on a judgement as required by law until the Company offers the amount due under this insurance; and (5) reasonable expenses incurred by the Insured at the Company's request, other than loss of earnings.

(b)    Subject to all of the Exclusions of this policy (stated below), "loss" shall mean the total of : (1) sums the Insured legally must pay as direct compensatory damages because of claims covered by this insurance; (2) sums the Company agrees to pay in settlement of such claims, whether or not the Insured's legal liability has been determined; and (3) "defense costs" as defined above.

**III.**  **EXCLUSIONS:** Coverage under this policy does not apply to any (i) dishonest, fraudulent, criminal, libelous, slanderous or malicious act or omission of the Insured; (ii) willful or intentional disregard of the law; (iii) bodily injury to, or sickness, disease or death of any person, including but not limited to emotional or mental distress and related conditions; (iv) injury to or destruction of any tangible property, including the loss of use thereof; (v) fines or penalties imposed by law on the Insured; (vi) punitive, treble, exemplary or similarly categorized damages, including fines and penalties; or (vii) performance of notarial service for any business which the Insured owns, is a partner of, manages or controls.

**IV.**  **OTHER INSURANCE:** This insurance is excess over any other applicable insurance whether such insurance is primary, excess, contributory, contingent, or otherwise the whether such insurance is collectible or not, unless such other insurance is  written to be specifically excess over the insurance provided by this policy.

**INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT:**
(a)    Upon knowledge of any occurrence which may reasonably be expected to result in a claim or suit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the potential claimant and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable, but in no event longer than forty-five (45) days after discovery.

(b)    If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by it or its representative.

(c)   The Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured for acts, errors or omissions with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, admit any liability, assume any obligation or incur any expense except with the prior written consent of the Company.

**V.    SUBROGATION:** In the event of any payment for any loss under this insurance, the Company shall be subrogated to all of the Insured's rights of recovery thereafter against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights to the Company. The Insured shall do nothing after loss to prejudice such rights.

**VI.   ASSIGNMENT:** This policy shall be void if assigned or transferred without the Company's written consent.

**VII.  ACTION AGAINST COMPANY:** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgement after actual trial or by written agreement of the Insured, the claimant, and the Company.

Any person or organization or the legal representative thereof, who is signatory to such judgement or written agreement, shall thereafter be able to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or the Insured's legal representative.

**VIII.  CANCELLATION:** If this Policy has been in effect for more than sixty (60) days, or is a renewal of a policy the Company issued, the Company may cancel this Policy upon the occurrence, after the effective date of the Policy, of one or more of the following:

A.   Nonpayment of premium, including payment due on a prior policy the Company issued and due during the current Policy Period covering the same risks.

B.   Discovery of fraud or material misrepresentation by the Insured or their representative either in obtaining this insurance or in pursuing a claim under this Policy.

C.   A judgement by a court or an administrative tribunal that the Insured has violated an Kentucky or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

D.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the Insured or their representative, which materially increase any of the risks insured against.

E.   Failure by the Insured or their representative to implement reasonable loss control requirements, agreed to by the Insured as a condition of policy issuance, or which were conditions precedent to the Company's use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

F.   A determination of the Commissioner of Insurance that the:

1.   Loss of, or changes in, the Company's reinsurance covering all or part of the risk would threaten its financial integrity or solvency; or

2.   Continuation of the policy coverage would (i) place the Company in violation of Kentucky law or the laws of the state where it is domiciled; or (ii) threaten the Company's solvency.

G.   A change by the Insured or their representative in their notarial service activities, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the Policy.

The Company will mail or deliver advance written notice of cancellation, stating the reason for cancellation to the Insured, and to the producer of record, at least ten (10) days before the effective date of cancellation if the Company cancels for a reason listed in A. above; or, at least twenty (20) days before effective date of cancellation if the Company cancels for a reason listed in B. above; or, at least forty-five (45) days before the effective date of cancellation if the Company cancels for any reason listed in C. through G. above.

Upon cancellation by either the Insured or the Company, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

Dated, signed and sealed this _____20th_____ day of _____August_____, ___2021___.

RLI Insurance Company

By_____

Barton W. Davis                                             Vice President

**Address Claims to:**
**RLI Insurance Company**
**P.O. Box 3961**
**Peoria, IL 61612-3961**



# Warren County Regional Jail

## Stephen Harmon, Jailer

*To all to Whom These Presents Shall Come, Greetings:*

KNOW YE, THAT THIS DAY CAME **Jason Rigsby** who was by me duly sworn to the oath of office of **Deputy Jailer of Warren County** by being administered the oath required of Section 228 of the Constitution of Kentucky, in words as follows:

"I do solemnly swear that I will support the Constitution of the United States and the Constitution of this Commonwealth, and be faithful and true to the Commonwealth of Kentucky, so long as I continue a citizen thereof, and that I will faithfully execute, to the best of my ability, the office aforesaid according to law; and I do further solemnly swear that since the adoption of the present constitution, I, being a citizen of this State, have not fought a duel with deadly weapons within this state nor out of it, nor have I sent or accepted a challenge to fight a duel with deadly weapons, nor have I acted as second in carrying a challenge, nor aided or assisted any person thus offending, SO HELP ME GOD."

and the following additional oath, to-wit:

"I DO SOLEMNLY SWEAR THAT I WILL DO RIGHT, AS WELL TO THE POOR AS TO THE RICH, IN ALL THINGS BELONGING IN MY OFFICE AS DEPUTY JAILER; THAT I WILL DO NO WRONG FOR ANY GIFT, REWARD, OR PROMISE, NOR FOR FAVOR OR HATRED, AND IN ALL THINGS I WILL FAITHFULLY AND IMPARTIALLY EXECUTE THE DUTIES OF MY OFFICE ACCORDING TO THE BEST OF MY SKILLS AND JUDGMENT, SO HELP ME GOD."

IN TESTMONY WHEREOF, I have caused this certificate to be executed and the seal of my office affixed thereto.  Done in Warren County, this the **13th** day of **August** 2021.

_____
Deputy Jailer

_____
Jailer of Warren County, Kentucky

_____
Witness / Notary

WarrenCounty1231



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Assigned Departmental Property Signature Form

Date: _3-26-21_

Employee: _Jason Rigsby_          Badge No.: _673_

Property Issued:

_Glock 9mm Model 45 - Case, 3 mags_

_Gun lock, holster - Serial BSBF202_

_____

_____

Upon my termination or resignation from the Warren County Regional Jail, I am aware that I am responsible for turning in the above listed property before my last check can be received. By my signature, I am accepting responsibility for the above listed property and shall notify my supervisor if any of the above listed property should be lost, stolen, or damaged.

Employee Signature: _Jason Rigsby_          Date: _3-26-2021_

Supervisor Signature: _Stephen Harmon_          Date: _3-26-21_

Rev 2/2019

920 Kentucky Street  |  Bowling Green, Kentucky 42101  |  Phone: 270.843.4606  |  Fax: 270.843.5317
warrencountyjail.com  |  WarCoJail@ky.gov

WarrenCounty1232



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Assigned Departmental Property Signature Form

Date: 9-28-2020

Employee: Jason Rigsby          Badge No.: 673

Property Issued:

Black Jacket with logo

Upon my termination or resignation from the Warren County Regional Jail, I am aware that I am responsible for turning in the above listed property before my last check can be received. By my signature, I am accepting responsibility for the above listed property and shall notify my supervisor if any of the above listed property should be lost, stolen, or damaged.

Employee Signature: _Jason Rigsby_          Date: 9-28-2020

Supervisor Signature: _Stephen Harmon_          Date: 9-28-2020

Rev 2/2019

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

WarrenCounty1233



# Warren County Regional Jail

## Stephen Harmon, Jailer

### Assigned Departmental Property Signature Form

Date: _2-12-19_

Employee: _Jason Rigsby_     Badge No.: _____

Property Issued:

4 SETS OF PANTS AND SHIRTS _____

Gun Locker Key # _8_     _____

Medical Box Key     _____

_____

Upon my termination or resignation from the Warren County Regional Jail, I am aware that I am responsible for turning in the above listed property before my last check can be received. By my signature, I am accepting responsibility for the above listed property and shall notify my supervisor if any of the above listed property should be lost, stolen, or damaged.

Employee Signature: _Jason Rigsby_     Date: _2-12-19_

Supervisor Signature: _Stephen Harmon_     Date: _2-12-19_

Rev 2/2019

WarrenCounty1234




# 2021 KY Jailer's Association Jail Improvement Conference

| Date: | June 7 - 10, 2021 | Location: | Holiday Inn University Plaza     Bowling Green, KY |
|---|---|---|---|

### Monday, June 7th

| Time | Session | Hrs. | Initial | | Time | Session | Hrs. | Initial |
|---|---|---|---|---|---|---|---|---|
| 0800 - 9000 | Proactive Rounds: Why We Do Them | 1 | JR | OR | 800 - 1200 | Legal Updates & Best Practices in Jails | 4 | |
| 0900 - 1000 | Situational Awareness: Officer Safety | 1 | JR | | | | | |
| 1000 - 1200 | Avoiding Offender Manipulation | 2 | JR | | | | | |
| 1300 - 1500 | PREA: Dealing with Transgender Population | 2 | | OR | 1300 - 1500 | Canteen Accounting | 2 | JR |
| 1500 - 1700 | Avoiding & Mitigating Legal Issues | | | | | | 2 | JR |

### Tuesday, June 8th

| Time | Session | Hrs | Initial | | Time | Session | Hrs | Initial |
|---|---|---|---|---|---|---|---|---|
| 0800 - 1000 | Best  Practices in Hiring for Jailers | | | | | | 2 | JR |
| 1000 - 1200 | Employee Disciplinary & Termination Considerations | | | | | | 2 | JR |
| 1300 - 1400 | Importance of Intake: Booking, Detox, & Mental Health | 1 | | OR | 1300 - 1400 | Inmate Religion | 1 | |
| 1400 - 1500 | Intake to Release: Best Medical Practices | | | | | | 1 | |
| 1500 - 1700 | Understandking the Effects of "Corrections Fatigue" | | | | | | 2 | |

### Wednesday, June 9th

| Time | Session | Hrs. | Initial | | Time | Session | Hrs. | Initial |
|---|---|---|---|---|---|---|---|---|
| 0800 - 1200 | KY DOC: Legislative Updates, Progams & Class D | 4 | | OR | 0800 - 1200 | SecurityThreat Groups | 4 | |
| 1300 - 1500 | Effective Supervision: Creating Generals | 2 | JR | OR | 1300 - 1600 | Civil Rights: Color of Law | 3 | |
| 1500 - 1700 | A Duty to Protect: Objective Jail Class | 2 | JR | OR | 1600 - 1700 | Corruption of Domestic Public Officials | 1 | |

### Thursday, June 10th

| Time | Session | Hrs | Initial | | Time | Session | Hrs. | Initial |
|---|---|---|---|---|---|---|---|---|
| 0800 - 1200 | Restraints, Transports & Searches | 4 | | OR | 0800 - 1200 | Open Records | 4 | JR |

**Certification:** By signing below I certify that I attended the training event described above and that I'm entitled to claim credit for the duration of time listed in each session in compliance with KRS 64.5275 (6)

Print Name: _Jason Rigby_

Signature: _Jason Rigg_

County: _Warren_

☐ Jailer     ☐ Deputy     ☐ Other Elected Official

# Warren County Regional Jail
## Stephen Harmon, Jailer

### Drug Testing Report

**Name:** _Swonleghy_

**SSN:** _____

**Date:** 3/6/2021

**DOB:** _____   YES / NO

Are you currently taking any medications?   YES / NO

If yes, please list here: _____

Are you using any illegal drugs?   YES / NO

If yes, please list here: _____

**PBT Results:** _____

**Test Lot #:** WF1400405

**Test Expiration Date:** 4-2-2022

**Time Requested:** _____

**Time Completed:** _____

| Results | | Results | |
|---|---|---|---|
| (FEN) Fentanyl: | POSITIVE / NEGATIVE | (MTD) Methadone: | POSITIVE / NEGATIVE |
| (ETG) Ethyl Glucuronide: | POSITIVE / NEGATIVE | (AMP) Amphetamine: | POSITIVE / NEGATIVE |
| (K2) Synthetic Marijuana: | POSITIVE / NEGATIVE | (MOP) Morphine: | POSITIVE / NEGATIVE |
| (TRA) Tramadol: | POSITIVE / NEGATIVE | (OXY) Oxycodone: | POSITIVE / NEGATIVE |
| (THC) Marijuana: | POSITIVE / NEGATIVE | (MDMA) : | POSITIVE / NEGATIVE |
| (BUP) Buprenorphine: | POSITIVE / NEGATIVE | (COC) Cocaine: | POSITIVE / NEGATIVE |
| (BZO) Benzodiazepines: | POSITIVE / NEGATIVE | (MET) Methamphetamines: | POSITIVE / NEGATIVE |

**Test Given and Read By (Deputy Signature):** _Bo MMM_

**Witness:** _____

**\*\*** I understand that I tested positive in _____ result(s). I understand that I may request a second drug test by an outside source, KEYSTONE LABS, INC., at a cost of $36.75 (26.75 Lab fee, $10.00 filling fee) per drug is tested for. I agree to pay this total expense. I *accept / refuse* (circle one) to pay to have each positive result tested by the lab. **\*\***

**Signature:** _____   **Date:** _____

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

WarrenCounty1236



# Warren County Regional Jail

## Stephen Harmon, Jailer

TO: Greg Burrell, County Treasurer

FROM: Stephen Harmon, Jailer

DATE: May 4, 2021

SUBJECT: <u>Service Increase</u>

Jason Rigsby has been employed 15years as of 04/26/2021. He is eligible fo. ▮▮▮▮ ncrease effective 05/03/2021. His new salary will b ▮▮▮▮▮▮▮

Please notify Kentucky Retirement Systems.

Stephen Harmon, Jailer

SH/tmd
Cc: Judge Buchanon
     File

WarrenCounty1237

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Davis, Tracy M  (WARCO) |
| **Sent:** | Wednesday, May 5, 2021 8:42 AM |
| **To:** | Harvey, Bob C  (WARCO) |
| **Subject:** | SERVICE INCREASES |
| **Attachments:** | JASON RIGSBY 05032021.pdf; STEPHEN CLINGENPEEL 05032021.pdf |

Please see attached...

Warren County Regional Jail
**Tracy Davis, Major**
920 Kentucky Street | Bowling Green, KY  42101
Phone: 270.843.4606 ext 106 | Fax: 270.843.5317
tracym.davis@ky.gov | warrencountyjail.com

1

WarrenCounty1238

Kentucky Department of Corrections
Division of Corrections Training
FIREARMS INSTRUCTOR
QUALIFICATIONS CARD

**JASON RIGSBY**

Has qualified to INSTRUCT the following:

☒ SEMI-AUTO  ☐ .223 RIFLE
☐ 12 GAUGE SHOTGUN  ☐ 37/40 MM

THIS QUALIFICATION EXPIRES: APRIL 2022

WarrenCounty1239



# Warren County Regional Jail
## Stephen Harmon, Jailer

TO: Greg Burrell, County Treasurer

FROM: Stephen Harmon, Jailer

DATE: October 28, 2019

SUBJECT: Promotion

Effective 11/04/19, Captain Jason Rigsby will be promoted to Major. His new salary will be

Please advise the Kentucky Retirement System.

Stephen Harmon, Jailer

SH:tmd
Cc: Judge Buchanon
File

WarrenCounty1240

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Harmon, Stephen  (WARCO) |
| **Sent:** | Friday, October 25, 2019 2:53 PM |
| **To:** | Amber Lindsey (amber.lindsey84@gmail.com); Amber Tyler (amberd156@gmail.com); Amir Ziga (amirziga@aol.com); Andrew Cooper (andrew.c42275@gmail.com); Annette Greer (soupiegreer@hotmail.com); Brad Bucklin (brad@bucklin.net); Brian Butler (brianbutler718@gmail.com); Brittany Hopkins (brittany94jo@gmail.com); Candy Butler (candygailbutler@gmail.com); Candy Holder (candyholder@bellsouth.net); Cary Hood (caryhood@twc.com); Casey Vensel (casey.vensel734@topper.wku.edu); Celina Ringen (celinajo610@aol.com); Charles Parsons (CRPSR13@windstream.net); Chris Bray (wcdeputy656@yahoo.com); Chris Troutman (Troutman821@gmail.com); Clint Parsons (bebop5805@yahoo.com); Colton Cline (ccline4444@gmail.com); Courtney Adwell (c.adwell695@yahoo.com); Cristian Garcia (garciacristian11@yahoo.com); Daniel Comeau (danielcomeau227@gmail.com); Davis, Tracy M  (WARCO); Donna Poynter (dpoynter1961@aol.com); Miles, Doug  (WARCO); Eddie Pendleton (wcrj604@outlook.com); Emily Barnes (cnehome3699@yahoo.com); Garrett Pickett (deputypickett670@gmail.com); Hasan Mehmedovic (HasanMehmedovic1210@yahoo.com); Heather Miller (heathermiller697@gmail.com); Irina Avakova (iraida2869@yahoo.com); Jacob Thomas (92jacob.thomas@gmail.com); Jacob Webb (jawkillr101d@gmail.com); Jason Rigsby (jason.rigsby@warrencountyjail); Jason Stilts (rev_jason_pruitt@yahoo.com); Jeff Bryant (JeffBryantAthletics@gmail.com); Jerod Borden (JerodBorden@gmail.com); Joe Meredith; John Gorecki (Stormk6@yahoo.com); John Hussey (john.hussey605@gmail.com); John Paschal (jfpaschal@yahoo.com); John Sanders (ddgreatdad@aol.com); Jonathan Oliver (JOHNATHANOLIVER56@GMAIL.COM); Joseph Blair (Joey2020022002@yahoo.com); Joseph Holman (jholman1692@gmail.com); Joyce Rigsby (JRIGSBY616@GMAIL.COM); Kaula Stuefen (kstuefen@gmail.com); Kayla Gilmore (first_responder9112005@yahoo.com); Merideth, Kelli H.  (WARCO); Kevin Harrod (kdharrod70@gmail.com); James, Kim K  (WARCO); Kimo Butler (kimocsnn@gmail.com); Kyrstin Corder (kyrstincorder@gmail.com); LaKeisha Crowder (kaitlyn.crowder@gmail.com); Bennett, Lana  (WARCO); Landon Embry (landonembry98@yahoo.com); Laura Vance (lblamb1985@aol.com); Boyd, LeAnn (WARCO); Bendel, Lindsey  (WARCO); Marissa Gilmore (marissa.holley2234@gmail.com); Matt Norris (norris90art@gmail.com); McPherson, Brian  (WARCO); Megan Treece (Mtreece0001@kctcs.edu); Wathen, Melissa  (WARCO); Melynda Allen (melynda.acdd@gmail.com); Michelle Buchanan (jmhbuchanan@gmail.com); Michelle Harris (mlm063078@yahoo.com); Mike Green (deputy633@gmail.com); Mike White (mikewhite1972@aol.com); Miranda Kinslow (shyanne2199@icloud.com); Nicki Allen (nickia22@yahoo.com); Randall Lile (RCLILE@SCRTC.COM); Rebecca Cooper (rebeccacooper37@yahoo.com); Robert Bradley (px447@aol.com); Robert Messer (biff.messer@yahoo.com); Sallie Harris (srh5b@live.com); Stephanie Human - WCRJ (stephaniehuman0624@gmail.com); Stephen Clingenpeel (nursdon@hotmail.com); Harmon, Stephen  (WARCO); Steve Franklin (sbn3@twc.com); Steve Franklin (sbn3@att.net); Steve Terrance (mngray601@gmail.com); Tanner, Taylor  (WARCO); Wendy Majors (w_majors@yahoo.com); whitley.lawson069@gmail.com; Whittlesey, Shawn (WARCO) |
| **Subject:** | Promotion - Chief Deputy / Secure Operations |

WCRJ Staff,

1

WarrenCounty1241

I am sure the word has already traveled, but I wanted to give you official notification of the outcome of the promotional process that concluded earlier this week.

First and foremost, both Captain Jason Rigsby and Captain Jeff Bryant did a great job during the interview process and either way the decision could have gone would have been a success for WCRJ. I wanted to let you know that I put extensive time into what you, as our rank and file, put on your promotional questionnaire responses. I took your compliments seriously and used this as a large portion of the decision making process. Additionally, I put a lot of stock into what the other Chiefs said after the interview process was conducted. Both candidates were very professional and took the process seriously. For this and MANY other reasons related to ALL of my staff, I am very proud of our agency.

I am proud to announce that Captain Jason Rigsby will be promoted effective 11/4/19 to the rank of Major and will assume duties as the Chief Deputy of Secure Operations. This promotion will allow for Major Brian McPherson to assume a new role as the Chief Deputy of Support Operations. This transition will not happen overnight, but will begin quickly and vigorously. Captain Jeff Bryant will assume command of day shift floor operations sometime in the very near future as well. I am very excited about all these shifts in my administration and what it will ultimately mean to each deputy here at WCRJ. We will begin to enhance our training abilities, the frequencies of the training sessions, and begin to work diligently on policy & procedure and the new deputy training program revision.

Congratulations and special thanks to both Jason and Jeff for going through the process. It's never easy to put yourself out there and take chances, but because of these chances, we are all better. I look forward to the next steps as we progress through the end of the year.


Jailer Stephen Harmon
Warren County Regional Jail
920 Kentucky Street
Bowling Green, KY 42101

Ph: 270-843-4606 / Fax: 270-843-5317
warrencountyjail.com

2

WarrenCounty1242

Patient: JASON RIGSBY, Sex: M
Date of Service: 12/15/2020 (Log# 13711222)

Patient ID: 97417



**ZipClinic KY**
651 US 31W BYP
STE 106
Bowling Green, KY 42101-4931
270-495-0440  F: 270-495-4122

## Patient Clinical Summary

Patient: JASON RIGSBY, Sex: M (████████)
Date of Birth: ████████
Log# 13711222 (Room# Exam 4)
*The patient has not been discharged in the system.*

You were seen at ZipClinic KY (US31WBYP) on Tuesday, December 15, 2020.

Your Diagnosis for today's visit is:

• ████████████████████████

You have been Prescribed the following ▮edications. Please take as instructed.

Medication Orders:

• ████████████████████████████████████

Recommendations/Plan:

• Please return to the clinic in 3 day(s) if not better. Call or return to this clinic sooner if your condition worsens or if you have any concerns.
• Please continue the Claritin daily and use visine drops.

  If no improvement please start using the prescribed eye drops.

  Follow up with an ophthalmologist

Instructions:

• Please read the Exit Care Documents provided:

████████████████████████

Thank you for allowing us to serve you today.
Please call this clinic at 270-495-0440 if your condition changes or you have any concerns.

The contents of this document were generated on 12/15/2020 at 10:28 AM and may be subject to change.

Page 1 of 2

Patient: JASON RIGSBY, Sex: M
Date of Service: 12/15/2020 (Log# 13711222)
Date of Birth:
Patient ID: 97417



**ZipClinic KY**
651 US 31W BYP
STE 106
Bowling Green, KY 42101-4931
270-495-0440  F: 270-495-4122

## Patient Clinical Summary

**Race:** White
**Ethnicity:** Not Hispanic or Latino
**Preferred Language:** English

**Your Reason for visiting us:**
- History of Present Illness:
- Complaint:
- 

**Your Vital Signs recorded during this visit were:**
- 

**Your Social History recorded includes:**
- Tobacco Use: denies

**Your Symptoms during this visit:**
The following symptoms were marked as negative/normal
The following symptoms were marked as positive/abnormal:

WarrenCounty1244

# How to Use Eye Drops and Eye Ointments

## HOW TO APPLY EYE DROPS

Follow these steps when applying eye drops:

1. Wash your hands.
2. Tilt your head back.
3. Put a finger under your eye and use it to gently pull your lower lid downward. Keep that finger in place.
4. Using your other hand, hold the dropper between your thumb and index finger.
5. Position the dropper just over the edge of the lower lid. Hold it as close to your eye as you can without touching the dropper to your eye.
6. Steady your hand. One way to do this is to lean your index finger against your brow.
7. Look up.
8. Slowly and gently squeeze one drop of medicine into your eye.
9. Close your eye.
10. Place a finger between your lower eyelid and your nose. Press gently for 2 minutes. This increases the amount of time that the medicine is exposed to the eye. It also reduces side effects that can develop if the drop gets into the bloodstream through the nose.

## HOW TO APPLY EYE OINTMENTS

Follow these steps when applying eye ointments:

1. Wash your hands.
2. Put a finger under your eye and use it to gently pull your lower lid downward. Keep that finger in place.
3. Using your other hand, place the tip of the tube between your thumb and index finger with the remaining fingers braced against your cheek or nose.
4. Hold the tube just over the edge of your lower lid without touching the tube to your lid or eyeball.
5. Look up.
6. Line the inner part of your lower lid with ointment.
7. Gently pull up on your upper lid and look down. This will force the ointment to spread over the surface of the eye.
8. Release the upper lid.
9. If you can, close your eyes for 1–2 minutes.

**Do not** rub your eyes. If you applied the ointment correctly, your vision will be blurry for a few minutes. This is normal.

## ADDITIONAL INFORMATION

- Make sure to use the eye drops or ointment as told by your health care provider.

- If you have been told to use both eye drops and an eye ointment, apply the eye drops first, then wait 3–4 minutes before you apply the ointment.
- Try not to touch the tip of the dropper or tube to your eye. A dropper or tube that has touched the eye can become contaminated.

This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

Document Released: 03/26/2002 Document Revised: 05/03/2016 Document Reviewed: 12/14/2015
Elsevier Interactive Patient Education ©2017 Elsevier Inc.

WarrenCounty1246

# H E A R T S A V E R

## Heartsaver®
## First Aid CPR AED



American
Heart
Association.

**Jason Rigsby**

**has successfully completed the cognitive and skills evaluations
in accordance with the curriculum of the American Heart Association
Heartsaver First Aid CPR AED Program.**
**Optional modules completed:**

Exam

### Issue Date
2/20/2020

### Training Center Name
Western Kentucky University

### Training Center ID
KY01345

### Training Center City, State
Bowling Green, KY

### Training Center Phone Number
(270) 745-3762

### Renew By
02/2022

### Instructor Name
Brian McPherson

### Instructor ID
01200846814

### eCard Code
206005587993

### QR Code



To view or verify authenticity, students and employers should scan this QR code with their mobile device or go to www.heart.org/cpr/mycards.
© 2020 American Heart Association. All rights reserved.   15-3002  R3/20

WarrenCounty1247



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Warren County Regional Jail Training Report

Date: _1-15-20_

Employee: _Jason Rigsby_          Badge Number: _673_

Instructor: _Ricky Norris_          Badge Number: _____

Location of Training: _Class D Classroom_

WCRJ Policy Number: _____

Training Completed: _Training of use and safety of Body Scanner_

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _Jason Rigsby_          Date: _1-15-20_

Supervisor Signature: _Bri Malone_          Date: _1-15-20_

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

WarrenCounty1248



# The WRAP
## BY SAFE RESTRAINTS, INC.

# Certificate of Completion

The Ultimate
Safe Restraint
System

This is to certify that

## Jason Rigsby

has successfully completed

## The WRAP Instructor Course
## by Safe Restraints, Inc.



—————————————————————
C. Edward Hammond, Instructor



—————————————————————
C. Edward Hammond, President
SAFE RESTRAINTS, INC.

Course
Completion Date

3-5-2020

WarrenCounty1249



# Warren County Regional Jail
## Stephen Harmon, Jailer

## Warren County Regional Jail Training Report

Date: _____3/5/2020_____

Employee: _Jason Rigsby_____   Badge Number: _673_

Instructor: _Scott Woods_____   Badge Number: _____

Location of Training: _____Class D_____

WCRJ Policy Number: _____

Training Completed: ___Training in the use and operation of the Wrap System___
_____
_____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _____   Date: _3-5-20_

Supervisor Signature: _____   Date: _____

920 Kentucky Street  |  Bowling Green, Kentucky 42101  |  Phone: 270.843.4606  |  Fax: 270.843.5317
warrencountyjail.com  |  WarCoJail@ky.gov

WarrenCounty1250



# Warren County Regional Jail
## Stephen Harmon, Jailer

### Warren County Regional Jail Training Report

Date: _____ 2/20/2020 _____

Employee: _____ Jason Rigsby _____   Badge Number: _____ 673 _____

Trainer: _____ Brian McPherson _____   Badge Number: _____ 659 _____

Location of Training: _____ Class D Classroom _____

WCRJ Policy Number: _____

Training Completed: _____ First Aid _____
_____ CPR _____
_____ AED Training _____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _____ Jason Rigsby _____   Date: __ 2-2020 __

Supervisor Signature: _____   Date: _____

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

# Certificate of Training

**PepperBall**

## INSTRUCTOR – ARMORER

*This is to certify that*

Jason Rigsby

*of the*

Warren County Regional Jail

*Has successfully completed the PepperBall Instructor / Armorer Training Course*

2/24/2020

Date

Expires 2/24/2022

*Monte Scott, Director of Training*

PepperBall is a Division of United Tactical Systems, LLC.

Steve Faulkner

Master Instructor

16 HOURS CREDIT

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | kacoclaims user <kacoclaims@uscky.com> |
| **Sent:** | Tuesday, January 14, 2020 9:49 AM |
| **To:** | Davis, Tracy M  (WARCO) |
| **Subject:** | Emailing - Rigsby, Jason 1-13-2020 FROI.pdf |
| **Attachments:** | Rigsby, Jason 1-13-2020 FROI.pdf |

**\*\*CAUTION\*\*  PDF attachments may contain links to malicious sites.  Please contact the COT Service Desk ServiceCorrespondence@ky.gov for any assistance.**

The claim number for Jason Rigsby is WC20201190425.  I have attached a copy of the first report for your records.

Carrie

**To report work injuries call 866-367-5226 to speak with a nurse.** No written report is required.

We also offer secure, online reporting of property & liability claims at no additional expense.

Pls reply to this email with any questions or requests for more information.

**KACo Claims Department**

KACoClaims@uscky.com

866-367-5226 phone

502-489-6430 fax

1

**IA-1**

**WORKERS COMPENSATION – FIRST REPORT OF INJURY OR ILLNESS**

| General | Employer (Name & Address inc. zip) Warren County Jail 920 Kentucky St Bowling Green, KY 42101 | Carrier/Administrator Claim Number | | Report Purpose Code |
|---|---|---|---|---|
| | | Jurisdiction KY | Jurisdiction Claim Number | |
| | | Insured Report Number | | |
| | | Employer's Location Address (if different) | | Location No. |
| | Sic Code | Employer FEIN | | Phone No. |

| Carrier/Claims Admin | Carrier (Name, Address & Phone Number) KACo (Kentucky Association of Counties) | Policy Period | Claims Admin (Name, Address & Phone Number) |
|---|---|---|---|
| | | To | Underwriters Safety & Claims, Inc. (BHN - Managed Care) |
| | | Check if self insured | PO Box 436499, Louisville, Kentucky 40253 (866-367-5226) |
| | Carrier FEIN | Policy Number or Self-Insured Number | Administrator FEIN |
| | Agent Name & Code Number | | |

| Employee/Wage | Legal Name (Last, First, Middle) Rigsby, Jason | Date of Birth | Social Security Number | Date Hired 4-24-2006 | State of Hire KY |
|---|---|---|---|---|---|
| | Address (Incl. Zip) ██████ | Sex ✓ Male ☐ Female ☐ Unknown | Marital Status ✓ Unmarried/Single/Div. ☐ Married ☐ Separated ☐ Unknown | Occupation/Job Title Chief Deputy Employment Status Full Time NCCI Class Code | |
| | Phone 270-792-1356 | | No. of Dependents | | |

| | Wage | | Day | Month | # Days Worked/WK | Full Pay for Date of Injury? | | Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| | | Per | Week | Other | | Did Salary Continue | | Yes | No |

| Occurrence | Time Employee Began Work 6:45 | ☐AM ✓PM | Date of Injury or Illness 1-13-2020 | Time Occurred 1:40 | ☐ AM ✓ PM | Last Work Date 1-13-2020 | Date Employer Notified 1-13-2020 | Date Disability Began |
|---|---|---|---|---|---|---|---|---|
| | Employer Contact Name/Phone Number Steven Harman 270-843-4606 ext 112 | | | | Type of Illness/Injury ██████ | | Part of Body Affected ██████ | |
| | Did Injury/Illness Exposure Occur on Employer's Premises? | Yes No | | | Type of Illness/Injury Code | | Part of Body Affected Code | |
| | Department of location where accident or illness exposure occurred | | | | All Equipment, Materials, or Chemical Employee was using illness exposure occurred. | | accident or | |
| | Specific Activity the Employee was engaged in when the accident or illness exposure occurred. | | | | Work Process the Employee Was Engaged in when accident occurred. | | exposure | |
| | How injury or illness/abnormal health condition occurred. Describe the sequence of events and include any objects or substances that directly injured the employee or made the employee ill. ████████████████ | | | | | | | Cause of Injury Code |

| | Date Returned to Work 1/13/2020 | If Fatal, Date of Death | Were Safeguards or Safety Equipment Provided? | | Yes | No |
|---|---|---|---|---|---|---|
| | | | Were they used? | | Yes | No |

| Treatment | Physician/Health Care Provider na | Hospital (Name & Address) na | Initial Treatment 0 ✓ No Medical Treatment 1 Minor: By Employer 2 Minor Clinic/Hosp. 3 Emergency Care 4 Hospitalized > 24 hr. 5 Future Major Medical/Lost Time Anticipated |
|---|---|---|---|

| Other | Witness to Accident (Name & Phone Number) na | | | |
|---|---|---|---|---|
| | Date Administrator Notified 1/13/2020 | Date Prepared 1/13/2020 | Preparer's Name & Title Amy Brafford, RN | Preparer's Phone Number 866-367-5226 |

IA-1 (2/95)

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page ___1___ Of ___1___

**NAME OF STAFF:**  Major Jason Rigsby

**DATE:**  1-13-2020                                    **TIME:**  0140

**DETAILS OF INCIDENT:** On the above date and approximate time I, was assisting moving the floor of the body scanner into Hall 28. While attempting to move the floor I felt a pulling/cramp like pain to my right side. Due to not getting proper assistance with my end. Major Brian McPherson, Deputies Joey Blair and Landon Embry were present during the incident.

**REPORTING DEPUTY:**     Major Jason Rigsby

**STAFF MEMBER:**     Major Jason Rigsby

**SHIFT SUPERVISOR:**  Major Jason Rigsby

**CHIEF DEPUTY:**     ~~Major Brian McPherson~~

**JAILER:**     Stephen Harmon



# WKU®

## OFFICE OF THE REGISTRAR

### Degree Verification

The degree verification system at Western Kentucky University is designed to expedite the sharing of academic information with many agencies and companies. We appreciate your acceptance of this verification since it provides a more prompt response than would the processing of individual forms.

Student Name: **Jason D. Rigsby**            Student Identification Number: ███████████

Attendance Period: **August 2002 - December 2019**       Date of Birth: ███████████

Degrees awarded at Western Kentucky University:

**Bachelor of Science**            **December 2019**

  Major:  Management

**REMARKS:** _____

_____

_____ 12/26/2019
Student Records Specialist            Date

*The Spirit Makes the Master*

Office of the Registrar | Western Kentucky University | 1906 College Heights Blvd. #11017 | Bowling Green, KY 42101-1017
phone: 270-745-3351 | fax: 270-745-4830 | email: registrar@wku.edu | web: www.wku.edu/registrar
*Equal Education and Employment Opportunities • Printing paid from state funds, KRS 57.375 • Hearing Impaired Only 270.745.5389*

WarrenCounty1256



# SOUTH WARREN HIGH SCHOOL

8140 Nashville Road • Bowling Green, KY 42101
Phone: (270) 467-7500 • Fax: (270) 467-7506

Jenny Hester, *Principal* • Ken Waddell and Chuck Wolfram, *Assistant Principals*

April 27, 2018

Captain Jason Rigsby
Warren County Regional Jail
920 Kentucky Street
Bowling Green, KY 42101

Dear Captain Rigsby,

Thank you for giving a tour of the Warren County Regional Jail to our class. The tour was very educational and engaging. I appreciate you taking time out of your very busy day to show us how life is in jail, and thank you for all of the information you gave us about your experience working in the jail.

From the tour, I learned a lot about the different parts of the jail. For example, living conditions vary depending on how the prisoners act, and the prison is divided based on the level of crime. I also learned that the inmates themselves do a lot of the work inside the prison, such as preparing laundry and making food. Also, security was safer than I honestly expected from a regional jail. I could see that you take great pride in your work as well as being able to keep the prison in great condition. I really enjoyed my visit there, and thank you for keeping bowling green safe.

Sincerely,

*Chris Haughtigan*

Chris Haughtigan

# Benefits Enrollment Form 2019



# Febco Benefits Administration

## H/R Information

Employer Name: __Warren County Fiscal Court__    Department: __Jail__

Benefit Start Date: __9-1-2019__    Date of hire: __4-24-2006__    First Payroll Deduction: _____

Paycheck Frequency (Circle one): Weekly    (Bi-weekly)    Semi-Monthly    Monthly    Other: _____

## Participant Information

First Name: __Jason__    Middle Initial: __D__    Last Name: __Rigsby__

Social Security Number: ████████    Birthday: ████████

Street A██████████████████████████████

City: __█████████████████████████████████

Work Pl██████████████████████████████████

E-Mail .██████████████████████████████████

## Spouse Information

Spouse Name (Additional Card): ████████

Social Security Number: ████████    Birthday: ████████

## Dependent Information

Name: _____    Relationship: _____

Social Security Number: _____    Birthday: _____

Name: _____    Relationship: _____

Social Security Number: _____    Birthday: _____

Name: _____    Relationship: _____

Social Security Number: _____    Birthday: _____

Name: _____    Relationship: _____

Social Security Number: _____    Birthday: _____

| Customer Service: 502-695-9690 | Form: BENENROLLMENT01072019 |
|---|---|

WarrenCounty1258

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Davis, Tracy M  (WARCO) |
| **Sent:** | Wednesday, August 28, 2019 7:43 AM |
| **To:** | Harvey, Bob C  (WARCO) |
| **Subject:** | JASON RIGSBY (FEBCO) |
| **Attachments:** | JASON RIGSBY (FEBCO).pdf |

I can't find that I have emailed this to you – he WAIVED his health coverage effective 09/01/19 due to his spouse adding him to her coverage.  I have already emailed you the application to DECLINE coverage effective 09/01/19.

Warren County Regional Jail

**Tracy Davis, Major**
920 Kentucky Street | Bowling Green, KY  42101
Phone: 270.843.4606 ext 106 | Fax: 270.843.5317
tracym.davis@ky.gov | warrencountyjail.com

1

WarrenCounty1259



# Warren County Regional Jail
## Stephen Harmon, Jailer

## Warren County Regional Jail Training Report

Date: _____11/16/2019_____

Employee: _____Jwon Rigsby_____        Badge Number: **673**

Instructor: _____Brian McPherson_____        Badge Number: 659

Location of Training: _____WCRJ Classroom_____

WCRJ Policy Number: _____

Training Completed: _____Report Writing, Mental Health, Use of Force_____
_____and Transportation_____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _____    Date: 11-16-19

Supervisor Signature: _____    Date: 11-16-19

920 Kentucky Street    Bowling Green, Kentucky 42101    Phone: 270.843.4606    Fax: 270.843.5317
warrencountyjail.com    WarCoJail@ky.gov

WarrenCounty1260

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** __Captain Jason Rigsby__

**DATE:** __11-26-2018__                    **TIME:** __0715__

**DETAILS OF INCIDENT:** On the above date and approximate time, I was late for my assigned shift. I will try to make sure this does not happen again, and apologize for any inconvenience this may have caused.

**REPORTING DEPUTY:**    Captain Jason Rigsby

**STAFF MEMBER:**    Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Major Brian McPherson

**JAILER:**   Stephen Harmon

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Carrie Downs <carried@uscky.com> |
| **Sent:** | Tuesday, May 1, 2018 8:54 AM |
| **To:** | Davis, Tracy M  (WARCO) |
| **Subject:** | Re: WORK CLAIMS (RIGSBY AND OLNEY) |

The claim numbers are:
Jason Rigsby  WC20181114825

Thanks!

*Carrie Downs*
Underwriters Safety & Claims
P:866-367-5226 ext. 6223
F:502-489-6430
Email: carried@uscky.com

>>> "Davis, Tracy M  (WARCO)" <TracyM.Davis@ky.gov> 4/30/2018 1:36 PM >>>
Please see attached... they **DID NOT** seek medical attention.

Warren County Regional Jail
**Tracy Davis, Chief Deputy**
920 Kentucky Street | Bowling Green, KY  42101
Phone: 270.843.4606 ext 106 | Fax: 270.843.5317
tracym.davis@ky.gov | warrencountyjail.com

1

WarrenCounty1262

**IA-1     WORKERS COMPENSATION – FIRST REPORT OF INJURY OR ILLNESS**

### General

| Employer (Name & Address incl. zip) | Carrier/Administrator Claim Number | Report Purpose Code |
|---|---|---|
| Warren county Fiscal court<br>429 East 10th Avenue<br>Bowling Green, KY  42101 | Jurisdiction | Jurisdiction Claim Number |
| | Insured Report Number | |

| | Employer's Location Address (if different) | Location No. |
|---|---|---|
| | Warren County Regional Jail<br>920 Kentucky Street<br>Bowling Green, KY  412101 | |
| Sic Code | Employer FEIN | Phone No.<br>270-843-4606 |

### Carrier/Claims Admin

| Carrier (Name, Address & Phone Number) | Policy Period | Claims Admin (Name, Address & Phone Number) |
|---|---|---|
| KACO CLAIMS<br>P.O. Box 991009<br>Louisville, KY  40269-1009 | To | |
| | ☐ Check if self insured | |

| Carrier FEIN | Policy Number or Self-Insured Number | Administrator FEIN |
|---|---|---|

| Agent Name & Code Number |
|---|

### Employee/Wage

| Legal Name (Last, First, Middle)<br>RIGSBY, JASON | Date of Birth ▉ | Social Security Number ▉ | Date Hired<br>04/25/2006 | State of Hire<br>KY |
|---|---|---|---|---|

| Address (Incl. Zip)<br>▉ | Sex | Marital Status | Occupation/Job Title<br>Captain/Deputy Jailer |
|---|---|---|---|
| | ☒ Male | ☒ Unmarried/Single/Div. | |
| | ☐ Female | ☐ Married | Employment Status<br>Full-Time |
| | ☐ Unknown | ☐ Separated | |

| Phone ▉ | No. of Dependents | ☐ Unknown | NCCI Class Code |
|---|---|---|---|

| Wage Rate ▉ | ☐ Day | ☐ Month | # Days Worked/WK 5 | Full Pay for Date of Injury? | ☒ Yes | ☐ No |
|---|---|---|---|---|---|---|
| | ☐ Week | ☒ Other | # Hrs Worked per Day 8 | Did Salary Continue? | ☒ Yes | ☐ No |

### Occurrence

| Time Employee Began Work 07:00  ☒ AM ☐ PM | Date of Injury or Illness 04/27/2018 | Time Occurred 1125 | ☒ AM ☐ PM | Last Work Date 04/27/2018 | Date Employer Notified 04/27/2018 | Date Disability Began n/a |
|---|---|---|---|---|---|---|

| Employer Contact Name/Phone Number<br>Tracy Davis 270-843-4606 | Type of Illness/Injury<br>injury | Part of Body Affected ▉ |
|---|---|---|
| Did Injury/Illness Exposure Occur on Employer's Premises?  ☐ Yes ☒ No<br>yes | Type of Illness/Injury Code | Part of Body Affected Code |

| Department or location where accident or illness exposure occurred<br>Around Booking Area | All Equipment, Materials, or Chemicals Employee was using when accident or illness exposure occurred.<br>n/a |
|---|---|
| Specific Activity the Employee was engaged in when the accident or illness exposure occurred.<br>▉ | Work Process the Employee Was Engaged in when accident or illness exposure occurred.<br>daily duties |

| How injury or illness/abnormal health condition occurred. Describe the sequence of events and include any objects or substances that directly injured the employee or made the employee ill.<br>See Staff Injury Report . | Cause of Injury Code |
|---|---|

| Date Returned to Work<br>04/27/2018 | If Fatal, Date of Death<br>NA | Were Safeguards or Safety Equipment Provided?  ☒ Yes ☐ No |
|---|---|---|
| | | Were they used?  ☒ Yes ☐ No |

### Treatment

| Physician/Health Care Provider (Name & Address)<br>n/a | Hospital (Name & Address) | Initial Treatment |
|---|---|---|
| | | 0 ☒ No Medical Treatment<br>1 ☐ Minor: By Employer<br>2 ☐ Minor Clinic/Hosp<br>3 ☐ Emergency Care<br>4 ☐ Hospitalized > 24 hr.<br>5 ☐ Future Major Medical/Lost Time Anticipated |

### Other

| Witness to Accident (Name & Phone Number)<br>n/a |
|---|

| Date Administrator Notified<br>04/27/2018 | Date Prepared<br>04/30/2018 | Preparer's Name & Title<br>Tracy Davis- Chief Administrative Deputy | Preparer's Phone Number<br>270-843-4606 |
|---|---|---|---|

| IA-1 (2/95) | SEE NEXT PAGE FOR IMPORTANT STATE INFORMATION/SIGNATURE |
|---|---|

*Emailed kaco 4/30/18*

WarrenCounty1263

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** __Captain Jason Rigsby / Inmate Mathis__

**DATE:** __4/27/2018__                    **TIME:** __1125__

**DETAILS OF INCIDENT:** On the above date and approximate time I, Captain Jason Rigsby, was getting more copier paper for booking. When I walked past Inmate William Mathis who was in the restraint chair he stated "Hey fat boy" then spit at my person. Inmate Mathis' saliva landed on the right side of my face, right shoulder, and right arm. I cleaned the spit off my person and clothing in booking. It is unknown at this time if Inmate Mathis has any communicable diseases. A spit hood was reapplied by Captain Chip Olney (See report by Captain Olney). Camera footage was exported to Common drive – Deputy Incidents "Rigsby and Olney 04272018". All actions were taken for the safety and security of the WCRJ, Staff, and Inmates.

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:** _____

**SHIFT SUPERVISOR:**  Captain Jason Rigsby

**CHIEF DEPUTY:**   C/D Misse Causey

**JAILER:**   Stephen Harmon



THIS CERTIFICATION IS HEREBY GRANTED TO

# JASON RIGSBY

FOR COMPLETION OF

## TASER CEW INSTRUCTOR CERTIFICATION

VALID FROM: **02/21/2018** THROUGH: **02/21/2020**

This certifies that the above named individual has completed the training required and has passed a written examination in the use and instruction of TASER X26P, X26 and X2 Conducted Electrical Weapon(s). The above named individual is hereby certified as a TASER CEW instructor and may certify others as users under the guidelines of TASER Training, in care of Axon Academy.

By accepting this TASER CEW Instructor Certificate, the Student accepts the terms of the Training Materials License Agreement, incorporated herein by reference, and agrees to be bound by its terms as a Licensee of Axon Enterprise, Inc.

In witness whereof, Axon Enterprise, Incorporated has caused this certificate to be signed by its duly authorized representative.



Steven Faulkner

Certifying Master Instructor

02/21/2018

Date

WarrenCounty1265

# Certificate of Training

## PepperBall

# INSTRUCTOR – ARMORER

*This is to certify that*

**Jason Rigsby**

*of the*

**Warren County Regional Jail**

*Has successfully completed the PepperBall Instructor / Armorer Training Course*

2/22/2018

Steve Faulkner

*Master Instructor*

*Date*

Expires 2/22/2020

*Monte Scott, Director of Training*

16 HOURS CREDIT

PepperBall is a Division of United Tactical Systems, LLC.

WarrenCounty1266



WARREN COUNTY REGIONAL JAIL

Captain J.Rigsby

THE COMMONWEALTH OF KENTUCKY
COUNTY OF WARREN

Jason Rigsby

IS DULY COMMISSIONED AS A DEPUTY JAILER AND PEACE
OFFICER AT THE WARREN COUNTY REGIONAL JAIL. THUS
AUTHORIZED TO CARRY FIREARMS, MAKE ARRESTS FOR
OFFENSES IN WARREN COUNTY, AND PERFORM SUCH
OTHER DUTIES AS AUTHORIZED BY LAW.

STEPHEN HARMON, WARREN COUNTY JAILER

WarrenCounty1267

**THE SAFARILAND**
*TRAINING GROUP*

# CERTIFICATE OF COMPLETION

# Jason Rigsby

Has Completed the Basic Instructor Course Requirements for

**OC Aerosol (8hrs), Less Lethal Impact Munitions (8hrs)**
**Chemical Munitions (8hrs), Distraction Devices (8hrs)**

**Mike Mello**
Instructor

**11/14/2017**
Date Completed

Director of Training
Sandy Wall

**11/30/2020**
Expiration Date



**DEFENSE TECHNOLOGY**

WarrenCounty1268

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Rigsby, Jason  (WARCO) |
| **Sent:** | Tuesday, July 18, 2017 3:27 AM |
| **To:** | Davis, Tracy M  (WARCO) |
| **Subject:** | New Home Address |

Tracy,

My new address is,



My pay stub still has my parents address on  do I need to notify the treasurer office?

Thanks!

**Captain Jason Rigsby**
*3rd Shift Supervisor - S.E.R.T. Co-Commander*
*Warren County Regional Jail*
*920 Kentucky St.*
*Bowling Green, KY 42101*
*(270) 843-4606*



1



# Warren County Regional Jail
## Stephen Harmon, Jailer

## Warren County Regional Jail Training Report

Date: _____8/6/2020_____

Employee: _____Jason Rigsby_____     Badge Number: ___673___

Instructor: _____Greg Coker_____     Badge Number: _____

Location of Training: _____Soft Skills Boot Camp_____

WCRJ Policy Number: _____

Training Completed: _____Power Point_____
_____
_____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _____Jason Rigsby_____     Date: 8-28-2020

Supervisor Signature: _____     Date: 8-28-2020

920 Kentucky Street   |   Bowling Green, Kentucky 42101   |   Phone: 270.843.4606   |   Fax: 270.843.5317
warrencountyjail.com   |   WarCoJail@ky.gov

WarrenCounty1270

*New Coverage Eff 09.01.19*

**Benefit Selection Form**     **WARREN COUNTY GOVERNMENT**     Effective 7/1/2019

Employee Name: _Jason Rigsby_     DOB: ▮

Address: ▮

Social Security # ▮    Date of Hire: _4-24-06_    Department: _WCRT_

## ENROLLMENT INSTRUCTIONS

Effective July 1, 2019, the medical insurance will be offered to employees of Warren County Government will continue to be offered through Anthem. This year, employees will have 3 plan options to choose from. **You must make your plan choice below. If you wish to cover your dependents, you MUST complete the dependent information section below. If no dependents are listed, your coverage will be for single only. Please see the benefit summary for complete details. If no plan choice is made below, you will not have medical coverage on July 1, 2019. ***Please note, vision benefits included with medical differ from Stand-Alone benefits.**

## MEDICAL PLAN (VISION INCLUDED) – ANTHEM

| Plan Option | High Plan 02 Rx E13 | Middle Plan 30 Rx E13 | Core Plan HSA E05E7 |
|---|---|---|---|
| Deductible (Individual / Family) | $250 / $750 | $2,500 / $5,000 | $5,000 / $10,000 |
| Coinsurance | 20% | 20% | 0% |
| Medical Plan Maximum Out-of-Pocket | $3,200 / $6,400 | $6,600 / $13,200 | $6,450 / $12,900 |
| *All medical and pharmacy copayments will apply to your Maximum Out-of-Pocket.* | | | |
| Hospitalization | Deductible & Coinsurance | Deductible & Coinsurance | 100% After Deductible |
| ER | $250 Copayment + Ded/Coins | $250 Copayment + Ded/Coins | Deductible Then $250 |
| Urgent Care | $75 Copayment | $75 Copayment | Deductible Then $75 |
| Primary Care Office Visit | $20 Copayment | $25 Copayment | Deductible Then $30 |
| Specialist Office Visit | $50 Copayment | $50 Copayment | Deductible Then $60 |
| Preventive Care | No Cost to You | No Cost to You | No Cost to You |
| Retail Prescription Drugs | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% | Deductible Then: $10 / $30 / $50 / 25% |
| Mail Order Prescription Drugs | $10 / $75 / $180 / 25% | $10 / $75 / $180 / 25% | Deductible Then: $10 / $75 / $150 / 25% |
| **EMPLOYEE MONTHLY CONTRIBUTION – WELLNESS PARTICIPATION** *Mark Enrollment Choice Below* | | | |
| Employee Only | ❑ $220.05 | ❑ $104.63 | ❑ -$30.54 |
| Employee & Spouse | ❑ $1009.99 | ❑ $767.61 | ❑ $483.75 |
| Employee & Child(ren) | ❑ $795.38 | ❑ $587.63 | ❑ $344.32 |
| Family | ❑ $1799.93 | ❑ $1430.58 | ❑ $998.04 |
| **EMPLOYEE MONTHLY CONTRIBUTION – NO WELLNESS PARTICIPATION** *Mark Enrollment Choice Below* | | | |
| Employee Only | ❑ $270.05 | ❑ $154.63 | ❑ $19.46 |
| Employee & Spouse | ❑ $1059.99 | ❑ $817.61 | ❑ $533.75 |
| Employee & Child(ren) | ❑ $845.38 | ❑ $637.63 | ❑ $394.32 |
| Family | ❑ $1849.93 | ❑ $1480.58 | ❑ $1048.04 |

☑ Please check this box to drop / decline medical coverage.

**Warren County Government is paying $500 toward your medical coverage in 2019, if you participate in the wellness program. Without wellness participation, Warren County Government will pay $450. The negative amounts represented in the Employee Only cost for Core Plan above will be deposited into your Flexible Spending Account on your behalf.**

**If you score more than 300 points in your wellness program, you will receive an additional $25. If you score more than 600 points, you will receive $75 for a total of $575 toward your medical coverage.**

WarrenCounty1271

## MEDICAL BRIDGE – COLONIAL

Effective January 1, 2018, you will have the opportunity to participate in a Medical Bridge plan to help offset some of the cost of the medical plan deductible.  **If you wish to change your enrollment or enroll for the first time, please contact Frankie Williams at Colonial.  Frankie can be reached at (270) 784-1600.**

## DENTAL BENEFITS – DELTA DENTAL

Effective July 1, 2019, dental benefits will continue to be offered through Delta Dental.  In order to ensure your dental benefits are enrolled correctly, you MUST mark your benefit selection below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| In Network Benefit Description | |
|---|---|
| Deductible | $25 / $75 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% with $1,000 Lifetime Max |
| Monthly Premium | |
| Employee Only | ☑ $18.54 |
| Employee + 1 | ☐ $40.34 |
| Family | ☐ $74.32 |
| ☐ Please check here to drop or decline dental coverage. | |

## VISION BENEFITS (STAND-ALONE) – ANTHEM

Effective July 1, 2019, vision benefits will continue to be offered through Anthem.  In order to ensure your vision benefits are enrolled correctly, you MUST mark your benefit selection below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $10.00 | Every 12 Months |
| Lenses | $20.00 | Every 12 Months |
| Frames | $20.00 | Every 24 Months |
| Elective Contacts | $20.00 (Max $130) | Every 12 Months |
| Monthly Premium | | |
| Employee | ☐ $ 8.09 | |
| Employee + One | ☐ $14.16 | |
| Family | ☐ $22.65 | |
| ☑ Please check here to drop or decline vision coverage. | | |

## DEPENDENT INFORMATION

| Name | Relationship | Gender | DOB | SSN | Enroll Medical | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|---|---|
| _____ | Spouse | _____ | _____ | _____ | ☐ | ☐ | ☐ |
| _____ | Child | _____ | _____ | _____ | ☐ | ☐ | ☐ |
| _____ | Child | _____ | _____ | _____ | ☐ | ☐ | ☐ |
| _____ | Child | _____ | _____ | _____ | ☐ | ☐ | ☐ |
| _____ | Child | _____ | _____ | _____ | ☐ | ☐ | ☐ |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form.  Such reductions, considered as elective contributions under the plan, shall commence on July 1, 2019.  I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year.  I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _____          Date 8-12-18

WarrenCounty1272

## Davis, Tracy M  (WARCO)

| | |
|---|---|
| **From:** | Davis, Tracy M  (WARCO) |
| **Sent:** | Monday, August 12, 2019 3:31 PM |
| **To:** | Copeland, Ronda |
| **Cc:** | Harvey, Bob C  (WARCO) |
| **Subject:** | RE: Insurance |
| **Attachments:** | JASON RIGSBY (WAIVER OF COVERAGE).pdf |
| | |
| **Importance:** | High |

Please see attached – he is WAIVING effective 09/01/19.  His wife has added him to her policy due to family coverage effective 09/01/19.

**From:** Copeland, Ronda <rcopeland@higusa.com>
**Sent:** Wednesday, July 31, 2019 9:24 AM
**To:** Davis, Tracy M (WARCO) <TracyM.Davis@ky.gov>
**Subject:** RE: Insurance

Yes that is a qualifying event.  You can submit the selection form and just write the effective date of the new coverage at the top.
Thanks!

**Ronda Copeland**
*Account Manager*
**Houchens Benefits**
*1750 Scottsville Road, Suite 4*
*Bowling Green, KY 42104*
Phone:  (270) 793-0367
Fax:     (270) 793-0742
rcopeland@higusa.com





NOTICE: This communication, together with any attachments and/or links, is for the sole use of the intended recipient(s) and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by return e-mail message and delete the original and all copies of the communication, along with any attachments and/or links, from your system.

**From:** Davis, Tracy M (WARCO) [mailto:TracyM.Davis@ky.gov]
**Sent:** Wednesday, July 31, 2019 9:16 AM
**To:** Copeland, Ronda <rcopeland@higusa.com>
**Subject:** EXTERNAL EMAIL: FW: Insurance

WarrenCounty1273

# Form W-4 (2019)

**Future developments.** For the latest information about any future developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4*.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** You may claim exemption from withholding for 2019 if **both** of the following apply.

• For 2018 you had a right to a refund of **all** federal income tax withheld because you had **no** tax liability, **and**

• For 2019 you expect a refund of **all** federal income tax withheld because you expect to have **no** tax liability.

If you're exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2019 expires February 17, 2020. See Pub. 505, Tax Withholding and Estimated Tax, to learn more about whether you qualify for exemption from withholding.

## General Instructions

If you aren't exempt, follow the rest of these instructions to determine the number of withholding allowances you should claim for withholding for 2019 and any additional amount of tax to have withheld. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

You can also use the calculator at *www.irs.gov/W4App* to determine your tax withholding more accurately. Consider using this calculator if you have a more complicated tax situation, such as if you have a working spouse, more than one job, or a large amount of nonwage income not subject to withholding outside of your job. After your Form W-4 takes effect, you can also use this calculator to see how the amount of tax you're having withheld compares to your projected total tax for 2019. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

Note that if you have too much tax withheld, you will receive a refund when you file your tax return. If you have too little tax withheld, you will owe tax when you file your tax return, and you might owe a penalty.

**Filers with multiple jobs or working spouses.** If you have more than one job at a time, or if you're married filing jointly and your spouse is also working, read all of the instructions including the instructions for the Two-Earners/Multiple Jobs Worksheet before beginning.

**Nonwage income.** If you have a large amount of nonwage income not subject to withholding, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you might owe additional tax. Or, you can use the Deductions, Adjustments, and Additional Income Worksheet on page 3 or the calculator at *www.irs.gov/W4App* to make sure you have enough tax withheld from your paycheck. If you have pension or annuity income, see Pub. 505 or use the calculator at *www.irs.gov/W4App* to find out if you should adjust your withholding on Form W-4 or W-4P.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

## Specific Instructions

### Personal Allowances Worksheet

Complete this worksheet on page 3 first to determine the number of withholding allowances to claim.

**Line C. Head of household please note:** Generally, you may claim head of household filing status on your tax return only if you're unmarried and pay more than 50% of the costs of keeping up a home for yourself and a qualifying individual. See Pub. 501 for more information about filing status.

**Line E. Child tax credit.** When you file your tax return, you may be eligible to claim a child tax credit for each of your eligible children. To qualify, the child must be under age 17 as of December 31, must be your dependent who lives with you for more than half the year, and must have a valid social security number. To learn more about this credit, see Pub. 972, Child Tax Credit. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line E of the worksheet. On the worksheet you will be asked about your total income. For this purpose, total income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line F. Credit for other dependents.** When you file your tax return, you may be eligible to claim a credit for other dependents for whom a child tax credit can't be claimed, such as a qualifying child who doesn't meet the age or social security number requirement for the child tax credit, or a qualifying relative. To learn more about this credit, see Pub. 972. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line F of the worksheet. On the worksheet, you will be asked about your total income. For this purpose, total

---

------------------------- **Separate here and give Form W-4 to your employer. Keep the worksheet(s) for your records.** -------------------------

| Form **W-4** | **Employee's Withholding Allowance Certificate** | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Whether you're entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | **2019** |

| 1 Your first name and middle initial | Last name | 2 Your social security number |
|---|---|---|
| Jason          D | Rigsby | |

| 3 ☐ Single   ☐ Married   ☐ Married, but withhold at higher Single rate. |
|---|
| **Note:** If married filing separately, check "Married, but withhold at higher Single rate." |
| 4 If your last name differs from that shown on your social security card, check here. You must call 800-772-1213 for a replacement card.  ▶ ☐ |

| 5 | Total number of allowances you're claiming (from the applicable worksheet on the following pages) . . . . | 5 | 1 |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . | 6 | $ |
| 7 | I claim exemption from withholding for 2019, and I certify that I meet **both** of the following conditions for exemption. | | |

• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and**

• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.

If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . . ▶ | 7 |

Under penalties of perjury, I declare that I have examined this certificate, and to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(This form is not valid unless you sign it.) ▶ *Jason Rigsby*        Date ▶ 7-31-2019

| 8 Employer's name and address (**Employer:** Complete boxes 8 and 10 if sending to IRS and complete boxes 8, 9, and 10 if sending to State Directory of New Hires.) | 9 First date of employment | 10 Employer identification number (EIN) |
|---|---|---|

**For Privacy Act and Paperwork Reduction Act Notice, see page 4.**        Cat. No. 10220Q        Form **W-4** (2019)

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Davis, Tracy M  (WARCO) |
| **Sent:** | Wednesday, July 31, 2019 11:39 AM |
| **To:** | Harvey, Bob C  (WARCO) |
| **Subject:** | JASON RIGSBY / BRITTANY HOPKINS |
| **Attachments:** | JASON RIGSBY (W4 FORM).pdf; BRITTANY HOPKINS (DIRECT DEPOSIT).pdf |

Warren County Regional Jail

**Tracy Davis, Chief Deputy**
920 Kentucky Street | Bowling Green, KY  42101
Phone: 270.843.4606 ext 106 | Fax: 270.843.5317
tracym.davis@ky.gov | warrencountyjail.com

1

WarrenCounty1275



# SOUTH WARREN HIGH SCHOOL

8140 Nashville Road • Bowling Green, Kentucky 42101
Phone: (270) 467-7500 • Fax: (270) 467-7506

Jenny Hester, *Principal*
Ken Waddell, *Assistant Principal*
Chuck Wolfram, *Assistant Principal*
Matt Deaton, *Dean of Students*

May 8, 2019

Jason Rigsby
Warren County Regional Jail
920 Kentucky St.
Bowling Green, KY 42101

Dear Mr. Rigsby,

Thank you for taking the time out of your day to guide my Business Law class around the jail. I found it interesting and rather discouraging that the return rate for inmates is 12 times. Another fact you gave us that impacted my way of thinking was the cycle of those who are abused sexually and end up in jail right next to the ones who abuse them due to dealing with their issues by using drugs. The world is a crazy place, but because of officers like you, the community is a safer place and the inmates are being handled accordingly. Even though the inmates have done terrible things, it is comforting to know they have an opportunity to learn through the various programs available. The visiting kiosks are a very inventive and useful tool for the jail. I thoroughly enjoyed listening to what your job entails and what a normal day looks like in the jail. Observing how inmates live in the jail is very conflicting and even more reason to continue being a good kid who stays out of trouble. Thanks again for being so informative and taking time to show us the important responsibilities you have as a correctional officer.

Sincerely,

*Jessica Meredith*

Jessica Meredith

WarrenCounty1276

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** Captain Jason Rigsby

**DATE:** 2/20/19                    **TIME:** 1249

**DETAILS OF INCIDENT:** Major Brian McPherson and I met with Captain Jason Rigsby this day related to concerns with his recent testimony in Warren District Court Comm-vs-Travis Locke. After reviewing the testimony and receiving a complaint from Kentucky State Police, I concur with findings by KSP related to remarks about "VIP status". I spoke with Rigsby about the situation being subpoenaed by the defense and the specific terminology of "VIPs". He expressed understanding about "high profile" being my suggestion to better explain what he was trying to convey during his testimony. We will implement a policy where anyone who received notice to appear in court would copy me or notify me. This is to serve as documentation only.

**JAILER:**

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** Captain Jason Rigsby

**DATE:** 11-26-2018                    **TIME:** 0715

**DETAILS OF INCIDENT:** On the above date and approximate time, I was late for my assigned shift. I will try to make sure this does not happen again, and apologize for any inconvenience this may have caused.

**REPORTING DEPUTY:** Captain Jason Rigsby

**STAFF MEMBER:** Captain Jason Rigsby

**SHIFT SUPERVISOR:** Captain Jason Rigsby

**CHIEF DEPUTY:** Major Brian McPherson

**JAILER:** Stephen Harmon

WarrenCounty1278

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Carrie Downs <carried@uscky.com> |
| **Sent:** | Tuesday, May 1, 2018 8:54 AM |
| **To:** | Davis, Tracy M  (WARCO) |
| **Subject:** | Re: WORK CLAIMS (RIGSBY AND OLNEY) |

The claim numbers are:
Jason Rigsby  WC20181114825
Courtney Olney WC20181114829.

Thanks!

*Carrie Downs*
Underwriters Safety & Claims
P:866-367-5226 ext. 6223
F:502-489-6430
Email: carried@uscky.com


>>> "Davis, Tracy M  (WARCO)" <TracyM.Davis@ky.gov> 4/30/2018 1:36 PM >>>
Please see attached... they **DID NOT** seek medical attention.

Warren County Regional Jail
**Tracy Davis, Chief Deputy**
920 Kentucky Street | Bowling Green, KY  42101
Phone: 270.843.4606 ext 106 | Fax: 270.843.5317
tracym.davis@ky.gov | warrencountyjail.com

1

**IA-1**    **WORKERS COMPENSATION – FIRST REPORT OF INJURY OR ILLNESS**

| General | Employer (Name & Address incl. zip)<br>Warren county Fiscal court<br>429 East 10th Avenue<br>Bowling Green, KY 42101 | Carrier/Administrator Claim Number | Report Purpose Code |
|---|---|---|---|

Jurisdiction | Jurisdiction Claim Number

Insured Report Number

Employer's Location Address (if different)
Warren County Regional Jail
920 Kentucky Street
Bowling Green, KY 412101    Location No.

Phone No.
270-843-4606

| Sic Code | Employer FEIN |
|---|---|

**Carrier/Claims Admin**

Carrier (Name, Address & Phone Number)
KACO CLAIMS
P.O. Box 991009
Louisville, KY 40269-1009

Policy Period

To

☐ Check if self insured

Claims Admin (Name, Address & Phone Number)

Carrier FEIN | Policy Number or Self-Insured Number | Administrator FEIN

Agent Name & Code Number

**Employee/Wage**

Legal Name (Last, First, Middle)
RIGSBY, JASON

Date of Birth ████

Social Security Number ████

Date Hired
04/25/2006

State of Hire
KY

Address (Incl. Zip) ████

Sex
☒ Male
☐ Female
☐ Unknown

Marital Status
☒ Unmarried/Single/Div.
☐ Married
☐ Separated
☐ Unknown

Occupation/Job Title
Captain/Deputy Jailer

Employment Status
Full-Time

Phone ████

No. of Dependents

NCCI Class Code

Wage Rate ████

☐ Day
☐ Week
☒ Other

☐ Month

# Days Worked/WK 5
# Hrs Worked per Day 8

Full Pay for Date of Injury? ☒ Yes ☐ No
Did Salary Continue? ☒ Yes ☐ No

**Occurrence**

Time Employee Began Work
07:00 ☒ AM ☐ PM

Date of Injury or Illness
04/27/2018

Time Occurred
1125 ☒ AM ☐ PM

Last Work Date
04/27/2018

Date Employer Notified
04/27/2018

Date Disability Began
n/a

Employer Contact Name/Phone Number
Tracy Davis 270-843-4606

Type of Illness/Injury
injury

Part of Body Affected
right side face, shoulder and arm

Did Injury/Illness Exposure Occur on Employer's Premises?
yes    Yes ☒    No ☐

Type of Illness/Injury Code

Part of Body Affected Code

Department or location where accident or illness exposure occurred
Around Booking Area

All Equipment, Materials, or Chemicals Employee was using when accident or illness exposure occurred.
n/a

Specific Activity the Employee was engaged in when the accident or illness exposure occurred.
walking past inmate in restraint chair

Work Process the Employee Was Engaged in when accident or illness exposure occurred.
daily duties

How injury or illness/abnormal health condition occurred. Describe the sequence of events and include any objects or substances that directly injured the employee or made the employee ill.
See Staff Injury Report .

Cause of Injury Code

Date Returned to Work
04/27/2018

If Fatal, Date of Death
NA

Were Safeguards or Safety Equipment Provided? ☒ Yes ☐ No
Were they used? ☒ Yes ☐ No

**Treatment**

Physician/Health Care Provider (Name & Address)
n/a

Hospital (Name & Address)

Initial Treatment
0 ☒ No Medical Treatment
1 ☐ Minor: By Employer
2 ☐ Minor Clinic/Hosp
3 ☐ Emergency Care
4 ☐ Hospitalized > 24 hr.
5 ☐ Future Major Medical/Lost Time Anticipated

**Other**

Witness to Accident (Name & Phone Number)
n/a

Date Administrator Notified
04/27/2018

Date Prepared
04/30/2018

Preparer's Name & Title
Tracy Davis- Chief Administrative Deputy

Preparer's Phone Number
270-843-4606

IA-1 (2/95)    SEE NEXT PAGE FOR IMPORTANT STATE INFORMATION/SIGNATURE

*Emailed kaco 4/30/18*

WarrenCounty1280

# WARREN COUNTY REGIONAL JAIL
# STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby / Inmate Mathis

**DATE:** 4/27/2018                    **TIME:** 1125

**DETAILS OF INCIDENT: On the above date and approximate time I, Captain Jason Rigsby, was getting more copier paper for booking. When I walked past Inmate William Mathis who was in the restraint chair he stated "Hey fat boy" then spit at my person. Inmate Mathis' saliva landed on the right side of my face, right shoulder, and right arm. I cleaned the spit off my person and clothing in booking. It is unknown at this time if Inmate Mathis has any communicable diseases. A spit hood was reapplied by Captain Chip Olney (See report by Captain Olney). Camera footage was exported to Common drive – Deputy Incidents "Rigsby and Olney 04272018". All actions were taken for the safety and security of the WCRJ, Staff, and Inmates.**

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**  Captain Jason Rigsby

**CHIEF DEPUTY:**   C/D Misse Causey

**JAILER:**   Stephen Harmon



THIS CERTIFICATION IS HEREBY GRANTED TO

# JASON RIGSBY

FOR COMPLETION OF

## TASER CEW INSTRUCTOR CERTIFICATION

VALID FROM: **02/21/2018** THROUGH: **02/21/2020**

This certifies that the above named individual has completed the training required and has passed a written examination in the use and instruction of TASER X26P, X26 and X2 Conducted Electrical Weapon(s). The above named individual is hereby certified as a TASER CEW instructor and may certify others as users under the guidelines of TASER Training, in care of Axon Academy.

By accepting this TASER CEW Instructor Certificate, the Student accepts the terms of the Training Materials License Agreement, incorporated herein by reference, and agrees to be bound by its terms as a Licensee of Axon Enterprise, Inc.

In witness whereof, Axon Enterprise, Incorporated has caused this certificate to be signed by its duly authorized representative.



Steven Faulkner

02/21/2018

Certifying Master Instructor

Date

# Certificate of Training

**PepperBall**

# INSTRUCTOR – ARMORER

*This is to certify that*

Jason Rigsby

*of the*

Warren County Regional Jail

*Has successfully completed the PepperBall Instructor / Armorer Training Course*

Steve Faulkner

*Master Instructor*

2/22/2018

*Date*

Expires 2/22/2020

*Monte Scott, Director of Training*

16 HOURS CREDIT

PepperBall is a Division of United Tactical Systems, LLC.

WarrenCounty1283

WARREN COUNTY
REGIONAL JAIL



Captain J.Rigsby

THE COMMONWEALTH OF KENTUCKY
COUNTY OF WARREN

Jason Rigsby

IS DULY COMMISSIONED AS A DEPUTY JAILER AND PEACE
OFFICER AT THE WARREN COUNTY REGIONAL JAIL, THUS
AUTHORIZED TO CARRY FIREARMS, MAKE ARRESTS FOR
OFFENSES IN WARREN COUNTY, AND PERFORM SUCH
OTHER DUTIES AS AUTHORIZED BY LAW.

STEPHEN HARMON, WARREN COUNTY JAILER

WarrenCounty1284

# THE SAFARILAND.
## TRAINING GROUP

# CERTIFICATE OF COMPLETION

# Jason Rigsby

Has Completed the Basic Instructor Course Requirements for

**OC Aerosol (8hrs), Less Lethal Impact Munitions (8hrs)**
**Chemical Munitions (8hrs), Distraction Devices (8hrs)**

**Mike Mello**
Instructor

*Sandy Wall*

Director of Training
Sandy Wall

**11/14/2017**
Date Completed

**11/30/2020**
Expiration Date



**DEFENSE TECHNOLOGY**

WarrenCounty1285

**Davis, Tracy M  (WARCO)**

| | |
|---|---|
| **From:** | Rigsby, Jason  (WARCO) |
| **Sent:** | Tuesday, July 18, 2017 3:27 AM |
| **To:** | Davis, Tracy M  (WARCO) |
| **Subject:** | New Home Address |

Tracy,

My new address is,

My pay stub still has my parents address o▮▮▮▮o I need to notify the treasurer office?

Thanks!

**Captain Jason Rigsby**
*3rd Shift Supervisor - S.E.R.T. Co-Commander*
*Warren County Regional Jail*
*920 Kentucky St.*
*Bowling Green, KY 42101*
*(270) 843-4606*

Emailed
Bob Harvey
Greg Burrell
07-18-17

1



# Warren County Regional Jail
## Stephen Harmon, Jailer

## Warren County Regional Jail Training Report

Date: _____8/6/2020_____

Employee: _Jason Rigsby_____     Badge Number: _623_

Instructor: _____Greg Coker_____     Badge Number: _____

Location of Training: _____Soft Skills Boot Camp_____

WCRJ Policy Number: _____

Training Completed: _____Power Point_____
_____
_____

I have completed the training described above. I was given the chance to ask questions during training.

Employee Signature: _Jason Rigsby_____     Date: _8-28-2020_

Supervisor Signature: _____     Date: _8-28-2020_

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

WarrenCounty1287

## WARREN COUNTY GOVERNMENT

**Benefit Selection Form**                                    **Effective 1/1/2017**

Employee Name:  Jason Rigsby                                  DOB: ███████████

Addre: ████████████████████████████

Social Security ███████████████████

### ENROLLMENT INSTRUCTIONS

Effective January 1, 2017, the medical insurance will be offered to employees of Warren County Government through Anthem. This year, employees will have 3 plan options to choose from.  **You must make your plan choice below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.**  Please see the benefit summary for complete details.  If no plan choice is made below, you will not have medical coverage on January 1, 2017.

## MEDICAL PLAN – ANTHEM

Current Medical Plan Option:  Middle Plan          Current Medical Plan Coverage Type:  Employee Only

| Plan Option | High Plan 2 Rx AE | Middle Plan 22 Rx AE | Core Plan HSA E3AO |
|---|---|---|---|
| Deductible (Individual / Family) | $250 / $750 | $2,500 / $7,500 | $5,000 / $10,000 |
| Coinsurance | 20% | 20% | 0% |
| Medical Plan Maximum Out-of-Pocket | $3,200 / $6,400 | $6,600 / $13,200 | $6,450 / $12,900 |
| *All medical and pharmacy copayments will apply to your Maximum Out-of-Pocket.* | | | 100% After Deductible |
| Hospitalization | Deductible & Coinsurance | Deductible & Coinsurance | |
| ER | $250 Copayment + 20% | $250 Copayment + 20% | Deductible Then $250 |
| Urgent Care | $75 Copayment | $75 Copayment | Deductible Then $75 |
| Primary Care Office Visit | $20 Copayment | $25 Copayment | Deductible Then $30 |
| Specialist Office Visit | $20 Copayment | $50 Copayment | Deductible Then $60 |
| Preventive Care | No Cost to You | No Cost to You | No Cost to You |
| Retail Prescription Drugs | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% | Deductible Then: $10 / $30 / $50 / 25% |
| Mail Order Prescription Drugs | $10 / $75 / $180 / 25% | $10 / $75 / $180 / 25% | Deductible Then: $10 / $75 / $150 / 25% |

### EMPLOYEE MONTHLY CONTRIBUTION – WELLNESS PARTICIPATION
*Mark Enrollment Choice Below*

| | High Plan | Middle Plan | Core Plan |
|---|---|---|---|
| Employee Only | ☐ $ 187.07 | ☑ $ 70.11 | ☐ -$ 89.87 |
| Employee & Spouse | ☐ $ 832.51 | ☐ $ 603.27 | ☐ $ 289.74 |
| Employee & Child(ren) | ☐ $ 792.55 | ☐ $ 570.26 | ☐ $ 266.24 |
| Family | ☐ $1,666.85 | ☐ $1,292.49 | ☐ $ 780.46 |

### EMPLOYEE MONTHLY CONTRIBUTION – NO WELLNESS PARTICIPATION
*Mark Enrollment Choice Below*

| | High Plan | Middle Plan | Core Plan |
|---|---|---|---|
| Employee Only | ☐ $ 237.07 | ☐ $ 120.11 | ☐ -$ 39.87 |
| Employee & Spouse | ☐ $ 882.51 | ☐ $ 653.27 | ☐ $339.74 |
| Employee & Child(ren) | ☐ $ 842.55 | ☐ $ 620.26 | ☐ $316.24 |
| Family | ☐ $1,716.85 | ☐ $1,342.49 | ☐ $830.46 |

☐   Please check this box to drop / decline medical coverage.

**\*\*Warren County Government is paying $500 toward your medical coverage in 2017, if you participate in the wellness program.  Without wellness participation, Warren County Government will pay $450.  The negative amounts represented in the Employee Only cost for Core Plan above will be deposited into your Flexible Spending Account on your behalf.**

CONTINUED ON BACK ➤

WarrenCounty1288

## MEDICAL BRIDGE – COLONIAL

Effective January 1, 2017, you will have the opportunity to participate in a Medical Bridge plan to help offset some of the cost of the medical plan deductible.  **If you wish to change your enrollment or enroll for the first time, please contact Frankie Williams at Colonial.  Frankie can be reached at (270) 784-1600.**

## DENTAL BENEFITS – ANTHEM
### Current Dental Coverage: Employee Only

Effective January 1, 2017, dental benefits will be offered through Anthem.  In order to ensure your dental benefits are enrolled correctly, you MUST mark your benefit selection below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| In Network Benefit Description | |
|---|---|
| Deductible | $25 / $75 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% with $1,000 Lifetime Max |
| Monthly Premium | |
| Employee Only | ☑ $18.12 |
| Employee + 1 | ☐ $39.42 |
| Family | ☐ $72.63 |
| ☐ Please check here to drop or decline dental coverage. | |

## VISION BENEFITS – ANTHEM
### Current Vision Coverage:  Waived

Effective January 1, 2016, vision benefits will be offered through Anthem.  In order to ensure your vision benefits are enrolled correctly, you MUST mark your benefit selection below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $10.00 | Every 12 Months |
| Lenses | $20.00 | Every 12 Months |
| Frames | $20.00 | Every 12 Months |
| Elective Contacts | $20.00 (Max $130) | Every 24 Months |
| Monthly Premium | | Every 12 Months |
| Employee | ☐ $ 8.09 | |
| Employee + One | ☐ $14.16 | |
| Family | ☐ $22.65 | |
| ☑ Please check here to drop or decline vision coverage. | | |

## DEPENDENT INFORMATION

| Name | Relationship | Gender | DOB | SSN | Enroll Medical | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|---|---|
| _____ | Spouse | | | | | | |
| _____ | Child | | | | ☐ | ☐ | ☐ |
| _____ | Child | | | | ☐ | ☐ | ☐ |
| _____ | Child | | | | ☐ | ☐ | ☐ |
| _____ | Child | | | | ☐ | ☐ | ☐ |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form.  Such reductions, considered as elective contributions under the plan, shall commence on January 1, 2017.  I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year.  I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _Jason Rigney_   Date _11-22-16_

WarrenCounty1289

800.599.8621 | wellness@peelholland.com


**well-score**™
Wellness made easy by Peel & Holland

| **Will you participate in the 2017 Wellness Program?** |
| Yes, I CHOOSE to participate in the |
| 2017 WCFC Wellness Program..............YES, Enroll me! ☑ |
| No, I DECLINE to participate in the |
| 2017 WCFC Wellness Program....................NO thanks. ☐ |

**Warren County Fiscal Court**
**2017 Wellness Registration**
(see back for participation requirements)

DATE: 11-21-16

Name: Jason Daniel Rigsby

Department: Warren County Jail

E-mail: ███████████████████████   ate of Birth: ███████

Cell/home phone: ███████████████

May we have permission to call you at home? Yes _____ No ✓

Address ████████████████████████████████

City: ████████████████████████████████

I understand that through the wellness program, I may participate in Health Risk Assessments and/or blood screen-ings in order to earn wellness incentives from my employer.  Such activities generate Personal Health Information (PHI).    Well-Score contracts with health professionals to conduct blood screenings and to review participant as-sessment and lab results.  Contracted consultants may contact participants to counsel them, offer suggestions, and provide advice.

I agree that a medical provider can release the results of my worksite wellness program screening to Well-Score. I agree that a Well-Score consultant can review my lab and assessment results and contact me.

I understand that all blood test results and Health Risk Assessment reports are considered Protected Health Information as stated in the Privacy regulations of the Health Insurance Portability and Accountability Act (HIPAA) of 1996 and will be handled confidentially by all Well-Score employees and consultants. All medial information obtained through the wellness program will be maintained separate from your personnel records, information stored electronically will be encrypted, and no information you provide as part of the wellness program will be used in making any employment decisions. The only information shared by Well-Score is in aggregate form with no identifiable individual data.

Signature of Participant: Jason Rigsby

*If you have any questions about this form or your wellness program,*
*please contact Well-Score at (270) 527-6135 or e-mail at*
*wellness@peelholland.com*

**Peel&Holland**
Insurance ▪ Risk Consulting ▪ Employee Benefits
www.peelholland.com

**WarrenCounty1290**



KENTUCKY DEFERRED COMPENSATION
101 SEA HERO ROAD, SUITE 110
FRANKFORT KY 40601

July 7, 2016

JASON D RIGSBY

████████████████████████████

KENTUCKY DEFERRED COMPENSATION, 0047247
Account Number:  11318269

**Your request to change your contribution amount has been completed.**

You recently asked us to change the amount you contribute to your retirement account. You will find the change(s) outlined on the following page(s) of this letter. If the changes are not correct, please call us at 1-800-542-2667.

Please review this confirmation promptly.  If this information is not correct, please call us at 1-800-542-2667.[1] All information will be considered true and accurate unless you contact us.

Thank you for trusting us with your retirement account.  We look forward to serving you again.

Sincerely,
Kentucky Public Employees' Deferred Compensation Authority
1-800-542-2667

**The following are the contribution amount change(s):**

If this information is not correct, please call us at 1-800-542-2667.

| Effective Date | Payroll Frequency | Contribution Type | Plan IRS Code | Prior Co... | New |
|---|---|---|---|---|---|
| 7/31/2016 | Bi-Weekly | Salary Reduction | 401(k) | ██████ | ██████ |

**Your contributions are being invested...**

| You now are investing in these options [2][3] each payday | Contribution Type | Plan IRS Code | Percent |
|---|---|---|---|
| FID GR CO | Salary Reduction | 401(k) | 75% |
| VNGRD SMCAP INDX INST | Salary Reduction | 401(k) | 25% |
| **Total per pay** | | | **100%** |

**...And your account looks like this:**

| You have money in these options | Contribution Type | Plan IRS Code | |
|---|---|---|---|
| FID GR CO | Salary Reduction | 401(k) | ██████ |
| **Total 401(k)** | | | ██████ |
| **Total Account Value** | | | ██████ |

---

1.   Does not apply to 501(c)(9) Post Employment Health Plans.  May not apply to 457-OBRA-PST plans.

NRM-7682AO.4 (06/2014)

11318269 0047247

WarrenCounty1291

4/12/2016 3:45:08 PM FROM:  TO: 270-843-5317( 2/2 )

## TIME SENSITIVE, PLEASE COMPLETE & SEND BACK TO NAVIENT

Reference ID:   E71303-8510395
Name of Company: **Warren Co. Jail**
Fax to Verify Employment: **270-843-5317**

We are requesting employment information on **Jason Rigsby,** social security number ending i ███ Any information that you are able to provide is greatly appreciated.

If your company policy requires the employee's authorization to release this information, please forward to him/her for his/her signature.

Please assist us by calling **866-517-3096**, or please fill in the information requested below and fax to (570)200-6259.

Thank you for your attention to this matter.

| **EMPLOYMENT INFORMATION** |
| --- |

**Employer Info:**

Employment Status:

Date of Hire: _____ Full-Time/Part-Time: _____

Employee Work Address:

Employee Home Address:

Employee Phone Number:

Employee Signature (if required by employer policy):

*Do you want to sign this?*

*Tammy*

Please fax back to Navient at (570)-200-6259 .Thank you!

*No*
*JRGJ*

4/12/2016 3:45:00 PM From: To: 270-843-5317( 1/2 )

| To: | Jason Rigsby | From: | Jessica, E71303 |
|---|---|---|---|
| Department: | Human Resources | Phone Number: | 866-517-3096 |
| Institution: | Warren County Jail | Fax Number: | 570-200-6259 |
| Fax Number: | 270-843-5317 | | |
| Date: | 04/12/2016 | Pages (including cover): | 2 |

Message:

# ATTENTION REQUESTED

WarrenCounty1293

## Benefit Selection Form — WARREN COUNTY GOVERNMENT

**Effective 1/1/2016**

Employee Name: *Jason Daniel Rigsby*   DOB: ▇▇▇▇

Address: ▇▇▇▇▇▇▇▇

Social Security #: ▇▇▇▇▇▇▇▇

### ENROLLMENT INSTRUCTIONS

Effective January 1, 2016, the medical insurance will be offered to employees of Warren County Government through Anthem. This year, employees will have 4 plan options to choose from. **You must make your plan choice below. If you wish to cover your dependents, you MUST complete the dependent information section below. If no dependents are listed, your coverage will be for single only. Please see the benefit summary for complete details. If no plan choice is made below, you will not have medical coverage on January 1, 2016.**

## MEDICAL PLAN – ANTHEM

| Plan Option | High Plan | Mid Plan | Low Plan (HSA Type) | Core Plan |
|---|---|---|---|---|
| Deductible (Individual / Family) | $1,000 / $2,000 | $2,500 / $7,500 | $5,000 / $10,000 | $2,500 / $5,000 |
| Coinsurance | 0% | 20% | 0% | 20% |
| Medical Plan Maximum Out-of-Pocket | $2,000 / $4,000 | $6,600 / $13,200 | $5,950 / $11,900 | $6,600 / $13,200 |
| *Beginning on January 1, 2015 all medical and pharmacy copayments will apply to your Maximum Out-of-Pocket.* | | | | |
| Hospitalization | 0% After Deductible | 20% After Deductible | 0% After Deductible | $500 + Deductible + 20% |
| ER | $250 Copayment | $250 + 20% | 0% After Deductible | $250 + 20% |
| Urgent Care | $50 Copayment | $75 Copayment | 0% After Deductible | Not Covered |
| Primary Care Office Visit | $25 Copayment | $25 Copayment | 0% After Deductible | $35 for 1st 3 Visits Then 20% After Deductible |
| Specialist Office Visit | $50 Copayment | $50 Copayment | 0% After Deductible | |
| Preventive Care | No Cost to You | No Cost to You | No Cost to You | No Cost to You |
| Retail Prescription Drugs | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% | Deductible Then: $10 / $30 / $50 / 25% | $15 Generic Brand Not Covered |
| Mail Order Prescription Drugs | $20 / $60 / $120 / 25% | $10 / $75 / $120 / 25% | Deductible Then: $10 / $75 / $150 / 25% | $37 Generic Brand Not Covered |
| **EMPLOYEE MONTHLY CONTRIBUTION** | | | | |
| Employee Only | ☐ $ 150.37 | ☑ $ 42.66 | ☐ -$40.43 | ☐ -$48.55 |
| Employee + Spouse | ☐ $ 750.79 | ☐ $ 535.35 | ☐ $369.18 | ☐ $352.92 |
| Employee + Child(ren) | ☐ $ 690.76 | ☐ $ 486.08 | ☐ $328.22 | ☐ $312.78 |
| Family | ☐ $1,471.23 | ☐ $1,126.53 | ☐ $860.66 | ☐ $834.65 |

☐   Please check this box to drop / decline medical coverage.

**\*\*Warren County Government is paying $450 toward your medical coverage in 2016. The negative amounts represented in the Employee Only cost for the Low Plan and Core Plan above will be deposited into your Flexible Spending Account on your behalf.**

## MEDICAL BRIDGE – COLONIAL

Effective January 1, 2016, you will have the opportunity to participate in a Medical Bridge plan to help offset some of the cost of the medical plan deductible. Warren County Government will no longer subsidize the cost of this plan. **If you wish to change your enrollment or enroll for the first time, please contact Frankie Williams at Colonial. Frankie can be reached at (270) 784-1600.**

**CONTINUED ON BACK** ➤

| Benefit Selection Form | WARREN COUNTY GOVERNMENT | Effective 1/1/2014 |
|---|---|---|

**Employee Name:** Jason Rigsby **Unit #: 673**      **DOB:** ▮

**Address** ▮

**Social Security #** ▮

## ENROLLMENT INSTRUCTIONS

Effective January 1, 2014, the medical insurance will be offered to employees of Warren County Government through Bluegrass Family Health. Only 1 plan will be offered to all employees this year, however, Warren County Government will be providing the coverage to employees at no cost. You will only have payroll deductions if you choose to cover your spouse and/or child(ren). **You must make your plan choice below. If you wish to cover your dependents, you MUST complete the dependent information section below. If no dependents are listed, your coverage will be for single only. Please see the benefit summary for complete details. If no plan choice is made below, you will not have medical coverage on January 1, 2014.**

## MEDICAL PLAN – BLUEGRASS FAMILY HEALTH

☑ Please check here to drop or decline medical coverage

| Plan Option | In-Network Benefits |
|---|---|
| Deductible (Individual / Family) | $5,000 / $10,000 |
| Coinsurance | 0% |
| Medical Plan Maximum Out-of-Pocket | $5,000 / $10,000 |

*As part of the Affordable Care Act, beginning on January 1, 2014 all medical plan copayments will apply to your Medical Plan Maximum Out-of-Pocket. Pharmacy Copayments will not apply to the Medical Plan Maximum Out-of-Pocket, however, they do apply to the Pharmacy Maximum Out-of-Pocket of $6,350/$12,700.*

*Medical Expenses are paid at 100% after meeting $5,000/$10,000 in Medical Out-of-Pocket Costs. Pharmacy Copayments are paid at 100% after meeting $6,350/$12,700 in Pharmacy Out-of-Pocket Costs.*

| | |
|---|---|
| Hospitalization | 100% After Deductible |
| ER | $250 Copayment |
| Urgent Care | $50 Copayment |
| Primary Care Office Visit | $25 Copayment |
| Specialist Office Visit | $50 Copayment |
| Preventive Care | No Cost to You |
| Retail Prescription Drugs | $10 / $30 / $60 / 25% |
| Mail Order Prescription Drugs | $20 / $60 / $120 / 25% |
| Pharmacy Plan Maximum Out-of-Pocket | $6,350 / $12,700 |

| TOTAL MONTHLY PREMIUM | |
|---|---|
| Employee | $ 443.28 |
| Employee/Spouse | $ 886.59 |
| Employee/Child(ren) | $ 842.26 |
| Family | $1,418.53 |

| EMPLOYEE MONTHLY CONTRIBUTION | |
|---|---|
| Employee | ☑ $ 0.00 |
| Employee/Spouse | ☐ $443.31 |
| Employee/Child(ren) | ☐ $398.98 |
| Family | ☐ $975.25 |

## DENTAL BENEFITS – GUARDIAN

Dental benefits will continue to be offered through Guardian.  If no choices are marked your coverage will remain the same.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | |
|---|---|
| Deductible | $25 / $75 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% with $1,000 Lifetime Max |
| Monthly Premium | |
| Employee only | ☑ $21.87 |
| Employee + 1 | ☐ $47.58 |
| Family | ☐ $87.66 |
| ☐ Please check here to drop or decline dental coverage. | |

## VISION BENEFITS - GUARDIAN

Vision benefits will continue to be offered through Guardian.  If no choices are marked your coverage will remain the same.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | Copay | Frequency |
|---|---|---|
| Exam | $10.00 | Every 12 Months |
| Lenses | $25.00 | |
| Frames | $25.00 | Every 24 Months |
| Elective Contacts | $25.00 (Max $135) | Every 12 Months |
| Monthly Premium | | |
| Employee | ☐ $ 6.27 | |
| Employee + 1 | ☐ $ 9.48 | |
| Family | ☐ $15.98 | |
| ☐ Please check here to drop or decline vision coverage. | | |

## DEPENDENT INFORMATION

| Name | Relationship | DOB | Social Security | Enroll Medical | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|---|
| _____ | Spouse | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form.  Such reductions, considered as elective contributions under the plan, shall commence on January 1, 2014.  I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year.  I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _Jason Rigsby_                          Date _11-2-13_

NAME:  Jason Rigsby    Unit #:  673                DATE OF BIRTH:  _10-3-1983_

WarrenCounty1296

The Guardian Life Insurance Company of America

# GUARDIAN

Midwest Regional Office, P.O. Box 8012,
Appleton, WI 54912-8012

**Please print clearly and mark carefully.**

Employer Name: **Warren County Fiscal Court**   Group Plan Number: **473485**   Benefits Effective: *1-1-14*

PLEASE CHECK APPROPRIATE BOX ☐ Initial Enrollment ☑ Re-Enrollment ☐ Add Employee/Dependents ☐ Drop/Refuse Coverage ☐ Information Change
☐ Increase Amount ☐ Family Status Change

Class: 1   Division:_____   Subtotal Code:_____   **(Please obtain this from your Employer)**

**About You:**   Social Security Number
First, MI, Last Name:
Jason D Rigsby

Email Address:   Are you married or do you have a spouse? ☑ Yes ☐ No   Date of marriage/union: 3-17-11
Do you have children or other dependents? ☐ Yes ☑ No   Placement date of adopted child:___-___-___

**About Your Job:**   Hours worked per week: *40*   Job Title: *Captain*

Work Status:   Date of full time hire: 4-24-2006
☑ Active ☐ Retired ☐ Cobra/State Continuation

**About Your Family:** Please include the names of the dependents you wish to enroll for coverage. A dependent is a person that you, as a taxpayer, claim; who relies on you for financial support; and for whom you qualify for a dependency tax exception. Dependency tax exemptions are subject to IRS rules and regulations. Additional information may be required for non-standard dependents such as a grandchild, a niece or a nephew.

| Spouse (First, MI, Last Name) | | Gender | Date of Birth (mm-dd-yyyy) | |
|---|---|---|---|---|
| N/A | | ☐ M ☐ F | ___-___-___ | |
| Child/Dependent 1: | ☐ Add ☐ Drop | Gender ☐ M ☐ F | Date of Birth (mm-dd-yyyy) ___-___-___ | Status (check all that apply) ☐ Student (post high school) ☐ Disabled ☐ Non standard dependent State of Residence:___ |
| Child/Dependent 2: | ☐ Add ☐ Drop | Gender ☐ M ☐ F | Date of Birth (mm-dd-yyyy) ___-___-___ | Status (check all that apply) ☐ Student (post high school) ☐ Disabled ☐ Non standard dependent State of Residence:___ |
| Child/Dependent 3: | ☐ Add ☐ Drop | Gender ☐ M ☐ F | Date of Birth (mm-dd-yyyy) ___-___-___ | Status (check all that apply) ☐ Student (post high school) ☐ Disabled ☐ Non standard dependent State of Residence:___ |
| Child/Dependent 4: | ☐ Add ☐ Drop | Gender ☐ M ☐ F | Date of Birth (mm-dd-yyyy) ___-___-___ | Status (check all that apply) ☐ Student (post high school) ☐ Disabled ☐ Non standard dependent State of Residence:___ |

DETACH ENTIRE FORM AND RETURN TO YOUR EMPLOYER
*DATE FORM PUBLISHED: Oct 30, 2013*

WarrenCounty1297

**Dental Coverage:**  You must be enrolled to cover your dependents.  Check only one box.

| Your Monthly Premium | Employee Only | Employee and 1 Dependent | EE, Spouse& Dependent/Child(ren) |
|---|---|---|---|
| PPO | ☑ $21.87 | ☐ $47.58 | ☐ $87.66 |

☐ I do not want this coverage. If you do not want this Dental Coverage, please mark all that apply:

- ☐ I am covered under another Dental plan
- ☐ My spouse is covered under another Dental plan
- ☐ My dependents are covered under another Dental plan

---

**Vision Coverage:**  You must be enrolled to cover your dependents.  Check only one box.

| Your Monthly Premium | Employee Only | Employee and 1 Dependent | EE, Spouse & Dependent/Child(ren) |
|---|---|---|---|
| Full Feature - Designer | ☐ $6.27 | ☐ $9.48 | ☐ $15.98 |

☑ I do not want this coverage. If you do not want this Vision Coverage, please mark all that apply:

- ☐ I am covered under another Vision plan
- ☐ My spouse is covered under another Vision plan
- ☐ My dependents are covered under another Vision plan

---

## Signature

- An employee's decision to elect Vision or not elect Vision must be retained until the next plan's Open Enrollment period. If the employee elects not to enroll in vision coverage, they are not eligible to enroll until the plan's next Open Enrollment period.
- I understand that my dependent(s) cannot be enrolled for a coverage if I am not enrolled for that coverage.
- I understand that the premium amounts shown above are estimations and are for illustrative purposes only.
- Submission of this form does not guarantee coverage. Among other things, coverage is contingent upon underwriting approval and meeting the applicable eligibility requirements as set forth in the applicable benefit booklet.
- You must be legally working in the United States in order to be eligible for coverage. Underwriting must approve coverage for employees on temporary assignment (a) exceeding 1 year; or (b) in an area under travel warning by the US Department of State, subject to state specific variations. You must be legally working in the United States, or working outside of the United States for a United States based employer in a country or region approved by us.
- If coverage is waived and you later decide to enroll, late entrant penalties may apply. You may also have to provide, at your own expense, proof of each person's insurability. Guardian has the right to reject your request.
- Plan design limitations and exclusions may apply. For complete details of coverage, please refer to your benefit booklet. State limitations may apply.
- Your coverage will not be effective until approved by a Guardian or its designated underwriter.
- I hereby apply for the group benefit(s) that I have chosen above.
- I understand that I must meet eligibility requirements for all coverages that I have chosen above.
- I agree that my employer may deduct premiums from my pay if they are required for the coverage I have chosen above.
- I acknowledge and consent to receiving electronic copies of applicable insurance related documents, in lieu of paper copies, to the extent permitted by applicable law. I may change this election only by providing Guardian thirty (30) day prior written notice.
- **I state that the information provided above is true and correct to the best of my knowledge.**

**Any person who with intent to defraud any insurance company or other person files an application for insurance or statements of claim containing any materially, false information or conceals for purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may also be subject to civil penalties, or denial of insurance benefits.**

**The state in which you reside may have a specific state fraud warning. Please refer to the attached Fraud Warning Statements page.**

**The laws of New York require the following statement appear: Any person who knowingly and with intent to defraud any insurance company or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. (Does not apply to Life Insurance.)**

SIGNATURE OF EMPLOYEE X _Jason Kirby_          DATE  11-15-13

WarrenCounty1298

# Benefits Enrollment Form

*Application's need to be received by Febco 15 days before effective date*

**F E B C O**

**Benefits Consultants**

## *A – Participant Information

**\*Employer Name:** Warren County Fiscal Court

**\*Employee Name:** Jason Rigsby

**\*Social Security Number:** ▮▮▮▮▮▮▮▮▮▮▮▮▮

**\*Street A** ▮▮▮▮▮▮▮▮▮▮▮▮▮

**\*City:** ▮▮▮▮▮▮▮▮▮▮▮▮▮

**E-Mail Address:** ▮▮▮▮▮▮▮▮▮▮▮▮▮

**Work Phone:** ▮▮▮▮▮▮▮▮▮▮▮▮▮

**\*First Payroll Effective Date:** 1-1-13   **\*Date of hire:** 4-24-2006  Department: WCRJ

**\*Paycheck Frequency (Circle one):**   Weekly   (Bi-weekly)   Semi-Monthly   Monthly   Other: _____

## B – Dependent Information *(You get two cards with your account, 1 participant & 1 dependent, any additional cards are $12.00 per year each)*

**\*Name (Additional Card):** _____   Relationship: _____
**\*Social Security Number:** _____   Birthday: _____
**Name ($12.00 per year):** _____   Relationship: _____
**Social Security Number:** _____   Birthday: _____
**Name ($12.00 per year):** _____   Relationship: _____
**Social Security Number:** _____   Birthday: _____
**Name ($12.00 per year):** _____   Relationship: _____
**Social Security Number:** _____   Birthday: _____

## *C – Benefits *(Check the box of all accounts that apply)*

☐ **Option 1: (DCA) Dependent Care Reimbursement Account**
   I elect to contribute $_____ before tax, to fund my DCA account.   (Circle one)
   **Per Pay / Monthly / Annual**

☐ **Option 2: (FSA) Flexible Spending Account**
   I elect to contribute $_____ before tax, to fund my FSA account.   **Per Pay / Monthly / Annual**
   My Employer will contribute $_____ to fund my FSA account.

☐ **Option 3: (HRA) Health Reimbursement Account**
   My Employer will contribute $_____ to fund my HRA account.   **Per Pay / Monthly / Annual**

☐ **Option 4: (WEL) Wellness Account**
   My Employer will contribute $_____ to fund my WEL account.   **Per Pay / Monthly / Annual**

☐ **Option 5: (H.S.A.) Health Savings Account**
   I elect to contribute $_____ before tax to fund my H.S.A. account   **Per Pay / Monthly / Annual**
   My Employer will contribute $_____ to fund my H.S.A. account.

**\*C - Benefits** *(Continued)*

☐ **Option 6: (IIR) Premium Reimbursement Account**                     (Circle one)

    I elect to contribute $ _____ before tax to fund my IIR account.    **Per Pay / Monthly / Annual**

    My Employer will contribute $ _____ to fund my IIR account.

☐ **Option 7: (HC2) Limited Flexible Spending Account**

    I elect to contribute $ _____ before tax to fund my HC2 account.   **Per Pay / Monthly / Annual**

    My Employer will contribute $ _____ fund my HC2 account.

☐ **Option 8: (TRN) Transportation Account**

    I elect to contribute $ _____ before tax to fund my TRN account.   **Per Pay / Monthly / Annual**

    My Employer will contribute $ _____ fund my TRN account.

---

**\*D - HR/Non-Discrimination Test** *(To be filled out by H/R or Agent. Failure to provide this information releases Febco from Liability)*

| | |
|---|---|
| Salary: $ _____ | Key Employee      Yes / No |
| % of Company Stock Held: _____ % | Spouse/Dependent of Owner    Yes / No |
| Total of all Election Amounts: $ _____ | Highly Compensated Employee    Yes / No |

---

**E - Waiver** *(initial in box)*

☑ I have been given the opportunity to enroll in a tax savings plan and have declined to participate. I understand, I will lose all tax savings, which I may have received as a participant in the above Plans.

---

**F - Employee Debit Card Acknowledgement Statement**

Should I as an employee be required to return my Debit Card for any reason before the end of the Plan Year. I, _____, will reimburse the employer for any amounts advanced by the employer from my account, which are not Qualified Expenditures.  My employer may also pursue any and all legal means available to it to receive some or all of the amounts advanced that I am not entitled to, including but not limited to, deducting such owed amounts from subsequent payroll amounts owed me. This card is the property of Febco and the employer  and must be returned to the employer immediately upon termination, and/or layoff.

---

**\*G - Signature (\*\*Incomplete applications will not be processed\*\*)**

I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for  these insurance benefits will automatically be paid with pre-tax dollars.  I also understand that if my required contributions for the elected benefits are increased or decreased while this agreement remains in effect, my taxable income will automatically be adjusted to reflect that increase or decrease.  My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this Agreement.  I understand that I may change my election in the event of certain changes in my status.  Prior to the first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.

Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that are not used during the plan year may not be paid to me in cash or used in a later plan year.

**\*Employee Signature:** _____   **Date:** 11-15-13

**\*H/R or Agent:** _____   **Date:** _____

---

**\*Required Fields**

If you have questions, feel free to call **Febco, Inc.** toll-free 1-800-489-1539.

Customer Service is available to assist you, Monday through Friday, 8:00 A.M. until 4:30 P.M., Eastern Time.

**Please fax this form to: 502-695-9692**

WarrenCounty1300

# 𝔚𝔞𝔯𝔯𝔢𝔫 ℭ𝔬𝔲𝔫𝔱𝔶 ℜ𝔢𝔤𝔦𝔬𝔫𝔞𝔩 𝔍𝔞𝔦𝔩

## Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

December 27, 2011

TO: Jerry Pearson, County Treasurer

FROM: Jackie T. Strode, Jailer

SUBJECT: Promotion

Effective Monday, December 26, 2011, Assistant Shift Supervisor Jason Rigsby was promoted to Shift Supervisor. His new salary will be ████████████████████

Please submit Form 2020 to the Kentucky Retirement System.

Jackie T. Strode
Jackie T. Strode, Jailer

JTS:pw
Cc: Judge Buchanon
    Greg Burrell
    File



## Strode, Jackie  (WARCO)

| | |
|---|---|
| **From:** | Strode, Jackie  (WARCO) |
| **Sent:** | Friday, December 16, 2011 7:53 AM |
| **To:** | Strode, Jackie  (WARCO) |
| **Subject:** | Promotions/Transfers |

EFFECTIVE MONDAY, DEC. 26TH, 2011 CAPT GREG MARTIN WILL REVERT TO LT. AND WILL BECOME THE CLASS D COORDINATOR REPLACING LT JJ MARTIN WHO HAS RESIGNED.

EFF. 12-26-11 CAPT SHAWN WHITTLESEY WILL TRANSFER FROM 3RD SHIFT TO FIRST SHIFT AS THE SHIFT  SUPERVISOR

EFF. 12-26-11 LT JASON RIGSBY WILL BE PROMOTED TO CAPT AND WILL BECOME THE 3RD SHIFT SUPERVISOR

EFF. 12-26-11 SGT CHAD WHITAKER WILL BE PROMOTED TO LT AND WILL BECOME THE ASSISTANT SHIFT SUPERVISOR ON 1ST SHIFT

EFF. 12-26-11 DEPUTY JEFF DAVIS WILL BE PROMOTED TO SGT AND WILL BE TRANSFERRED FROM 1ST SHIFT TO 3RD SHIFT

Jackie T. Strode
Warren County Jailer
920 Kentucky Street
Bowling Green, KY  42101

Phone:  270-843-4606  EXT. 112
Fax:  270-843-5317
Email:  Jackie.Strode@ky.gov

1

## Watt, Pat  (WARCO)

**From:**
**Sent:** Janna Curtsinger <Janna@uscky.com>
**To:** Friday, March 08, 2013 1:29 PM
**Subject:** Watt, Pat  (WARCO)
Jason Rigsby

Good afternoon Pat,

I am, having a wonderful Friday, what an amazing day. Hope you have a great weekend also. Here is the claim number for the above mentioned WC2013926859 for doi 03/06/2013. Please let me know if Jason ends up needing medical treatment.

talk to you soon,

Janna Curtsinger
Underwriters Safety & Claims
Work Comp
866-367-5226 option 1 ext 1 or
502-244-1340 ext 6223
502-489-6430 fax
NOTICE: This message and / or attachment is intended only for the addressee and may contain information that is privileged, confidential and/or proprietary work product.  If you are not the intended recipient, or an authorized employee, agent or representative of the intended recipient, do not read, copy, retain or disseminate this message or any attachment.  Do not forward this message and attachment without the express written consent of the sender.  If you have received this message in error, please call the sender immediately at 502-244-1343 and delete all copies of the message and any attachment.  Neither the transmission of this message or any attachment, nor any error in transmission or misdelivery shall constitute waiver of any applicable legal privilege.


>>> "Watt, Pat  (WARCO)" <Pat.Watt@ky.gov> 03/08/2013 1:11 PM >>>
Hi Janna – Hope you are having a great Friday.  Here is a new Worker's Comp Claim on Jason Daniel Rigsby.  At this time he had not missed any time.  Will let you know if he does.  Have a great and blessed rest of the day and weekend.

Pat Watt
Chief Admistrative Deputy
Warren County Regional Jail
Phone – 270-843-4606, Ext. 106
Fax – 270-843-5317

WarrenCounty1303

# Warren County Regional Jail
## Staff Injury Report

Name of Staff: _Captain Jason Rigsby_

Date: _3-6-13_     Time: _0135_

Details of Injury: _Twisted Ankle during Altercation with_

_Inmate_ ████

Was Staff Member Treated At Emergency Room?    Yes    (No)

Was Staff Member Injured Due To Assault?    Yes    (No)

Was Their Any Witnesses To the Injury?    (Yes)    No

Was Injury Due To Mechanical Failure?    Yes    (No)

If Any Of The Questions Are Yes Above, Please Specify Below:

_Sergeant Jeff Daws_

_Deputy Earl Henderson_

Staff Member: _Captain Jason Rigsby_

Shift Supervisor: _Capt Jason Rigsby_

Witnesses (If Any): _Sergent Jeff Daws_

This Report Is To Be Completed As Soon As Possible After Accident.

Copies To:

Jackie T. Strode, Jailer _JTS_

## Watt, Pat  (WARCO)

**From:**
**Sent:**          Jason Rigsby <jrigsby@wcrescue.com>
**To:**            Thursday, March 07, 2013 6:12 PM
**Subject:**       Watt, Pat  (WARCO)
                   Re: Staff Injury Report

It was my right ankle. We were in the Florida room. It happen while trying to get him to the ground to be handcuffed.
I iced it down when I got home, it is fine now.

Captain Jason Rigsby
Sent from my iPhone 4

On Mar 7, 2013, at 11:25, "Watt, Pat  (WARCO)" <Pat.Watt@ky.gov> wrote:

Can you advise which ankle was injured in the altercation with ██████ What were you doing when
this happened and where were you.  Call me if you need to.

Pat Watt
Chief Admistrative Deputy
Warren County Regional Jail
Phone – 270-843-4606, Ext. 106
Fax – 270-843-5317

1

| Benefit Selection Form | **WARREN COUNTY GOVERNMENT** | Effective 1/1/2013 |
|---|---|---|

Employee Name: *Jason Darrel Rigsby*                    DOB:

Address:

Social Security #:

## ENROLLMENT INSTRUCTIONS

Effective January 1, 2013, your medical insurance will be offered to employees of Warren County Government through Cigna.  You will continue to be offered multiple options in plan design. **You must make your plan choice below.  If no plan choice is made below, you will not have medical coverage on January 1, 2013.**

## MEDICAL PLAN – CIGNA

☐ **Please check here to drop or decline medical coverage.**

| Plan Option | Base Plan | Buy Up Plan |
|---|---|---|
| Deductible (Individual / Family) | $2,500 / $5,000 | $1,000 / $2,000 |
| Coinsurance | 20% | 20% |
| Maximum Out-of Pocket | $5,000 / $10,000 | $2,000 / $4,000 |
| Hospitalization | Deductible & Coinsurance | Deductible & Coinsurance |
| ER | $250 Copayment | $125 Copayment |
| Primary Care Office Visit | $25 | $25 |
| Specialist Office Visit | $50 | $50 |
| Preventive Care | No Cost to You | No Cost to You |
| RX  (Generic, Brand, Non-Formulary) | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% |
| **TOTAL MONTHLY PREMIUM** | | |
| Employee | $441.59 | $495.86 |
| Employee/Spouse | $883.19 | $991.72 |
| Employee/Child(ren) | $839.03 | $942.14 |
| Family | $1,413.10 | $1,586.75 |
| **EMPLOYEE MONTHLY CONTRIBUTION – WITH WELLNESS PARTICIPATION** | | |
| *Mark Enrollment Choice Below* | | |
| Employee | ☑  $  16.98 | ☐   $ 71.25 |
| Employee/Spouse | ☐  $458.58 | ☐  $567.11 |
| Employee/Child(ren) | ☐  $414.42 | ☐  $517.53 |
| Family | ☐  $988.49 | ☐  $1162.14 |
| **EMPLOYEE MONTHLY CONTRIBUTION – WITHOUT WELLNESS PARTICIPATION** | | |
| *Mark Enrollment Choice Below* | | |
| Employee | ☐  $  59.44 | ☐   $ 130.69 |
| Employee/Spouse | ☐  $518.02 | ☐  $592.58 |
| Employee/Child(ren) | ☐  $473.86 | ☐  $576.97 |
| Family | ☐  $1047.93 | ☐  $1221.58 |

WarrenCounty1306

# DENTAL BENEFITS – GUARDIAN

Dental benefits will continue to be offered through Guardian.  If no choices are marked your coverage will remain the same.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | |
|---|---|
| Deductible | $25 / $75 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% with $1,000 Lifetime Max |
| Monthly Premium | |
| Employee Only | ☑ $16.95 |
| Employee + 1 | ☐ $36.88 |
| Family | ☐ $67.95 |
| ☐ Please check here to drop or decline dental coverage. | |

# VISION BENEFITS - GUARDIAN

Vision benefits will continue to be offered through Guardian.  If no choices are marked your coverage will remain the same.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $10.00 | Every 12 Months |
| Lenses | $25.00 | |
| Frames | $25.00 | Every 24 Months |
| Elective Contacts | $25.00 (Max $135) | Every 12 Months |
| Monthly Premium | | |
| Employee | ☑ $ 5.86 | |
| Employee + One | ☐ $ 8.86 | |
| Family | ☐ $14.93 | |
| ☐ Please check here to drop or decline vision coverage. | | |

# DEPENDENT INFORMATION

| Name | Relationship | DOB | Social Security # | Enroll Medical | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|---|
| | Spouse | | | ☐ | ☐ | ☐ |
| | Child | | | ☐ | ☐ | ☐ |
| | Child | | | ☐ | ☐ | ☐ |
| | Child | | | ☐ | ☐ | ☐ |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form.  Such reductions, considered as elective contributions under the plan, shall commence on January 1, 2013.  I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year.  I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _Jason Rigsby_                                   Date _11-26-12_

NAME: _Jason Rigsby_

DATE OF BIRTH: _10-3-1983_

WarrenCounty1307

Please print clearly to ensure accurate processing


**GUARDIAN**

The Guardian Life Insurance Company of America

Employer:
**Warren County Fiscal Court**
429 E 10th Ave Ste 102
Bowling Green, KY 42101

Guardian Group Plan Number: **473485**

**EMPLOYER USE ONLY** ☐ New Application ☐ Add Dependent(s) ☐ Drop Dependent(s) ☐ Change Address
☐ Change Name ☐ Drop Coverage as of:  /  /

| Class 1 | Hours Worked | Division | Benefits Effective  /  / |
|---|---|---|---|

Keep a copy for your records and return form to:  **Midwest Regional Office, P.O. Box 8012, Appleton, WI 54912-8012**

**ABOUT YOURSELF**
First, Middle Initial, Last Name ☐ Add ☐ Change ☐ Drop

*Jason D Rigsby*

Sex ☑ M ☐ F

*Captain*

Work Status ☑ Full-Time ☐ Part-Time ☐ Retired ☐ COBRA/State Continuation

Date work status began  *4 / 24 / 2006*

Are you married? ☑ Yes ☐ No

Do you have children or other dependents? ☐ Yes ☐ No

**ABOUT YOUR DEPENDENTS**
☐ A sheet with information about additional dependents is attached

Spouse First, Middle Initial, Last Name ☐ Add ☐ Change ☐ Drop

| | Sex ☐ M ☐ F | Date of Birth (mm/dd/yyyy)  /  / | Social Security Number : | Marriage Date (mm/dd/yyyy)  /  / |
|---|---|---|---|---|

| Child 1 ☐ Add ☐ Change ☐ Drop | Sex ☐ M ☐ F | Date of Birth (mm/dd/yyyy)  /  / | ☐ Full-time student, at (school): | City/State: | Attending Since  /  / |
|---|---|---|---|---|---|
| Child 2 ☐ Add ☐ Change ☐ Drop | Sex ☐ M ☐ F | Date of Birth (mm/dd/yyyy)  /  / | ☐ Full-time student, at (school): | City/State: | Attending Since  /  / |
| Child 3 ☐ Add ☐ Change ☐ Drop | Sex ☐ M ☐ F | Date of Birth (mm/dd/yyyy)  /  / | ☐ Full-time student, at (school): | City/State: | Attending Since  /  / |
| Child 4 ☐ Add ☐ Change ☐ Drop | Sex ☐ M ☐ F | Date of Birth (mm/dd/yyyy)  /  / | ☐ Full-time student, at (school): | City/State: | Attending Since  /  / |

To drop coverage for yourself or your dependents, check the box(es) to the right of the name(s) and select the coverage(s) to drop below. Attach a separate sheet if you wish to drop more than one dependent from different coverages.
☐ Dental ☐ Vision

CEF - 2005
Questions? Call the Guardian Helpline (888) 600-1600     www.guardianlife.com

Enrollment Kit 473485, 0001, EN   **1**

**DETACH ENTIRE FORM AND RETURN TO YOUR EMPLOYER**
*DATE FORM PUBLISHED: Nov 21, 2011*

WarrenCounty1308

## CHOOSE YOUR DENTAL COVERAGE

*Check one box only*

| | PPO | |
|---|---|---|
| **Your monthly premium** | | |
| Employee alone | ☑ $16.95 | ☐ I waive this coverage |
| Employee and 1 Dependent | ☐ $36.88 | ☐ I waive this coverage |
| Entire family | ☐ $67.95 | ☐ I waive this coverage |

**If you or your family have lost dental coverage, please explain below. Late entry penalties may apply.**

Reason for Loss of coverage: ☐ Termination of Employment ☐ Divorce ☐ Death of Spouse ☐ Termination or Expiration of coverage    Date of coverage loss ___/___/___

| If you are waiving coverage, are you covered under another dental plan? | If you are waiving dependent coverage, are your dependents covered under another dental plan? ☐ Yes ☐ No |
|---|---|
| ☐ Yes ☐ No | |

### IMPORTANT NOTES

- Proof of insurability does not apply to dental, but if you waive dental coverage and later decide to enroll, you may be subject to a late entrant penalty and your dental benefits may be limited for a period of time. Guardian may waive late-entrant penalties if you lose dental coverage due to termination of the plan, loss of employment, death of spouse, divorce or where a court has ordered coverage be provided for an eligible spouse or eligible children, provided you apply within 30 days.

## CHOOSE YOUR VISION COVERAGE

*Check one box only*

| | Full Feature - Designer | |
|---|---|---|
| **Your monthly premium** | | |
| Employee alone | ☑ $5.86 | ☐ I waive this coverage |
| Employee + 1 Dependent | ☐ $8.86 | ☐ I waive this coverage |
| Entire family | ☐ $14.93 | ☐ I waive this coverage |

| If you are waiving coverage, are you covered under another vision plan? | If you are waiving dependent coverage, are your dependents covered under another vision plan? ☐ Yes ☐ No |
|---|---|
| ☐ Yes ☐ No | |

### IMPORTANT NOTES

- If I have waived the vision coverage, and elect coverage at a later date, enrollment delays may apply.
- Your plan includes a One Year Lock-In/Lock-Out Provision - Your election to enroll in or waive vision coverage must remain in effect until your plan's next annual vision enrollment period.

## SIGNATURE

- I hereby apply for the group benefit(s) that I have chosen above.
- I understand that I must meet eligibility requirements for all coverages that I have chosen above.
- I understand that my dependent(s) cannot be enrolled for a coverage if I am not enrolled for that coverage.
- I agree that my employer may deduct premiums from my pay or add premiums to my dues; if they are required for the coverage I have chosen above.
- I understand that the premium amounts shown above are estimations. If the premium amounts shown above and the deductions for premiums shown on my paycheck stub do not agree, my paycheck stub will prevail. I understand that the premium amounts may be amended.
- I attest that the information provided above is true and correct to the best of my knowledge.
- Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

SIGNATURE OF EMPLOYEE **X** _Jason Ripley_    DATE _11-26-12_

2

WarrenCounty1309

**Kentucky** Deferred Comp

**The Kentucky Public Employees'**
**Deferred Compensation Authority**
101 Sea Hero Road, Suite 110
Frankfort, KY 40601
502.573.7925 or Toll Free 800.542.2667
Fax 502.573.4494
www.kentuckydcp.com

**Pre-Tax   Participation Agreement**
*Please print. Use only blue or black ink. Complete all items except the shaded areas designated for Authority use. Sign and date the bottom of the form and return both copies to our office for processing.*

(Check all that apply)
☐ **457 Plan**     ☐ **401(k) Plan**
☐ NEW ENROLLMENT   ☐ NEW ENROLLMENT
☐ AMENDMENT        ☐ AMENDMENT

**I. Personal Identification Data:**

| 1. NAME: (Last) | (First) | (M.I.) | 2 |
|---|---|---|---|
| Mr. ☐ Ms. ☐ Rigsby | Jason | D | |

| 11. Name of Your Employer: | 12. Work County of Employer: | 13. Current hire date: | 14. # of Billing Cycles per year: |
|---|---|---|---|
| Warren County Regional Jail | | | |

| 15. Select use only one Method of deferral below: | Enter your deferral under the appropriate Plan(s) (A) 457 Plan | (B) 401(k) Plan | 16. Effective pay date: |
|---|---|---|---|
| ☐ $ amount * OR ☐ % of Salary ** by using either a * $ amount or % | | | |

* Minimum deferral is $30 per Month per Plan        ** Not all employers offer a % of salary payroll deduction.        (For Authority use)

**II. Selection of Investment Options:**   *I understand that with Mutual Funds there is no guarantee of principal. Also, no assurance can be provided that the objective of any Mutual Fund will be attained or will not change, as there is some uncertainty in every investment.*

**17. Please select your option(s) below:** Enter the percent of your contribution amount that you choose to have invested in each fund(s). *Each Plan selected must total 100%.*

☐ **NO FUND CHANGE**

| (A) 457 % | (B) 401(k) % | | FUND | | (A) 457 % | (B) 401(k)% | | FUND |
|---|---|---|---|---|---|---|---|---|
| | | 10 | Fixed Contract Fund - 3 ^ | | | | R1 | Vanguard Instl Index * |
| | | 15 | Aberdeen Emerging Markets Instl * | | | | S1 | Vanguard Mid-Cap Index Instl # |
| | | 20 | Allianz Dividend Value Instl | | | | T1 | Vanguard Small-Cap Index Instl # |
| | | 30 | Amer. Century Small-Cap Instl | | | | AA | Vanguard Target Ret Inc Inv # |
| | | 40 | American Europac Growth R6 * ** | | | | AC | Vanguard Target Ret 2010 Inv # |
| | | 45 | DFA International Small Co I * | | | | AD | Vanguard Target Ret 2015 Inv # |
| | | 60 | Dodge & Cox International * | | | | AE | Vanguard Target Ret 2020 Inv # |
| | | B1 | Federated Prime Oblig Instl MM | | | | AF | Vanguard Target Ret 2025 Inv # |
| | | C1 | Federated US Gov Sec 2-5 Yrs * | | | | AG | Vanguard Target Ret 2030 Inv # |
| | | D1 | Fidelity Contrafund | | | | AH | Vanguard Target Ret 2035 Inv # |
| | | K1 | Fidelity Growth Co | | | | AI | Vanguard Target Ret 2040 Inv # |
| | | K2 | Franklin High Income Fund Adv | | | | AJ | Vanguard Target Ret 2045 Inv # |
| | | K3 | GWK Small Cap Equity Instl | | | | AK | Vanguard Target Ret 2050 Inv # |
| | | K4 | PIMCO All Asset Fund Instl | | | | AL | Vanguard Target Ret 2055 Inv # |
| | | O1 | PIMCO Total Return Instl | | | | U1 | Vanguard Tot Bond Mkt Instl # |
| | | P2 | Prudential Jennison Small Co Q | | | | U2 | Vanguard Tot Int'l Stk Idx Signal *** # |
| | | Q1 | T Rowe Price Instl Mid-Cap Eq Gr | | | | V1 | Vanguard Wellington Admiral # |
| | | Q2 | Vanguard Infla Prot Sec Adm # | | | | V2 | Victory Diversified Stock I |

^ Balances in the Fixed Contract Fund-3 are restricted from being moved directly into the Federated Prime Obligations MM or Federated US Govt. Securities Fund 2-5 Yrs.
* These funds are designated as restricted funds and thereby limited to four (4) trades (purchases or sales) per rolling 30-day period per restricted fund  Failure to adhere to these limits may result in additional trading restrictions.
** This fund imposes a Purchase Block.    *** This fund is currently subject to a 2% redemption fee on assets held less than 60 calendar days.
# After exchanging from a Vanguard fund, a participant must wait 60 calendar days before exchanging back into the same fund.

**III. Authorization of Participation:**  By my signature below, I hereby acknowledge that I have received, read and understand the information on the reverse side of this form. By signing below, I certify that I have reviewed and approve the accuracy of the information contained in this form. I understand the Internal Revenue Code provides that neither Plan may be used as a temporary, short-term savings account; therefore, I cannot withdraw deposits merely upon my request.     Please initial _____  I Acknowledge that I have read and understand this statement.

*NO Changes*

**IV. Authorization for Payroll Deduction**
By signing #18 below I hereby authorize my employer to make
the payroll deduction indicated on line C below, effective with the pay date of: _____
* Payroll deduction applies to pre-tax dollars only                         (Authority will fill in date)

457 Plan (A) _____ per billing cycle
and/or 401(k) Plan (B) _____ per billing cycle

The new TOTAL deduction
$ amount or % of salary shall be:    (line A + B)= (C) _____ (Minimum TOTAL deferral is $30 per Month per Plan)

| PAY FREQUENCY | ☐ A* Pre-Tax | ☐ D Match |
|---|---|---|
| PAYER CODE | ☐ P Benefits | ☐ 1 Supplemental |

Deductions are made without regard to any future changes in taxes; no partial deductions or "carry-overs" to future billing cycles will be made.  This deduction will continue until changed in accordance with Plan(s) procedures. *It is your responsibility to ensure you do not make excess contributions to the 457 and/or 401(k) Plans.  By signing this form you certify you are not making any other pre-tax or after-tax contributions which would create a deferral amount in excess of the annual IRS limits.*
*(For Authority use)*

| 18. Participating employee's signature | 19. Date signed | 20. Accepted by: | Authority Rep |
|---|---|---|---|
| Jason Rigsby | 12-14-12 | | |

- OVER -                                                                Revised 10-2011

WarrenCounty1310

# Voluntary Flexible Benefit Plan

Employee Name _Jason Rigsby_

Spouse Name ▮▮▮

Social Security N ▮▮▮

Spouse Social S ▮▮▮

Employer Name  The Warren County Fiscal Court          E-mail

Home Address ▮▮▮

Home Phone ▮▮▮                        Work Phone (    )

First Payroll Effective Date _____   Paycheck Frequency Bi-weekly

## Option 1:  Medical Reimbursement Account Agreement

☐ I elect to contribute $_____ (before tax) per pay period, which is $_____ per year, to fund my account
   to reimburse qualified healthcare expenses not covered under my health or _ANY_ other insurance plans.

☐ I elect to Waive my Employer Provided Health Insurance Coverage.... My employer will contribute $_____
   per pay period, which is $_____per year, to fund my _HRA_ account to reimburse qualified healthcare
   expenses not covered under my health or _ANY_ other insurance plans.

☑ I have been given the opportunity to enroll in the Medical Reimbursement plan and have declined to participate.
   I understand, I will lose all tax savings, which I may have received as a participant in the above Plan.

## Option 2:  Dependent Care Reimbursement Account Agreement

☐ I elect to contribute $_____ (before tax) per pay period, which is $_____ per year, to fund my account
   to reimburse of qualified dependent care expenses.  (Maximum amount per calendar year is the lesser of,
   (1)  $5,000 for married filing joint or $2,500 for married filing separate; (2) your spouse's total annual compensation;
   or (3) ½ of your total annual compensation.  If you are single, the maximum amount is $5,000)

☐ I have been given the opportunity to enroll in the Medical Reimbursement plan and have declined to participate.
   I understand, I will lose all tax savings, which I may have received as a participant in the above Plan.

I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for  these
insurance benefits will automatically be paid with pre-tax dollars.  I also understand that if my required contributions for the
elected benefits are increased or decreased while this agreement remains in effect, my taxable income will automatically be
adjusted to reflect that increase or decrease.

*My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this
Agreement.  I understand that I may change my election in the event of certain changes in my status.  Prior to the
first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.
Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that
are not used during the plan year may not be paid to me in cash or used in a later plan year.*

Employee Signature _Jason Rigsby_                      Date _12-11-12_

WarrenCounty1311

# Warren County Regional Jail

## Jackie T. Strode, Jailer
### 920 Kentucky Street
### Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

February 8, 2013

TO WHOM IT MAY CONCERN:

This letter is being provided for Jason Daniel Rigsby to confirm his employment at the
Warren County Regional Jail. This letter is being provided as part of his resume for
application for a grant by and through the Kentucky Jailers' Association.

◆ Jason was hired as a full-time Shift Deputy on April 25, 2006.
◆ On October 22, 2007 he was promoted to the position of Shift Training Deputy.
◆ On December 27, 2010 he was promoted to the position of Assistant Shift Supervisor
  and,
◆ On December 26, 2011 he was promoted to the position of Shift Supervisor.

If you have any questions concerning the above, please feel free to contact.

Sincerely,

*Jackie T Strode*

Jackie T. Strode
Warren County Jailer



# Warren County Regional Jail

## Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

October 29, 2007

TO:  Jerry Pearson, County Treasurer

FROM:  Jackie T. Strode, Jailer

SUBJECT:  Promotion

Effective Monday, October 22, 2007 Shift Deputy Jason Rigsby was promoted to Shift Training
Deputy.  Jason's salary will be █████████████████████

Attached is Form 2020.

Jackie T. Strode, Jailer

JTS/pw
Cc:  Judge Buchanon
     Brian Dinning
     File



WarrenCounty1313

Kentucky Retirement Systems
Perimeter Park West
1260 Louisville Rd
Frankfort KY  40601-6124
Phone: (502) 696-8800
Fax: (502) 696-8822
www.kyret.com



Member's
Soc. Sec. No

## ADVICE OF PERSONNEL ACTION

NAME: _____ Jason Rigsby

ADDRESS: _____

☐ Name Change      ☐ Address Change

---

### NATURE OF PERSONNEL ACTION:

☐ New Agency
☐ Leave Without Pay
☐ Military Leave
☐ Termination

☐ Reinstatement
☐ Educational Leave
☐ Dismissal
☐ Health Insurance Termination Date: _____

☐ New Employee
☐ Maternity Leave
☐ Death

☐ FMLA Leave*
☐ Approved Sick Leave Without Pay
☐ Date of Death: _____

☐ Change In Employer:   From: _____   To: _____

☒ Change in Position Status:   From: Shift Deputy   To: Shift Training Deputy

☐ Other (please specify)

*Leave Provided For Under the Family Medical Leave Act (FMLA).

---

| Position Title | Position Status | | Current Rate of Pay: (Monthly, Hourly, Daily) |
|---|---|---|---|
| Shift Training Deputy | ☒ Regular Full-Time    ☐ Seasonal<br>☐ Temporary    ☐ Emergency<br>☐ Part-Time    ☐ Probation | | |

**IF A SCHOOLBOARD MEMBER IS TERMINATING OR RETIRING, PLEASE PROVIDE THE FOLLOWING INFORMATION:

ACTUAL DAYS WORKED FOR THE FISCAL YEAR THE MEMBER RETIRED/TERMINATED_____

HOURS WORKED PER DAY_____      HOURLY RATE OF PAY_____

EMPLOYING AGENCY: _____ Warren County Regional Jail _____   UNIT #: __ 114 __

TODAY'S DATE: __ 10/29/07 __      EFFECTIVE DATE OF PERSONNEL ACTION: __ 10/22/07 __

_____
(Signature of Agency or Authorized Official)

_____ Jailer _____
(Title)

DAYTIME PHONE #: _____ 270-843-4606 _____

WarrenCounty1314

TO: DEPUTY JASON RIGSBY          10-22-07

FROM: JAILER JACKIE T STRODE

SUBJECT: PROMOTION

EFFECTIVE 10-22-07     YOU WILL BE PROMOTED

TO SGT. FOR THE DAY TIME WEEKEND SHIFT.

YOU WILL START THAT SHIFT EFFECTIVE

MONDAY, NOV. 5th, 2007.

THANK YOU FOR YOUR INTEREST TO BE A

SUPERVISOR AND GOOD LUCK.

Jackie T Strode

10-22-07



*File.*

# Warren County Regional Jail

## Jackie T. Strode, Jailer
### 920 Kentucky Street
### Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

December 22, 2010

TO:  Jerry Pearson, County Treasurer

FROM:  Jackie T. Strode, Jailer

SUBJECT:  Promotion

Effective Monday, December 27, 2010 Shift Training Deputy Jason Bigsby will be promoted to Assistant Shift Supervisor.  Jason's salary will be ████████████████

Attached is Form 2020.

Jackie T. Strode, Jailer

JTS/pw



Kentucky Retirement Systems
Perimeter Park West
1260 Louisville Rd
Frankfort KY  40601-6124
Phone: (502) 696-8800
Fax: (502) 696-8822
www.kyret.com

**FORM 2020**

Member's
Soc. Sec. No.: 4 0 7 - 3 3 - 8 0 8 3

Revised 10/05

## ADVICE OF PERSONNEL ACTION

NAME: *Jason Pinkley*                    DATE OF BIRTH:

ADDRESS:

☐ Name Change          ☑ Address Change

---

NATURE OF PERSONNEL ACTION:

☐ New Agency
☐ Leave Without Pay
☐ Military Leave
☐ Termination

☐ Reinstatement
☐ Educational Leave
☐ Dismissal
☐ Health Insurance Termination Date:

☐ New Employee
☐ Maternity Leave
☐ Death

☐ FMLA Leave*
☐ Approved Sick Leave Without Pay
☐ Date of Death:

☐ Change In Employer:      From: _____   To: _____

☑ Change in Position Status:   From *Shift Training Deputy*   To *Assistant Shift Supervisor*

☐ Other (please specify)

*Leave Provided For Under the Family Medical Leave Act (FMLA).*

---

| Position Title | Position Status | | Current Rate of Pay: (Monthly, Hourly, Daily) |
|---|---|---|---|
| | ☐ Regular Full-Time    ☐ Seasonal | | |
| | ☐ Temporary    ☐ Emergency | | |
| | ☐ Part-Time    ☐ Probation | | |

---

**IF A SCHOOLBOARD MEMBER IS TERMINATING OR RETIRING, PLEASE PROVIDE THE FOLLOWING INFORMATION:

ACTUAL DAYS WORKED FOR THE FISCAL YEAR THE MEMBER RETIRED/TERMINATED_____

HOURS WORKED PER DAY_____   HOURLY RATE OF PAY_____

EMPLOYING AGENCY *Warren Co. Regional Jail*   UNIT #: *114*

TODAY'S DATE: *12/22/10*   EFFECTIVE DATE OF PERSONNEL ACTION: *12/22/10*

*Jackie J Strode*
(Signature of Agency or Authorized Official)

*Jailer*
(Title)

DAYTIME PHONE _____

WarrenCounty1317



EFFECTIVE  12-27-10

Lt Tom Wilson will be promoted to Cpt (overseed shift)
   Present ▓▓▓▓ per hour   New ▓▓▓▓ per hour

Lt David Sreedman will be promoted to Cpt (overseed 3rd shift)
   Present ▓▓▓▓ New ▓▓▓▓ per hour

Sgt Joseph Blair   will be promoted to Lt (overseed)
   Present Bubba   New ▓▓▓▓

Sgt Jason Rigsby   to Lt (1st)
   Present ▓▓▓▓ New

Deputy Tom Robinson   to Sgt (Willead)
   Present ▓▓▓▓ to ▓▓▓▓

Deputy Roger Womack   to Sgt (1st)
   Present ▓▓▓▓ to ▓▓▓▓

WarrenCounty1318

WARREN COUNTY PERSONNEL POLICY
WARREN COUNTY REGIONAL JAIL EMPLOYEE CODE OF ETHICS

EMPLOYEE AGREEMENT

I have received a copy of Warren County Fiscal Court's Personnel Policy and a copy of the Warren County Regional Jail's Employee Code of Ethics.

I understand that it is my obligation to read the Warren County Personnel Policy and the Warren County Regional Jail Employee Code of Ethics and agree to follow all policies and procedures that are set forth therein. I agree to abide by the standards outlined in the document for the duration of my employment with Warren County Fiscal Court and the Warren County Regional Jail. I understand that this Personnel Policy and the Employee Code of Ethics along with my signature do not constitute an employment contract and that Warren County is an at-will employer. Should I have any questions related to the Warren County Personnel Policy or the Warren County Regional Jail Employee Code of Ethics, it is my obligation to seek assistance from my supervisor, Department Head, or the Jailer.

Furthermore, I understand that these may be amended at any time.

_____
Employee Signature

_____
Employee Printed Name
Jason Rigsby

_____
Date
9-8-11

Received by:

_____
Warren County Jailer

_____
Date
9-8-11

---

WARREN COUNTY E-MAIL AND INTERNET USER AGREEMENT

EMPLOYEE AGREEMENT

I have received a copy of Warren County Fiscal Court's Policy Guidelines on e-mail/internet acceptable use. I recognize that the County's e-mail/internet is to be used for conducting the County's business only. I understand that use of this equipment for private purposes is strictly prohibited.

As part of Warren County and user of Warren County's gateway to the internet and e-mail systems, I understand that this County's e-mail/internet guidelines apply to me.

I understand that it is my obligation to read the aforementioned document and agree to follow all policies and procedures that are set forth therein. I further agree to abide by the standards set in the document for the duration of my employment with Warren County Fiscal Court. Should I have any questions related to the Warren County Policy, it is my obligation to seek assistance from my Supervisor, Department Head, or Jailer.

I am aware that violations of this County's guidelines on acceptable e-mail/internet use may subject me to disciplinary action, up to and including dismissal from employment.

I further understand that my communications on the internet and e-mail reflect on Warren County Fiscal Court. Furthermore, I understand that this policy can be amended at any time and that I may receive further direction from my superiors related to proper e-mail/internet usage.

I am employed by the Warren County Jail.

_____
Employee Signature

_____
Employee Printed Name
Jason Rigsby

_____
Date
9-8-11

Received by:

_____
Warren County Jailer

_____
Date
9-8-11

WarrenCounty1319

Patt

My New Home Phone #



Thanks

LT Jason Ripley /573

Changed in Computer 9/6/11

PW -

APR 25 2011 11:02   From:2708435317

2011/04/26 09:20:49     1   /3          Page:2/4



PO Box 830 Carlisle, IA 50047
Phone   866-325-3695
Fax      8666802958

## Fax Transmittal

# Request for Verification of Employment

To: Pat Watt                           From: Verification of Employment

4/25/11

| Fax To | 270-843-5317 | Date | 04-26-2011 |
|---|---|---|---|
| Phone # | 866-325-3695 | Fax # | 8666802958 |
| Request # | 1118252 | Pages | 3 |
| Borrower | JASON D RIGSBY | | |

Attached is an authorization letter regarding the borrower listed above as well as a Fannie Mae Verification of Employment form 1005.  We would like to thank you in advance for timely completion and return of the VOE form as it is crucial.  ALL applicable items must be answered in order for the verification to be complete.

- **ALWAYS** complete items **26-30**.

- For a **CURRENT** employee, please complete items **9-12B, 15-19.**
  - If current military, please also complete item **13.**

- For a **PREVIOUS** employee, please complete items **21-25.**

We have a toll-free number available to you should you have any questions regarding this request: **866-325-3695**

**Please Fax** the completed VOE 1005 form within 24 hours to: **8666802958**

Thank you for your prompt attention to this matter.

**VOE Department**

VOEFCW112 07/2009

WarrenCounty1321

2011/04/26 09:27:55     2   /3
** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

| TIME RECEIVED April 26, 2011 8:43:58 AM CDT | REMOTE CSID | DURATION 40 | PAGES 1 | STATUS Received |

APR. 26. 2011  9:17AM THU DE WELLS FARGO          FAX NO.                    NO. 9618o  P. 1
03/11/2011 16:18 TEL                                                        @ 002/005

## Borrower's Certification/Verification Authorization/Financial Privacy Notice

The "Lender": WELLS FARGO BANK, N.A.

Rigsby

Reg. # 3646834

### Certification

If applying for a "reduced doc" loan, the undersigned certify the following:

1. I have applied for a first mortgage loan from the Lender, I may also have applied for a second mortgage loan from the Lender. In applying for the loan(s), I/We completed a loan application(s) containing variable information on the purpose of the loan(s), the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application(s) or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that the mortgage loan review process may be changed to a full documentation program. This may include verifying the information provided on the application(s) with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this/these mortgage(s), as applicable under the provisions of Title 18, United States Code, Section 1014.

### Verification Authorization

1. I/We have applied for credit. As part of the application process, the Lender, RELS Reporting Services LLC dba Rels Credit and any potential investor or insurer of this loan may verify the information contained in my/our credit application and in other documents required in connection with this loan.

2. I/We authorize you to provide to the Lender and to any potential investor or insurer of this loan, any and all information and documentation requested. Such information may include, but is not limited to: employment and income history; bank, money market, and similar account balances; credit history; and copies of income tax returns. The source of the information may come from, but is not limited to: credit bureaus; banks and other depository institutions; current and former employers; federal or state records including State Employment Security Agency (SESA) records; or other sources as required.

3. The authorization to access employment and income history from federal or state records, including SESA records, for this transaction continues in effect for one (1) year unless limited by state law, in which case the authorization continues in effect for the maximum period not to exceed one (1) year, allowed by law.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to the Lender or the investor that purchased the mortgage, or the mortgage currently insured (if any), is appreciated.

_(signature)_     3-11-11
Borrower's Signature        Date          Borrower's Signature            Date
JASON D. RIGSBY

Borrower's Signature        Date          Borrower's Signature            Date

### Financial Privacy Notice

FHA/VA Loan -- This is notice to you as required by the Right to Financial Privacy Act of 1978 that the Veterans Administration/Department of Housing and Urban Development/Federal Housing Administration has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to the Veterans Administration/Department of Housing and Urban Development without further notice or authorization but will not be disclosed or released by this institution to another government agency or department without your consent except as required or permitted by law.

VS/FL #1027 (rev.2) Rev. 03/14/2005

03/11/2011  3:20PM (GMT-06:00)

APR 28 2011 11:02   From:2708435317   Page:4/4

2011/04/26 09:27:55    3    /3

# Request for Verification of Employment

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA), by 12 USC, Section 1701 et seq (if HUD/FHA), by 42 USC, Section 1452b (if HUD/CPD), and Title 42 USC, 1471 et seq., or 7 USC, 1921 et seq (if USDA/FmHA).

**Instructions:** Lender - Complete items 1 through 7. Have applicant complete item 8. Forward directly to employer named in item 1.
Employer - Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in item 2.
The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

**Part I - Request**

| 1 To (Name and address of employer) | 2 From (Name and address of lender) |
|---|---|
| WARREN COUNTY JAIL<br>920 KENTUCKY ST<br>BOWLING GREEN, KY 42101 | WELLS FARGO HM<br>PO Box 830<br>Carlisle, IA 50047 |

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3 Signature of Lender | 4 Title | 5 Date | 6 Lenders No. (Optional) |
|---|---|---|---|
| *[signature]* | Verification Specialist | 04-26-2011 | |

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| 7 Name and Address of Applicant (include employee or badge number) 8 Signature of Applicant | 9 Signature of Applicant |
|---|---|
| JASON D RIGSBY | X  SEE ATTACHMENT |

**Part II - Verification of Present Employment**

| 9 Applicant's Date of Employment | 10 Present Position | 11 Probability of Continued Employment |
|---|---|---|
| 4/1/97 | Asst. Shift Supervisor | Good |

| 12A. Current Gross Base Pay (Enter Amount and Check Period) | | 13. For Military Personnel Only | | |
|---|---|---|---|---|
| ■ | ☐ Annual  ☐ Weekly  ☐ Other (Specify)<br>☐ Monthly  ☑ Hourly | Pay Grade | | 14. If Overtime or Bonus<br>Is Applicable, is its Continuance Likely? |
| | | | | Overtime  Bonus |
| | | Type Monthly Amount | | ☑ Yes ☐ No  ☐ Yes ☑ No |

**12B. Gross Earnings**

| Type | Year To Date | Past Year | Past Year | | | 15. If paid hourly - average hours per week |
|---|---|---|---|---|---|---|
| | 4/26/11 | 2010 | 2009 | Base Pay | $ | 40 |
| Base Pay | ■ | | | Rations | $ | 16. Date of applicant's next pay increase |
| Overtime | ■ | | | Flight or Hazard | $ | 7/1/11 |
| Commissions | $ | | | Clothing | $ | 17. Projected amount of next pay increase |
| Bonus | ■ | | | Quarters | $ | |
| Total | ■ | | | Pro Pay | $ | 18. Date of applicant's last pay increase |
| | | | | Overseas or Combat | $ | 7/1/10 |
| 20. Remarks (if any) | | | | Variable Housing Allowance | $ | 19. Amount of last pay increase ■ |

**Part III - Verification of Previous Employment**

| 21 Date Hired | | 23 Salary/Wage at Termination Per (Year) (Month) (Week) | | | |
|---|---|---|---|---|---|
| 22 Date Terminated | | Base | Overtime | Commissions | Bonus |
| 24 Reason for Leaving | | 25 Position Held | | | |

**Part IV - Authorized Signature** - Federal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary, the USDA, FmHA/FHA Commissioner, or the HUD/CPD Assistant Secretary.

| 26. Signature of Employer | 27 Title (Please print or type) | 28 Date |
|---|---|---|
| *Greg Burrell [signature]* | Finance Officer | 4/26/11 |
| 29 Print or type name signed in item 26<br>Greg Burrell | | |
| 30 Phone No. | | |

Fannie Mae
Form 1005 Mar 90

WRITTEN

WarrenCounty1323

# Fax Transmission Report

```
Date/Time        : APR-28-2011 11:19AM THU
Fax Number       : 2708435317
Fax Name         : Warren County Regional Jail
Model Name       : Phaser 3635MFP
```

| No. | Remote Station | Start Time | Duration | Page | Mode | Job Type | Result |
|-----|----------------|------------|----------|------|------|----------|--------|
| 014 | 918667808459 | 04-21 04:58PM | 02'17 | 009/009 | EC | HS | CP |
| 015 | 919017374938 | 04-21 05:01PM | 00'24 | 002/002 | EC | HS | CP |
| 016 | 97823898 | 04-25 08:09AM | 02'02 | 009/009 | EC | HS | CP |
| 017 | 98431453 | 04-25 08:12AM | 02'26 | 006/006 | EC | HS | CP |
| 018 | 97467501 | 04-25 08:15AM | 00'35 | 003/003 | EC | HS | CP |
| 019 | 97467885 | 04-25 08:16AM | 00'56 | 005/005 | EC | HS | CP |
| 020 | 99012110 | 04-25 08:40AM | 00'18 | 001/001 | EC | HS | CP |
| 021 | 97815115 | 04-25 08:41AM | 00'16 | 001/001 | EC | HS | CP |
| 022 | 9796,5143 | 04-25 08:48AM | 00'49 | 007/007 | EC | HS | CP |
| 023 | 97467116 | 04-25 09:09AM | 00'37 | 005/005 | EC | HS | CP |
| 024 | 912706065648376 | 04-25 10:35AM | 00'00 | 000/003 | EC | HS | FA |
| 025 | 916065648376 | 04-25 10:43AM | 00'00 | 000/002 | EC | HS | FA |
| 026 | 916065648374 | 04-25 10:45AM | 00'00 | 000/002 | EC | HS | FA |
| 027 | | 04-25 10:46AM | 01'07 | 001 | EC | HS | |
| 028 | 916065648676 | 04-25 11:40AM | 00'40 | 003/003 | EC | HS | CP |
| 029 | 97467035 | 04-25 01:40PM | 00'33 | 004/004 | EC | HS | CP |
| 030 | 912705262846 | 04-25 02:19PM | 00'33 | 002/002 | EC | HS | CP |
| 031 | 916154016587 | 04-25 03:21PM | 02'29 | 019/019 | EC | HS | CP |
| 032 | 97823898 | 04-26 08:10AM | 00'38 | 003/003 | EC | HS | CP |
| 033 | 98431453 | 04-26 08:12AM | 00'50 | 002/002 | EC | HS | CP |
| 034 | 97467501 | 04-26 08:13AM | 00'17 | 001/001 | EC | HS | CP |
| 035 | | 04-26 09:34AM | 00'46 | 001 | EC | HS | |
| 036 | 915025649575 | 04-26 10:02AM | 00'29 | 003/003 | EC | HS | CP |
| 037 | 912703880149 | 04-26 10:03AM | 00'53 | 003/003 | EC | HS | CP |
| 038 | 97467035 | 04-26 10:20AM | 00'18 | 002/002 | EC | HS | CP |
| 039 | 912702652688 | 04-26 10:56AM | 00'13 | 001/001 | EC | HS | CP |
| 040 | 97467501 | 04-26 10:59AM | 00'25 | 003/003 | EC | HS | CP |
| 041 | 9781,2777 | 04-26 11:01AM | 00'43 | 004/004 | EC | HS | CP |
| 042 | 915025649575 | 04-26 01:21PM | 00'30 | 003/003 | EC | HS | CP |
| 043 | 916157365322 | 04-26 04:14PM | 01'37 | 007/007 | EC | HS | CP |
| 044 | 7811984 | 04-26 04:31PM | 00'00 | 000/002 | EC | HS | FA |
| 045 | 7811984 | 04-26 04:44PM | 00'00 | 000/002 | EC | HS | FA |
| 046 | 916059771836 | 04-27 07:24AM | 00'23 | 002/002 | EC | HS | CP |
| 047 | 97823898 | 04-27 08:02AM | 00'41 | 003/003 | EC | HS | CP |
| 048 | 98431453 | 04-27 08:03AM | 00'52 | 002/002 | EC | HS | CP |
| 049 | 97467501 | 04-27 08:04AM | 00'18 | 001/001 | EC | HS | CP |
| 050 | 915025649575 | 04-27 08:05AM | 00'57 | 003/003 | EC | HS | CP |
| 051 | | 04-27 09:07AM | 00'48 | 001 | EC | HS | |
| 052 | 97467423 | 04-27 09:29AM | 04'34 | 012/012 | EC | HS | CP |
| 053 | 92709040512 | 04-27 10:33AM | 00'12 | 001/001 | EC | HS | CP |
| 054 | 915025649575 | 04-27 10:51AM | 00'34 | 003/003 | EC | HS | CP |
| 055 | 97962173 | 04-27 12:44PM | 00'53 | 006/006 | EC | HS | CP |
| 056 | 97467501 | 04-27 12:51PM | 00'19 | 002/002 | EC | HS | CP |
| 057 | 97962173 | 04-27 01:47PM | 00'48 | 007/007 | EC | HS | CP |
| 058 | 97823898 | 04-28 07:58AM | 00'49 | 003/003 | EC | HS | CP |
| 059 | 98431453 | 04-28 08:00AM | 00'52 | 002/002 | EC | HS | CP |
| 060 | 97467501 | 04-28 08:05AM | 00'13 | 001/001 | EC | HS | CP |
| 061 | | 04-28 09:27AM | 01'07 | 001 | EC | HS | |
| 062 | 919375626285 | 04-28 10:15AM | 00'11 | 001/001 | EC | HS | CP |
| 063 | 918666802958 | 04-28 11:16AM | 01'36 | 003/003 | G3 | HS | CP |

Abbreviations:

WarrenCounty1324

| | | | |
|---|---|---|---|
| HS:Host Send | PL:Polled Local | CP:Completed | TS:Terminated by System |
| HR:Host Receive | PR:Polled Remote | FA:Fail | TU:Terminated by User |
| MS:Mailbox Save | WS:Waiting To Send | RP:Report | G3:Group3 |
| MP:Mailbox Print | EC:Error Correct | | |

WarrenCounty1325

# Warren County Regional Jail

## Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

## FAX COVER SHEET

DATE: _4-26-11_

TO: _Greg Burrell_

AGENCY: _____

FAX NUMBER: _281-2777_

SENDER: _Pat Watt_

We are transmitting ___4___ pages, including the cover sheet.
If you do not receive all pages clearly, please contact sender at (270) 843-4606.

NOTES: _____

_____

_____

_____

_____

### CONFIDENTIALITY NOTICE:

This FAX cover sheet and the materials enclosed in the following transmission are the private, confidential property of the sender, and the material are privileged communications intended solely for the recipient indicated above. If you are not the intended recipient indicated above, you are hereby notified that any review, disclosure, copying, distribution, or taking of any other action reliance upon the contents of this transmission is strictly prohibited and may result in legal liability on your part. If you have received this transmission in error, please notify the sender at 270-843-4606 to arrange for the transmission. Thank you.





PO Box 830 Carlisle, IA 50047

Phone    866-325-3695

Fax       8666802958

## Fax Transmittal

# Request for Verification of Employment

**To:** Pat Watt

**From:** Verification of Employment

| | | | |
|---|---|---|---|
| **Fax To** | 270-843-5317 | **Date** | 04-26-2011 |
| **Phone #** | 866-325-3695 | **Fax #** | 8666802958 |
| **Request #** | 1118252 | **Pages** | 3 |
| **Borrower** | JASON D RIGSBY | | |

Attached is an authorization letter regarding the borrower listed above as well as a Fannie Mae Verification of Employment form 1005. We would like to thank you in advance for timely completion and return of the VOE form as it is crucial. **ALL** applicable items must be answered in order for the verification to be complete.

- **ALWAYS** complete items **26-30**.

- For a **CURRENT** employee, please complete items **9-12B, 15-19**.
  - If current military, please also complete item **13**.

- For a **PREVIOUS** employee, please complete items **21-25**.

We have a toll-free number available to you should you have any questions regarding this request: **866-325-3695**

**Please Fax** the completed VOE 1005 form within 24 hours to: **8666802958**

Thank you for your prompt attention to this matter.

## VOE Department

This transmission may contain information that is confidential and/or proprietary. If you are not the individual or entity to which it is addressed, note that any review, disclosure, copying, retransmission, or other use is strictly prohibited. If you have received this transmission in error, please notify the sender immediately and destroy this material.

WarrenCounty1327

2011/04/26 09:27:55

```
** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

TIME RECEIVED                    REMOTE CSID              DURATION   PAGES    STATUS
April 26, 2011 8:43:58 AM CDT                            40         1        Received
```

APR. 26. 2011 9:17AM THU 06 WELLS FARGO        FAX NO.            NO. 9618@  P. 1
03/11/2011 16:18 TEL                                                        @002/005

## Borrower's Certification/Verification Authorization/ Financial Privacy Notice

*Rigsby*

The "Lender": WELLS FARGO BANK, N.A.

*Reg. # 3646834*

### Certification

If applying for a "reduced doc" loan, the undersigned certify the following:

1. I have applied for a first mortgage loan from the Lender. I may also have applied for a second mortgage loan from the Lender. In applying for the loan(s), I/we completed a loan application(s) containing various information on the purpose of the loan(s), the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application(s) or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that the mortgage loan review process may be changed to a full documentation program. This may include verifying the information provided on the application(s) with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this/these mortgage(s), as applicable under the provisions of Title 18, United States Code, Section 1014.

### Verification Authorization

1. I/We have applied for credit. As part of the application process, the Lender, RELS Reporting Services LLC dba Rels Credit and any potential investor or insurer of this loan may verify the information contained in my/our credit application and in other documents required in connection with this loan.

2. I/We authorize you to provide to the Lender and to any potential investor or insurer of this loan, any and all information and documentation requested. Such information may include, but is not limited to: employment and income history; bank, money market, and similar account balances; credit history; and copies of income tax returns. The source of the information may come from, but is not limited to: credit bureaus; banks and other depository institutions; current and former employers; federal or state records including State Employment Security Agency (SESA) records; or other sources as required.

3. The authorization to access employment and income history from federal or state records, including SESA records, for this transaction continues in effect for one (1) year unless limited by state law, in which case the authorization continues in effect for the maximum period, not to exceed one (1) year, allowed by law.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to the Lender or the investor that purchased the mortgage, or the mortgage guaranty insurer (if any), is appreciated.

| | | | |
|---|---|---|---|
| *signature* | 3-1-11 | | |
| Borrower's Signature | Date | Borrower's Signature | Date |
| JASON D RIGSBY | | | |
| | | | |
| Borrower's Signature | Date | Borrower's Signature | Date |

### Financial Privacy Notice

FHA/VA Loan -- This is notice to you as required by the Right to Financial Privacy Act of 1978 that the Veterans Administration/ Department of Housing and Urban Development/Federal Housing Administration has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to the Veterans Administration/Department of Housing and Urban Development without further notice or authorization but will not be disclosed or released by this institution to another government agency or department without your consent except as required or permitted by law.

NMR #1097 [RDAC] Rev. 03/12/2008

03/11/2011   3:20PM (GMT-06:00)

04/07/2011   3:15PM (GMT-07:00)

WarrenCounty1328

2011/04/26 09:27:55       3   /3

# Request for Verification of Employment

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not bedisclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et. seq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. seq., or 7 USC, 1921 et. seq. (if USDA/FmHA)

**Instructions:**   **Lender** - Complete Items 1 through 7. Have applicant complete Item 8. Forward directly to employer named in Item 1.
**Employer** - Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in Item
The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

## Part I - Request

| 1. To (Name and address of employer) | 2. From (Name and address of lender) |
|---|---|
| WARREN COUNTY JAIL<br>920 KENTUCKY ST<br>BOWLING GREEN, KY 42101 | WELLS FARGO HM<br>PO Box 830<br>Carlisle, IA 50047 |

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3. Signature of Lender | 4. Title | 5. Date | 6. Lenders No. (Optional) |
|---|---|---|---|
| *Cherice Lockmann* | Verification Specialist | 04-26-2011 | |

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| 7. Name and Address of Applicant (Include employee or badge number) | 8. Signature of Applicant |
|---|---|
| JASON D RIGSBY<br><br>████████ | 8. Signature of Applicant<br><br>X  **SEE ATTACHMENT** |

## Part II - Verification of Present Employment

| 9. Applicant's Date of Employment | 10. Present Position | 11. Probability of Continued Employment |
|---|---|---|

| 12A. Current Gross Base Pay (Enter Amount and Check Period) | 13. For Military Personnel Only | 14. If Overtime or Bonus is Applicable, Is Its Continuance Likely? |
|---|---|---|

| | Annual | Weekly | | Other (Specify) | Pay Grade | Overtime | Bonus |
|---|---|---|---|---|---|---|---|
| $ | Monthly | Hourly | | | Type Monthly Amount | Yes  No | Yes  No |

### 12B. Gross Earnings

| Type | Year To Date | Past Year | Past Year | | | 15. If paid hourly - average hours pe r week |
|---|---|---|---|---|---|---|
| | | | | Base Pay | $ | |
| Base Pay | Thru ____ ____ | $ | $ | Rations | $ | 16. Date of applicant's next pay increase |
| Overtime | $ | $ | $ | Flight or Hazard | $ | 17. Projected amount of next pay increase |
| Commissions | $ | $ | $ | Clothing | $ | |
| Bonus | $ | $ | $ | Quarters | $ | 18. Date of applicant's last pay increase |
| | | | | Pro Pay | $ | |
| Total | $ | $ | $ | Overseas or Combat | $ | 19. Amount of last pay increase |
| | | | | Variable Housing Allowance | $ | |

20. Remarks (If employee was off work for any length of time, please indicate time period and reason)

## Part III - Verification of Previous Employment

| 21. Date Hired | 23. Salary/Wage at Termination Per (Year) (Month) (Week) |
|---|---|
| 22. Date Terminated | Base ____  Overtime ____  Commissions ____  Bonus ____ |
| 24. Reason for Leaving | 25. Position Held |

**Part IV - Authorized Signature** - Federal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspirac y purposed to influence the issuance of any guaranty or insurance by the VA Secretary, the USDA, FmHA/FHA Commissioner, or the HUD/CPD Assistant Secretary.

| 26. Signature of Employer | 27. Title (Please print or type) | 28. Date |
|---|---|---|
| 29. Print or type name signed in Item 26 | | |
| 30. Phone No. | | |

Fannie Mae
Form 1005 Mar. 90

WRITTEN



WarrenCounty1329

# Fax Transmission Report

```
Date/Time      : APR-26-2011 11:24AM TUE
Fax Number     : 2708435317
Fax Name       : Warren County Regional Jail
Model Name     : Phaser 3635MFP
```

| No. | Remote Station | Start Time | Duration | Page | Mode | Job Type | Result |
|---|---|---|---|---|---|---|---|
| 042 | 97467501 | 04-19 07:31AM | 00'14 | 001/001 | EC | HS | CP |
| 043 | | 04-19 09:13AM | 00'47 | 001 | EC | HS | |
| 044 | 915025842808 | 04-19 10:17AM | 00'22 | 003/003 | EC | HS | CP |
| 045 | 97467501 | 04-19 11:27AM | 00'25 | 003/003 | EC | HS | CP |
| 046 | 916059771836 | 04-19 11:31AM | 03'11 | 022/022 | EC | HS | CP |
| 047 | 916059771835 | 04-19 11:36AM | 00'00 | 000/001 | EC | HS | FA |
| 048 | 916059771836 | 04-19 11:50AM | 04'30 | 017/021 | EC | HS | FA |
| 049 | 916059771836 | 04-19 11:57AM | 06'30 | 021/021 | EC | HS | CP |
| 050 | 97812777 | 04-19 12:35PM | 00'08 | 001/001 | EC | HS | CP |
| 051 | 97823898 | 04-20 07:52AM | 00'39 | 003/003 | EC | HS | CP |
| 052 | 98431453 | 04-20 07:53AM | 00'50 | 002/002 | EC | HS | CP |
| 053 | 97467501 | 04-20 07:54AM | 00'13 | 001/001 | EC | HS | CP |
| 054 | | 04-20 09:15AM | 00'51 | 001 | EC | HS | |
| 055 | 918663954692 | 04-20 11:44AM | 00'43 | 001/001 | G3 | HS | CP |
| 056 | 98435512 | 04-20 03:51PM | 00'08 | 001/001 | EC | HS | CP |
| 057 | 916157365265 | 04-20 04:01PM | 00'41 | 002/002 | EC | HS | CP |
| 058 | | 04-21 07:59AM | 01'14 | 002 | EC | HS | |
| 059 | 9746,7501 | 04-21 08:02AM | 00'14 | 001/001 | EC | HS | CP |
| 060 | 9782,3898 | 04-21 08:06AM | 00'28 | 002/002 | EC | HS | CP |
| 061 | 9781,2777 | 04-21 08:33AM | 00'40 | 005/005 | EC | HS | CP |
| 062 | | 04-21 09:13AM | 00'44 | 001 | EC | HS | |
| 063 | 97467141 | 04-21 10:40AM | 00'56 | 002/002 | G3 | HS | CP |
| 064 | 918667808459 | 04-21 04:58PM | 02'17 | 009/009 | EC | HS | CP |
| 065 | 919017374938 | 04-21 05:01PM | 00'24 | 002/002 | EC | HS | CP |
| 066 | 97823898 | 04-25 08:09AM | 02'02 | 009/009 | EC | HS | CP |
| 067 | 98431453 | 04-25 08:12AM | 02'26 | 006/006 | EC | HS | CP |
| 068 | 97467501 | 04-25 08:15AM | 00'35 | 003/003 | EC | HS | CP |
| 069 | 97467885 | 04-25 08:16AM | 00'56 | 005/005 | EC | HS | CP |
| 070 | 99012110 | 04-25 08:40AM | 00'18 | 001/001 | EC | HS | CP |
| 071 | 97815115 | 04-25 08:41AM | 00'16 | 001/001 | EC | HS | CP |
| 072 | 9796,5143 | 04-25 08:48AM | 00'49 | 007/007 | EC | HS | CP |
| 073 | 97467116 | 04-25 09:09AM | 00'37 | 005/005 | EC | HS | CP |
| 074 | 912706065648376 | 04-25 10:35AM | 00'00 | 000/002 | EC | HS | FA |
| 075 | 916065648376 | 04-25 10:43AM | 00'00 | 000/002 | EC | HS | FA |
| 076 | 916065648374 | 04-25 10:45AM | 00'00 | 000/002 | EC | HS | FA |
| 077 | | 04-25 10:46AM | 01'07 | 001 | EC | HS | |
| 078 | 916065648676 | 04-25 11:40AM | 00'40 | 003/003 | EC | HS | CP |
| 079 | 97467035 | 04-25 01:40PM | 00'33 | 004/004 | EC | HS | CP |
| 080 | 912705262846 | 04-25 02:19PM | 00'33 | 002/002 | EC | HS | CP |
| 081 | 916154016587 | 04-25 03:21PM | 02'29 | 019/019 | EC | HS | CP |
| 082 | 97823898 | 04-26 08:10AM | 00'38 | 003/003 | EC | HS | CP |
| 083 | 98431453 | 04-26 08:12AM | 00'50 | 002/002 | EC | HS | CP |
| 084 | 97467501 | 04-26 08:13AM | 00'17 | 001/001 | EC | HS | CP |
| 085 | | 04-26 09:34AM | 00'46 | 001 | EC | HS | |
| 086 | 915025649575 | 04-26 10:02AM | 00'29 | 003/003 | EC | HS | CP |
| 087 | 912703880149 | 04-26 10:03AM | 00'53 | 003/003 | EC | HS | CP |
| 088 | 97467035 | 04-26 10:20AM | 00'18 | 002/002 | EC | HS | CP |
| 089 | 912702652688 | 04-26 10:56AM | 00'13 | 001/001 | EC | HS | CP |
| 090 | 97467501 | 04-26 10:59AM | 00'25 | 003/003 | EC | HS | CP |
| 091 | 9781,2777 | 04-26 11:01AM | 00'43 | 004/004 | EC | HS | CP |

Abbreviations:

WarrenCounty1330

HS:Host Send          PL:Polled Local      CP:Completed      TS:Terminated by System
HR:Host Receive       PR:Polled Remote     FA:Fail           TU:Terminated by User
MS:Mailbox Save       WS:Waiting To Send   RP:Report         G3:Group3
MP:Mailbox Print      EC:Error Correct

WarrenCounty1331



## TASER® ECD User Certification Form
### PRINT LEGIBLY AND CLEARLY PLEASE!

**Which device were you certified in (Check all that apply):**   ☐ M26  ☒ X26

Rank: _Captain_          Name: _Jason Rigsby_

Agency: _WCRJ_                    Email: ▮▮▮▮▮▮▮▮▮▮

Phone: _270-843-4006_     Fax: _____

Address/State/Zip: _920 Kentucky St Bowling Green, KY 42103_

Number of test answers correct: _50_ out of 50 (X26) (80% minimum = **40**) or out of 45 (M26) (80% minimum = **36**)

Instructor to initial that student has successfully completed the following practical application tests:

_BM_   Demonstration of proper finger positions for aiming and firing.

_BM_   Control TASER ECD adequately when commanded "Arm - Spark - Safe" at random.

_BM_   Demonstrate the ability to load and unload the TASER ECD under stress.

_BM_   Remove and reinstall batteries in TASER ECDs correctly.

_BM_   Hit targets from various distances and place both probes in the preferred target zones

I hereby certify that the above named applicant has passed the appropriate TASER Certification Test with a minimum score of 80% and has met the above criteria for sufficient knowledge and skills in the use of the TASER ECD system checked above and is hereby certified as a user of this system.

Attested by Certifying Instructor: _Lt. Brian McPherson_      _Lt Brian McPherson_
                                                    (Print Name)                        (Signature)

Date: _3-13-12_      Location: _WCRJ_

## *Keep this Form for Department Training Records*

©1999- 2011 TASER International, Inc. TASER®, Shaped Pulse™ and the Globe & Lightning Bolt Logo are trademarks of TASER International, Inc.

WarrenCounty1332

Benefit Selection Form  **WARREN COUNTY GOVERNMENT**  Effective 1/1/2012

Employee Name: _Jason Rigsby_   DOB: ███████████

Address: ████████████████████████████

Social Security #: ████████████████████

## ENROLLMENT INSTRUCTIONS

Effective January 1, 2012, your medical insurance will continue to be offered to employees of Warren County Government through CMD Health, giving you access to ClubMD. You will continue to be offered a triple option in plan design. If you wish to keep your medical plan the same, no action is required. If you wish to make changes, please complete a CMD Health Enrollment Form.

## MEDICAL PLAN – CMD HEALTH

☑ Please check here to drop or decline medical coverage.

| Plan Option | CMD - KY252025 | CMD - KY152050 | CMD - KY102025 |
|---|---|---|---|
| Deductible (Individual / Family) | $2,500 / $5,000 | $1,500 / $3,000 | $1,000 / $2,000 |
| Coinsurance | 20% | 20% | 20% |
| Maximum Out-of Pocket | $5,000 / $10,000 | $3,000 / $6,000 | $2,000 / $4,000 |
| Hospitalization | Deductible & Coinsurance | Deductible & Coinsurance | Deductible & Coinsurance |
| ER | $250 Copayment | $250 Copayment | $125 Copayment |
| **Primary Care Office Visit at Club MD** | $0 | $0 | $0 |
| Primary Care Office Visit Outside of Club | $25 Copayment | $50 Copayment | $25 Copayment |
| **Specialist Office Visit if Referred by Club MD** | $0 | $0 | $0 |
| Specialist Office Visit if Not Referred by Club | $50 Copayment | $75 Copayment | $50 Copayment |
| Preventive Care | $0 Club / Copay Other | $0 Club / Copay Other | $0 Club / Copay Other |
| RX (Generic, Brand, Non-Formulary) | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% |
| **TOTAL MONTHLY PREMIUM** | | | |
| Employee | $424.61 | $443.76 | $476.79 |
| Employee/Spouse | $849.22 | $887.52 | $953.58 |
| Employee/Child(ren) | $806.76 | $843.14 | $905.90 |
| Family | $1,358.75 | $1,420.03 | $1,525.74 |
| **EMPLOYEE MONTHLY CONTRIBUTION – WITH WELLNESS PARTICIPATION** *Mark Enrollment Choice Below* | | | |
| Employee | ☐ $ 0.00 | ☐ $ 19.15 | ☐ $ 52.18 |
| Employee/Spouse | ☐ $424.61 | ☐ $462.91 | ☐ $ 528.97 |
| Employee/Child(ren) | ☐ $382.15 | ☐ $418.53 | ☐ $ 481.29 |
| Family | ☐ $934.14 | ☐ $995.42 | ☐ $1,101.13 |
| **EMPLOYEE MONTHLY CONTRIBUTION – WITHOUT WELLNESS PARTICIPATION** *Mark Enrollment Choice Below* | | | |
| Employee | ☐ $ 42.46 | ☐ $ 61.61 | ☐ $ 94.64 |
| Employee/Spouse | ☐ $467.07 | ☐ $505.37 | ☐ $ 571.43 |
| Employee/Child(ren) | ☐ $424.61 | ☐ $460.99 | ☐ $ 523.75 |
| Family | ☐ $976.60 | ☐ $1,037.88 | ☐ $1,143.59 |

## DENTAL BENEFITS – GUARDIAN

**NEW THIS YEAR!** Dental benefits will be offered through Guardian.  Since this is a new carrier, you must re-enroll if you wish to have dental coverage.  Please mark your selection below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | |
|---|---|
| Deductible | $25 / $75 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% with $1,000 Lifetime Max |
| Monthly Premium | |
| Employee Only | ☐ $16.95 |
| Employee + 1 | ☐ $36.88 |
| Family | ☐ $67.95 |
| ☑ Please check here to drop or decline dental coverage. | |

## VISION BENEFITS - GUARDIAN

**NEW THIS YEAR!**  Vision benefits will be offered through Guardian.  Since this is a new carrier, you must re-enroll if you wish to have vision coverage.  Please mark your selection below.  If you wish to cover your dependents, you MUST complete the dependent information section below.  If no dependents are listed, your coverage will be for single only.  Please see the benefit summary for complete details.

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $10.00 | Every 12 Months |
| Lenses | $25.00 | |
| Frames | $25.00 | Every 24 Months |
| Elective Contacts | $25.00 (Max $135) | Every 12 Months |
| Monthly Premium | | |
| Employee | ☐ $ 5.86 | |
| Employee + One | ☐ $ 8.86 | |
| Family | ☐ $14.93 | |
| ☑ Please check here to drop or decline vision coverage. | | |

## DEPENDENT INFORMATION

| Name | Relationship | DOB | Social Security # | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|
| _____ | Spouse | | | ☐ | ☐ |
| _____ | Child | | | ☐ | ☐ |
| _____ | Child | | | ☐ | ☐ |
| _____ | Child | | | ☐ | ☐ |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form.  Such reductions, considered as elective contributions under the plan, shall commence on January 1, 2011.  I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year.  I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _Jason Rigsby_____   Date _11-30-11_

NAME: _Jason Rigsby_
(Please Print)

DATE OF BIRTH: ████████

WarrenCounty1334

# Employee Application

| Employer/Group Name: | OFFICE USE ONLY | |
|---|---|---|
| Warren County Regional Jail (Fiscal Court) | Effective Date of Coverage: / / | Group Number: |

**1. TYPE OF COVERAGE REQUESTED** ☐ Employee Only  ☐ Employee + Spouse  ☐ Employee + Child(ren)  ☐ Family  ☐ Select PCP  ☑ No Coverage (Waiver)

**2. REASON FOR COVERAGE REQUEST** ☐ New Hire  ☐ Rehire/Reinstatement  ☐ New Group Enrollment  ☐ Late Enrollment  ☐ Open Enrollment  ☐ Other_____

**3. QUALIFYING EVENT** *(attach legal documentation)* Event Date: / /  ☐ Marriage**  ☐ Adoption**  ☐ Pre-enrollment (newborn)  ☐ Legal Guardianship**  ☐ Other**_____

**4. INFORMATION ABOUT YOU** ☐ Single  ☐ Married  ☐ Divorced  ☐ Widowed   Date of Hire: / /   Product: ☐ HMO (Simplicity)  ☐ POS (Classic)  ☐ Other_____

| Relationship | Last Name, First Name, M.I. | Social Security No. | Sex | Full Time Student? | Date of Birth | Height / Weight | Current tobacco user? | Disabled? | Selected PCP Provider |
|---|---|---|---|---|---|---|---|---|---|
| Employee | Rigsby, Jason D | ▉▉▉▉▉▉▉▉▉ | | | | 6'1" 260 | ☑ Yes ☐ No | ☐ Yes ☑ No | ☐ Club MD ☑ Non Club MD |
| Spouse | | | ☐ M ☐ F | | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |
| ☐ Child ☐ Other_____ | | | ☐ M ☐ F | ☐ Yes ☐ No | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |
| ☐ Child ☐ Other_____ | | | ☐ M ☐ F | ☐ Yes ☐ No | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |
| ☐ Child ☐ Other_____ | | | ☐ M ☐ F | ☐ Yes ☐ No | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ...e electronically?  ☐ Yes  ☐ No

**Dependent Home Address:** Street, City, State, ZIP Code (if different from employee)    **Dependent Name(s)**

**5. NON-MEDICAL INFORMATION**

**Other Health Coverage:** Will you or any of your dependents be covered by any other health coverage, including Medicare or Medicaid on the day coverage begins?  ☐ Yes  ☐ No

If yes, indicate names of those to be covered: _____   Effective Date: _____   Policy #: _____

Insurance Company Name: _____   Address: _____   Phone Number: _____

**Prior Health Coverage:** Have you been covered by any other Health Coverage within the last 12 months (or 18 months for late enrollees)?  ☐ Yes *(If yes, provide certificate of creditable coverage)*  ☐ No

If yes, indicate Insurance Company Name: _____   Address: _____   Policy #: _____

Insurance Co. Telephone #: _____   Effective Date: _____   Termination Date: _____   Reason for Termination: _____

SM/LGA.KY.200903001 Rev. 10/2009

Page 2

WarrenCounty1335

# Coverage Conditions

Employee Name: _Jason R____._

Employee Social Security Number: _____

**7. SIGNIFICANT TERMS, CONDITIONS AND AUTHORIZING TERMS** *Please read this section carefully before signing the application below.*

Any person who knowingly and with intent to defraud any insurance company, health maintenance organization, self-insured plan, or other person, files an application for insurance or other form of health care coverage containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

1. I understand that for both the HMO and POS plans, referrals for specialty care and services, unless otherwise required by State or Federal law or in accordance with my Certificate of Coverage, must be coordinated by my primary care physician (PCP). Written referrals, if required must be provided by my PCP prior to seeing the specialist.

2. I authorize any licensed physician, hospital, health care provider, insurer or any other medical or insuring entity in possession of my or my dependents medical records and information, to release my medical records and information and those of my dependents to the PCP and CMD Health, Inc (CMD Health). This information may be requested after we are accepted by CMD Health to identify possible pre-existing conditions. I hereby provide CMD Health with consent to use identifiable information for general treatment, payment or healthcare underwriting and operations, including but not limited to, coordination of care, quality assessment, utilization review, fraud detection or accreditation purposes. If members' identifiable information is to be used for any other purpose, CMD Health will obtain specific authorization from me and my dependents as required.

3. I may not assign any payment under my CMD Health program unless allowable by law.

4. I understand that completion of this form does not guarantee acceptance; eligibility and enrollment criteria must be satisfied.

5. I understand that CMD Health imposes a pre-existing condition exclusion. The pre-existing exclusion applies only to conditions for which medical advice, diagnosis, care or treatment was recommended or received within the six-month period prior to enrollment. This exclusion may last up to 12 months from the first day of coverage, or if in a waiting period, from the first day of the waiting period. The pre-existing condition exclusion does not apply to pregnancy or to a child who is enrolled in the plan within 31 days of birth, adoption or placement for adoption.

I understand the pre-existing exclusion-waiting period is reduced by the number of days of prior creditable coverage provided there has not been a break in coverage of more than 63 days. To reduce the pre-existing exclusion-waiting period, CMD Health must receive a copy of the certificate of creditable coverage from the prior Health Insurance Carrier.

To obtain a certificate of creditable coverage, 1. Contact the Human Resources area of your prior employer and request a certificate of creditable coverage or the evidence of prior coverage, 2. Contact your prior insurance carrier and request a certificate of creditable coverage or, if necessary, request the steps to obtain a certificate of creditable coverage, or 3. Contact CMD Health at the number on your new identification card for assistance in obtaining a certificate of creditable coverage from your prior insurance carrier. Make sure you provide your current mailing address.

Upon receipt of your certificate of creditable coverage, forward a copy to the address on the back of your new identification card.

I acknowledge I have read the TERMS, and I accept its provisions as a condition of coverage. I represent that all answers in sections 1 through 6 above are true and accurate to the best of my knowledge and I understand they will be relied upon by CMD Health, Inc. in accepting this application. I understand misstatements or failures to report new medical information prior to my effective date may result in a material change to coverage or premium. Material misrepresentations or omissions in this application may result in increased premiums, benefits being denied or coverage(s) being rescinded or cancelled.

By signing below, I am indicating that I have read and understand the language in the TERMS section of this application and agree to all of its terms. I give this authorization for and on behalf of any eligible dependents and myself if covered by CMD Health, Inc. I am acting as their agent and representative.

*Thank you for choosing CMD Health, Inc.*

**PLEASE READ THE TERMS IN SECTION 7 ABOVE CAREFULLY BEFORE SIGNING AND REVIEW YOUR APPLICATION FOR ERRORS OR OMISSIONS**

| Applicant signature | Please Print Name | Date |
|---|---|---|
| *Jason Rigsby* | *Jason Rigsby* | / / |

**8. WAIVER OF COVERAGE** *(Complete ONLY if you wish to waive coverage)*

I understand that I am declining enrollment for myself and/or my dependents (including my spouse). I may be able to enroll myself and my dependents in this plan later if I or my dependents lose eligibility for other coverage. I also acknowledge that I must request enrollment within 30 days after coverage ends. Once the completed request for enrollment has been received, the coverage effective date will be the first day of the first calendar month following the date of loss of coverage. I also understand that if I am waiving coverage and currently have no health insurance, I (and any dependents) must wait until my employer's next open enrollment period to enroll. I understand that I may be eligible for coverage prior to open enrollment if I have an eligible qualifying event. However, I must request enrollment and provide documentation within 31 days after the eligible qualifying event.

To request enrollment or obtain more information, contact your benefits administrator at your place of employment.

I was given the opportunity to enroll in this plan of group health benefits offered by my employer and insured by CMD Health, Inc. and I *refuse* coverage for the following: *(please check all appropriate boxes)*  ☑ Employee,  ☐ Spouse and Child(ren),  ☐ Spouse,  ☐ Child(ren)

*Reason for Refusal (Please check all appropriate boxes.)*
☐ Other fully-insured Group Health Plan sponsored by this employer       ☐ Other group coverage sponsored by another organization
☑ Other Group Health Plan sponsored by my spouse's employer              ☐ Covered under Medicare
☑ Other reasons (please explain) _Over priced_

**PLEASE COMPLETE SECTIONS 1, 2, 4 AND 5 OF THIS APPLICATION AND READ AND COMPLETE SECTION 8 BEFORE SIGNING**

| Applicant signature | Please Print Name | Date |
|---|---|---|
| *Jason Rigsby* | *Jason Rigsby* | 11/30/11 |

SM/LGA.KY.200903001 - Rev. 10/2009

WarrenCounty1336

# Benefits Enrollment Form



**F E B C O**

**Benefits Consultants**

*Application's need to be received by Febco 15 days before effective date*

## *A – Participant Information

*Employer Name: _Warren County Jail_

*Employee Name: _Jason Bigsby_

*Social Se ▮▮▮▮▮▮▮▮▮▮▮

*Street A ▮▮▮▮▮▮▮▮▮▮▮

*City: ___ ▮▮▮▮▮▮▮▮▮▮▮

E-Mail Ad ▮▮▮▮▮▮▮▮▮▮▮

Work Phone: ▮▮▮▮▮▮▮▮ ____ Mobile/Cell Phone ▮▮▮▮▮▮▮▮ _____

*First Payroll Effective Date: _1-11-11_   *Date of hire: _4-24-06_ Department: _WCRJ_

*Paycheck Frequency (Circle one):   Weekly   (Bi-weekly)   Semi-Monthly   Monthly   Other: _____

## B – Dependent Information (You get two cards with your account, 1 participant & 1 dependent, any additional cards are $12.00 per year each)

*Name (Additional Card): _ ▮▮▮▮▮▮▮▮▮▮▮
*Social Security Numbe ▮▮▮▮▮▮▮▮▮▮▮ _____

Name ($12.00 per year): _____ Relationship: _____
Social Security Number: _____ Birthday: _____
Name ($12.00 per year): _____ Relationship: _____
Social Security Number: _____ Birthday: _____
Name ($12.00 per year): _____ Relationship: _____
Social Security Number: _____ Birthday: _____

## *C – Benefits (Check the box of all accounts that apply)

☐ **Option 1: (DCA) Dependent Care Reimbursement Account**
  I elect to contribute $ _____ before tax, to fund my DCA account.   (Circle one) **Per Pay / Monthly / Annual**

☑ **Option 2: (FSA) Flexible Spending Account**
  I elect to contribute $ _____ before tax, to fund my FSA account.   **(Per Pay)/ Monthly / Annual**
  My Employer will contribute $ _~~300.00 ER JROT~~_ to fund my FSA account.
  _$150.00_

☐ **Option 3: (HRA) Health Reimbursement Account**
  My Employer will contribute $ _____ to fund my HRA account.   **Per Pay / Monthly / Annual**

☐ **Option 4: (WEL) Wellness Account**
  My Employer will contribute $ _____ to fund my WEL account.   **Per Pay / Monthly / Annual**

☐ **Option 5: (H.S.A.) Health Savings Account**
  I elect to contribute $ _____ before tax to fund my H.S.A account   **Per Pay / Monthly / Annual**
  My Employer will contribute $ _____ to fund my H.S.A. account.

WarrenCounty1337

**\*C – Benefits** *(Continued)*

☐ **Option 6: (IIR) Premium Reimbursement Account**
I elect to contribute $ _____ before tax to fund my IIR account.
My Employer will contribute $ _____ to fund my IIR account.

(Circle one)
**Per Pay / Monthly / Annual**

☐ **Option 7: (HC2) Limited Flexible Spending Account**
I elect to contribute $ _____ before tax to fund my HC2 account.
My Employer will contribute $ ._____ fund my HC2 account.

**Per Pay / Monthly / Annual**

☐ **Option 8: (TRN) Transportation Account**
I elect to contribute $ _____ before tax to fund my TRN account.
My Employer will contribute $ _____ fund my TRN account.

**Per Pay / Monthly / Annual**

**\*D – HR/Non-Discrimination Test** *(To be filled out by H/R or Agent. Failure to provide this information releases Febco from Liability)*

| | |
|---|---|
| Salary: $ _____ | Key Employee                   Yes / No |
| % of Company Stock Held: _____% | Spouse/Dependent of Owner      Yes / No |
| Total of all Election Amounts: $ _____ | Highly Compensated Employee    Yes / No |

**E – Waiver** *(initial in box)*

| JR | I have been given the opportunity to enroll in a tax savings plan and have declined to participate. I understand, I will lose all tax savings, which I may have received as a participant in the above Plans. |
|---|---|

**F – Employee Debit Card Acknowledgement Statement**

Should I as an employee be required to return my Debit Card for any reason before the end of the Plan Year, I, _Jason Rigsby_, will reimburse the employer for any amounts advanced by the employer from my account, which are not Qualified Expenditures.  My employer may also pursue any and all legal means available to it to receive some or all of the amounts advanced that I am not entitled to, including but not limited to, deducting such owed amounts from subsequent payroll amounts owed me. This card is the property of Febco and the employer  and must be returned to the employer immediately upon termination, and/or layoff.

**\*G – Signature** *(**Incomplete applications will not be processed**)*

I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for  these insurance benefits will automatically be paid with pre-tax dollars. I also understand that if my required contributions for the elected benefits are increased or decreased while this agreement remains in effect, my taxable income will automatically be adjusted to reflect that increase or decrease. My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this Agreement. I understand that I may change my election in the event of certain changes in my status.  Prior to the first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.
Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that are not used during the plan year may not be paid to me in cash or used in a later plan year.

\*Employee Signature: _Jason Rigsby_   Date: _12-5-11_

\*H/R or Agent: _____   Date: _____

**\*Required Fields**

If you have questions, feel free to call **Febco, Inc.** toll-free 1-800-489-1539.

Customer Service is available to assist you, Monday through Friday, 8:00 A.M. until 4:30 P.M., Eastern Time.

**Please fax this form to: 502-695-9692**

WarrenCounty1338

# Warren County Regional Jail

### Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

May 6, 2011

TO WHOM IT MAY CONCERN:

This letter is to advise that Jason Rigsby was off from work the following days due to an automobile accident.   Jason used sick time for the days he was off.  He was paid at his regular pay rate of ████████ er hour.

| | |
|---|---|
| Sept 16, 2010 | 8 hrs |
| Sept 17, 2010 | 8 hrs (only deducted 7.5 hrs as he had worked over .5 hr on 9/13/10) |
| Sept 20-24, 2010 | 40 hrs |
| Sept 27, 2010 | 8 hrs |
| Sept 28, 2010 | 8 hrs |
| Sept 29, 2010 | 8 hrs (only deducted 6.5 hrs as he worked over 1.5 hrs on 9/30/10) |

Jason returned to work on September 30, 2010.  If you have any questions, please feel free to contact me.

Pat Watt, Chief Administrative Deputy



Patt

I need a statement of how many days I was off and how many sick hours were used, and how much I was paid for the sick hours. Also the dates I was off

Thank you

Jason Rigsby

4-20-11

9/16/10 - 8 hrs   9/17/10 - 7.5 hrs

9/20/10 - 9/24/10 - 40 hrs

9/27 + 9/28/10 - 16 hrs.

9/29/10 - 6.5 hrs

WarrenCounty1340

| Benefit Selection Form | **WARREN COUNTY GOVERNMENT** | Effective 1/1/2010 *2011* |
|---|---|---|

Employee Name: *Jason Aigsby*                     DOB:

Socia

### ENROLLMENT INSTRUCTIONS

Effective January 1, 2011, your medical insurance will be offered to employees of Warren County Government through CMD Health, giving you access to ClubMD.  You will continue to be offered a triple option in plan design.  **EVERYONE MUST CHOOSE A NEW PLAN TO ENROLL IN BY MARKING THE APPROPRIATE BOXES BELOW.**  *You must also complete the CMD Health Enrollment Form in order for coverage to be effective.  If no enrollment form is turned in, you will not be enrolled in coverage.*  Please see the enclosed benefit summaries for complete plan details.

## MEDICAL PLAN – CMD HEALTH

☑ Please check here to drop or decline medical coverage.

| Plan Option | CMD - KY252025 | CMD - KY152050 | CMD - KY102025 |
|---|---|---|---|
| Deductible (Individual / Family) | $2,500 / $5,000 | $1,500 / $3,000 | $1,000 / $2,000 |
| Coinsurance | 20% | 20% | 20% |
| Maximum Out-of-Pocket | $5,000 / $10,000 | $3,000 / $6,000 | $2,000 / $4,000 |
| Hospitalization | Deductible & Coinsurance | Deductible & Coinsurance | Deductible & Coinsurance |
| ER | $250 Copayment | $250 Copayment | $125 Copayment |
| **Primary Care Office Visit at Club MD** | $0 | $0 | $0 |
| Primary Care Office Visit Outside of Club | $25 Copayment | $50 Copayment | $25 Copayment |
| **Specialist Office Visit if Referred by Club MD** | $0 | $0 | $0 |
| Specialist Office Visit if Not Referred by Club | $50 Copayment | $75 Copayment | $50 Copayment |
| Preventive Care | **$0 Club** / Copay Other | **$0 Club** / Copay Other | **$0 Club** / Copay Other |
| RX (Generic, Brand, Non-Formulary) | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% | $10 / $30 / $60 / 25% |
| **TOTAL MONTHLY PREMIUM** | | | |
| Employee | $424.61 | $443.76 | $476.79 |
| Employee/Spouse | $849.22 | $887.52 | $953.58 |
| Employee/Child(ren) | $806.76 | $843.14 | $905.90 |
| Family | $1,358.75 | $1,420.03 | $1,525.74 |
| **EMPLOYEE MONTHLY CONTRIBUTION – WITH WELLNESS PARTICIPATION** *Mark Enrollment Choice Below* | | | |
| Employee | ☐ $   0.00 | ☐ $  19.15 | ☐ $  52.18 |
| Employee/Spouse | ☐ $424.61 | ☐ $462.91 | ☐ $ 528.97 |
| Employee/Child(ren) | ☐ $382.15 | ☐ $418.53 | ☐ $ 481.29 |
| Family | ☐ $934.14 | ☐ $995.42 | ☐ $1,101.13 |
| **EMPLOYEE MONTHLY CONTRIBUTION – WITHOUT WELLNESS PARTICIPATION** *Mark Enrollment Choice Below* | | | |
| Employee | ☐ $ 42.46 | ☐ $  61.61 | ☐ $  94.64 |
| Employee/Spouse | ☐ $467.07 | ☐ $505.37 | ☐ $ 571.43 |
| Employee/Child(ren) | ☐ $424.61 | ☐ $460.99 | ☐ $ 523.75 |
| Family | ☐ $976.60 | ☐ $1,037.88 | ☐ $1,143.59 |

## DENTAL BENEFITS – HEALTH RESOURCES, INC.

| Benefit Description | |
|---|---|
| Deductible | $0 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% |
| Orthodontia Lifetime Maximum | $1,000 |
| Monthly Premium | |
| Employee Only | ☐ $24.60 |
| Employee + 1 | ☐ $50.70 |
| Family | ☐ $88.60 |
| ☑ Please check here to drop or decline dental coverage | |

**\*\*Please complete an HRI enrollment form to sign up for or change your current coverage.\*\***

## VISION BENEFITS - AVESIS

**NEW THIS YEAR!** Vision benefits will be offered through Avesis. Since this is a new carrier, you must re-enroll if you wish to have vision coverage. Please mark your selection below. If you wish to cover your dependents, you MUST complete the dependent information section below. If no dependents are listed, your coverage will be for single only. Please see the benefit summary for complete details.

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $10.00 | Every 12 Months |
| Lenses | $25.00 | Every 12 Months |
| Frames | $25.00 | Every 24 Months |
| Elective Contacts | $25.00 (Max $120) | Every 12 Months |
| Monthly Premium | | |
| Employee | ☐ $ 6.34 | |
| Employee / Spouse | ☐ $12.56 | |
| Employee / Child | ☐ $11.69 | |
| Family | ☐ $17.66 | |
| ☑ Please check here to drop or decline vision coverage | | |

## DEPENDENT INFORMATION

| Name | Relationship | DOB | Social Security # | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|
| _____ | Spouse | _____ | | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form. Such reductions, considered as elective contributions under the plan, shall commence on January 1, 2011. I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year. I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child or termination of employment of a spouse).

Signature: _Jason Rigsby_     Date: _12-2-10_

NAME: _Jason Rigsby_
(Please Print)

DATE OF BIRTH: ▮▮▮▮▮▮▮

WarrenCounty1342

# Employee Application

| | | | OFFICE USE ONLY | |
|---|---|---|---|---|
| Employer/Group Name: | | | | |
| | | Effective Date of Coverage: | / / | Group Number: |

**1. TYPE OF COVERAGE REQUESTED:**  ☐ Employee Only  ☐ Employee + Spouse  ☐ Employee + Child(ren)  ☐ Family  ☐ Select PCP  ☒ No Coverage (Waiver)

**2. REASON FOR COVERAGE REQUEST:**  ☐ New Hire  ☐ Rehire/Reinstatement  ☐ New Group Enrollment  ☐ Late Enrollment  ☒ Open Enrollment  ☐ Other_____

**3. QUALIFYING EVENT** ** Include legal documentation   Event Date: / /   ☐ Marriage**  ☐ Adoption**  ☐ Pre-enrollment (newborn)  ☐ Legal Guardianship**  ☐ Other**___

**4. INFORMATION ABOUT YOU**   ☐ Single  ☐ Married  ☐ Divorced  ☐ Widowed   Date of Hire: / /   Product: ☐ HMO (Simplicity)  ☐ POS (Classic)  ☐ Other___

| Relationship | Last Name, First Name, M.I. | Social Security No. | Sex | Full Time Student? | Date of Birth | Height / Weight | Current tobacco user? | Disabled? | Selected PCP Provider |
|---|---|---|---|---|---|---|---|---|---|
| Employee | Rigsby, Jason D | ██████████ | | | | 6'1" 12 75 | ☐ Yes ☒ No | ☒ Yes ☐ No | ☐ Club MD ☒ Non Club MD |
| Spouse | | | ☐ M ☐ F | | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |
| ☐ Child ☐ Other ___ | | | ☐ M ☐ F | ☐ Yes ☐ No | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |
| ☐ Child Other ___ | | | ☐ M ☐ F | ☐ Yes ☐ No | / / | / | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Club MD ☐ Non Club MD |
| ☐ Child ☐ Other ___ | | | ☐ M ☐ F | ☐ Yes | | | ☐ Yes | ☐ Yes | ☐ Club MD |

**5. NON- MEDICAL INFORMATION**

**Other Health Coverage:**   Will you or any of your dependents be covered by any other health coverage, including Medicare or Medicaid on the day coverage begins?   ☐ Yes   ☐ No

If yes, indicate names of those to be covered: _____

Insurance Company Name: _____ Address: _____ Effective Date: _____ Policy #: _____

Phone Number: _____

**Prior Health Coverage:**   Have you been covered by any other Health Coverage within the last 12 months (or 18 months for late enrollees)?   ☐ Yes (If yes, provide certificate of creditable coverage)   ☐ No

If yes, indicate Insurance Company Name: _____ Address: _____ Policy #: _____

Insurance Co. Telephone #:_____ Effective Date:_____ Termination Date:_____ Reason for Termination:_____

SM/LGA.KY.200903001 Rev. 10/2009

WarrenCounty1343

# Coverage Conditions

Employee Name:_____

Employee Social Security Number:_____

**7. SIGNIFICANT TERMS, CONDITIONS AND AUTHORIZING (TERMS)** *Please read this section carefully before signing the application below*

Any person who knowingly and with intent to defraud any insurance company, health maintenance organization, self-insured plan, or other person, files an application for insurance or other form of health care coverage containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

1. I understand that for both the HMO and POS plans, referrals for specialty care and services, unless otherwise required by State or Federal law or in accordance with my Certificate of Coverage, must be coordinated by my primary care physician (PCP). Written referrals, if required must be provided by my PCP prior to seeing the specialist.

2. I authorize any licensed physician, hospital, health care provider, insurer or any other medical or insuring entity in possession of my or my dependents medical records and information, to release my medical records and information and those of my dependents to the PCP and CMD Health, Inc (CMD Health). This information may be requested after we are accepted by CMD Health to identify possible pre-existing conditions. I hereby provide CMD Health with consent to use identifiable information for general treatment, payment or healthcare underwriting and operations, including but not limited to, coordination of care, quality assessment, utilization review, fraud detection or accreditation purposes. If members' identifiable information is to be used for any other purpose, CMD Health will obtain specific authorization from me and my dependents as required.

3. I may not assign any payment under my CMD Health program unless allowable by law.

4. I understand that completion of this form does not guarantee acceptance; eligibility and enrollment criteria must be satisfied.

5. I understand that CMD Health imposes a pre-existing condition exclusion. The pre-existing exclusion applies only to conditions for which medical advice, diagnosis, care or treatment was recommended or received within the six-month period prior to enrollment. This exclusion may last up to 12 months from the first day of coverage, or if in a waiting period, from the first day of the waiting period. The pre-existing condition exclusion does not apply to pregnancy or to a child who is enrolled in the plan within 31 days of birth, adoption or placement for adoption.

I understand the pre-existing exclusion-waiting period is reduced by the number of days of prior creditable coverage provided there has not been a break in coverage of more than 63 days. To reduce the pre-existing exclusion-waiting period, CMD Health must receive a copy of the certificate of creditable coverage from the prior Health Insurance Carrier.

To obtain a certificate of creditable coverage: 1. Contact the Human Resources area of your prior employer and request a certificate of creditable coverage or the evidence of prior coverage, 2. Contact your prior insurance carrier and request a certificate of creditable coverage or, if necessary, request the steps to obtain a certificate of creditable coverage, or 3. Contact CMD Health at the number on your new identification card for assistance in obtaining a certificate of creditable coverage from your prior insurance carrier. Make sure you provide your current mailing address.

Upon receipt of your certificate of creditable coverage, forward a copy to the address on the back of your new identification card.

I acknowledge I have read the TERMS, and I accept its provisions as a condition of coverage. I represent that all answers in sections 1 through 6 above are true and accurate to the best of my knowledge and I understand they will be relied upon by CMD Health, Inc. in accepting this application. I understand misstatements or failures to report new medical information prior to my effective date may result in a material change to coverage or premium. Material misrepresentations or omissions in this application may result in increased premiums, benefits being denied or coverage(s) being rescinded or cancelled.

By signing below, I am indicating that I have read and understand the language in the TERMS section of this application and agree to all of its terms. I give this authorization for and on behalf of any eligible dependents and myself if covered by CMD Health, Inc. I am acting as their agent and representative. *Thank you for choosing CMD Health, Inc.*

**PLEASE READ THE TERMS IN SECTION 7 (ABOVE) CAREFULLY BEFORE SIGNING, AND REVIEW YOUR APPLICATION FOR ERRORS OR OMISSIONS**

| Applicant signature | Please Print Name | Date |
|---|---|---|
| | | / / |

**8. WAIVER OF COVERAGE** *(Complete ONLY if you wish to waive coverage)*

I understand that I am declining enrollment for myself and/or my dependents (including my spouse). I may be able to enroll myself and my dependents in this plan later if I or my dependents lose eligibility for other coverage. I also acknowledge that I must request enrollment within 30 days after coverage ends. Once the completed request for enrollment has been received, the coverage effective date will be the first day of the first calendar month following the date of loss of coverage. I also understand that if I am waiving coverage and currently have no health insurance, I (and any dependents) must wait until my employer's next open enrollment period to enroll. I understand that I may be eligible for coverage prior to open enrollment if I have an eligible qualifying event. However, I must request enrollment and provide documentation within 31 days after the eligible qualifying event.

To request enrollment or obtain more information, contact your benefits administrator at your place of employment.

I was given the opportunity to enroll in this plan of group health benefits offered by my employer and insured by CMD Health, Inc. and I *refuse coverage for* the following: *(please check all appropriate boxes)* ☐ Employee, ☐ Spouse and Child(ren), ☐ Spouse, ☐ Child(ren)

*Reason for Refusal (Please check all appropriate boxes.)*
☐ Other fully-insured Group Health Plan sponsored by this employer         ☐ Other group coverage sponsored by another organization
☐ Other Group Health Plan sponsored by my spouse's employer                ☐ Covered under Medicare
☐ Other reasons (please explain) _____

**PLEASE COMPLETE SECTIONS 1, 2,4 AND 5 OF THIS APPLICATION AND READ AND COMPLETE SECTION 8 BEFORE SIGNING**

| Applicant signature | Please Print Name | Date |
|---|---|---|
| *Jason Rigsby* | Jason Rigsby | 12 8 1/0 |

WarrenCounty1344

# Voluntary Flexible Benefit Plan

**Employee Name** _Jason Rigsby_

**Spouse Name** ▮

**Social Security** ▮

**Spouse Social S** ▮

**Employer Name** ▮

**Home Addres** ▮

**Home Phone** ▮

First Payroll Effective Date _____   Paycheck Frequency _Bi weekly_

# Option 1:  Medical Reimbursement Account Agreement

☐   I elect to contribute $_____ (before tax) per pay period, which is $_____ per year, to fund my account
to reimburse qualified healthcare expenses not covered under my health or **_ANY_** other insurance plans.

☑   I elect to Waive my Emplo ▮
per pay period, which is $ ▮
expenses not covered und ▮

☐   I have been given the opportunity to enroll in the Medical Reimbursement plan and have declined to participate.
I understand, I will lose all tax savings, which I may have received as a participant in the above Plan.

# Option 2:  Dependent Care Reimbursement Account Agreement

☐   I elect to contribute $_____ (before tax) per pay period, which is $_____ per year, to fund my account
to reimburse of qualified dependent care expenses.  (Maximum amount per calendar year is the lesser of,
(1)  $5,000 for married filing joint or $2,500 for married filing separate; (2) your spouse's total annual compensation;
or (3) ½ of your total annual compensation.  If you are single, the maximum amount is $5,000)

☐   I have been given the opportunity to enroll in the Medical Reimbursement plan and have declined to participate.
I understand, I will lose all tax savings, which I may have received as a participant in the above Plan.

I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for  these
insurance benefits will automatically be paid with pre-tax dollars.  I also understand that if my required contributions for the
elected benefits are increased or decreased while this agreement remains in effect, my taxable income will automatically be
adjusted to reflect that increase or decrease.

> _My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this
> Agreement.  I understand that I may change my election in the event of certain changes in my status.  Prior to the
> first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.
> Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that
> are not used during the plan year may not be paid to me in cash or used in a later plan year._
>
> Employee Signature _Jason Rigsby_ _____   Date _12-8-10_

# GOVERNMENT EMPLOYEES INSURANCE COMPANIES
## WAGE AND SALARY VERIFICATION

| DATE | OUR POLICYHOLDER | DATE OF ACCIDENT | CLAIM NUMBER |
|---|---|---|---|
| | Jason Kingsby | 09-16-10 | 1039136477010101 9 |

_____
Employee's Name

_____
Employee's Address

Dear Sir or Madam:

The above named person sustained injuries as a result of an automobile accident on the date indicated. We understand this person i
your employee or former employee. To determine what monies may be due to the injured party, please provide us with responses t
the following questions, and return this form promptly. Thank you for your cooperation.

GOVERNMENT EMPLOYEES INSURANCE COMPANIES
CLAIMS DEPARTMENT
ONE GEICO CENTER
MACON, GA 31296

1. Occupation: __Shift Training Deputy__

2. Date of Employment:     From: __4/25/06__  Through: _Present_

3. Dates absent following accident:     From: __9/16/10__  Through: __9/29/10__

4. Was employee paid during this absence?   Yes X  No___

5. Is employee entitled to benefits under a wage or salary continuation plan?   Yes___  No X   If Yes, Amount Paid ███████

6. Name of your Workers' Compensation Insurer: __KACO__

7. Has or will a claim be filed under any Workers' Compensation Law for this accident?   Yes___  No X

8. SCHEDULE OF WEEKLY EARNINGS — FOR 13 WEEKS PRIOR TO DATE OF ACCIDENT

| WEEK NO. | WEEK FROM DATE | WEEK TO DATE | NO. OF DAYS WORKED | AMOUNT EARNED INCLUDING OVERTIME OR EXTRA WORK | MEALS | BOARD | TIPS | ALL OTHER | GROSS EARNINGS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 5/31/10 | 6/13/10 | | | | | | | |
| 2 | 6/14/10 | | | | | | | | |
| 3 | | 6/27/10 | | | | | | | |
| 4 | 6/28/10 | | | | | | | | |
| 5 | | 7/11/10 | | | | | | | |
| 6 | 7/12/10 | | | | | | | | |
| 7 | | 7/25/10 | | | | | | | |
| 8 | 7/26/10 | | | | | | | | |
| 9 | | 8/8/10 | | | | | | | |
| 10 | 8/9/10 | | | | | | | | |
| 11 | | 8/22/10 | | | | | | | |
| 12 | 8/23/10 | | | | | | | | |
| 13 | | 9/5/10 | | | | | | | |
| | TOTAL | | | | | | | | |

For your protection, Kentucky law requires the following to appear on this form:
   Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

EMPLOYER: _Warren County Fiscal Court_  DATE: _10-7-10_  PHONE #: ███████  LE: _Finance Offic_

SIGNED: _Greg Burrell_     PRINT NAME _Greg Burrell_

C-255 KY (04-04) NS

**↑ Fax this direction ↑**

Fax to: Claims 1.800.880.932
Phone Number: 1.800.325.436

## SECTION 6 — TO BE COMPLETED BY EMPLOYER

Employee name   Jason D. Rigsby

Date last worked   09/15/2010
(MM/DD/YYYY)

Hire date   04/25/2006

Social Security Number
or Date of Birth ▮▮▮▮

Dates employee unable to work (Full-time)
From 09/15/2010 AM/PM   To 09/29/2010 AM/PM
(MM/DD/YYYY)          (MM/DD/YYYY)

Average number of scheduled hours per week   40

Date sick leave was exhausted   N/A
(MM/DD/YYYY)

Was employee at work when the accident or sickness occurred?
☐ Yes ☒ No

Dates approved for FMLA (if eligible)
From   N/A   To   N/A
(MM/DD/YYYY)      (MM/DD/YYYY)

Is a Workers' Compensation claim being filed?
☐ Yes ☒ No

Date employment terminated   N/A
(MM/DD/YYYY)

Name and phone number of Workers' Compensation carrier:

For hourly employees:

Hourly rate of pay ▮▮▮▮   Hours worked per week   40

For salaried employees:

Annual salary _____

*If salary includes commissions, attach a breakdown of commissions for the twelve months prior to date last worked.*

Date returned to work:  Full-time 09/30/2010 Part-time _____   ☐ 20 hours or less   Expected return to work _____
                        (MM/DD/YYYY)        (MM/DD/YYYY)                                          (MM/DD/YYYY)

Employee's job title:  Shift Training Deputy

Employee's duties include:  Supervise, transport, process, release inmates, as well as train new employees of the day-to-day operations of jail policies and procedures.

| | | | |
|---|---|---|---|
| Lifting | ☐ Less than 15 lbs. | ☐ 15 to 44 lbs. | ☒ over 45lbs. |
| Stooping/bending | ☐ none | ☐ seldom | ☒ frequent |
| Crawling/kneeling | ☐ none | ☒ seldom | ☐ frequent |
| Reaching/pulling/pushing | ☐ none | ☐ seldom | ☒ frequent |
| Repetitive motion | ☐ none | ☒ seldom | ☐ frequent |
| Management Duties | ☐ none | ☒ seldom | ☐ frequent |

Sitting (number of hours each day): Vaires each day   Standing (number of hours each day) Varies each day

Walking (number of hours each day): Varies each day   Climbing Stairs/Ladders (number of hours each day) Varies each day

Who should we contact for updates on return to work status? Name/Phone/E-mail (*Please print*)

▮▮▮▮▮▮▮▮

...subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form.

Signed by *Patricia G. Watt*

Title   Chief Administrative Deputy

Print name   Batricia G. Watt

Date   10/05/2010
(MM/DD/YYYY)

Telephone Number ▮▮▮▮

Fax Number ▮▮▮▮

E-mail Address (*Please print*) ▮▮▮▮

Colonial Life products are underwritten by Coloni... ...n Insurance Company, for which Colonial Life is the marketing brand.

7/8/09

Pat Watt

Jason Rigsby called & stated
He was supposed to be at his
Military Training Today. I count
that He will be gone (19) days.
We Pay for (15) If I am correct.
I guess you will Need to use
4 [✓] Days.

JTS

WarrenCounty1348

CERTIFICATE OF COMPLETION

## JASON RIGSBY

*has fulfilled the requirements of*

Safety Or Projectors

*and is hereby admitted the rights and privileges*
*belonging to that training and achievement.*



April 13, 2010

EMPLOYEE: Jason Rigsby

Plan Year 2010

Health Insurance:  Waived

Dental:  Waived

Vision:  Waived

FEBCO

401K:

WarrenCounty1350

Benefit Selection Form   **WARREN COUNTY GOVERNMENT**   Effective 1/1/2010

Employee Name:   Jason D. Rigsby _____   DOB: ███████

Address: ████████████████████

Social Security #: ████████████████████

## ENROLLMENT INSTRUCTIONS

Effective January 1, 2010, medical & vision insurance will be offered to employees of Warren County Government through United Healthcare.  Dental benefits will continue to be offered through HRI.  Also, you will be offered a triple option, as opposed to the dual option of last year.  **EVERYONE MUST CHOOSE A NEW PLAN TO ENROLL IN BY MARKING THE APPROPRIATE BOXES BELOW.**  *You must also complete the section to enroll any dependents you wish to cover. If no dependents are listed, coverage will be single only.*  Please see the enclosed benefit summaries for complete plan details.

## MEDICAL PLAN

**You are currently enrolled in Plan:  WAIVED**
**Your coverage type is:  WAIVED**

☑ **Please check here to drop or decline medical coverage.**

| Plan Option | UHC K2-L | UHC K2-M | UHC 7K-L |
|---|---|---|---|
| Deductible | | | |
|   Individual | $2,500 | $1,500 | $1,000 |
|   Family | $5,000 | $3,000 | $2,000 |
| Coinsurance | 80/20 | 80/20 | 80/20 |
| Maximum Out-of Pocket | $7,500 / $15,000 | $5,000 / $10,000 | $3,000 / $6,000 |
| Hospitalization | Ded/Co-Insurance | Ded/Co-Insurance | Ded/Co-Insurance |
| ER | $150 | $150 | $100 |
| Office Visits  (PCP) | $25 | $30 | $20 |
| Preventive Care | $25 | $30 | $35 |
| RX  (Generic, Brand, Non-Formulary) | $10 / $30 / $60 | $10 / $30 / $60 | $10 / $30 / $60 |
| **TOTAL MONTHLY PREMIUM** | | | |
| Employee | $390.13 | $409.28 | $432.66 |
| Employee/Spouse | $780.25 | $818.54 | $865.31 |
| Employee/Child(ren) | $741.24 | $777.62 | $822.05 |
| Family | $1,248.40 | $1,309.68 | $1,384.50 |
| **EMPLOYEE MONTHLY CONTRIBUTION** *Mark Enrollment Choice Below* | | | |
| Employee | ☐ $0.00 | ☐ $19.15 | ☐ $42.53 |
| Employee/Spouse | ☐ $390.12 | ☐ $428.41 | ☐ $475.18 |
| Employee/Child(ren) | ☐ $351.11 | ☐ $387.49 | ☐ $431.92 |
| Family | ☐ $858.27 | ☐ $919.55 | ☐ $994.37 |

## Dependent Information (If applicable)

| Name | Relationship | DOB | Social Security # | Enroll Medical | Enroll Dental | Enroll Vision |
|---|---|---|---|---|---|---|
| _____ | Spouse | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |
| _____ | Child | _____ | | ☐ | ☐ | ☐ |

WarrenCounty1351

# DENTAL BENEFITS

**Your coverage type is:  Waived**

☐ Please check here to keep your current coverage the same.

☑ Please check here to drop or decline dental coverage.

| Benefit Description | |
|---|---|
| Deductible | $0 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | 100% |
| Class II – Basic | 80% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% |
| Orthodontia Lifetime Maximum | $1,000 |
| **Monthly Premium** | |
| Employee Only | ☐ $23.67 |
| Employee + 1 | ☐ $48.74 |
| Family | ☐ $85.20 |

**\*\*Please complete an HRI enrollment form to sign up for or change your current coverage.\*\***

# VISION BENEFITS

**Your coverage type is:  Waived**

☐ Please check here to keep your current coverage the same.

☑ Please check here to drop or decline vision coverage.

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $10.00 | |
| Single Vision Lenses | $25.00 | |
| Bifocal Lenses / ProgressiveLenses | $25.00 | |
| Trifocal Lenses | $25.00 | Every 12 Months |
| Lenticular Lenses | $25.00 | |
| Frames | $25.00 | |
| Elective Contacts | $25.00 (Max $120) | Every 24 Months |
| | | Every 12 Months |
| **Monthly Premium** | | |
| Employee | ☐ $6.50 | |
| Employee / Spouse | ☐ $13.00 | |
| Employee / Child | ☐ $12.34 | |
| Family | ☐ $19.40 | |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form. Such reductions, considered as elective contributions under the plan, shall commence on January 1, 2010. I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year. I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _Jason Rigsby_     Date _1-18-2009_

NAME:  Rigsby, Jason D.

DATE OF BIRTH ▬▬▬▬▬

# Voluntary Flexible Benefit Plan

**Employee Name** _Jason Rigsby_

**Spouse Name**

**Social Security Number** ▮▮▮▮▮▮▮

**Spouse Social Security Number**

**Employer Name** **The Warren County Fiscal Court**     **E-mail**

**Home Address** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Home Phone** ▮▮▮▮▮▮▮▮▮▮▮▮▮

**First Payroll Effective Date** _1/10/10_     **Paycheck Frequency** _Bi Weekly_

## Option 1:  Medical Reimbursement Account Agreement

☐   I elect to contribute $_____ (before tax) per pay period, which is $_____ per year, to fund my account
   to reimburse qualified healthcare expenses not covered under my health or **_ANY_** other insurance plans.

☑   I elect to Waive my Em ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   per pay period, which is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   expenses not covered ▮▮▮▮▮▮▮▮▮▮▮

☐   I have been given the o ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
   I understand, I will lose all tax savings, which I may have received as a participant in the above Plan.

## Option 2:  Dependent Care Reimbursement Account Agreement

☐   I elect to contribute $_____ (before tax) per pay period, which is $_____ per year, to fund my account
   to reimburse of qualified dependent care expenses.  (Maximum amount per calendar year is the lesser of,
   (1)  $5,000 for married filing joint or $2,500 for married filing separate; (2) your spouse's total annual compensation;
   or (3) ½ of your total annual compensation.  If you are single, the maximum amount is $5,000)

☐   I have been given the opportunity to enroll in the Medical Reimbursement plan and have declined to participate.
   I understand, I will lose all tax savings, which I may have received as a participant in the above Plan.

I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for  these
insurance benefits will automatically be paid with pre-tax dollars.  I also understand that if my required contributions for the
elected benefits are increased or decreased while this agreement remains in effect, my taxable income will automatically be
adjusted to reflect that increase or decrease.

_My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this
Agreement.  I understand that I may change my election in the event of certain changes in my status.  Prior to the
first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.
Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that
are not used during the plan year may not be paid to me in cash or used in a later plan year._

Employee Signature _Jason Rigsby_          Date _11-21-09_

WarrenCounty1353

# WARREN COUNTY REGIONAL JAIL

# CERTIFICATE OF COMPLETION

**Jason Rigsby**

## Has successfully completed the training requirements for

# PEPPERBALL, SPECIALTY IMPACT MUNITIONS (SIMS), AND DISTRACTION DEVICES
### And is hereby granted certification for the use of these weapons

11/09/09
Date

Lt. J. J. Martin, Instructor

Major Misse Edmonds, Instructor

# Participation Form for the Flexible Benefit Plan

**Employee Name** _Jason Rigsby_

**Spouse Name**

**Social Security Number** █████████

**Spouse Social Security Number**

**Employer Name** _Warren County Jail_     **E-mail**

**Home Address** ████████████████████

**Home Phone** ████████████████

First Payroll Effective Date _____ Paycheck Frequency_____ Dept. _____

## Option 1:  Medical Reimbursement Account Agreement

☑ I elect to contrib███████████████████████████████ear, to fund my account
to reimburse qu██████████████████████████████ **ANY** other insurance plans.

☐ I decline to participate in this option for this plan year.

## Option 2:  Dependent Care Reimbursement Account Agreement

☐ I elect to contribute $ _____ (before tax) per pay period, which is $ _____ per year, to fund my account
to reimburse of qualified dependent care expenses.  (Maximum amount per calendar year is the lesser of,
(1)   $5,000 for married filing joint or $2,500 for married filing separate; (2) your spouse's total annual compensation;
or (3) ½ of your total annual compensation.  If you are single, the maximum amount is $5,000)

☐ I decline to participate in this option for this plan year.

## Option 3:  Premium Savings Account Agreement

☐ I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for
these insurance benefits will automatically be paid with pre-tax dollars.  I also understand that if my required
contributions for the elected benefits are increased or decreased while this agreement remains in effect, my taxable
income will automatically be adjusted to reflect that increase or decrease.

☐ I decline to participate in this option for this plan year.

## Option 4:  Waiver of Tax Benefits

☐ I have been given the opportunity to enroll in these tax-savings plans and have declined to participate.  I understand
that I will lose all tax savings that I may have received as a participant.

> *My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this*
> *Agreement.  I understand that I may change my election in the event of certain changes in my status.  Prior to the*
> *first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.*
> *Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that*
> *are not used during the plan year may not be paid to me in cash or used in a later plan year.*
>
> Employee Signature _Sgt Jason Rigsby_          Date _11-28-08_

JAN-17-2008 THU 03:30 PM INSURANCE SPECIALIST          FAX NO. 2707930742                    P. 02/02

# Change Request Form



Group Premium and Enrollment Services
Underwritten by:    United of Omaha Life Insurance Company    •    Mutual of Omaha Insurance Company

**To Be Completed By Employer Or Plan Sponsor**

Employer's Company Name **Warren County Fiscal Court**    City **Bowling Green**    State **KY** Zip **42101**
Sub-Group Name **Warren County Regional Jail**    Location Code _____
Group I.D. _____    Sub-Group I.D. _____

**To Be Completed By Employee (Please Print)**

Social Security Number ▮▮▮▮▮    Name **Jason Rigsby**
Coverage(s) affected: ☐ Dental  ☑ Life/AD&D    ☑ Long-Term Disability  ☐ Short Term Disability

## Employee Change(s)

| | From | To | Effective Date Mo. Day Yr. |
|---|---|---|---|
| ☐ Name[1] | | | / / |
| ☐ Salary | | | / / |
| ☐ Sub-Group | | | / / |
| ☐ Class[1] | | | / / |
| ☐ Address | | | / / |

Address _____ Zip Code _____
City _____ State _____
[1]Reason: _____

**Terminate Insurance:**    Effective Date Mo. Day Yr.
Reason (specify) *Drop all*    *3 1 10 8*
*Except Provided by Employer*

**Reinstatement of Insurance:**    Effective Date Mo. Day Yr.
Date Returned to Work    / /
Date Previously Canceled[2]    / /
[2]Reason for Previously Cancellation: (check one)
☐ Layoff
☐ Disability
☐ Leave of Absence
☐ Other (specify)

## Dependent Event Change(s) (Both Event Reason And Date Of Event Must Be Completed)

Event Reason:  ☐ Marriage    ☐ Birth    ☐ Adoption    ☐ Step-child(ren)[3]    ☑ Divorce    ☐ Death
☐ Loss of Coverage (must specify reason) _____
☐ Other (must specify reason) _____

Date of Event: _____    Amount of Life Volume for new dependent(s):    Spouse $_____    Child(ren) $_____
Change Life Volume:  Employee from $_____ to $_____;  Spouse from $_____ to $_____;  Child(ren) from $_____ to $_____

| ADD | DELETE | Name of Dependents | Sex | Relationship | Birthdate Mo. Day Yr. | Social Security No. |
|---|---|---|---|---|---|---|
| ☐ | ☑ | ▮▮▮▮▮▮ | | | | |
| ☐ | ☐ | | | | | |
| ☐ | ☐ | | | | | |
| ☐ | ☐ | | | | | |
| ☐ | ☐ | | | | | |

**Indicate ALL Dependent(s) Covered AFTER Change(s) above is (are) Made:** (check one only)
☐ Spouse    ☐ Child    ☐ Children    ☐ Spouse and Child(ren)    ☑ No Dependent Coverage

See your benefits administrator for the required form(s):
If the dependent(s) listed is not your natural child, please complete the Statement of Responsibility for a Dependant Child form and submit with this enrollment form.
If dependent is 19 years of age or older (unless otherwise stated in the plan) and a full-time student, complete a Student Dependent Attendance Report form and submit with this enrollment form.

**Other Insurance**
Do you or any of your dependents have coverage under **any other health plan** that you will retain **after** enrolling in this health plan? ☐ Yes    ☐ No
If yes, please provide the following information about your/their other insurance coverage:

| Primary Covered Individual | Who is covered? (i.e. employee, spouse, dependent's name) | Name of Employer offering Other Insurance | Other Insurance Company Name | Policy Number | Effective Date | Type of Health Coverage(s) (Medical, Dental, Medicare, Medicaid) |
|---|---|---|---|---|---|---|
| | | | | | | |

| INSURANCE COMPANY USE ONLY | **Instructions:** If you want to add a new dependent to this plan, you must make written request for dependent coverage by completing this Change Request Form. You must return this form to your plan administrator. To add an eligible dependent you must make your written request within 31 days (or as otherwise stated in the plan) after such dependent becomes eligible under the terms of this group plan. If your written request is made after 31 days, your eligible dependent may be considered a late enrollee and may be subject to additional conditions as stated in the plan. If the plan is contributory, this form must be signed and dated to authorize payroll deductions. |
|---|---|
| | I represent that the information I have provided in this Change Request Form is complete, true and accurate, to the best of my knowledge. |
| Effective Date Of Change _____ | Signature of Employee *Jason Rigsby*    Date *12 14 08* |

MUG6578-S 09-03

WarrenCounty1356

COMMONWEALTH OF KENTUCKY
ALLEN CIRCUIT COURT

CIVIL ACTION NO. 08-<u>01-0032</u>

IN RE:          THE MARRIAGE OF

███████████████████████                                    PETITIONER

vs.          **FINDINGS OF FACT, CONCLUSIONS OF LAW,**
        **AND DECREE OF DISSOLUTION OF MARRIAGE**

JASON DANIEL RIGSBY                                   RESPONDENT

This matter having come on before this Court on the Verified Petition for Dissolution of

Marriage filed on behalf of the Petitioner, ████████████████ this Court makes the

following Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage:

## FINDINGS OF FACT

1.     That the parties reside in this state and have been residents hereof for 180 days

preceding the filing of the Verified Petition for Dissolution of Marriage filed herein.

2.     That the Petitioner, ████████████████ is Twenty-One (21) years of age;

resides at ████████████████████████████████████

3.     Respondent, Jason Daniel Rigsby, is Twenty-Four (24) years of age; resides at

████████████████████████████ and is employed at Warren County Jail.

4.     Petitioner and Respondent were married on September 30, 2007 in Sevier County,

TN, where said marriage is registered.

5.     Petitioner and Respondent are separated having lived separate and apart since

January 27, 2008.

6.     That there are no minor children born of this marriage.

ENTERED
JUL 1 0 2008
TODD B. CALVERT, CLERK
BY _____ D.C.

1

7.  That the Petitioner is not now pregnant to the best of her knowledge and belief.

8.  That neither Petitioner nor Respondent is a member of the United States Armed Forces.

9.  That the marriage between the Petitioner, ███████████ and the Respondent, Jason Daniel Rigsby, is irretrievably broken and there is no chance of reconciliation between the parties herein.  The Court finds that the conciliation privileges of KRS 403 do not apply.

## CONCLUSIONS OF LAW

1.  That this Court has jurisdiction over the subject matter and over the parties to this action and proper venue is in Allen County, Kentucky.

2.  That the marriage between the parties is irretrievably broken, there is no reasonable prospect of reconciliation, and each party is herewith entitled to a Decree of Dissolution of Marriage.

3.  The Court has reviewed the record and finds that neither party has made a request for a reconciliation conference, and the reconciliation provisions of KRS 403.170 are not applicable.

4.  The Court has reviewed the terms of the Property Settlement Agreement which is executed voluntarily by each party, and the Court finds the division of said property and debts and all other matters addressed herein are fair and equitable and are not unconscionable.

5.  The Court finds that the parties have agreed as to no maintenance.

## DECREE OF DISSOLUTION OF MARRIAGE

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED as follows:

1.  That the marriage of the parties should be dissolved on the grounds that same is

2

ENTERED

JUL 1 0 2008

TODD B. CALVERT, CLERK
BY _____

WarrenCounty1358

irretrievably broken and each party is hereby restored to all the rights, privileges and status of a single, unmarried person.

2.    That the Property Settlement Agreement as stated hereinabove is hereby approved and adopted by this Court.

3.    That the provision disposing of property and debts as stated hereinabove is hereby approved and adopted by this Court.

4.    That this is a final and appealable judgment of this Court.

This the __8th__ day of __July__, 2008.

_G. Sidnum Brodersen_
JUDGE, ALLEN CIRCUIT COURT

HAVE SEEN AND AGREED:

███████████████████████████
PETITIONER

_Jason Rigsby_
Jason Daniel Rigsby
RESPONDENT

TENDERED BY:

_Natalie Talmage Stuart_
Natalie Talmage Stuart
Attorney for Petitioner
607 East Tenth Street
Bowling Green, KY 42101-6916
Telephone (270) 782-9090

ENTERED
JUL 10 2008
TODD B. CALVERT, CLERK
BY _____

WarrenCounty1359

**CLERK PLEASE SEND COPIES TO:**

Hon. Natalie Talmage Stuart
607 East Tenth Street
Bowling Green, KY 42101
        Attorney for Petitioner [ \ ]


Mr. Jason Daniel Rigsby
2050 Clover Court Apt A
Bowling Green, KY 42101
        Respondent [_____]


CLERK: _____

DATE: _____



ENTERED
JUL 1 0 2008
TODD B. CALVERT, CLERK
BY _____ D.C.

4

WarrenCounty1360

# 𝔚arren 𝔚ounty 𝔚egional 𝔍ail

## Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

### FAX COVER SHEET

DATE: _2-13-09_

TO: _Kelli_

AGENCY: _Insurance Specialists_

FAX NUMBER: _793-0742_

SENDER: _Pat Pratt_

We are transmitting _6 5 pw_ pages, including the cover sheet.
If you do not receive all pages clearly, please contact sender at (270) 843-4606.

NOTES: _____

_____

_____

_____

_____

### CONFIDENTIALITY NOTICE:

This FAX cover sheet and the materials enclosed in the following transmission are the private, confidential property of the sender, and the material are privileged communications intended solely for the recipient indicated above. If you are not the intended recipient indicated above, you are hereby notified that any review, disclosure, copying, distribution, or taking of any other action reliance upon the contents of this transmission is strictly prohibited and may result in legal liability on your part. If you have received this transmission in error, please notify the sender at 270-843-4606 to arrange for the transmission. Thank you.



02/13/2009 15:54 FAX        ☒ 001

```
*****************************
***   ACTIVITY REPORT   ***
*****************************
```

| ST. TIME | DESTINATION TEL/ID | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|
| *02/13 08:53 | | 6621 | AUTO RX | ECM | 1 | OK | 00'17 |
| *02/13 08:58 | 97823898 | 1014 | TRANSMIT | ECM | 3 | OK | 01'03 |
| *02/13 09:00 | 98431453 | 1015 | TRANSMIT | ECM | 3 | OK | 00'38 |
| *02/13 09:01 | 97467501 | 1016 | TRANSMIT | ECM | 2 | OK | 00'21 |
| *02/13 09:14 | 12707467141 | 6622 | AUTO RX | G3 | 1 | OK | 00'46 |
| *02/13 09:42 | 270 746 2205 | 1017 | MANUAL TX | | 3 | OK | 00'49 |
| *02/13 10:08 | 97467147 | 1019 | TRANSMIT | ECM | 2 | OK | 00'21 |
| *02/13 10:11 | 98431453 | 1018 | TRANSMIT | ECM | 2 | OK | 00'27 |
| *02/13 10:25 | | 6623 | AUTO RX | ECM | 1 | OK | 00'16 |
| *02/13 10:44 | 6506556633 | 6624 | AUTO RX | ECM | 1 | OK | 00'37 |
| *02/13 11:23 | 2707812392 | 1020 | MANUAL TX | | 3 | OK | 00'37 |
| *02/13 11:53 | 2708429730 | 6625 | AUTO RX | ECM | 1 | OK | 00'19 |
| 02/13 12:53 | | 6626 | AUTO RX | ECM | 1 | OK | 00'19 |
| 02/13 12:54 | | 6627 | AUTO RX | ECM | 3 | OK | 00'28 |
| 02/13 13:11 | | 6628 | AUTO RX | ECM | 1 | OK | 00'18 |
| 02/13 13:17 | 97467035 | 1021 | TRANSMIT | ECM | 1 | OK | 00'16 |
| 02/13 13:58 | | 6629 | AUTO RX | ECM | 4 | OK | 00'57 |
| 02/13 14:00 | | 6630 | AUTO RX | ECM | 4 | OK | 01'15 |
| 02/13 15:20 | | 6631 | AUTO RX | ECM | 1 | OK | 00'18 |
| 02/13 15:51 | 97930742 | 1022 | TRANSMIT | ECM | 6 | OK | 00'49 |

WarrenCounty1362

| Benefit Selection Form | **WARREN COUNTY GOVERNMENT** | Effective 1/1/2009 |

**Employee Name:** *Jason Daniel Rigsby*          **DOB:** ▇▇▇▇▇▇

**Address:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**Social Security #:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

## ENROLLMENT INSTRUCTIONS

Effective January 1, 2009, medical & vision insurance will be offered to employees of Warren County Government through Humana.  Also, you will be offered a dual option, as opposed to the three plans of the past.  **EVERYONE MUST CHOOSE A NEW PLAN TO ENROLL IN BY MARKING THE APPROPRIATE BOXES BELOW.**  *You must also complete the section to enroll any dependents you wish to cover.*  Please see the enclosed benefit summaries for complete plan details.

## MEDICAL PLAN

☑ **Please check here to drop or decline medical coverage.**

| Benefit Descriptions | Humana Buy-Up Plan | Humana Base Plan |
|---|---|---|
| **Deductible** | | |
| Individual | $500 | $1,000 |
| Family | $1,000 | $2,000 |
| **Coinsurance** | 80% / 20% | 80% / 20% |
| **Maximum Out-of-Pocket** | $3,000 / $6,000 | $3,000 / $6,000 |
| **Hospitalization** | Deductible / Coinsurance | Deductible / Coinsurance |
| **Inpatient Services** | Deductible / Coinsurance | Deductible / Coinsurance |
| **Emergency Room Co-pay** | $150 | $150 |
| **Office Visit Co-pay (PCP)** | $25 | $20 |
| **Preventive Care** | $40 | $35 |
| **Prescription Drugs (Retail)** | | |
| Tier 1 | $10 | $15 |
| Tier 2 | $30 | $35 |
| Tier 3 | $50 | $55 |
| Tier 4 | 25% | 25% |
| **MONTHLY PREMIUM** | | |
| **Employee Only** | $455.70 | $357.21 |
| **Employee + Spouse** | $911.40 | $714.41 |
| **Employee + Child(ren)** | $865.83 | $678.69 |
| **Family** | $1,458.24 | $1,143.06 |

**Please check which plan you want effective 1/1/2009:**   ☐          ☐

**Please check type of coverage:**   ☐ Employee   ☐ Employee + Spouse   ☐ Employee + Child(ren)   ☐ Family

### Dependent Information (If applicable)

| Name | Relationship | DOB | Medical (Circle One) | Dental (Circle One) | Vision (Circle One) |
|---|---|---|---|---|---|
| _____ | Spouse | _____ | Yes or No | Yes or No | Yes or No |
| _____ | Child | _____ | Yes or No | Yes or No | Yes or No |
| _____ | Child | _____ | Yes or No | Yes or No | Yes or No |
| _____ | Child | _____ | Yes or No | Yes or No | Yes or No |

WarrenCounty1363

# DENTAL BENEFITS

☑ **Please check here to drop or decline dental coverage.**

| Benefit Description | |
|---|---|
| Deductible | $0 |
| Annual Maximum Benefit | $1,000 |
| Class I – Preventive (Diagnostic & Preventive) | Covered in Full |
| Class II – Basic | 20% |
| Class III – Major | 50% |
| Class IV – Orthodontia | 50% |
| Orthodontia Lifetime Maximum | $1,000 |
| Monthly Premium | |
| Employee Only | $22.98 |
| Employee + 1 | $47.32 |
| Family | $82.72 |

# VISION BENEFITS

☑ **Please check here to drop or decline vision coverage.**

| Benefit Description | Copays | Frequency |
|---|---|---|
| Exam | $15 | 1 every 12 months |
| Single Vision Lenses | $20 | 1 every 12 months |
| Bifocal Lenses / ProgressiveLenses | $20 | 1 every 12 months |
| Trifocal Lenses | $20 | 1 every 12 months |
| Lenticular Lenses | $20 | 1 every 12 months |
| Frames | $20 - $40 wholesale allowance | 1 every 24 months |
| Elective Contacts | $20 - $110 allowance | 1 every 12 months |
| Monthly Premium | | |
| Employee | | $6.50 |
| Employee / Spouse | | $13.00 |
| Employee / Child | | $12.34 |
| Family | | $19.40 |

I hereby authorize my employer, Warren County Fiscal Court, to reduce my salary in the amount necessary to pay for the coverages selected on this form. Such reductions, considered as elective contributions under the plan, shall commence on January 1st, 2009. I further authorize future adjustment in the amount of the salary reduction in the event that the cost of coverage in any program selected on this form is changed during the plan year. I also understand that once deductions are taken, I cannot change any benefits unless I have a change in family status (including, but not limited to marriage, divorce, death of a spouse or child, birth or adoption of a child, or termination of employment of a spouse).

Signature: _Jason Remy_  Date _11-22-08_

NAME: _Jason Remy_   DATE OF BIRTH: ███████

WarrenCounty1364



---

### M26 Advanced TASER® & TASER X26

**Jason Rigsby**

Certified User

---

*This Certifies that*

**Jason Rigsby**

*is trained in the proper and safe use of the M26 Advanced TASER® and TASER® X26 Electronic Control Device and has passed the requirements of the **Warren County Jail's** M26 Advanced TASER® and TASER X26 training program under the supervision of a Certified Instructor.*

*In Witness Whereof, Certified Instructor*

**J.J. Martin**

*has certified the successful completion of the training requirements this day:*

**11-03-2008**

*Certified Instructor:*

**J.J. Martin**  ~JJMartin~

*Certified Instructor ID:*
**0511042553214128713 46C**

© 2007 TASER International, Inc.  TASER®, Shaped Pulse™ and the Globe & Lightning Bolt Logo are trademarks of TASER International, Inc.

WarrenCounty1365

# Participation Form for the Flexible Benefit Plan

**Employee Name** _Jason Rigsby_

**Spouse Name** ▮▮▮▮
**Social Security Num** ▮▮▮▮

**Spouse Social Secu** ▮▮▮▮

**Employer Name** _Warren County Jail_     **E-mail** _N/A_

**Home Addres** ▮▮▮▮

**Home Phone** ▮▮▮▮

First Payroll Effective Date _1-13-07_   Paycheck Frequency _Bi weekly_   Dept. _____

## Option 1:   Medical Reimbursement Account Agreement

☑ I elect to contribute $ ▮▮▮▮ ear, to fund my account
to reimburse qualified healthcare expenses not covered under my health or **_ANY_** other insurance plans.

☐ I decline to participate in this option for this plan year.

## Option 2:   Dependent Care Reimbursement Account Agreement

☐ I elect to contribute $ _____ (before tax) per pay period, which is $ _____ per year, to fund my account
to reimburse of qualified dependent care expenses.  (Maximum amount per calendar year is the lesser of,
(1)   $5,000 for married filing joint or $2,500 for married filing separate; (2) your spouse's total annual compensation;
or (3) ½ of your total annual compensation.  If you are single, the maximum amount is $5,000)

☐ I decline to participate in this option for this plan year.

## Option 3:   Premium Savings Account Agreement

☐ I have enrolled in certain employer-sponsored insurance benefits.  I understand that my share of the premium for
these insurance benefits will automatically be paid with pre-tax dollars.  I also understand that if my required
contributions for the elected benefits are increased or decreased while this agreement remains in effect, my taxable
income will automatically be adjusted to reflect that increase or decrease.

☐ I decline to participate in this option for this plan year.

## Option 4:   Waiver of Tax Benefits

☐ I have been given the opportunity to enroll in these tax-savings plans and have declined to participate.  I understand
that I will lose all tax savings that I may have received as a participant.

*My employer and I agree that my taxable income will be reduced each pay period by the amount set forth in this
Agreement.  I understand that I may change my election in the event of certain changes in my status.  Prior to the
first day of each plan year, I will be offered the opportunity to change my benefit election for the upcoming plan year.
Any qualified expenses that are submitted by me will be reimbursed to me on a tax-free basis.  Any contributions that
are not used during the plan year may not be paid to me in cash or used in a later plan year.*

Employee Signature _Jason Rigsby_     Date _12-13-07_

WarrenCounty1366



**HEALTH RESOURCES, INC.**

P.O. BOX 15660 • EVANSVILLE, IN 47716-0660
(800) 727-1444 Tel • (812) 424-2096 Fax
www.HRI-DHO.com

**SUBSCRIBER ENROLLMENT APPLICATION**



dental health **OPTIONS**™

## PLEASE PRINT CLEARLY AND COMPLETELY (Black ink preferred)

☐ New Employee ☐ Open Enrollment ☑ Change of Status (see below)
Reason for Change of Status ☑ Marriage ☐ Divorce ☐ Other _____

1. Name __Rigsby____ __Jason____ __D.____

City ____ State ____ Zip ____ Phone ____
Male __✓__ Female ____ Single ____ Married __✓__ Email address ____

2. Employer __Warren County Reg. Jail__ Phone __270-843-4600__ Hire Date __04-06__ Position __Deputy__

3. I elect dental coverage for __✓__ Myself __✓__ Spouse ____ One Child ____ Children __2__ No. of insureds
   I decline coverage for ____ Myself ____ Spouse ____ One Child ____ Children

4. Spouse and Children Information: (Complete for all COVERED dependents.)

| NAME | RELATIONSHIP | BIRTHDATE | M/F | SOC. SEC. # | Disabled | College Student | Covered by other dental policies? |
|------|-------------|-----------|-----|-------------|----------|-----------------|-----------------------------------|
| 3. | | / / | | - - | | / | |
| 4. | | / / | | - - | | / | |
| 5. | | / / | | - - | | / | |
| 6. | | / / | | - - | | / | |

Because HRI observes the "birthday rule" in coordinating children's dental benefits, provide the birth date of the parent who provides other dental coverage __N/A__. Attach full-time student status proof (i.e. school schedule, transcript) if you are electing coverage for full-time student dependents. HRI needs updates each year. Attach a doctor's statement if dependent child is disabled.

5. Signature, Release, and Assignment:
I understand that I may not change my coverage until next open enrollment period. I may not change coverage on my dependents until next open enrollment period unless I have a change in my family status. If coverage is approved and issued, I authorize Health Resources, Inc., (Dental Health Options), to make payment of any benefits directly to the dentist as the supplier of services rendered. I understand that the dentist(s) I have chosen to use are independent contractors, and are not employees of HRI. I authorize the dentist to release to Health Resources, Inc. any information regarding my history, symptoms, treatment, examination results or diagnosis. I further authorize HRI and the dentists providing services to transmit by any means any and all information regarding services performed for me and my dependents enrolled under this plan as may be required for the payment or evaluation of claims. A photo copy of this authorization shall be considered as effective and valid as the original. I understand I have the right to receive a copy of this authorization. The information given is correct and true.

Date __11-9-07__ Signature of Employee __Jason Rigsby__

If this application is accepted, the information herein is an integral part of the plan. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

| HRI to complete | | | |
|-----------------|--|--|--|
| Group No. | Plan No. | Effective Date | Term of Contract |
| | | | |

(SUBS ENR AP 09/07)       *Forms Distribution: White - HRI, Yellow - Employer, Pink - Agent*

WarrenCounty1367

PLEASE PUT IN FILE



Staff
Jason
Rigsby

S.E.R.T

S.E.R.T

Deputy
673

WarrenCounty1368

I, County Treasurer Jerry Pearson, received the following paperwork from Pat Watt on Jason Rigsby (SS# 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).  He began working at the jail on 4/25/06.

- FORM 2001 _____ ✓ Yes _____5/11/06___ Date
- FORM 2020 _____ ✓ Yes _____5/11/06___ Date
- FORM 2035 _____ ✓ Yes _____5/11/06___ Date
- HEALTH INSURANCE APPLICATION _____ ✓ Yes _____5/11/06___ Date
- HEALTH INSURANCE CHANGE FORM _____ Yes _____ Date
- LIFE INSURANCE _____ ✓ Yes _____5/11/06___ Date
- LIFE INSURNACE CHANGE REQUEST _____ Yes _____ Date
- DEFERRED COMP APPLICATION _____ Yes _____ Date
- DEFERRED COMP BENEFICIARY FORM _____ Yes _____ Date
- FEBCO _____ ✓ Yes _____ Date
- DENTAL INSURANCE FORM _____ ✓ Yes _____5/11/06___ Date
- DIRECT DEPOSIT SIGN UP FORM OR VOIDED CHECK _____ Yes _____ Date

_____
Jerry Pearson, County Treasurer

_____
Pat Watt, Chief Administrative Deputy

**Health Insurance**   **WARREN COUNTY GOVERNMENT**   Effective 01-01-2007

Employee Name: _Jason Rigsby_

Address: ▮▮▮▮▮▮▮▮   DOB: ▮▮▮

SS# ▮▮▮▮▮▮▮▮▮▮

## January 1, 2007 Plan Designs and Deductions:

| Coverage type | Anthem PPO 18 | Anthem PPO 36 | Anthem PPO 71 |
|---|---|---|---|
| Deductible | | | |
| Individual | None | $500 | $1,000 |
| Family | None | $1,000 | $2,000 |
| Coinsurance | 80/20 | 80/20 | 80/20 |
| Maximum Out-of-Pocket | $2000/$4000 | $3000/6000 | $4000/$8000 |
| Deductible Included | | yes | yes |
| Hospitalization | $250 | Ded/Co-Insurance | Ded/Co-Insurance |
| Inpatient Services | Covered in Full | Ded/Co-Insurance | Ded/Co-Insurance |
| ER | $75 | $75 | $100 |
| Office Visits (PCP) | $20 | $25 | $20 |
| Preventive Care | $20 | $25 | $20 |
| RX (Generic, Brand, Non-Formulary) | $10/$20/$30 | $10/$30/50% | $200 Ded/$10/$30/50% |
| | **Monthly Premium** | **Monthly Premium** | **Monthly Premium** |
| Employee | $489.96 | $358.43 | $294.18 |
| Employee/Spouse | $1028.07 | $752.70 | $617.78 |
| Employee/Child | $827.34 | $605.75 | $497.17 |
| Family | $1512.71 | $1107.54 | $909.01 |

Please check which plan
you want effective 1/1/07    ☐    ☐    ☑

Please check type of coverage:   ☑ Employee   ☐ Emp/Spouse   ☐ Emp/Child   ☐ Family

### Dependent information if applicable

| Name | Relationship | M/F | Student or Federal Tax Dependent (Y or N) | Birthdate |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Signature _Jason Rigsby_    Date _11-7-06_

# Enrollment Application     Anthem. 🅑🅥     AnthemLife 🅑🅥

*Group size 51+ eligible employees*

Please complete in blue or black ink and return to your employer. Use extra sheets of paper if necessary. All information given should apply to this employer.
Anthem's Primary Care Physician (PCP) listings, for HMO/POS products can be obtained through www.anthem.com

| 1. Employer/Group Use: Employer Name and Address: | Warren County Regional Jail 920 Kentucky St. Bowling Green KY 42101 |
|---|---|

| Group # | Sub-group # / Life Division # | Request Effective Date | Life Classification | Applicant # / Dept. name |
|---|---|---|---|---|
| 00085420 0000 | | 1 / 1 / 07 | | |

| Anthem use: | | Plan | Health Effective Date | Life Effective Date | Dental Effective Date | PCP | COB | | Pre-ex (date) |
|---|---|---|---|---|---|---|---|---|---|
| | | | / / | / / | / / | ☐ Yes ☐ No | ☐ Yes ☐ No | | / / |

**2. Reason for Application**

☑ New enrollment
☑ Annual open enrollment
  (N/A to Life)
☐ COBRA
  Qualifying event _____
  Event date ___/___/___

☐ Waiver (See Section 11)
☐ New hire
☐ Rehire (date) ___/___/___
☐ Add dependent (see section 3)

**3. Status Change/Event**

Event date ___/___/___
☐ Marriage
☐ Birth
*Include legal documentation.

☐ Adoption*
☐ Legal Guardianship*
☐ Termed Employment
☐ Other_____

**4. Type of Coverage/Plan**

Health Coverage   71 p.u./mo.
☐ HMO* ☐ POS* ☑ PPO
☐ Lumenos, Health Savings Account
☐ Lumenos, Health Reimbursement Account
☐ Lumenos, Health Incentive Account
☑ Employee only
☐ Employee + spouse
☐ Employee + child(ren)
☐ Family coverage
☐ No coverage
  Anthem will facilitate the opening of a
  Health Savings Account in your name,
  if directed by your Employer.

Dental Coverage
☐ PPO
☐ DentaCare (HMO)
☐ Employee only
☐ Employee + spouse
☐ Employee + child(ren)
☐ Family coverage
☑ No coverage

Life Coverage
☐ Life
  (see
  section 7)

**5. Employee Information** *Only complete Primary Care Physician (PCP) information if enrolling in Medical or Dental HMO or POS.

| Last name | First name, M.I. | Date of birth | Age | Sex | Social Security # (SS# required for Lumenos Health Savings Account) | | Height | Weight |
|---|---|---|---|---|---|---|---|---|
| Rigsby | Jason D. | ■■■ | | ☑ M ☐ F | ■■■ | ☑ Single ☐ Divorced ☐ Married | 6' 1" | 235 |

| Are you: | Retired? | Disabled? | Hospitalized? | Occupation | Full time hire date | Hours working per week | Income reported by: |
|---|---|---|---|---|---|---|---|
| | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☑ No | Deputy Jailer | 4/15/06 | 40 | ☑ W2 ☐ 1099 ☐ Other: _____ |

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

**6. Family Information** *Spouse and dependents to be covered (Attach a separate sheet if necessary) Only complete Primary Care Physician (PCP) information if enrolling in HMO or POS products.

| 1 Last name | First name, M.I. | Relationship to applicant | Fulltime student? |
|---|---|---|---|
| N/A | | ☐ Spouse ☐ Son ☐ Daughter ☐ Other___ | ☐ Yes ☐ No |

Is dependent's address different than applicant's address? ☐ Yes ☐ No   (If Yes, provide full address)

| Date of birth / / | Sex ☐ M ☐ F | Social Security # - - | Height | Weight | Court ordered health care coverage? ☐ Yes ☐ No (If yes, include legal documentation) |
|---|---|---|---|---|---|
| | | | | | Currently hospitalized or disabled? ☐ Yes ☐ No (If yes, give reason) |

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

| 2 Last name | First name, M.I. | Relationship to applicant | Fulltime student? |
|---|---|---|---|
| | | ☐ Spouse ☐ Son ☐ Daughter ☐ Other___ | ☐ Yes ☐ No |

Is dependent's address different than applicant's address? ☐ Yes ☐ No   (If Yes, provide full address)

| Date of birth / / | Sex ☐ M ☐ F | Social Security # - - | Height | Weight | Court ordered health care coverage? ☐ Yes ☐ No (If yes, include legal documentation) |
|---|---|---|---|---|---|
| | | | | | Currently hospitalized or disabled? ☐ Yes ☐ No (If yes, give reason) |

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

| 3 Last name | First name, M.I. | Relationship to applicant | Fulltime student? |
|---|---|---|---|
| | | ☐ Spouse ☐ Son ☐ Daughter ☐ Other___ | ☐ Yes ☐ No |

Is dependent's address different than applicant's address? ☐ Yes ☐ No   (If Yes, provide full address)

| Date of birth / / | Sex ☐ M ☐ F | Social Security # - - | Height | Weight | Court ordered health care coverage? ☐ Yes ☐ No (If yes, include legal documentation) |
|---|---|---|---|---|---|
| | | | | | Currently hospitalized or disabled? ☐ Yes ☐ No (If yes, give reason) |

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

WarrenCounty1371

**7. Life and Disability Insurance**

- ☐ Basic Life
- ☐ Dependent Life
- ☐ Optional Life: _____ x annual earnings OR $ _____
- ☐ Current Income: $ _____  ☐ Hour ☐ Week ☐ Month ☐ Year
- ☐ Basic AD&D
- ☐ Optional AD&D
- ☐ Short Term Disability
- ☐ Long Term Disability
- ☐ Anthem By Design Short Term Disability-BUY UP
- ☐ Anthem By Design Long Term Disability-BUY UP
- ☐ Anthem By Design Basic Life-BUY UP
  (Complete separate election form)

Life Class

| Primary Beneficiary | Last name | First name, M.I. | Social Security # | Relationship to applicant | Age |
|---|---|---|---|---|---|
| Contingent Beneficiary | Last name | First name, M.I. | Social Security # | Relationship to applicant | Age |

**8. Other Health Coverage   Please check one:** ☐ YES (completed below.)  ☐ NO

On the day your coverage begins, list family members, including yourself, who will be covered by any other health coverage.

| Provide name, phone number and address of the HMO or insurance company | Policy/certificate number | Effective date / / |
|---|---|---|

| Policy/certificate holder's name | Social Security number | Date of birth / / | Relationship to applicant |
|---|---|---|---|

**If you and / or your dependents are enrolled in Medicare or Medicaid, complete the following.**

| Enrollee's name(s) | Medicare / Medicaid ID# | Medicare Part A effective date | Medicare Part B effective date | ESRD onset date |
|---|---|---|---|---|
| | | / / | / / | / / |
| | | / / | / / | / / |

| Medicare Part D ID# | Medicare Part D Carrier | Medicare Part D effective date | Medicare Part D term date |
|---|---|---|---|
| | | / / | / / |

Reason for Medicare entitlement:
☐ Age ☐ Disability ☐ ESRD & Disability ☐ End Stage Renal Disease (ESRD)

**9. Prior Health Coverage    Please check one:** ☐ YES (completed below.)  ☐ NO

| Have you been covered by Anthem within the past two (2) years? ☐ Yes ☑ No | Group name/ID# | Date policy in effect: / / — / / |
|---|---|---|

Policy/Certificate #:

| Have you and/or your dependents had prior coverage with another carrier(s) within the past two (2) years? ☑ Yes ☐ No | List prior carrier(s) | Dates Policy in effect: / / — / / |
|---|---|---|

Please check the type of prior coverage
☑ Employee  ☐ Employee / Spouse  ☐ Employee / Child(ren)  ☐ Employee / Spouse / Child(ren)

Termination reason: ☐ Divorce/legal separation ☐ Death of spouse ☐ COBRA coverage exhausted ☐ Employment terminated ☐ Group plan terminated ☐ Employer/group contribution ceased
☑ Other:

## Significant Terms, Conditions and Authorizations (TERMS)

*Please read this section carefully before signing the application.*

1. I may not assign any payment under my Anthem Blue Cross and Blue Shield program.

2. I authorize deduction from my wages/pension, if necessary for the required premium for the coverage for which I, or any dependents have applied.

3. I am applying for the coverage selected on this application. If I select a coverage, or combination of coverages, not available to me and / or a class for which I am not eligible, I agree that my selection(s) is hereby automatically amended to be consistent with the employer's application.

4. I understand that, to the extent permitted by law, Anthem reserves the right to accept or decline this application (and that Anthem Life Insurance Company may accept only certain persons or conditions for coverage) and that no right whatsoever is created by this application. I also understand that this coverage, if approved, may exclude coverage for pre-existing conditions.

5. I am responsible to timely notify my employer of any change that would make me or any dependent ineligible for coverage.

6. By signing this application, I agree and consent to the recording and / or monitoring of any telephone conversation between Anthem and myself.
   more detailed description of my rights under these laws by writing to Anthem.

I acknowledge that I have read the Significant Terms, Conditions and Authorizations, and I accept such provisions as a condition of coverage. I represent that the answers given to all questions on this application are true and accurate to the best of my knowledge and I understand that any misstatements or failure to report new medical information prior to my effective date may result in a material change to coverage or premium rates. Any material misrepresentation or significant omission found in this application may result in denial of benefits or rescission or cancellation of my coverage(s). commits a fraudulent insurance act, which is a crime.

I give this authorization for and on behalf of any eligible dependents and myself if covered by the Plan. I am acting as their agent and representative.

In Wisconsin: Blue Cross Blue Shield of Wisconsin ("BCBSWi") underwrites or administers the PPO and indemnity policies; Compcare Health Services Insurance Corporation ("Compcare") underwrites or administers the HMO policies; and Compcare and BCBSWi collectively underwrite or administer the POS policies.

*Thank you for choosing Anthem Blue Cross and Blue Shield*

WarrenCounty1372

**11. Waiver of coverage for employee and / or any eligible dependent not enrolling**

Check all that apply.   Waiving:   ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse ☐ Parent ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

Check all that apply.   Waiving:   ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse ☐ Parent ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

Check all that apply.   Waiving:   ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse ☐ Parent ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

Check all that apply.   Waiving:   ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse ☐ Parent ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

**Check all that apply**

☑ I certify that I have been given an opportunity to apply for Anthem Blue Cross and Blue Shield coverage and after careful consideration, have decided not to take advantage of this offer. In the event I wish to apply for such coverage hereafter, I may do so, subject to established procedures.

If I am declining enrollment for myself or my dependents (including my spouse) because of other health insurance coverage, I may in the future be able to enroll myself or my dependents in this plan, provided that enrollment is requested within 31 days after other coverage ends. My dependent(s) or I may be subject to pre-existing condition restrictions or waiting periods specified in the group certificate, if a dependent or I are late enrollees. In addition, if I have a dependent as a result of marriage, birth, adoption or placement for adoption, I may be able to enroll myself and my dependents provided that I request enrollment within 31 days after the marriage, birth, adoption or placement of adoption.

☐ I certify that I have been given an opportunity to apply for the available group life benefits offered by my employer/group, the benefits have been explained to me, and I and / or my dependent(s) decline to participate. Neither my dependent(s) nor I were induced or pressured by my employer/group, agent or life carrier, into declining this coverage, but elected of my (our) own accord to decline coverage. I understand that if I wish to apply for such coverage in the future, I may be required to provide evidence of insurability at my expense.

| Applicant Signature | Date 12 / 1 / 06 |
|---|---|

A-82  Rev 8/06        LG

4

WarrenCounty1373

**Health Insurance**   # WARREN COUNTY GOVERNMENT   Effective 01-01-2006

Employee Name: _Jason Rigsby_

DOB: ▮

Addr ▮

State: ▮

SS# ▮

Date of Hire: _4-26-06_

## January 1, 2006 Plan Designs and Deductions:

| Carrier Name | Anthem | Anthem | Anthem |
|---|---|---|---|
| *Coverage type* | PPO 18 | PPO 36 | PPO 71 |
| **Benefits Descriptions** | | | |
| Deductible | | | |
|   Individual | None | $500 | $1,000 |
|   Family | None | $1,000 | $2,000 |
| Coinsurance | 80/20 | 80/20 | 80/20 |
| Maximum Out-of-Pocket | $2000/$4000 | $3000/6000 | $4000/$8000 |
|   *Deductible Included* | | yes | yes |
| Hospitalization | $250 | Ded/Co-Insurance | Ded/Co-Insurance |
| Inpatient Services | Covered in Full | Ded/Co-Insurance | Ded/Co-Insurance |
| ER | $75 | $75 | $100 |
| Office Visits  (PCP) | $20 | $25 | $20 |
| Preventive Care | $20 | $25 | $20 |
| RX  (Generic, Brand, Non-Formulary) | $10/$20/$30 | $10/$30/50% | $200 Ded/$10/$30/50% |
| | **Monthly Premium** | **Monthly Premium** | **Monthly Premium** |
| **Employee** | $425.70 | $311.68 | $255.81 |
| **Employee/Spouse** | $893.97 | $654.52 | $537.20 |
| **Employee/Child** | $719.43 | $526.74 | $432.32 |
| **Family** | $1315.40 | $963.08 | $790.45 |

Please check which plan you want effective 1/1/06      [ ]     [✓]     [ ]

Please check type of coverage:   [✓] Employee    [ ] Emp/Spouse    [ ] Emp/Child    [ ] Family

### Dependent information if applicable

| Name | Relationship | DOB | Student or Federal Tax Dependent ( Y  or  N ) | Handicapped ( Y  or  N ) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Signature _Jason Rigsby_                Date _5-3-06_

# Enrollment Application

**Anthem.** ✚ ✦    **Anthem**Life ✚ ✦

*Group size 51+ eligible employees*

Please complete in ink and return to your employer. Use extra sheets of paper if necessary. *All information given should apply to this employer.*
Anthem's Primary Care Physician (PCP) listings, for HMO/POS products can be obtained through www.anthem.com

**1. Employer/Group Use:** Employer Name and Address:

| Group # | Sub-group #/Life Division # | Request. Effective Date | Life Classification | Applicant #/Dept. name |
|---|---|---|---|---|
| | | / / | | |

| Anthem use: | Plan | Health Effective Date | Life Effective Date | Dental Effective Date | Vision Effective Date | PCP | COB | Pre-ex (dates) |
|---|---|---|---|---|---|---|---|---|
| | | / / | / / | / / | / / | ☐ Yes ☐ No | ☐ Yes ☐ No | / / |

## 2. Reason for Application
- ☑ New enrollment
- ☐ Annual open enrollment (N/A to Life)
- ☐ COBRA
  Qualifying event _____
  Event date _____
- ☐ Waiver
- ☐ New hire
- ☐ Rehire (date) ___ / ___ / ___
- ☐ Add dependent (see section 3)

## 3. Status Change/Event
Event date ___ / ___ / ___
- ☐ Marriage
- ☐ Birth
- ☐ Adoption*
- ☐ Legal Guardianship*
- ☐ Other_____
*Include legal documentation.

## 4. Type of Coverage/Plan

**Health Coverage**
- ☐ HMO* ☐ POS* ☑ PPO  3 6
- ☐ Blue Priority℠ ☐ Blue (Ohio only - a health insuring corporation product or "HIC")  ☐ Traditional*℠ (Indiana and Ohio only)
- ☑ Employee only
- ☐ Employee + spouse
- ☐ Employee + child(ren)
- ☐ Family coverage
- ☐ No coverage

**Dental Coverage**
- ☐ PPO
- ☐ Traditional (Indiana and Ohio only)
- ☐ Employee only
- ☐ Employee + spouse
- ☐ Employee + child(ren)
- ☐ Family coverage
- ☐ No coverage

**Vision Coverage**
- ☐ Vision _____
- ☐ Employee only
- ☐ Employee + spouse
- ☐ Employee + child(ren)
- ☐ Family coverage
- ☐ No coverage

**Life Coverage**
- ☐ Life (see section 7)

## 5. Employee Information *Only complete Primary Care Physician (PCP) information if enrolling in HMO or POS products.

| Last name | First name, M.I. | Date of birth | Sex | | Height | Weight |
|---|---|---|---|---|---|---|
| Rigsby | Jason | ▮▮▮▮▮ | ☑ M ☐ F | ☑ Single ☐ Divorced ☐ Married | 6'1" | 225 |

▮▮▮▮▮▮▮▮▮▮ (unicipality)

| Are you: | Retired? ☐ Yes ☑ No | Disabled? ☐ Yes ☑ No | Hospitalized? ☐ Yes ☑ No | Occupation Warren County Deputy Jailer | Full time hire date 4/26/06 | Hours working per week 40 | Income reported by: ☑ W2 ☐ 1099 ☐ Other: ___ |
|---|---|---|---|---|---|---|---|

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

## 6. Family Information *Spouse and dependents to be covered (Attach a separate sheet if necessary) Only complete Primary Care Physician (PCP) information if enrolling in HMO or POS products.

| 1 Last name | First name, M.I. | Relationship to applicant ☐ Spouse ☐ Daughter ☐ Son ☐ Other_____ | Fulltime student? ☐ Yes ☐ No |
|---|---|---|---|

Is dependent's address different than applicant's address? ☐ Yes ☐ No   (If Yes, provide full address)

| Date of birth / / | Sex ☐ M ☐ F | Social Security # | Height | Weight | Eligible for federal income tax exemption? ☐ Yes ☐ No<br>Court ordered health care coverage? ☐ Yes ☐ No (If yes, include legal documentation)<br>Currently hospitalized or disabled? ☐ Yes ☐ No (If yes, give reason) |
|---|---|---|---|---|---|

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

| 2 Last name | First name, M.I. | Relationship to applicant ☐ Spouse ☐ Daughter ☐ Son ☐ Other_____ | Fulltime student? ☐ Yes ☐ No |
|---|---|---|---|

Is dependent's address different than applicant's address? ☐ Yes ☐ No   (If Yes, provide full address)

| Date of birth / / | Sex ☐ M ☐ F | Social Security # | Height | Weight | Eligible for federal income tax exemption? ☐ Yes ☐ No<br>Court ordered health care coverage? ☐ Yes ☐ No (If yes, include legal documentation)<br>Currently hospitalized or disabled? ☐ Yes ☐ No (If yes, give reason) |
|---|---|---|---|---|---|

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

| 3 Last name | First name, M.I. | Relationship to applicant ☐ Spouse ☐ Daughter ☐ Son ☐ Other_____ | Fulltime student? ☐ Yes ☐ No |
|---|---|---|---|

Is dependent's address different than applicant's address? ☐ Yes ☐ No   (If Yes, provide full address)

| Date of birth / / | Sex ☐ M ☐ F | Social Security # | Height | Weight | Eligible for federal income tax exemption? ☐ Yes ☐ No<br>Court ordered health care coverage? ☐ Yes ☐ No (If yes, include legal documentation)<br>Currently hospitalized or disabled? ☐ Yes ☐ No (If yes, give reason) |
|---|---|---|---|---|---|

| Anthem PCP name and address* | Anthem PCP ID number* | New patient?* ☐ Yes ☐ No |
|---|---|---|

## 7. Life and Disability Insurance
- ☐ Basic Life
- ☐ Dependent Life
- ☐ Supplemental Life: _____ x annual earnings OR $ _____
- ☐ Current Income: $ _____
- ☐ Basic AD&D
- ☐ Supplemental AD&D
- ☐ Short Term Disability_____%
- ☐ Long Term Disability_____%
  ☐ Hour ☐ Week ☐ Month ☐ Year
- ☐ Anthem By Design Short Term Disability-BUY UP
- ☐ Anthem By Design Long Term Disability-BUY UP
- ☐ Anthem By Design Basic Life-BUY UP (Complete separate election form)

Are you currently actively at work?
☐ Yes ☐ No
If no, reason: _____

| Primary Beneficiary | Last name | First name, M.I. | Social Security # | Relationship to applicant | Age |
|---|---|---|---|---|---|
| Contingent Beneficiary | Last name | First name, M.I. | Social Security # | Relationship to applicant | Age |

A-82 Rev 9/05        LG

2

WarrenCounty1375

**8. Other Health Coverage**   *Please check one:*   ☐ YES (completed below.)   ☒ NO

On the day your coverage begins, list family members, including yourself, who will be covered by any other health coverage.

| Provide name, phone number and address of the HMO or insurance company | | Policy/certificate number | | Effective date / / |
|---|---|---|---|---|
| Policy/certificate holder's name | Social Security number — — | Date of birth / / | Relationship to applicant | |

**If you and/or your dependents are enrolled in Medicare or Medicaid, complete the following.**

| Enrollee's name(s) | Medicare/Medicaid ID# | Medicare Part A effective date | Medicare Part B effective date | ESRD onset date |
|---|---|---|---|---|
| | | / / | / / | / / |
| Medicare Part D ID# | Medicare Part D Carrier | Medicare Part D effective date / / | Medicare Part D term date / / | / / |

Reason for Medicare entitlement:
☐ Age   ☐ Disability   ☐ ESRD & Disability   ☐ End Stage Renal Disease (ESRD)

**9. Prior Health Coverage**   *Please check one:*   ☐ YES (completed below.)   ☐ NO

| Have you been covered by Anthem within the past two (2) years?  ☐ Yes ☒ No  Policy/Certificate #: | Group name/ID# | Date policy in effect: / / — / / |
|---|---|---|
| Have you and/or your dependents had prior coverage with another carrier(s) within the past two (2) years?  ☐ Yes ☐ No | List prior carrier(s) | Dates Policy in effect: / / — / / |

Please check the type of prior coverage
☐ Employee   ☐ Employee/Spouse   ☐ Employee/Child(ren)   ☐ Employee/Spouse/Child(ren)

Termination reason: ☐ Divorce/legal separation  ☐ Death of spouse  ☐ COBRA coverage exhausted  ☐ Employment terminated  ☐ Group plan terminated  ☐ Employer/group contribution ceased
☐ Other:

## Significant Terms, Conditions and Authorizations (TERMS)

*Please read this section carefully before signing the application.*

1. I may not assign any payment under my Anthem Blue Cross and Blue Shield program.

2. I authorize deduction from my wages/pension, if necessary for the required premium for the coverage for which I, or any dependents have applied.

3. I am applying for the coverage selected on this application. If I select a coverage, or combination of coverages, not available to me and / or a class for which I am not eligible, I agree that my selection(s) is hereby automatically amended to be consistent with the employer's application.

4. I understand that, to the extent permitted by law, Anthem reserves the right to accept or decline this application (and that Anthem Life Insurance Company may accept only certain persons or conditions for coverage) and that no right whatsoever is created by this application. I also understand that this coverage, if approved, may exclude coverage for pre-existing conditions. (Ohio only — unless I applied for HMO/HIC coverage, in which case there is no such exclusion.)

5. I am responsible to timely notify my employer of any change that would make me or any dependent ineligible for coverage.

6. Ohio: If applying for HIC/HMO coverage, I understand that I may cancel my membership by providing written notice to Anthem within 72 hours of signing this application

7. By signing this application, I agree and consent to the recording and / or monitoring of any telephone conversation between Anthem and myself.

8. THIS PARAGRAPH APPLIES ONLY TO MEMBERS OF OHIO GROUPS, AND DOES NOT APPLY TO MEMBERS OF INDIANA OR KENTUCKY GROUPS: I understand that Anthem may collect personal information about me from outside sources, and that both personal and privileged information may only be disclosed to outside parties without my authorization if such disclosure is permitted by both the HIPAA Privacy Regulations (45 C.F.R. Parts 160 & 164) and the Ohio Revised Code § 3904.13. I also understand that under the HIPAA Privacy Regulations and Ohio law, I have a right to see and correct personal information that Anthem collects about me, and that I may receive a more detailed description of my rights under these laws by writing to Anthem.

I acknowledge that I have read the Significant Terms, Conditions and Authorizations, and I accept such provisions as a condition of coverage. I represent that the answers given to all questions on this application are true and accurate to the best of my knowledge and I understand they are being relied on by Anthem in accepting this application. I understand that any misstatements or failure to report new medical information prior to my effective date may result in a material change to coverage or premium rates. Any material misrepresentation or significant omission found in this application may result in denial of benefits or rescission or cancellation of my coverage(s).

*Ohio:* Any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

*Kentucky:* Any person who knowingly and with intent to defraud any insurance company, health maintenance organization, self-insured plan, or other person, files an application for insurance or other form of health care coverage containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

I give this authorization for and on behalf of any eligible dependents and myself if covered by the Plan. I am acting as their agent and representative.

Your health coverage will be provided by one of the following companies based upon the state in which your employer, trust or association is located:

In Indiana: Anthem Blue Cross and Blue Shield is the trade name of Anthem Insurance Companies, Inc.

In Kentucky: Anthem Blue Cross and Blue Shield is the trade name of Anthem Health Plans of Kentucky, Inc.

In Ohio: Anthem Blue Cross and Blur Shield is the trade name of Community Insurance Company.

*Thank you for choosing Anthem Blue Cross and Blue Shield*

**10. Read the TERMS section above carefully before signing. Please review your application for errors or omissions.**

By signing this, I am indicating that I have read and understand the language in the TERMS section of this application and agree to all of its terms.

| Applicant Signature | Date 5 13 06 |
|---|---|

A-82 Rev 9/05          LG                                           3

**11. Waiver of coverage for employee and / or any eligible dependent not enrolling**

Check all that apply.   Waiving: ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse   ☐ Parent   ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

Check all that apply.   Waiving: ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse   ☐ Parent   ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

Check all that apply.   Waiving: ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse   ☐ Parent   ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

Check all that apply.   Waiving: ☐ Health   ☐ Dental   ☐ Vision   ☐ Life   ☐ All

| Name of person waiving | Already protected by coverage of: ☐ Spouse   ☐ Parent   ☐ None |
|---|---|
| Employer name | Carrier: ☐ Anthem (give certificate/policy #)   ☐ Other carrier (give name, ID #) |

**Check all that apply**

☐ I certify that I have been given an opportunity to apply for Anthem Blue Cross and Blue Shield coverage and after careful consideration, have decided not to take advantage of this offer. In the event I wish to apply for such coverage hereafter, I may do so, subject to established procedures.

If I am declining enrollment for myself or my dependents (including my spouse) because of other health insurance coverage, I may in the future be able to enroll myself or my dependents in this plan, provided that enrollment is requested within 31 days after other coverage ends. My dependent(s) or I may be subject to pre-existing condition restrictions or waiting periods specified in the group certificate, if a dependent or I are late enrollees. In addition, if I have a dependent as a result of marriage, birth, adoption or placement for adoption, I may be able to enroll myself and my dependents provided that I request enrollment within 31 days after the marriage, birth, adoption or placement of adoption.

☐ I certify that I have been given an opportunity to apply for the available group life benefits offered by my employer/group, the benefits have been explained to me, and I and / or my dependent(s) decline to participate. Neither my dependent(s) nor I were induced or pressured by my employer/group, agent or life carrier, into declining this coverage, but elected of my (our) own accord to decline coverage. I understand that if I wish to apply for such coverage in the future, I may be required to provide evidence of insurability at my expense.

| Applicant Signature | Date |
|---|---|
| | /   / |

WarrenCounty1377

# 𝔚𝔞𝔯𝔯𝔢𝔫 𝔔𝔬𝔲𝔫𝔱𝔶 𝔕𝔢𝔤𝔦𝔬𝔫𝔞𝔩 𝔍𝔞𝔦𝔩

## Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101



Phone (270) 843-4606

Fax (270) 843-5317

### FAX COVER SHEET

DATE: _5-3-06_

TO: _Nat Lou_

AGENCY: _Insurance Specialists_

FAX NUMBER: _793-1742_

SENDER: _Pat Hall_

We are transmitting ____5____ pages, including the cover sheet.
If you do not receive all pages clearly, please contact sender at (270) 843-4606.

NOTES: _____

_____

_____

_____

_____

### CONFIDENTIALITY NOTICE:

This FAX cover sheet and the materials enclosed in the following transmission are the private, confidential property of the sender, and the material are privileged communications intended solely for the recipient indicated above. If you are not the intended recipient indicated above, you are hereby notified that any review, disclosure, copying, distribution, or taking of any other action reliance upon the contents of this transmission is strictly prohibited and may result in legal liability on your part. If you have received this transmission in error, please notify the sender at 270-843-4606 to arrange for the transmission. Thank you.



WarrenCounty1378

Kentucky Retirement Systems
Perimeter Park West
1260 Louisville Rd
Frankfort KY  40601-6124
Phone: (502) 696-8800
Fax: (502) 696-8822
www.kyret.com

Member's
Soc. Sec. No.:



## MEMBERSHIP INFORMATION
## KENTUCKY RETIREMENT SYSTEMS

NAME: _Jason Daniel Rigsby_

ADDRESS:

HOME PHONE

DATE OF BIRTH

FULL NAME OF EMPLOYING AGENCY: _Warren County Regional Jail_

DATE OF EMPLOYMENT WITH AGENCY: _4-26-06_

OTHER NAME UNDER WHICH YOU MAY HAVE BEEN PREVIOUSLY EMPLOYED: _____

### PREVIOUS COUNTY, CITY OR STATE EMPLOYMENT:

| DEPARTMENT OR AGENCY | POSITION | FROM | | | TO | | | ADMINISTRATIVE USE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | MO. | DAY | YR. | MO. | DAY | YR. | MO. | DAY | YR. | VERIF. |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

### STATEMENT OF ACTIVE DUTY MILITARY SERVICE:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| USMC | LCPL | 5 | 28 | 04 | 1 | 25 | 05 | | | |

**I understand that no benefits may be paid to me or my beneficiary until this completed form is filed at the retirement office.**

SIGNATURE: _Jason Rigsby_        DATE: _5-3-06_



Kentucky Retirement Systems
Perimeter Park West
1260 Louisville Rd
Frankfort KY  40601-6124
Phone: (502) 696-8800
Fax: (502) 696-8822
www.kyret.com

Member's
Soc. Sec. No.:

Revised 00/03

## FORM 2035
## BENEFICIARY DESIGNATION

**THIS FORM IS NOT VALID UNLESS IT IS COMPLETED CORRECTLY AND RECEIVED IN THE FRANKFORT RETIREMENT OFFICE PRIOR TO DEATH.  YOU MUST SIGN THIS FORM AND A WITNESS (OR YOUR SPOUSE) MUST SIGN THIS FORM OR IT WILL NOT BE ACCEPTABLE.  PLEASE COMPLETE THIS SECTION AND THE BACK OF THIS FORM.  PLEASE PRINT.**

Your Name:  _Juson Daniel Rigsby_                SSN:

Birth date:

Your Address

---

### INSTRUCTIONS FOR COMPLETING YOUR FORM 2035.

- You may name one or more individuals, your estate, or a trust or trustee as principal or contingent beneficiary of your retirement account. The principal beneficiary will receive benefits in the event of your death.  The contingent beneficiary will receive benefits in the event of your death ONLY if all of the named principal beneficiaries are deceased.

- _Naming One or More Individuals As Beneficiary:_ If you name _more than one individual_ as principal or contingent beneficiary you may indicate the percentage each beneficiary is to receive.  Percentages for the principal beneficiary section must equal but not exceed 100%.  Percentages for the contingent beneficiary section must also equal but not exceed 100%.  If you do not indicate percentages, disbursement of payment will be divided equally among living principal beneficiaries, or if all principal beneficiaries have died, among all living contingent beneficiaries, as provided in KRS 61.542.

  **If you name a _single individual_ as beneficiary, that individual may be eligible for a lifetime benefit upon your death, depending on your total service credit.  If you name multiple individuals, your estate or a trust, no lifetime benefit is available.**

- _Naming An Estate As Beneficiary:_ You may name your estate as either principal or contingent beneficiary by writing "My Estate" as the name of the beneficiary.  Keep in mind that if you name your estate as a principal beneficiary, you cannot name a contingent beneficiary.

- _Naming a Trust or Trustee As Beneficiary:_ You may name a trust or trustee as a principal or contingent beneficiary.  If the trust is an existing trust (already funded), you must provide the _name of the trust_ and the _federal tax identification number_.  If the trust is a testamentary trust (created by will to be funded upon your death), you must provide the _name of the trustee_ and _your social security number_.

- _Other Considerations:_ You cannot name yourself as principal or contingent beneficiary. You also cannot name the same person as both principal and contingent beneficiary.  A charitable organization or a religious charity cannot be named as beneficiary unless it is a trust.

- _Required Signatures:_ You must sign and date the form in the Signature section.  Your spouse _or_ another individual must also witness your signature and sign the form in the Signature section.

- _Changing Your Beneficiary:_ Prior to retirement you may change your beneficiary designation at any time by completing a new Form 2035.

WarrenCounty1380

*THIS IS A LEGAL AND BINDING DOCUMENT AND IS NOT TO BE ALTERED.  ALL INFORMATION MUST BE COMPLETED AND THIS FORM MUST BE RECEIVED IN THE FRANKFORT RETIREMENT OFFICE PRIOR TO THE MEMBER'S DEATH TO BE VALID.*

| PRINCIPAL BENEFICIARY SECTION | CONTINGENT BENEFICIARY SECTION |
|---|---|

**1.**

Name: _____

Social S

Tax ID if

Date of E

Address:

**2.**

Name: _____ %: _____
First          Last

Social  Security #: _____ Sex: _____

Date of Birth: _____ Relationship: _____

Address: _____
Apt. No.        Street

_____
City        State        ZIP

**Contingent 2.**

Name: _____ %: _____
First          Last

Social  Security #: _____ Sex: _____

Date of Birth: _____ Relationship: _____

Address: _____
Apt. No.        Street

_____
City        State        ZIP

**3.**

Name: _____ %: _____
First          Last

Social  Security #: _____ Sex: _____

Date of Birth: _____ Relationship: _____

Address: _____
Apt. No.        Street

_____
City        State        ZIP

**Contingent 3.**

Name: _____ %: _____
First          Last

Social  Security #: _____ Sex: _____

Date of Birth: _____ Relationship: _____

Address: _____
Apt. No.        Street

_____
City        State        ZIP

**4.**

Name: _____ %: _____
First          Last

Social  Security #: _____ Sex: _____

Date of Birth: _____ Relationship: _____

Address: _____
Apt. No.        Street

_____
City        State        ZIP

**Contingent 4.**

Name: _____ %: _____
First          Last

Social  Security #: _____ Sex: _____

Date of Birth: _____ Relationship: _____

Address: _____
Apt. No.        Street

_____
City        State        ZIP

*IF YOU WISH TO NAME MORE THAN FOUR PRINCIPAL OR CONTINGENT BENEFICIARIES, PLEASE CONTACT THE RETIREMENT OFFICE.*

**SIGNATURE SECTION**
**THIS SECTION _MUST_ BE COMPLETED BEFORE WE CAN ACCEPT THIS FORM 2035**

Your  SSN: *40733-8083*                  Your Signature: *Jason Huff*

Spouse's Signature: _____     Date Form is Signed: *5-3-06*

**OR**
Signature of Witness: *Patricia G. Pratt*          **Your signature must be witnessed by your spouse or by another individual.**

*Please initial any and all corrections you have made to the form.*

WarrenCounty1381





**SHENANDOAH LIFE**
**INSURANCE COMPANY**

Post Office Box 12847   Roanoke Virginia 24029   (800) 848-5433   www.shenlife.com

## *TRUE GROUP INSURANCE ENROLLMENT FORM*

[ ] Initial Enrollee     [ ] Late Entrant     [ ] New Employee

Policy # _____   Account # _____   Employer's Telephone _____

Group Name _____

## EMPLOYEE INFORMATION *(please print)*

Last Name _Rigsby_   First Name _Javan_   MI _D_

███████████████████████████████████████████████████████

Gender ..................... [ ✓ ] Male   [ ] Female   Marital Status ..................... [ ✓ ] Single   [ ] Married

Occupation _Warren County Deputy Jailer_

Hire Date _9-26-06_   Hours Worked Per Week _40_

Effective Date _____   Rehire Date _____

Base Earnings (no overtime) ............................................................. $ ████████

[ ] Annual   [ ] Monthly   [ ] Semi-Monthly   [ ✓ ] Bi-Weekly   [ ] Weekly   [ ] Hourly

Average Annual Bonus/Commissions (if applicable) ............................................. $ _____

## COVERAGE *(If declining any available coverage, please sign attached Refusal of Coverage)*

Please indicate which coverage(s) you are selecting:

[ ✓ ] **True Group Life**

   [ ] Employee Life ............ Eligibility Class*: _____

   [ ] Employee AD&D

   [ ] Dependent Life   *(AD&D not available for dependent children)*

   [ ] Supplemental Life ...... Amount $ _____   or Multiple of Salary _____

   [ ] Supplemental AD&D . Amount $ _____   or Multiple of Salary _____

[ ] **True Group Dental**

   Select one plan: ................. [ ] Coinsurance   [ ] Scheduled Plan

   Select all that apply: ........... [ ] Employee   [ ] Spouse   [ ] Children (# of children: _____)

   Are you or any of your dependents covered for dental insurance under another policy? ..................... [ ] Yes   [ ] No

[ ] **True Group Short Term Disability**

   Eligibility Class*: _____

[ ] **True Group Long Term Disability**

   Eligibility Class*: _____

\* Available benefits may vary by Eligibility Class. If you are not certain of your Eligibility Class, please confirm with your benefits
contact. If all full-time employees are eligible for coverage, class does not apply.

Form 5480 9/02

**continued on reverse**

*true group insurance enrollment form*
*Page 1 of 3*

WarrenCounty1382

## DEPENDENT/SPOUSE INFORMATION

If applying for spouse and/or child(ren) coverage, complete following section.

Spouse  Name (Last, First, MI) _____
        Social Security No. _____ DOB _____ Gender [  ] Male  [  ] Female

Child   Name (Last, First, MI) _____
        Social Security No. _____ DOB _____ [  ] Male  [  ] Female
        Full-Time Student?  [  ] Yes  [  ] No

Child   Name (Last, First, MI) _____
        Social Security No. _____ DOB _____ [  ] Male  [  ] Female
        Full-Time Student?  [  ] Yes  [  ] No

Child   Name (Last, First, MI) _____
        Social Security No. _____ DOB _____ [  ] Male  [  ] Female
        Full-Time Student?  [  ] Yes  [  ] No

## PRIMARY BENEFICIARY FOR LIFE INSURANCE

Last Name ███████████████████████████████████████

Last Name _____ First Name _____ MI ____ Relationship to Insured _____ ____%

## CONTINGENT BENEFICIARY FOR LIFE INSURANCE

Last Name ███████████████████████████████████████████

Last Name _____ First Name _____ MI ____ Relationship to Insured _____ ____%

## STATEMENT OF UNDERSTANDING

I, the undersigned, certify all statements are true and complete to the best of my knowledge and belief.

I hereby apply for group insurance for which I am eligible or may become eligible. If contributions are required, I authorize my employer to deduct premiums from my salary. I reserve the right to revoke this deduction at any time on written notice. I understand that if I am not actively at work on the date coverage would otherwise take effect that my coverage will be delayed until I return to full-time active work.

**Any person who, knowingly and with intent to defraud any insurance company or other persons, files an application for insurance or statement of claim containing any materially false information, or conceals information for the purpose of misleading, concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.**

*Note: The following states require that alternate statements regarding insurance fraud be given. If you are a resident of any of the following states, please consider the following statements as replacements for the above statement.*

**New Jersey** – **Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.**

**Tennessee** – **It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.**

**Virginia** – **Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may have violated state law.**

**Florida** – **Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.**

**Employee Signature** *Jason Hyp̲p̲*            Date 5-3-06

Form 5480 9/02                                    *true group insurance enrollment form*
                                                  Page 2 of 3

WarrenCounty1383





**SHENANDOAH LIFE
INSURANCE COMPANY**

Post Office Box 12847   Roanoke Virginia 24029   (800) 848-5433   www.shenlife.com

Group Name _____   Policy # _____

Employee Last Name_____   First Name _____   MI _____

## REFUSAL OF GROUP COVERAGE

**Coverages Refused:** (check all that apply)

**Employee:**   [  ]   True Group Life/AD&D

  [  ]   True Group Dental

  [  ]   True Group Short Term Disability

  [  ]   True Group Long Term Disability

  [  ]   True Group Supplemental Life/AD&D

**Spouse:**   [  ]   Dependent Life   [  ]   Dental

**Child(ren):**   [  ]   Dependent Life   [  ]   Dental

I have been offered this insurance coverage and decline to purchase it at this time. I understand that in the event I desire such insurance at a later date, some benefits may be limited and/or I will be required to furnish evidence of insurability at my own expense, and the company will have the right to refuse any request.

**If declining coverage, please sign.** Name _____ Date _____

Form 5480 9/02

*true group insurance enrollment form*
*Page 3 of 3*

**WarrenCounty1384**

# SUBSCRIBER ENROLLMENT APPLICATION

☑ New Employee   ☐ Open Enrollment   ☐ Change of Status (see below)

Reason for Change of Status:   ☐ Marriage   ☐ Divorce   ☐ Death   ☐ Other _____

**dental health OPTIONS**™

| HRI to complete | |
|---|---|
| Group No. 4199 23 21 | Plan No. 203 030-52 |
| Effective Date | Term of Contract |

PLEASE PRINT CLEARLY AND COMPLETELY

1. Name  Rigsby    Jason   O    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
   Last    First   Init.   Social Security No.

[redacted]

City _____ State _____ Zip _____ Phone _____

Male ✓ Female _____ Single ✓ Married _____ Email address _____

2. Employer  Warren County Jail  Position  Deputy Jailer  Hire Date 4-26-06 Phone 792-1356

3. I elect dental coverage for ✓ Myself _____ Spouse _____ One Child _____ Children   ☐ No. of insureds
   I decline coverage for _____ Myself _____ Spouse _____ One Child _____ Children

4. Spouse and Children Information: (Complete for all COVERED dependents.)

| NAME | RELATIONSHIP | BIRTHDATE | M/F | SOC. SEC. # | College Disabled/Student | Covered by other dental policies |
|---|---|---|---|---|---|---|
| 2. | Spouse | | | - - | | / |
| 3. | | / / | | - - | | / |
| 4. | | / / | | - - | | / |
| 5. | | / / | | - - | | / |
| 6. | | / / | | - - | | / |

Because HRI observes the "birthday rule" in coordinating children's dental benefits, provide the birth date of the parent who provides other dental coverage _____. Attach full-time student status proof if you are electing coverage for dependents over age 19. HRI needs updates each semester.

5. Dentist(s): (Optional) _____ _____

6. I understand that I may not change my coverage until next open enrollment period. I may change coverage on my dependents until next open enrollment period unless I have a change in my family status.

7. Signature, Release, and Assignment:
   If coverage is approved and issued, I authorize Health Resources, Inc., (Dental Health Options), to make payment of any benefits directly to the dentist as the supplier of services rendered. I understand that the dentist(s) I have chosen to use are independent contractors, and are not employees of HRI. I authorize the dentist to release to Health Resources, Inc. any information regarding my history, symptoms, treatment, examination results or diagnosis. I further authorize HRI and the dentists providing services to transmit by any means any and all information regarding services performed for me and my dependents enrolled under this plan as may be required for the payment or evaluation of claims. A photo-copy of this authorization shall be considered as effective and valid as the original. I understand I have the right to receive a copy of this authorization. The information given is correct and true.

   Date 5-3-06 _____ Signature of employee _____

If this application is accepted, the information herein is an integral part of the plan. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

P.O. BOX 15660
EVANSVILLE, IN 47716-0660
(812) 424-1444
(800) 727-1444
(812) 424-2096 FAX
(SUBS ENR AP 5/05)

Forms distribution: White - HRI, Yellow - Employer, Pink - Agent

**HEALTH RESOURCES, INC.**
www.HRI-DHO.com

P.O. BOX 2845
ELKHART, IN 46515-2845
(574) 206-8844
888-455-5141
FAX (574) 206-8866

WarrenCounty1385

# Warren County Regional Jail

### Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

April 25, 2006

TO:  Jerry Pearson, County Treasurer

FROM:  Jackie T. Strode, Jailer

SUBJECT:  New Employee

Effective Tuesday, April 25, 2006 Jason Dainel Rigsby began working at the Jail as a Shift Deputy.  **This is not a new position.**  Duties include supervise, transport, process and release inmates.  Jason's salary will be █████████████████

Attached is Form 2020.  I will forward other necessary paperwork as it becomes available.

*Jackie T. Strode*

Jackie T. Strode, Jailer

JTS/pw
Cc:  Judge Buchanon
       File



WarrenCounty1386

Kentucky Retirement Systems
Perimeter Park West
1260 Louisville Rd
Frankfort KY  40601-6124
Phone: (502) 696-8800
Fax: (502) 696-8822
www.kyret.com

**FORM 2020**

Member's
Soc. Sec. No.:

Revised 10/05

# ADVICE OF PERSONNEL ACTION

NAME:  Jason Dainel Rigsby            DATE OF BIRTH: _____

ADDRESS:

City                County          State          ZIP Code

☐ Name Change         ☐ Address Change

**NATURE OF PERSONNEL ACTION:**

| | | | |
|---|---|---|---|
| ☐ New Agency | ☐ Reinstatement | ☒ New Employee | ☐ FMLA Leave* |
| ☐ Leave Without Pay | ☐ Educational Leave | ☐ Maternity Leave | ☐ Approved Sick Leave Without Pay |
| ☐ Military Leave | ☐ Dismissal | ☐ Death | ☐ Date of Death: _____ |
| ☐ Termination | ☐ Health Insurance Termination Date: | | |

☐ Change In Employer:    From: _____  To: _____

☐ Change in Position Status:  From: _____  To: _____

☐ Other (please specify)

*Leave Provided For Under the Family Medical Leave Act (FMLA).*

| Position Title | Position Status | | Current Rate of Pay: (Monthly, Hourly, Daily) |
|---|---|---|---|
| Shift Deputy | ☒ Regular Full-Time  ☐ Seasonal | | |
| | ☐ Temporary  ☐ Emergency | | |
| | ☐ Part-Time  ☐ Probation | | |

EMPLOYING AGENCY:  Warren County Regional Jail          UNIT #: 114

TODAY'S DATE:  4/26/06          EFFECTIVE DATE OF PERSONNEL ACTION:  4/25/06

_(Signature of Agency or Authorized Official)_          Jailer
                                                        _(Title)_

DAYTIME PHONE #:

**WarrenCounty1387**

# WARREN COUNTY REGIONAL JAIL

## APPLICATION FOR EMPLOYMENT

*BLPD*

### *PERSONAL INFORMATION*

NAME: _Rigsby_____ _Jason_____ _Daniel_____
(Last)            (First)            (Middle)

ADDRESS: ████████████████████████████████
(Street)            (City)            (State)            (Zip)

PHONE NUMBER ██████████ ARE YOU 21 YEARS OR OLDER? Yes _✓_ No___

SOCIAL SECURI ████████ REFERRED BY: ████████████

Position applying for: _Any_____
Date Available
For Work: _2 week after hire_ Desired Salary: _going rate_

Are you currently employed? Yes _✓_ No_____
May we contact your present
Employer?            Yes _✓_ No_____

HAVE YOU EVER APPLIED FOR A POSITION
AT THE WARREN COUNTY JAIL?            YES_____ NO _✓_ WHEN?_____

### *EDUCATION*

**HIGH SCHOOL:** _Warren Central_ ADDRESS:___
YEARS ATTENDED: _4_ GRADUATED: YES _✓_ NO___

*4-25-06*

**COLLEGE:** _Western Kentucky_ ADDRESS:___
YEARS ATTENDED: _3_ GRADUATED: YES_____ NO _✓_

*1/67*

**TRADE, BUSINESS, or CORRESPONDENCE:**_____
YEARS ATTENDED:_____ GRADUATED: YES_____ NO___

*0700*
*Drill 282930*

**SPECIAL SKILLS, COMPUTER TRAINING, ETC.:** _Keybo_____
_Excel, Power Point_____

**MILITARY SERVICE AND RANK:** _USMCR_____ _LCPL/E-3_____

Warren County is an Equal Opportunity Employer

**_EMPLOYMENT HISTORY_ -** Please provide information regarding your last three employers.

1. Employer and Address: _Total Fitness Connection_

   Employed from: _11-05_ To: _present_   Phone #: _846-0941_ Salary: _6.50/hr_

   Position Held: _Fitness Tech_   Reason for Leaving: _still employed_

   Promotions Received: _None_

   Supervisor's Name: ███████████

2. Employer and Address: _Afni_

   Employed from: _2-05_ To: _11-05_   Phone #: _146-2360_ Salary: _9.00/hr_

   Position Held: _Customer Service_   Reason for Leaving: _No benefits_

   Promotions Received: _.50 cent raise from 9.00 to 9.50/hr_

   Supervisor's Name: ████████

3. Employer and Address: _USMCR_

   Employed from: _5-04_ To: _present_   Phone #: _859-333-7808_ Salary: _1314/month_

   Position Held: _Tank Mech_   Reason for Leaving: _____

   Promotions Received: _PFC in Boot Lcpl in Jan 2005_

   Supervisor's Name: ███████████

**\*\*\* May we contact previous employers?  YES** _✓_ **NO** _____

**Have you ever been convicted of a felony** _NO_ **or misdemeanor** _NO_ **charge (not including traffic charges) with the exception of DUI charges?**

**_REFERENCES_** (List Three)

1. _Heather Gregory_                                              _782-2910 yes_
   (NAME)                    (ADDRESS)                    (PHONE)
2. _Todd Stinson_                                                  _846-0941_
   (NAME)                    (ADDRESS)                    (PHONE)
3. _April Woods_
   (NAME)                    (ADDRESS)                    (PHONE)
   _Mike Arthur JTS_                                          _843-4606 yes_

Warren County is an Equal Opportunity Employer

## QUALIFICATIONS
- High school diploma or equivalent
- 21 years old
- No serious criminal record
  - No felony convictions
  - No serious misdemeanor convictions
  - No serious misdemeanor arrests
- Good health (physical exam and blood analysis at applicant's expense) Must be able to go up and down stairs

## REQUIREMENTS IF EMPLOYED
- An at-will-employee
- Drug tested
- Required to complete a 14 page law enforcement application
- Required to work weekends
- Required to work all shifts
- Computer experience preferred, but not required
- 60 Day probationary period which may be extended
- May be asked to take a Polygraph test during employment
- Will be required to reimburse training expenses of $1685.04 if employed for less than one year unless an agreement is reached with the Jailer

## JOB DESCRIPTION
- Security checks and supervision of inmates
- Assist in booking process
- Assist in supervision of inmate programs
- Assist court bailiff and transportation of inmates
- Other duties as assigned by the Jailer
- Maintain jail records
- Perform all inmate intake functions
- Perform all inmate release functions
- Perform all inmate transfer activities
- Operate security panels in all areas of the jail
- Control movements of prisoners
- Check isolation inmates every 15 minutes
- Search inmates coming from and going back to their cells
- Check mail for contraband
- Distribute inmate mail and property
- Check complaints and answer requests
- Keep pods and work stations clean
- Maintain discipline in cells
- Have laundry picked up and returned
- Monitor inmate trustees
- Cell searches
- Make security checks of total facility
- Make necessary Headcounts
- Answer phones
- Assist public with information inquiries

*Handwritten notes (right side):*
STILL IN USMC Reserve
Why - Interested in Co.
Retirement System + TD
Get in Law Enforcement

3 Dependable
Don't Miss
Trustworthy

1 Physical

Good Supv - Mgt
Take Care of Employees
On Top of Things
Team Work

→ Why Above
I'M A MARINE

Warren County is an Equal Opportunity Employer

## EMPLOYEE BENEFITS

- May advance in promotional system
- Uniforms furnished
- County Employee Retirement System:  Maximum Benefits after 27 years
- Life Insurance:  $10,000 policy premiums paid by the county
- Earn one (1) sick day and one (1) vacation day each month
- Health Insurance:  County contributes $300 towards monthly premiums
- Flexible Spending Plan
- Deferred Compensation Plan (401k)

I consent to the release of any information for the following:  Medical Records, Criminal Records, and any other records deemed necessary for employment.

I certify that the facts contained in this application are true and complete to the best of my knowledge and understand that if employed, falsified statements on this application shall be grounds for dismissal. I understand and agree that, if hired, my employment is for no definite period of time and may, regardless of the date of payment of my wages and salary, be terminated at any time without prior notice and without cause.

**Applicant's Signature:** _Jason Rigby_   **Date:** _1-26-06_

Warren County is an Equal Opportunity Employer

## INTEROFFICE MEMORANDUM

TO: All Deputies     FROM: Jailer Jackie T. Strode

SUBJECT: <u>Issues Items</u>     DEPUTY: _____

Radio:   Yes:_____ No:_____ Serial Number:_____ Quantity:_____

Pager:   Yes:_____ No:_____ Serial Number:_____ Quantity:_____

Cell Phone:   Yes:_____ No:_____ Serial Number:_____ Quantity:_____

P&P Manual:   Yes:✓ No:_____ Book Number: 673   Quantity: 1

I.D. Cards:   Yes:_____ No:_____ Quantity:_____

Dress Uniform Shirt:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Dress Uniform Pants:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Black BDU Top:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Black BDU Bottom:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Gray BDU Top:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Gray BDU Bottom:   Yes:_____ No:_____ Size(s):_____ Quantity: 5

Black/Gray Polo Shirt:   Yes:_____ No:_____ Size(s):_____ Quantity: 5

Blue Denim Shirt:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Lightweight Jacket:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Heavy Jacket or
Jacket with liner:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Dress Shoes:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Boots:   Yes:_____ No:_____ Size(s):_____ Quantity:_____

Belt:   Yes:_____ No:_____ Quantity:_____

Deputy Badge:   Yes:_____ No:_____ Quantity:_____
     Is the badge one that says Supervisor?   Yes:_____ No:_____

Buttons/Deputy Pins:   Yes:_____ No:_____ Quantity:_____

Please list any items not accounted for above on the following lines: _____

_____

_____

Date:_____   Deputy Signature:_____ Unit #:_____

<u>EMPLOYEE PROFILE SHEET</u>
(NOT USED FOR HIRING OR PROMOTIONS)

NAME: Jason Rigsby

ADDRESS: ███████████

BIRTHDAT███████████

JOB TITL███████████ SUPERVISOR

ANNIVERSARY DATE WITH COUNTY: _____

MARRIED STATUS: Single

HUSBAND OR WIFE'S NAME: N/A

THEIR OCCUPATION: N/A   WORK PHONE #

CHILDREN: NAMES: N/A   AGES:

_____ _____

_____ _____

_____ _____

SCHOOLS THEY ATTEND: _____

_____

ORGANIZATIONS YOU BELONG TO: USMCR

_____

------------------------------------------

BLOOD TYPE O+   ALLERGIES N/A

███████████

CHURCH ███████████

WHERE ███████████

WarrenCounty1392

## Sexual Harassment Post-Test

Name: _Jason Rigsby_

Department: _Warren County Regional Jail_

### Answer TRUE or FALSE

_T_ 1. If you are the victim of sexual harassment at work, you are encouraged to report the harassment to your supervisor or human resource office.

_T_ 2. Hostile work environment is a type of sexual harassment where a male boss demands sexual favors from a female employee in exchange for a promotion or a raise.

_F_ 3. If you ask someone at work out on a date, it's sexual harassment.

_T_ 4. If you are being sexually harassed by your supervisor, the proper course of action to take is to report the harassment to the human resource office or to another supervisory person.

_T_ 5. Asking someone about his or her sexual activities or sexual preferences could be called sexual harassment.

_F_ 6. If you're just joking around sexually and do not intend to hurt or embarrass someone, your behavior cannot be called sexual harassment.

_T_ 7. Directly confronting someone who is sexually harassing you never works.

_F_ 8. Only men can be charged with sexual harassment.

_T_ 9. Sexual harassment has become a safety issue in many workplaces.

_F_ 10. If you're new to a workplace where sexual behavior is accepted by the people working there, you must adjust and accept it also.

---

**WARREN COUNTY REGIONAL JAIL**
**JACKIE T. STRODE, JAILER**
**INTEROFFICE MEMO**

TO:  All W.C.R.J. Staff                 FROM:  Jackie T. Strode

CC:  File                                      DATE:  8/25/97

SUBJECT:  Favors for Inmates

Any person working for or **volunteering** for the Warren County Regional Jail, or any person employed by another agency who has contact with adult or juvenile inmates lodged at the jail, shall follow the listed procedures:

1.   You will **never** bring **anything** to an inmate.
2.   You will **never** take **anything** from the jail that belongs to an inmate.
3.   You will **never** do **any** favors for any inmate lodged in the Warren County Jail.
4.   You will **never** make phone calls for an inmate.
5.   You will **never** accept phone calls from inmates.
6.   You will **never** mail letters for an inmate.
7.   You will **never** write to an inmate.

**The bottom line is ————** You are not to do anything for inmates not listed in the jail's Policy and Procedure Manual.  If you have any questions about anything that you should or should not do for an inmate, you are to ask me.

The reason for these rules is for the safety and security of the staff, inmates, and the jail.

_Jackie T Strode_
Jackie T. Strode, Jailer

I have read and I understand the above.  I understand that I will face disciplinary action, which may include my being terminated, if I do not follow these rules.

_Jason Rigsby_                                    _5-3-06_
Employee's Signature                          Date

_Jack T Strode_                                    _5-4-06_
Witness                                                Date

WarrenCounty1393

# Warren County Regional Jail

### Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

JAIL COPY

THE OSHA BLOODBORNE PATHOGENE STANDARD
HEPATITIS "B" VACCINE DECLINATION FORM (MANDATORY)

THIS IS TO ADVISE YOU THAT ALL EMPLOYEES WHO WORK AT JAILS MAY BE AT RISK OF EXPOSURE
TO HEPATITIS "B". OSHA STANDARDS REQUIRE THAT YOU BE GIVEN THIS. IF YOU CHOOSE TO
HAVE THIS THEN YOU NEED TO SEE THE NURSE SO SHE MAY ORDER THE VACCINE. YOU WILL NEED
TO TAKE (3) THREE SHOTS. IF YOU HAVE QUESTIONS PLEASE ASK THE NURSE. IF YOU CHOOSE TO
NOT TAKE THE SHOTS YOU WILL NEED TO SIGN THIS FORM. ******IT WILL BE THE RESPONSIBILITY
OF EACH DEPUTY TO CONTACT THE NURSE AND REQUEST THE SHOTS.*****

DATE 5-3-06
I REQUEST TO BE GIVEN THE HEPATITIS "B" VACCINE SHOTS. DEPUTY Rigsby
WITNESS Jack T Strod

I UNDERSTAND THAT DUE TO MY OCCUPATIONAL EXPOSURE TO BLOOD OR OTHER POTENTIALLY INFECTIOUS
MATERIALS I MAY BE AT RISK OF ACQUIRING HEPATITIS B VIRUS(HBV) INFECTION. I HAVE BEEN
GIVEN THE OPPORTUNITY TO BE VACCINATED WITH HEPATITIS B VACCINE AT NO CHARGE TO MYSELF.
HOWEVER, I DECLINE HEPATITIS B VACCINATION AT THIS TIME. I UNDERSTAND THAT BY DECLINING
THIS VACCINE, I CONTINUE TO BE AT RISK OF ACQUIRING HEPATITIS B, A SERIOUS DISEASE. IF
IN THE FUTURE I CONTINUE TO HAVE OCCUPATIONAL EXPOSURE TO BLOOD OR OTHER POTENTIALLY
INFECTIOUS MATERIALS AND I WANT TO BE VACCINATED WITH HEPATITIS B VACCINE, I CAN RECEIVE
THE VACCINATION SERIES AT NO CHARGE TO ME.

NAME                           DATE                    WITNESS



## Drug-Free Workplace Certification

The Warren County Government has certified that it will provide a drug-free workplace.  A statement of this policy has been furnished.

The policy states that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the workplace. Controlled substances are described in the schedules I through V identified in KRS 218A, which have been provided, and further defined in regulations issued by the Kentucky Cabinet for Human Resources.

The policy statement requires an employee, as a condition of employment, to notify the employer of any criminal drug statute conviction for a violation occuring in the workplace no later than five days after such conviction.

The employee is aware that drug abuse violations occuring in the workplace will have penalties of appropriate personnel action, up to and including termination, and the employee may be required to participate satisfactory in an appropriate drug abuse assistance or rehabilitation program.

This policy statement advises the employee of dangers of drug abuse in the workplace and of available drug counseling, rehabilitation and assistance programs.

I acknowledge receiving a copy of this policy statement.  I have read the statement.  I will comply with this policy.

My workplace is:      Warren County Regional Jail

Name:   Iван Rigsby                    Date:  5-3-06

Witness:  Jack T Strod               Date:  5-4-06

Title:   JAILER

WarrenCounty1394

*******JAIL COPY *******

*WARREN COUNTY REGIONAL JAIL*
*JACKIE T. STRODE, JAILER*
*INTEROFFICE MEMO*

TO: All Deputies                    FROM: Jackie T. Strode

CC: File                            DATE: 9/5/2000

SUBJECT: Leave Requests

Effective immediately, the following will become the policy of the Warren County Regional Jail concerning leave requests.

For any type leave request, other than sick leave, you are to submit your request two (2) weeks in advance. If you have a situation/emergency of any kind, then you are to contact me to discuss. If I am unavailable, it will be in the Supervisor's pass-along book that Chief Deputy Gayle Eston is to be contacted. Please check the schedule in the Supervisor's office to determine if your request was approved. After checking the schedule, if you have any questions, please contact me.

If your leave is not approved and you take off, the following actions will be taken. The first offense you will be suspended without pay for one (1) day. The second offense you will be suspended without pay for two (2) days, for the third offense you will be dismissed. If you call in sick and I find out that you are seen somewhere you should not be, or you are working another job, the same actions as listed above will apply.

I have always tried to work with you in allowing you to take the time off. However, with the number of employees we now have and the size of our Jail, I must take into consideration the safety of our Deputies and the safety and security of the Jail.

DEPUTY NAME *Jason Rigsby*        *Jackie T. Strode*
                                  Jackie T. Strode, Jailer

JTS/pw

---

## Warren County Regional Jail

### Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (502) 843-4606

Date: 5-3-06          NAME: *Jason Rigsby*

*****NOTE****** ALL JAILS OPERATE UNDER KY REVISED STATUTES AND KY ADMINISTRATIVE REGULATIONS (JAIL STANDARDS), THESE CHANGE BY LAWS PASSED IN THE LEGISTURE. ANY QUESTIONS SEE THE JAILER, THESE ARE LAWS. WE MUST ABIDE BY THEM. ANY QUESTIONS SEE THE JAILER.

I, *Jason David Rigsby*, received a copy of the Warren County Regional Jail's Policy and Procedure Manual on this date. I will read and abide by its contents, and if for some reason I do not follow policy, I understand that I will be terminated. MY POLICY & PROCEDURE MANUEL NUMBER IS _____. IF I RESIGN OR AM TERMINATED FROM MY POSITION AT THE JAIL, I WILL RETURN THE MANUAL. IF I AM UNABLE TO RETURN THE MANUAL _____, I, AGREE TO PAY $10.00 FOR THE REPLACEMENT OF THIS MANUAL.

*Jason Rigsby*
Employee

*Jackie T. Strode*
Witness

I, *Jason Rigsby*, _____ UNDERSTAND THAT I CAN BE DISMISSED FROM THE WARREN COUNTY REGIONAL JAIL FOR ANY RULE VIOLATION. *Jason Rigsby*
**EMPLOYEE****

I will return my Policy & Procedure Book, _____, my ID card, my uniform(s), and all other issued items to the Warren County Regional Jail before I receive my last and final paycheck. I understand this completely.

*Jason Rigsby*
Employee

*Jackie T. Strode*
Witness

WarrenCounty1395

*WARREN COUNTY REGIONAL JAIL*
*JACKIE T. STRODE, JAILER*
*INTEROFFICE MEMO*

TO: All Staff                                FROM: Jackie T. Strode
CC: File                                      DATE: 3/1/99

## MEDICATION ADMINISTRATION CHECKLIST

1. Check medication sheet.
2. Read order of amount to give.
3. Remove medication from drawer.
4. Put medication beside order.
5. Make sure medication is the same as the order/medication sheet reads.
6. Check this three (3) times.
7. Empty medication into the small white paper cup at the time you are to give it to the inmate. Ask inmate their name and check inmate's wrist band.
8. Give medication to inmate.
9. Watch inmate swallow the medication.
10. Inspect the inmate's mouth. Have them lift tongue. Using a flashlight can be helpful.
11. Have inmate initial medication sheet.
12. Deputy should then initial medication sheet.
13. Medication should never be given without an order or by direction of the jail nurse.
14. You may give medication one (1) hour prior and one (1) hour after the time listed to disperse medication.
15. You are to always have the inmate bring something to drink with them when they come to take their medication.
16. If you ever have any questions or you are in doubt, call for the Supervisor. If your question cannot be answered by the Supervisor, then the Supervisor will call the Medical Staff.

It has been brought to my attention that some Deputies have and are being trained to put medication in the white cups prior to having the inmate come to the pod. **THIS IS NOT THE CORRECT WAY.** Your Medication Administration Checklist clearly states in Item #7 to empty medication into the small white paper cup **at the time** you are to give it to the inmate. **This is a direct order to all Deputies.** You are to **never** empty all your medications into the cups and then bring up the inmates; you are to empty one at a time so there will not be any confusion. All Training Sgts. are to train all new Deputies in the correct way to give out medications. Anyone who fails to follow these orders will face disciplinary action.

Please sign and return the Jail's copy and retain the Deputy's copy for your file.

_____          _____
Deputy's Signature                 Jackie T. Strode, Jailer

                                              Revised 3/1/99

---

## UNIVERSAL PRECAUTIONS
## PERSONAL BODY PROTECTION

Diseases are caused by pathogens, organisms that cause infection, such as viruses and bacteria. Pathogens may be spread through the **AIR** or by **DIRECT** and **INDIRECT** contact with blood or other body fluids. Bloodborne pathogens can be contracted by exposure to the inmates blood and sometimes other body fluids, especially when the blood or other body fluids come in contact with an open wound or sore on the deputy's hands, face, or other exposed parts or with mucous membranes, such as those in the nose, mouth, or eyes. Even minor breaks in the skin, such as those found around the fingernails, can be enough for the pathogen to enter the body. Airborne pathogens are spread by tiny droplets sprayed during breathing, coughing, or sneezing. These particles can be absorbed through your eyes or when you inhale.

Since it is impossible for a deputy (or healthcare professionals) to identify inmates who carry infectious diseases just by looking at them, *all body fluids must be considered infectious and appropriate universal precautions must be taken for all inmates at all times.* Universal precautions are also referred to as infection control. For each situation you encounter, it is important to apply the appropriate precaution at all times.

The Occupational Safety and Health Administration (OSHA) has issued strict guidelines about precautions against exposure to bloodborne and airborne pathogens. Under the OSHA guidelines, employers and employees share the responsibility for these precautions. Employers must develop a written exposure control plan and must provide employees training, immunizations, and proper personal protective equipment (gloves, gowns, eye protection asf) to prevent transmission of diseases. The employee's responsibility is to participate in the training and to follow the exposure control plan. Additionally, federal legislation has made it possible for employees to be notified if a person with whom they have had potentially infectious contact turns out to be infected by a disease or virus such as tuberculosis (TB), hepatitis B, or HIV (the virus associated with AIDS).

*Protective Gloves.* Latex, vinyl, or other synthetic glove should be used whenever there is potential for contact with blood and other body fluids. Make sure you have the gloves on before you come in contact with the inmate. Do not wait. You might get distracted and forget the gloves or you might accidentally become contaminated. Be sure to change gloves between inmates. *Note:* Even though you wear protective gloves while you are with the inmate, hand washing must be performed immediately after each contact. Additionally, items you touched while wearing the gloves, (clipboard, door handles, pens, and other equipment), may still have body fluids on them, disinfect these items as best as you can.

*Eye Protection.* The mucus membranes surrounding the eyes are capable of absorbing fluids. Wear eye protection to prevent splashing, spattering, or spraying fluids from entering the body through these membranes. Protective eyewear should provide protection from the front and sides.

*Masks.* In cases where there will be blood or fluid spatter, wear a surgical-type mask. In cases where TB (a disease that is carried by fine particles in the air) is suspected, an N-95 or high efficiency particulate air (HEPA) respirator approved by the National Institute for Occupational Safety and Health (NIOSH) is the standard. In some jurisdictions, when an inmate is suspected of having an infection spread by droplets (such as measles), a surgical-type mask may be placed on the inmate if he is alert and cooperative.

*Gowns.* A gown is worn to protect clothing and bare skin from spilled or splashed fluids. Arterial (spurting) bleeding is an indication for a gown.

It is a good idea not only to use personal protective equipment yourself but also to be an advocate for it's use; that is, to encourage members of your shift and others to use appropriate protective equipment. In addition, to the moral and ethical obligation to do so, you will be helping to keep your crew in good health. Always properly remove and discard protective equipment after each use, carry out disinfecting and cleaning operations, and complete all reporting documentation regarding infection control.

*Special Reminder:* Any medical information you obtain about the inmates history, condition, or treatment is considered CONFIDENTIAL and must not be shared with anyone else without the need to know. At no time should there be any reason for a staff member to pass on medical information to the public, without written consent by the inmate, this is a violation of the inmate's patient's rights.

For additional information, please contact the medical office at ext. 124, or come by in person.

_____
Deputy's Name

_____
Deputy's Signature                    Date

WarrenCounty1396

*Jail Copy*

# Warren County Regional Jail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606                    Fax (270) 843-5317

September 12, 2002

TO:  All W.C.R.J. Deputies

FROM:  Jackie T. Strode, Jailer

SUBJECT:  Verbal and Written Changes

Any present verbal orders or memos from the Jailer, the Department of Corrections, or the Jailer's designee shall supersede any past verbal orders/memos.  This applies to, but is not limited to, the Warren County Personnel Code, the Warren County Regional Jail's Policy and Procedure Manual, the Warren County Regional Jail's Employee Code of Ethics, Kentucky Administrative Regulations, Kentucky Jail Standard, and any other document which could affect the safety and security of the Jail, the inmates, and the staff.

All of these changes may not be in the possession of the employees.  If any employee has any questions, they should ask the Jailer or a Chief Deputy.  All the orders given either by memo or verbally will be incorporated into the appropriate section(s) as soon as possible.

Deputy

Jackie T. Strode, Jailer

JTS/pw

---

*Jail Copy*

# Warren County Regional Jail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606                    Fax (270) 843-5317

March 27, 2000

TO:  Judge/Executive Mike Buchanon
FROM:  Jackie T. Strode, Jailer
CC:  Fiscal Court
SUBJECT:  Warren County Personnel Code
         Section VI - Personnel Action (Item D - Resignation)

Effective immediately, the following changes will take place for all **future** full-time employees of the Warren County Regional Jail.

1)    If an employee does not give two (2) full weeks resignation notice, he/she will not be entitled to any accumulated annual or compensatory time.

2)    If an employee is dismissed or terminated due to disciplinary reasons, he/she will not be entitled to any accumulated annual or compensatory time.

3)    When an employee gives his/her two (2) weeks resignation notice, the employee will not be allowed to use more than two (2) days of accumulated annual, sick, or compensatory time.  The exception to this policy will be for sick time.  If the employee has a doctor's excuse, the employee may use more than two (2) days of sick time.

My decision to make the above changes at the Warren County Regional Jail was made after discussions with employees of both the U. S. Department of Labor and the Kentucky Labor Cabinet.  This change in policy will not affect present full-time Deputies.

When an employees does not give a two (2) weeks resignation notice, it makes the workload greater for their co-workers.  I feel implementing these changes will deter abuse to the policy.  If an employee leaves without giving the two (2) weeks notice, it leaves me a Deputy short for up to six (6) weeks.  The new employee hired to replace the resigning employee must give two (2) weeks notice and then complete four (4) weeks in-house training (160 hours).

If you have any questions concerning this matter, please feel free to contact me.

Deputy

Jackie T. Strode, Jailer



JAIL COPY 

# WARREN COUNTY REGIONAL JAIL

## EMPLOYEE CODE OF ETHICS

July, 1999

Implemented by Jailer Jackie T. Strode

---

# Warren County Regional Jail

### Jackie T. Strode, Jailer
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

September 12, 2002

TO:  All W.C.R.J. Deputies

FROM:  Jackie T. Strode, Jailer

SUBJECT:  Verbal and Written Changes

Any present verbal orders or memos from the Jailer, the Department of Corrections, or the Jailer's designee shall supersede any past verbal orders/memos. This applies to, but is not limited to, the Warren County Personnel Code, the Warren County Regional Jail's Policy and Procedure Manual, the Warren County Regional Jail's Employee Code of Ethics, Kentucky Administrative Regulations, Kentucky Jail Standard, and any other document which could affect the safety and security of the Jail, the inmates, and the staff.

All of these changes may not be in the possession of the employees. If any employee has any questions, they should ask the Jailer or a Chief Deputy. All the orders given either by memo or verbally will be incorporated into the appropriate section(s) as soon as possible.

Jackie T. Strode, Jailer

JTS/pw



 

| WARREN COUNTY REGIONAL JAIL |
|---|
| 920 Kentucky Street |
| Bowling Green, KY  42101 |
| Subject: EMPLOYEE CODE OF ETHICS |
| Issuing Official:  Jackie T. Strode |

## I.  POLICY

The Warren County Regional Jail has established and maintains a Code of Ethics that promotes professionalism and integrity, and governs the conduct of Departmental staff. This code of conduct addresses expected conduct on duty or off duty as it relates to staff, inmates, inmates' families, and the general public. This policy is not totally inclusive of all conduct that could cause adverse publicity or negative attitudes toward the Department and Warren County, but should provide structured guidelines toward the goal of professionalism.

## II.  SOURCES

None.

## III.  DEFINITIONS

<u>Dereliction</u> --  Abandoning/neglect of duty or responsibilities.

<u>General Public</u> -- Is totally inclusive of all court officials, law enforcement personnel, and citizenry.

<u>Inmate</u> -- Any person incarcerated by the Warren County Regional Jail or released by the Department, former inmates, or inmates from other known correctional facilities.

<u>Neglect</u> -- Failure to perform, especially through carelessness.

<u>On Duty</u> -- Departmental personnel working a specified scheduled time, performing his/her duties and responsibilities.

<u>Off Duty</u> -- Departmental personnel not working.

<u>Personnel/Employee</u> -- Any person involved in providing supervision and/or services for the inmate population. Departmental employees, interns, service contractors, volunteers, and staff from other County agencies are included in this definition.

## IV.  PROCEDURES

A. <u>General Statement</u>

It is essential that all personnel refrain from engaging in any activities which would adversely affect the security, safety, integrity, or reputation of this Department, Warren County, or its employees. Each employee is expected to be above reproach; each employee's actions, official or personal, are closely scrutinized by the general public because of the nature of employment, creating a higher standard. Therefore, each employee should be aware of his/her actions and the possible consequences.

B. <u>Rules of Conduct</u>

1. Each employee's conduct should be guided by this policy, which is consistent with the Department's Policy and Procedure, memos, and County Personnel Regulations.

2. The Department expects and requires that all personnel maintain an exemplary standard of personal integrity and ethical conduct in their relationships with other personnel, inmates, and the general public. The following Departmental rules are designed to serve as a professional standard governing personnel conduct.

3. The Department also recognizes that personnel possess certain basic, individual rights. Protection of personnel rights enhances the integrity of the Department and further promotes the goal of furnishing the community the highest quality of public service.

C. <u>Specific Departmental Rules</u>

1. Conformance to Law

a. Personnel are required to adhere to Departmental Policy & Procedure, County Personnel Regulations, City and County Ordinances, State Statutes, and all other laws applicable to the general public.

b. All personnel who are involved in a legal action where they are the defendant of a criminal or civil action and a legal process (i.e., warrant, criminal or civil summons) has been served are required to file a report through the chain of command to the Jailer or Chief Deputies as soon as possible.

2. Compliance with Orders

a. Any personnel who willfully disobeys or disregards a direct order, oral or written, of a superior are considered insubordinate.

b. In the event of conflicting orders, personnel respectfully calls to the attention of the superior giving the last order of conflict. If the latter superior does not change the order, it is obeyed and personnel are thereafter relieved of the responsibility for disobedience of the first order.

c. Superiors are not to issue any order which they know would require a subordinate to commit any illegal, immoral, or unethical acts.

d. Personnel are not required to obey any order which they know would require them to commit immoral or unethical acts.

e. Personnel are truthful in all verbal and non-verbal communication with others of this Department.

3. Conduct Unbecoming

a. No personnel commits any act which constitutes conduct unbecoming of Departmental personnel. Conduct unbecoming includes, but is not limited to, any criminal act, dishonest or improper conduct.

WarrenCounty1399



3. Conduct Unbecoming (Cont'd)
   b. Examples of conduct unbecoming include lying in a Departmental investigation, excessive absenteeism, using profane language in public, verbal threats directed toward another person, assault on fellow personnel, sexual harassment, and failure to cooperate with an internal investigation.
   c. Personnel treat other personnel with respect and courtesy. Profane, demeaning, insulting, and threatening language directed toward other personnel is not tolerated. Personnel never engage in an argument or shouting match with other personnel.

4. Dereliction of Duty
   Dereliction of duty on the part of any employee is cause for disciplinary action up to, and including, dismissal. The following acts or omissions shall constitute dereliction of duty, but are not exclusive.
   a. Failure to obey an order or willful, serious or repeated violation of any rule, regulation, or policy of the Department.
   b. Failure to properly report an incident occurring within the Department that is a violation of the Department's Policy & Procedure.
   c. Absence without authorized leave, including a failure to report to duty on time or leaving a place of duty or assignment without the authorization of a supervisor.
   d. Failure to assist or support a fellow officer or failure to perform duties without a valid reason.
   e. Sleeping on duty.
   f. Failure to complete or unauthorized absence from required training.
   g. Displaying a reluctance to properly perform assigned duties or acting in a manner tending to bring discredit upon the employee or the Department. Failure to exercise due diligence and interest in pursuit of duties or encouraging others, by words or actions, not to perform their duties.
   h. Making false accusations against an employee of this Department.

5. Neglect of Duty
   a. Personnel are expected to maintain sufficient competency to properly perform their duties and to assume the responsibilities set forth in their job descriptions.
   b. Employees are expected to perform their duties in a manner which tends to establish and maintain the highest standards of efficiency in carrying out the functions of their job and the objectives of the Department.
   c. Incompetence may be demonstrated by lack of knowledge of the application of Departmental Policy and Procedures required to be enforced, and an unwillingness or inability to perform one's assigned tasks as set forth in one's job description or other proper authority.
   d. Failure to consistently conform to work standards established for the employee's rank, grade, or position will be deemed incompetence.
   e. Failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving the employee's attention is deemed incompetence.

   f. Failure to perform their supervisory, administrative, or decision-making responsibilities in an acceptable or suitable manner as set forth in one's job description, Policies and Procedures, directives, or other regulations or policies, are deemed incompetence.
   g. Absence without leave or unexcused absence from assigned duties or tour of duty is incompetence and neglect of duty.
   h. Repeated poor evaluations are deemed incompetence.
   i. A record of repeated infractions of the Departmental Policies and Procedures will be viewed as incompetence and neglect of duty.

6. Use of Force
   a. Employees use force only in accordance with law and Departmental Policy and Procedures and only the minimum force necessary under the circumstances to control the situation or to protect themselves and/or others from harm. No employee will use force in a discriminatory manner.

7. Integrity of the Reporting System
   Employees must submit all necessary reports in accordance with established Departmental Policies and Procedures. Reports submitted by employees must be accurate, complete, and timely. Reports are to be legible.

8. Punctuality
   a. Employees are required to be punctual in reporting for duty at the time and place specified by the Jailer, Chief Deputies, or Supervisors.
   b. No employee can be absent from duty without leave or without authorization from the Jailer, Chief Deputies, or Supervisors.

9. Attentiveness to Duty/Use of Alcohol and/or Drugs
   a. To ensure each employees' own protection and the protection of fellow employees, inmates and others, employees are required to remain awake and alert while on duty.
   b. Employees will not bring into or store alcoholic beverages in any facility of the Department or in any Department vehicle, except for those alcoholic beverages which are properly tagged, marked, and held as evidence.
   c. Employees cannot drink intoxicating beverages while on duty; cannot appear for duty, or be on duty while under the influence of intoxicants to any degree whatsoever; cannot have the odor of intoxicants on their breath or person.
   d. Employees are prohibited from consuming alcoholic beverages within eight (8) of reporting for scheduled duty.
   e. Alcoholic beverages are not to be purchased or consumed while wearing any part of the Departmental-issued uniform. Employees are prohibited from operating a Departmental vehicle while, or within eight (8) hours after, consuming alcoholic beverages.
   f. Employees do not take any narcotic or controlled dangerous substance unless prescribed by a physician. Employees must list and report these to the Jailer.

WarrenCounty1400




g. Employees taking prescription medication prior to or while on duty will notify their Supervisor, Chief Deputies, or Jailer of the medication prescribed. Employees must list and report these to the Jailer.

h. The employee does not have to inform the Supervisor, Chief Deputies, or Jailer of the nature of an ailment, or reason for the medication. The employee is referred to the Jailer if other information needs to be relayed to the Department.

D. General Rules of Conduct

1. Personnel are prohibited from involvement in the following activities with inmates, families, or friends of inmates: soliciting, bartering, accepting any gift, personal favor or loan, selling goods, loaning money, or any other activity which may have an adverse effect on duty performance and/or the Department. When employees are approached as indicated above, a report is forwarded without delay via the chain of command to the Jailer, Chief Deputy, or Shift Supervisor.

2. No personnel are allowed to bring or permit others to bring contraband into the facilities, nor is any contraband given to or made accessible to inmates. Anything not issued to inmates or authorized for their use is considered as contraband.

3. Personnel are prohibited from giving any inmate any item of value, such as money, clothing, jewelry, etc.

4. No personnel grants or promises inmates special privileges or favors not available to all inmates.

5. All personnel use discretion and judgement and are selective in information which they provide inmates concerning the department and personnel, and do not talk to inmates about Department staff members. Privileged personnel matters affecting staff members communicated to inmates and Departmental personnel creates an adverse effect on morale and reduces inmate/staff respect for the Department.

6. Personnel are prohibited from:
   a. discriminating against any inmate on the basis of race, religion, creed, gender, national origin, or other individual characteristics,
   b. employing corporal punishment or unnecessary physical force,
   c. subjecting inmates to any form of unwarranted physical or mental abuse,
   d. engaging in critical discussions of staff members or inmates in the presence of inmates, or other staff,
   e. inquiring about, disclosing, or discussing details of an inmate's crime other than as may be absolutely necessary in performing official duties,
   f. bringing any type of recording device into any area of the jail for any purpose unless so authorized by the Jailer.

7. Removal of County property from the Departmental facilities without proper authority is prohibited.

E. Relationship of Personnel With Inmates

1. Personnel have the responsibility to take care of the needs of the inmates.

2. Brutality in the treatment of the inmates is not tolerated and is cause for dismissal and probable criminal charges.

3. Only a minimum amount of force is used to control an unruly inmate. Personnel should not strike or lay their hands on an inmate except to defend themselves, prevent an escape, prevent injury or damage to person or property, quell a disturbance, or search an inmate.

4. Personnel treat inmates with respect, courtesy, and firmness. Profane, demeaning, insulting, and threatening language directed toward an inmate is not tolerated. Personnel never engage in an argument or shouting match with an inmate.

5. A good staff/inmate relationship is crucial to effective discipline and order. In most instances, inmates respond to orders given in an effective manner. Personnel must not be intimidated by inmates.

F. Association of Personnel with an Inmate or with an Inmate's Family or Friends

1. Personnel limit their association with an inmate's visitors to that communication which is required to perform their official duties. Personnel are not to visit incarcerated inmates.

2. Visitors are treated respectfully and with courtesy even though firmness is occasionally required.

3. Departmental personnel are prohibited from establishing a personal relationship with an inmate beyond what is required to perform official duties. The intent of this policy is clearly to prohibit staff personnel from establishing social contacts and personal relationships with inmates. Each violation of this policy is reviewed on a case-by-case basis and may be cause for disciplinary action, including dismissal.

4. Departmental personnel shall not:
   a. correspond with inmates by letter or phone,
   b. bring anything to an inmate,
   c. take anything from the jail that belongs to an inmate.

G. Abuse of Position

1. Employees are prohibited from using their official position, official identification cards, or badges for personal or financial gain, or to receive special favors.

2. Employees do not lend their identification cards, badges, weapons, or other official or Department items or equipment to any unauthorized employee or non-employee.

3. Employees do not allow any reproduction of official Department identification cards or badges. Employees do not give or lend an official Department photograph or document to other law enforcement or judicial agencies, unless permitted by Departmental policy or approved by the Jailer or Chief Deputies.

WarrenCounty1401

4. Employees shall not permit or authorize the use of their name, photograph, or official titles which identify them as Officers in connection with testimonials or advertisement of any commodity or commercial enterprise without prior approval of the Jailer or Chief Deputies.

H. Official Identification
1. Employees will carry their official Department identification on their person at all times, except when impractical or dangerous to their safety.
2. Employees will furnish their name and badge number to any person requesting that information, except when impractical or dangerous to their safety, or when such information would constitute a physical threat to the employee.

I. Soliciting or Accepting Gifts
Employees of the Department do not solicit or accept for themselves or others, either directly or indirectly, any gift, gratuity, subscription or donation, or any other material thing; if that solicitation or acceptance expresses either purposely or not purposely their official duty, title or connection with the Department without the expressed permission of the Jailer or Chief Deputies.

J. Gratuities, Gifts, Bribes and/or Rewards
Employees will not solicit or accept for themselves or others any gratuity, gift, bribe, or reward in anticipation of or as a result of their actions as an employee of Warren County, that is contrary to any local, state, or federal law. Employees shall not solicit or accept for themselves or others any gratuity or gift not afforded the general public.

K. Visiting Prohibited Establishments
Employees shall not knowingly visit, enter, or frequent a house of prostitution, gambling house, liquor house, drug house, or house where prescription drugs are handled illegally, or other establishments wherein the laws of the United States of America, the Commonwealth of Kentucky, or the local jurisdiction are violated, except in the performance of their official duty or while acting under proper and specific order from a superior officer in response to a need for immediate official action.

L. Gambling
Employees shall not engage or participate in any form of illegal gambling where the laws of the United States of America, the Commonwealth of Kentucky, or the local jurisdiction are violated.

M. Associations
Employees avoid associations or dealing with persons whom they know, or should know, are racketeers, sexual offenders, gamblers, suspected or known felons, persons under criminal investigation or indictment, or who have a reputation in the community for past or present involvement in felonious or criminal behavior, except as necessary in the performance of official duties, or where unavoidable because of personal relationships to the employee.

N. Additional Considerations
1. Employees are asked to maintain a telephone at their residence and inform the Department of their telephone number. Any change of a telephone number will be communicated to the Department.
2. No employees of the Department will engage in any employment other than in the capacity of an employee of the Warren County Jail without the prior written approval of the Jailer.
3. Drug and Alcohol Testing of Staff
   a. All staff of the Warren County Regional Jail must submit to test request by their supervisory staff.
   b. Test shall be for the purpose of determining illegal drug or alcohol content of the staff person.
   c. Test will be of the nature necessary to determine illegal drug or alcohol content of the staff person.
   d. For the purpose of this policy, the abuse of prescription drugs will be classified as illegal drugs.
   e. Failure to submit to a requested test will result in immediate termination of employment.
   f. If test results indicate positive use of illegal drugs or alcohol, the staff person's employment will be terminate immediately.
4. Violations
All employee violations of the Code of Ethics shall be documented by the Jailer and made part of the employee's permanent personnel file and subject to immediate dismissal.

I have read and have had the Warren County Regional Jail's Code of Ethics explained to me. I understand that I am subject to immediate dismissal for any violation of the Code of Ethics.

_____
Employee's Signature

5-B-06
Date

_____
Jailer's Signature

5-4-06
Date

WarrenCounty1402

## WARREN COUNTY REGIONAL JAIL

### LAW ENFORCEMENT
### EMPLOYMENT APPLICATION FORM

The County of Warren is an Equal Employment Opportunity Employer. We consider applicants for all positions without regard to race, color, national origin, sex, age, disability, marital status, religion or any legally protected status.

**NOTICE:** The following additional documents must be attached to this application: official copy of birth certificate, copy of Social Security card, copy of valid drivers license, and copy of military D.D. 214 (if in the military).

Date: _5 , 3 , 06_

NAME OF APPLICANT: _Jason Daniel Rigsby_

POSITION APPLYING FOR: ☑ Deputy Jailer  ☐ Deputy Cook

☐ Office Deputy  ☐ Other_____

| **DO NOT APPLY IF:** | You have a felony conviction |
|---|---|
| | You have a multiple misdemeanor convictions |

| *INSTRUCTIONS* |
|---|
| Applications must be typed or printed legibly. All questions must be answered. If a question does not apply to you, answer N/A. Applications which are not complete will not be considered. If space provided is not sufficient for complete answers or you wish to furnish additional information, attach sheets of the same size as this application, and number answers to correspond with the question. Do not write in the shaded areas. |
| Return this application to:        Warren County Regional Jail<br>920 Kentucky Street<br>Bowling Green, KY 42101<br>Phone (502)843-4606<br>Fax (502)843-5317 |

---

| PERSONAL HISTORY |
|---|

1. Full Name: _Rigsby    Jason    Daniel_

2. Date of Birth: ████████

3. Social Securi ████████

4. Current Addr ████████

5. Other: List all other names you have used including circumstances and time periods. For example: maiden name, former names, alias, nicknames. Include copy of legal documents for formal name change.

| Name | Circumstance | Dates From | Dates To |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

6. Place of Birth: _Bowling Green_ , _Warren_ , _Ky_ , /
City    County    State    Country (if not USA)

7. Are you a United States citizen? ☑ Yes ☐ No

If naturalized, please provide : Date _____ Place _____

Court _____ Naturalization Number _____

8. Martial Status: ☐ Married  ☐ Divorced  ☐ Separated  ☐ Widowed  ☑ Never Married

9. Do you have or have you ever applied for a passport? ☐ Yes ☑ No  Passport No. _____

10. Height _6 ft 1_  Weight _225_

11. Spouse's Name and Address: _N/A_

_____
Street

_____
City    County    State    Zip Code    Phone Number

12. Children:

| Name | DOB | SS # | Address |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

*Page 1*

WarrenCounty1403

13. Former Spouse:

Name_____

Address_____

| City | County | State | Zip Code | Phone Number |

Name_____

Address_____

| City | County | State | Zip Code | Phone Number |

Note: Questions 14, 15, 16, and 17 includes one or more times, including experimentation.

14. Do you now, or have you possessed, used, supplied, or sold any narcotic or controlled substance such as, but not limited to, marijuana, hashish, cocaine, LSD, amphetamines, heroin, steroids, or any drug of a similar nature.   ☐ Yes  ☒ No

If yes, please complete the following:

a. Drug:_____

b. Circumstances:_____

c. Number of times possessed/used/supplied/sold:_____

d. First time possessed/used/supplied/sold:_____

e. Last time possessed/used/supplied/sold:_____

15. Do you currently use any narcotic or controlled substance, such as those listed in question 14 or have you used such a narcotic or controlled substance within the last year?   ☐ Yes  ☒ No

16. Do you drink alcoholic beverages?  ☒ Yes  ☐ No
If yes, to what degree? _Social_

17. Have you ever used prescription drugs other than under the supervision of or as prescribed by a physician?  ☐ Yes  ☒ No   If yes, explain._____

18. Briefly explain your reasons for applying for this position: _Experience in Law Enforcement field_

19. What are your feelings about the use of deadly force if it became necessary in the performance of official duties? _No problems using deadly force to protect myself and fellow Deputies_

*Page 2*

## EDUCATION/TRAINING

20.

| High School Name/Address | Dates Attended Month/Year | | Did you Graduate |
|---|---|---|---|
| | From | To | |
| Warren Central | 98 | 02 | Y |
| | | | |

21.

| College Name/Address | Dates Attended Month/Year | | Credit Hours Earned | | Type of Degree |
|---|---|---|---|---|---|
| | From | To | Qtr. | Sem. | |
| Western Kentucky | 02 | 04 | 12 | 52 | N/A |
| | | | | | |

Major_____
Minor_____

22. Other Schools (Trade, Vocational, Business, Military, etc):

| Name/Address | Dates Attended Month/Year | | Credit Hours Earned | Area of Study | Did You Graduate | Type of Degree or Certificate |
|---|---|---|---|---|---|---|
| | From | To | | | | |
| VJMC | 04/04 | 1/04 | N/A | | Y | |
| MOS Tankmech | 9/04 | 1/05 | N/A | Mechanic | Y | diploma |
| | | | | | | |

*Page 3*

WarrenCounty1404

23. Describe any awards, honors, citations, or positions held in school organizations, and any other special recognition you received while attending school.

*Achedimic All state, 4 year football lettermen*
*All sky team fontball, track letterman*

24. Indicate any foreign languages you can:

| | Speak | Read | Write |
|---|---|---|---|
| Fluent | | | |
| Good | | | |
| Fair | | | |

25. Indicate any law enforcement education or training. _____

_____

26. Did you receive a certificate for this training?   ☐ Yes  ☐ No

27. Describe any special abilities, interests, and hobbies, including the degree of proficiency.

*Auto Mechanic, Marksman ship,*

_____

28. Indicate any type of special license such as pilot, radio operator, etc., showing licensing authority, where license was issued, and date current license expires (excluding vehicle operator's license).

_____

_____

29. Indicate any special skills you possess and equipment you can use which may be related to law enforcement work. (Example: radio communications, breath testing, speed detection equipment, computers, firearms, etc)

*Expert Rifle, sharpshooter pistol,*

_____

_____

## EMPLOYMENT HISTORY

30. List chronologically all employment beginning with present employment, including summer and part time employment while attending school. All time must be accounted for. If unemployed for a period, set forth dates of unemployment.

| Name/Address of Employer | Dates Worked Month/Year From | To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name *total fitness* Address *3 spring Rd* CityStateZip *Bowling Green Ky* Area Code & Phone Number | 09/05 | 9/06 | 6.50/hr | ☐ Full Time ☐ Part Time | *James Hall* |
| Reason for Leaving | | | | | |

| Name/Address of Employer | Dates Worked Month/Year From | To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name _____ Address _____ CityStateZip _____ Area Code & Phone Number _____ | | | | ☐ Full Time ☐ Part Time | |
| Reason for Leaving | | | | | |

| Name/Address of Employer | Dates Worked Month/Year From | To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name _____ Address _____ CityStateZip _____ Area Code & Phone Number _____ | | | | ☐ Full Time ☐ Part Time | |
| Reason for Leaving | | | | | |

| Name/Address of Employer | Dates Worked Month/Year From | To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name _____ Address _____ CityStateZip _____ Area Code & Phone Number _____ | | | | ☐ Full Time ☐ Part Time | |
| Reason for Leaving | | | | | |

WarrenCounty1405

| Name/Address of Employer | Dates Worked From | Dates Worked To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name_____ Address_____ CityStateZip_____ Area Code & Phone Number_____ | | | | ☐ Full Time ☐ Part Time | |

**Reason for Leaving**

| Name/Address of Employer | Dates Worked From | Dates Worked To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name_____ Address_____ CityStateZip_____ Area Code & Phone Number_____ | | | | ☐ Full Time ☐ Part Time | |

**Reason for Leaving**

| Name/Address of Employer | Dates Worked From | Dates Worked To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name_____ Address_____ CityStateZip_____ Area Code & Phone Number_____ | | | | ☐ Full ☐ Part Time | |

**Reason for Leaving**

| Name/Address of Employer | Dates Worked From | Dates Worked To | Salary | Title or Position | Name of Supervisor |
|---|---|---|---|---|---|
| Name_____ Address_____ CityStateZip_____ Area Code & Phone Number_____ | | | | ☐ Full Time ☐ Part Time | |

**Reason for Leaving**

31. May we contact your present employer? ☑ Yes ☐ No

32. Have you ever been dismissed or asked to resign or had any disciplinary action taken against you from any employment or position you have held? ☐ Yes ☑ No

33. Have you resigned, or left a job by mutual agreement following allegations of misconduct or unsatisfactory job performance? ☐ Yes ☑ No

34. Have you ever applied to or performed paid or unpaid services for a law enforcement agency not listed as an employer? ☐ Yes ☑ No

35. Do you own a business, or are you a partner or corporate officer in any business or organization not listed previously as a current or former employer? ☐ Yes ☑ No      If yes, please provide name and address of business, corporation or organization and describe your relationship or position.

_____

_____

_____

36. Have you ever been denied employment by a criminal justice agency? ☐ Yes ☑ No   If yes, give agency name and details. _____

37. Do you object to wearing a uniform? ☐ Yes ☑ No

38. Do you object to working nights? ☐ Yes ☑ No

39. Do you object to working rotating shifts? ☐ Yes ☑ No

40. Do you object to occasionally being away from home over night and for other periods of time attending meetings, acquiring training and otherwise performing official duties? ☐ Yes ☑ No

## RESIDENCES

41. List chronologically all places of residence for the past ten (10) years, including residences while at school and in military. For college on campus residences, give college name, dormitory name, city and state. If residences in military service cannot be shown as street address, indicate complete military designation and location by city and state. Do not give post office box numbers. Include all short term residences.

| Dates Month/Year From | To | Street Address | Apt. No. | City | County | State | Zip |
|---|---|---|---|---|---|---|---|
| 1/85 | 1/06 | 1214 Vance Rd | | BG | Warren | K.1 | 4401 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

WarrenCounty1406

## ARREST HISTORY/COURT DATA

42. Have you ever been arrested, charged, or received a notice or summons to appear for any criminal violation?
☐ Yes  ☑ No

43. Have you ever received a ticket or been charged with a traffic violation?  ☑ Yes  ☐ No

44. To your knowledge, has any member of your family ever been arrested for anything other than traffic violations? ☐ Yes ☑ No    If yes to questions 42, 43, or 44, list all such matters even if not formally charged, or no court appearance, or found not guilty, or nolo contendere to any charge for which adjudication were withheld, or matter settled by payment of fine or forfeiture, or collateral. Include your juvenile record and records of your arrest which have been sealed, if any.

**Applicant**

| Date | Police Agency/Location | Charge | Court/Location | Disposition |
|------|------------------------|--------|----------------|-------------|
|      |                        |        |                |             |
|      |                        |        |                |             |
|      |                        |        |                |             |
|      |                        |        |                |             |

**Immediate Relative (Parent, Sibling, Spouse, Child)**

| Relative's Name | Date | Police Agency/Location | Charge | Court/Location | Disposition |
|-----------------|------|------------------------|--------|----------------|-------------|
|                 |      |                        |        |                |             |
|                 |      |                        |        |                |             |
|                 |      |                        |        |                |             |
|                 |      |                        |        |                |             |
|                 |      |                        |        |                |             |

Provide details for each response to question 42, 43, or 44. *Speeding ticket*

45. Is any member or your immediate family now in prison or on either probation or parole? ☐ Yes ☑ No

If yes, give name and details. _____

46. Have you or your spouse ever been a plaintiff or defendant in a court action? ☐ Yes ☑ No
Explain _____

*Page 8*

47. Have you ever been detained by any law enforcement officer for investigative purposes or to your knowledge have you ever been the subject of or a suspect in any criminal investigation? ☐ Yes ☑ No
Explain _____

48. Have you ever been fingerprinted for any reason (arrest, job application, military, etc.)? ☑ Yes ☐ No
Explain *Military*

## DRIVING HISTORY

49. Can you operate a motor vehicle? ☑ Yes ☐ No

50. Do you hold a Kentucky vehicle operator's license? ☑ Yes ☐ No   License No. ███████

51. Do you hold or have you ever held an operator's license in another state? ☐ Yes ☑ No
If yes, please provide state, name used and approximate dates license held.
_____
_____

52. Have you ever been denied issuance of a license or have you ever had a license suspended or revoked? ☐ Yes ☑ No   If yes, provide complete details including why your license was suspended/revoked.
_____

## MILITARY HISTORY

53. Have you ever served on active duty in the Armed Forces of the United States? ☑ Yes ☐ No

Branch of Service *Marine Corps*   Highest Rank *LCPL-E3*

Serial # ███████   Date From *5/04*   Date To *Y06*

Date From _____ Date To _____

Date and type of discharge _____

54. Are you now or have you ever been a member of a Reserve unit or a National Guard unit? ☑ Yes ☐ No

If yes, state the branch of service, name and location of your unit and whether you attend drills, meetings or camps. *USMCR, E CO 4th Tank BN. Ft. Knox, KY*

55. Was any type of disciplinary action ever taken against you in the service? ☐ Yes ☑ No   If yes, provide:

Date _____ Place _____

Nature of Offense _____

Action Taken _____

*Page 9*

WarrenCounty1407

56. Have you ever served in the armed forces of a foreign country? ☑ Yes ☐ No If yes, specify country and date _Korea 3-15-06 to 3-30-06_

57. List military units you were assigned to:

| Branch | Unit | Location | From Mo/Yr | To Mo/Yr |
|--------|------|----------|-----------|----------|
| USMCR | 4th tank | Ft Knox | 1/06 | Present |
| USMC | Detachment | Ft Knox | 10/05 | 1/06 |
| USMC | SOI | Camp Le June | 8/04 | 9/04 |
| USMC | Boot 1064 | Paris Island | 4/04 | 7/04 |
| | | | | |
| | | | | |

58. List all medals and decorations awarded you during your military service: _National Defense Medal 2nd Award Expert Rifle, Sharp shooter pistol_

## PERSONAL REFERENCES AND ACQUAINTANCES

59. **Personal References:** Give at least three (3) references (not relatives, former or present employers, fellow employees, or school teachers) who are responsible adults of reputable standing in their communities, such as property owners, business or professional men or women, who have known you well for the past five (5) years. If retired, give former occupation.

| Name | |
|------|--|
| Home Address | |
| City, State, Zip | |
| Home Phone | |

| Name | |
|------|--|
| Home Address | |
| City, State, Zip | |
| Home Phone | |

| Name | |
|------|--|
| Home Address | |
| City, State, Zip | |
| Home Phone | |

| Name | | Occupation | | Years Known |
|------|--|-----------|--|-------------|
| Home Address | | Work Address | | |
| City, State, Zip | | City, State, Zip | | |
| Home Phone | | Work Phone | | |

| Name | | Occupation | | Years Known |
|------|--|-----------|--|-------------|
| Home Address | | Work Address | | |
| City, State, Zip | | City, State, Zip | | |
| Home Phone | | Work Phone | | |

| Name | | Occupation | | Years Known |
|------|--|-----------|--|-------------|
| Home Address | | Work Address | | |
| City, State, Zip | | City, State, Zip | | |
| Home Phone | | Work Phone | | |

60. **Social Acquaintances:** Give at least three (3) social acquaintances in your own age group (including both sexes) who have known you well for the past five (5) years.

| Name | |
|------|--|
| Home Address | |
| City, State, Zip | |
| Home Phone | |

| Name | |
|------|--|
| Home Address | |
| City, State, Zip | |
| Home Phone | |

| Name | |
|------|--|
| Home Address | |
| City, State, Zip | |
| Home Phone | |

| Name | | Occupation | | Years Known |
|------|--|-----------|--|-------------|
| Home Address | | Work Address | | |
| City, State, Zip | | City, State, Zip | | |
| Home Phone | | Work Phone | | |

*Page 10*

*Page 11*

WarrenCounty1408

| Name | | Occupation | | Years Known |
|---|---|---|---|---|
| Home Address | | Work Address | | |
| City, State, Zip | | City, State, Zip | | |
| Home Phone | | Work Phone | | |

| Name | | Occupation | | Years Known |
|---|---|---|---|---|
| Home Address | | Work Address | | |
| City, State, Zip | | City, State, Zip | | |
| Home Phone | | Work Phone | | |

61. List three neighbors who reside in your immediate residential area.

Name

Addres

Home

☐ This

Name

Addres

Home

☐ This

Name

Addres

Home

☐ This neighbor knows me          ☐ Does not know me

*Page 12*

---

## ORGANIZATION MEMBERSHIP

62. List all clubs and societies of which you are or have been a member.

| Name of Club | Address | Describe Activity of Club |
|---|---|---|
| FFA<br>☐ Present Member  ☐ Former Member | 259 morgentown Rd<br>Bowling Green Ky | |
| JROTC<br>☐ Present Member  ☐ Former Member | 259 morgentown Rd<br>Bowling Green Ky | |
| ☐ Present Member  ☐ Former Member | | |

63. Are you now or have you ever been a member of any foreign or domestic organization, association, movement, group or combination of persons which has adopted, or shows a policy of advocating or approving the commission of acts of force or violence to deny other persons their rights under the Constitution of the United States, or which seeks to alter the form of government of the United States by unconstitutional means?   ☐ Yes  ☐ No

64. Have you ever made a financial or other material contribution to any organization of the type described in question 63 above?   ☐ Yes  ☐ No   If yes, to question 63 or 64, answer questions 65 and 66.

65. At the time of your membership, participation, or contribution, did you know of any unlawful aims of the organization?   ☐ Yes  ☐ No

66. Did you intend to promote any unlawful aims of the organization?   ☐ Yes  ☐ No

If you answered yes to questions 63, 64, 65, or 66, please explain, include the name of the organization and location._____

_____

_____

## BUSINESS INTERESTS

67. Do you or have you ever owned any stock or interest in any firm, partnership or corporation dealing wholly or partly in the sale or distribution of alcoholic beverages?   ☐ Yes  ☐ No

68. Are you now issued or have you ever been issued a license to engage in a business or profession?   ☐ Yes  ☐ No

69. Was that license ever suspended or revoked?   ☐ Yes  ☐ No

If you answered yes to questions 67, 68, or 69, please provide details including type of license, agency that issued the license, effective date of the license and the license number._____

_____

_____

*Page 13*

WarrenCounty1409

**CREDIT DATA**

70. Do you have any sources of income other than your salary or the salary of your spouse?   ☐ Yes  ☑ No
Specify each with an estimated annual amount. _____

_____

71. If you have children, are you now supporting all children born to you, adopted by you and stepchildren?
☐ Yes  ☐ No  ☐ Does not apply   If not, explain _____

72. Are you or your spouse indebted to anyone?  ☐ Yes  ☐ No   If yes, please list all debts.  Be sure to include
student loans and charge accounts.

| Creditor | Address | Amount | Account Number |
|----------|---------|--------|----------------|
|          |   N/A   |        |                |
|          |         |        |                |
|          |         |        |                |
|          |         |        |                |
|          |         |        |                |

73. Have you, your spouse, or a company controlled by you ever filed for bankruptcy?   ☐ Yes  ☑ No

74. Have you, your spouse, or a company controlled by you ever had a legal judgement rendered against you
for a debt?  ☐ Yes  ☑ No

If you answered yes to either question 73 or 74, please provide details.

_____

_____

_____

*Page 14*

---

Warren County, Kentucky
Warren Co. Regional Jail

**PERSONAL INQUIRY WAIVER**
**AUTHORITY FOR RELEASE OF INFORMATION**

I authorize a review of and full disclosure of all records concerning myself to any duly authorized agent of Warren County, Kentucky, or to any authorized agent of a criminal justice agency or any private agency upon request of Warren County, Kentucky, whether the records are of a public, private or confidential nature.  I authorize copies of these records to be given to Warren County, Kentucky or it's agents.

The intent of this authorization is to give my consent for full and complete disclosure of the records of; educational institutions, financial or credit institutions, including records of loans, records of commercial or retail credit agencies, including credit reports and ratings, and other financial statements and records wherever filed, medical and psychiatric treatment or consultation, including hospitals, clinics, private practitioners, and the U.S. Veteran's Administration, and employment and pre-employment records, including background reports, performance evaluations, complaints or grievances filed by or against me and the records and recollections of Attorney's at Law, or other counsel, whether representing me or another person in any case, either criminal or civil, in which I presently have an interest.

I understand that any information obtained by a personal history background investigation, which is developed directly or indirectly, in whole or in part, upon this release authorization, will be considered only in determining my suitability for employment by Warren County, Kentucky.  I also certify that any person or organization who may furnish such information concerning me shall not be held accountable for giving truthful information, and I release the person and organization from any and all liability which may be incurred as a result of furnishing such information.

A photocopy of this release form will be valid as an original even though the photocopy does not contain an original writing of my signature.

Please Print
Applicant's Name: _Jason Rigsby_

Applicant's Signature: _Jason Rigsby_

Witness Name (Print): _Jackie T Strode_

Witness Signature: _Jack T Strode_

*Page 15*

WarrenCounty1410

# Warren County Regional Jail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606                                   Fax (270) 843-5317

I _Jason Rigsby_ UNDERSTAND THAT I CAN BE DISMISSED FROM THE WARREN COUNTY JAIL FOR ANY RULE VIOLATION. I ALSO UNDERSTAND THAT THERE IS AN APPEALS PROCESS FOR FULL TIME EMPLOYEES NOT ON PROBATION.

I _Jason Rigsby_ UNDERSTAND THAT AS A PARTTIME EMPLOYEE I AM CONSIDERED TO BE ON PROBATION UNTIL PROMOTED TO FULLTIME AT WHICH TIME I AM ON PROBATION FOR NINETY 90 DAYS AND CAN BE DISMISSED FROM MY POSITION AT ANY TIME. THIS DISMISSAL COULD BE FOR ANY RULE VIOLATION OR UNSATISFACTORY JOB PREFORMANCE.

I _Jason Rigsby_ UNDERSTAND THAT AS PART OF BEING EMPLOYED AT THE WARREN COUNTY REGIONAL JAIL THERE WILL BE INTERNAL INVESTIGATIONS. AT THE JAILERS REQUEST I UNDERSTAND THAT I MAY BE ASKED TO TAKE A POLYGRAPH TEST( LIE DETECTOR TEST ). IF I REFUSE TO TAKE THIS TEST OR IF I FAIL THIS TEST I UNDERSTAND I MAY BE DISMISSED FROM MY EMPLOYMENT AT THE WARREN COUNTY REGIONAL JAIL.

I _Jason Rigsby_ HAVE RECIEVED A NEW EMPLOYEE ORIENTATION MANUAL. I FUTHER UNDERSTAND THAT I AM TO READ AND REVIEW THE PACKET/MANUAL. I UNDERSTAND I AM TO FILL OUT THE PAPERWORK AND RETURN TO THE JAILER IN SEVEN(7) DAYS. THIS PAPERWORK IS FOR MY EMPLOYEE FILE. I ALSO NEED TO ASK ANY QUESTIONS ABOUT ANY PAPERWORK THAT I DO NOT UNDERSTAND.

I _Jason Rigsby_ UNDERSTAND THAT WHEN A SUPERVISOR OR CHIEF DEPUTY OR THE JAILER DOES AN EMPLOYEE COACHING SHEET IN REFERENCE TO MY JOB PREFORMANCE THAT THIS NON-PREFORMANCE OF MY JOB DUTIES MAY LEAD TO MY BEING DISMISSED FROM EMPLOYMENT AT THE WARREN COUNTY REGIONAL JAIL.

JACKIE T. STRODE   AUGUST, 2003

# Warren County Regional Jail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606                                   Fax (270) 843-5317

I _Jason Rigsby_ UNDERSTAND THAT AS AN EMPLOYEE OF THE WARREN COUNTY JAIL I MAY BE SEARCHED, MY VEHICLE MAY BE SEARCHED, MY LOCKER MAY BE SEARCHED, AND ANY OTHER ITEMS THAT I MAY BRING TO THE JAIL OR HAVE ON MY PERSON MAY BE SEARCHED.

I _Jason Rigsby_ UNDERSTAND THAT WHEN I AM NOT WORKING IF I WERE TO COME TO THE JAIL I AM NOT TO GO TO ANY WORK AREA. I AM TO ONLY BE IN THE BREAK AREAS/LOUGE FOR EMPLOYEES. EXCEPTION: IF I AM PICKING UP MY CHECK OR I HAVE JAIL BUSINESS WITH ONE OF THE CHIEF DEPUTIES.

I _Jason Rigsby_ UNDERSTAND THAT I MAY GO TO MY WORK STATION 5 MINUTES PRIOR TO MY SHIFT STARTING. I ALSO UNDERSTAND THAT I AM TO LEAVE MY WORK STATION AT THE END OF MY SHIFT AND IF I HAVE WORK NOT COMPLETED I WILL GIVE THIS TO MY RELIEF.



# Warren County Regional Jail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606                                    Fax (270) 843-5317

## CONFIDENTIALITY – CRIMINAL OFFENSE ACKNOWLEDGMENT

I, *Juson Rigsby*, an employee with the Warren County Regional Jail, understand that the office with which I am employed is a law enforcement agency. I understand that my conduct both inside and outside the office reflects upon the office itself. I further understand that due to the nature of my employment, it would reflect negatively upon my office if I were to be charged and convicted of a criminal offense. If I am charged with a criminal offense, I may be suspended without pay, until the resolution of the offense.

I further understand and agree that if I am charged and convicted of a criminal offense, from this date forward, my job will be terminated immediately. I understand this written warning is the only warning I will receive concerning termination, upon conviction.

I further understand that nothing in this Acknowledgment implies any employment contract on the Jailer's part and mine. I further understand I am an at-will-employee, and I can be discharged at any time for no reason whatsoever at the discretion of the Warren County Jailer.

For the purpose of this agreement, a "criminal offense" is one that has the possibility of carrying jail time. Types of criminal offenses include, but are not limited to: DUI offenses, misdemeanor and felony offenses.

Further, as part of my duties, I will be provided with information that is confidential. As such, I understand that everything in the Warren County Jailer's Office is confidential. I understand that I am not allowed to discuss any case pending, or other matter that occurs within the office, outside the office. I further understand that if I am found to have violated the confidences of the office, I will be terminated forthwith.

_____
Deputy's Signature

_____
Date   5/3-06

_____
Witness

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __01__ Of __01__

**NAME OF STAFF:**  Jason Rigsby

**DATE:**  05/06/06                         **TIME:**  0729

**DETAILS OF INCIDENT:** On the above date, I over slept causing me to report to work 29 minutes late. I will try my best for this no to happen in the future.

5-7-06 For the Above incident, this deputy will Recieve a WARNING + the Time will be deducted. He Could have been Suspended OR dismissed.

**REPORTING DEPUTY:**   Dep. Jason Rigsby     *Jason Rigsby*

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**  Capt. Judy Daugherty   *Capt. J. Daugherty  #613*

**CHIEF DEPUTY:**

**JAILER:**

Jason Rigsby

**Warren County Regional Jail Training Schedule**

| DAY | DATE | SHIFT | TRAINING LOCATION | COMMENTS |
|---|---|---|---|---|
| MONDAY | | | | |
| TUESDAY | 4/25/06 | 0700 - 1900 | ROVER - OLD JAIL | Rec           7AM-7PM |
| WEDNESDAY | 26 | 0700 -1900 | ROVER - OLD JAIL | Visitation  7AM - 7PM |
| THURSDAY | 27 | 0700 -1900 | COURT ROVER-OLD JAIL | 7AM - 11PM |
| FRIDAY | 28 | 0700 - 1500 | REC ROVER - OLD JAIL | |
| SATURDAY | 29 | 0700 - 1500 | VISITATION ROVER - OLD JAIL | |
| SUNDAY | 30 | OFF | OFF | |
| MONDAY | 5/1/06 | 1500 - 2300 | A - POD | |
| TUESDAY | 2 | 1500 - 2300 | A - POD | |
| WEDNESDAY | 3 | 1500 - 2300 | A - POD | Work Sun 5-4 7AM-3PM |
| THURSDAY | 4 | 1500 - 2300 | A - POD | |
| FRIDAY | 5 | 1500 - 2300 | B - POD | Come Back At 11pm that |
| SATURDAY | 6 | 0700 - 1500 | B - POD | Night |
| SUNDAY | 7 | 0700 - 1500 | A - POD | |
| MONDAY | 8 | OFF | OFF | |
| TUESDAY | 9 | 0700 - 1500 | CLASS D / ZEBRA DO... | Get off 0700 5-19 |
| WEDNESDAY | 10 | 0700 - 1500 | G / H DORM | Report At 1700 |
| THURSDAY | 11 | 0700 - 1500 | G / H DORM | 5pm |
| FRIDAY | 12 | 1500 - 2300 | CLASS D / ZEBRA DO... | |
| SATURDAY | 13 | OFF | OFF | Come Back in At 11pm |
| SUNDAY | 14 | OFF | OFF | Sun 5-22-06 |
| MONDAY | 15 | 0700 - 1500 | CLASS D / ZEBRA DO... | |
| TUESDAY | 16 | OFF | OFF | Comin Monday +2300 |
| WEDNESDAY | 17 | 2300 - 0700 | MAIN CONTROL | Comes in Monday Night at 2300 |
| THURSDAY | 18 | 2300 - 0700 | MAIN CONTROL | Comes in Tuesday Night at 2300 |
| FRIDAY | 19 | 2300 0700 | MAIN CONTROL | Comes in Wednesday Night at 2300  Work Int |
| SATURDAY | 20 | 2300 - 0700 | MAIN CONTROL | Comes in Thursday Night at 2300 |
| SUNDAY | 21 | 2300 - 0700 | MAIN CONTROL | Comes in Friday Night at 2300  Drill |
| | | OFF | OFF | Comes in Sunday at 2300 |

| | | | **MILITARY TIME** | | |
|---|---|---|---|---|---|
| 0000 - MIDNIGHT | | 0700 - 7:00 A.M. | 1400 - 2:00 P.M. | | |
| 0100 - 1:00 A.M. | | 0800 - 8:00 A.M. | 1500 - 3:00 P.M. | | 2100 -  9:00 P.M. |
| 0200 - 2:00 A.M. | | 0900 - 9:00 A.M. | 1600 - 4:00 P.M. | | 2200 - 10:00 P.M. |
| 0300 - 3:00 A.M. | | 1000 - 10:00 A.M. | 1700 - 5:00 P.M. | | 2300 - 11:00 P.M. |
| 0400 - 4:00 A.M. | | 1100 - 11:00 A.M. | 1800 - 6:00 P.M. | | |
| 0500 - 5:00 A.M. | | 1200 - 12 NOON | 1900 - 7:00 P.M. | | |
| 0600 - 6:00 A.M. | | 1300 - 1:00 P.M. | 2000 - 8:00 P.M. | | |

073   Jason Rigsby
792-1356

Revised 05/05

WarrenCounty1414

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_          TRAINING DATE: _4-25-06_

BEGIN WORK: _4-25-06_             TRAINING DEPUTY: _JTS_

### TRAINING VERIFICATION

| | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | ✓ | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No        WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _Read & Review All Paperwork in_
_Your Orientation Manual For New Employees_
_Fill out & Return Employee Jail File Paperwork_

TASKS COMPLETED: _____

ADDITIONAL COMMENTS: _Ask Questions_

Employee: _Jason Rigsby_           Training Deputy: _Joel T Shul_
1/673   JASON Rigsby
        792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_          TRAINING DATE: _4-25_

BEGIN WORK: _4-25-06_          TRAINING DEPUTY: _Ron Clingers_
_Eddie Puckett_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: _7-7_ | | | | _8_ |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: Serve Trays, watch tours, Pot Down's, Processing
Court / Did Watch Tours was shown all Buttons
And How to do Check. Sign Check Sheets / Processed
Inmates / Shown How to Server Aside Trays,

TASKS COMPLETED: All of the above / Did W/Ts Signed
Check Sheets, Pass Trays on A-Side,

ADDITIONAL COMMENTS: did great

Employee: _Jason Rigsby_          Training Deputy: _Ron Clingers_
1/673   JASON Rigsby                                      _Eddie Puckett_
792-1356

WarrenCounty1416

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby          TRAINING DATE: 4-26

BEGIN WORK: 4-25-06          TRAINING DEPUTY: Sgt Michelle Buchanan Front Visitat
                                                 Eddie Pendleton

**TRAINING VERIFICATION**

| | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | 7-7 | Front ✓ Back ✓ | | |
| Class D | | | | 4 |

WILLINGNESS TO LISTEN: (Yes)  No       WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: Front Visitation - You are not to leave your post to go outside, Signing in Visitors, Checking ID's, Enforcing all rules, being polite, radio use, watching Visit time, Searching public access areas, answering questions. Back Visit: Showed Back visit operations Did w/T's, Served Tray's on A side, Processed Inmates

TASKS COMPLETED: Front Visitation: Signing in public, checking ID's, Searching areas, being polite, adults only 2 allowed at a time, NO ID NO Visit, No name No visit, adding names to visit per front office Staff, Back visit: Escorting to Visit: monitoring, Visitation in progress.

ADDITIONAL COMMENTS: Front Visitation: Picked up front Visitation quickly & Understands visitation for public rules well. General questions from public about what's allow will come in time & with use. Deputy Rigsby is easy to work with.

Employee: Jason Rigsby
JASON Rigsby
792-1356
'673

Training Deputy: Sgt M. Buchanan Front Visitation
                 S Whittlesey Back visit
                 Eddie Pendleton

WarrenCounty1417

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_     TRAINING DATE: _4-27_

BEGIN WORK: _4-25-06_     TRAINING DEPUTY: _Ron Childers_
_Eddie Pendleton_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: _77_ _or_ | ✓ | | | _8+8_ |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No     WILLINGNESS TO LEARN: (Yes) No

TASKS SHOWN: _Recreation, Pat Down's, Watch tour, Serve Trays, Filling out Rec logs, Showed How to Do W/Ts, Processed Inmates, Feed A Pod Trays, How to Do Cell searches,_

TASKS COMPLETED: _all of the above, Did W/Ts, Served Tray's on A-side, Processed multiple Inmates, Did Cell Search in A-3_

ADDITIONAL COMMENTS: _Did Great, Jason caught on very well and Fast, Still needs to work on using the Radio_

1/673

Employee: _Jason Rigsby_
JASON Rigsby
792-1356

Training Deputy: _Ron Childers_
_Eddie Pendleton_

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_ TRAINING DATE: _5-1_

BEGIN WORK: _4-25-06_ TRAINING DEPUTY: _Sgt E. Pendleton._

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: 3-11 | ✓ | | | 8 |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes) No     WILLINGNESS TO LEARN: (Yes) No

TASKS SHOWN: _Observed Apod Operation, Was Shown how to open doors, Use the Inter Com, Turn TV on and Off How to Do ISO Checks, Was Advised to Contact Main Control to do ISO checks._

TASKS COMPLETED: _Observed Apod Operation, Open doors Used Interlock over ride, Did ISO Checks Contacted Main Control for Checks, Shown How to Lock down Pods for the night._

ADDITIONAL COMMENTS: _____

Employee: _Jason Rigsby_
1/673  JASON Rigsby
792-1356

Training Deputy: _Sgt Eddie Pendleton_

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_   TRAINING DATE: _5-0_

BEGIN WORK: _4-25-06_   TRAINING DEPUTY: _Sgt E. Pendleton_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: 3-11 | ✓ | | | 8 |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _How to Run the Board for H/C, How to Do ISO Checks, How to Sign for Property, How to PASS Property Discuss the other Controls of the Broad (there operation and When to use them)_

TASKS COMPLETED: _Run Broad for H/C, Signed for Property PASS Property, Did ISO Checks, Run Broad for Tray's Assist Assitted Med With Medical Call, Run Broad Br for Trash-n-Tray's Lock Down Pod for Head._

ADDITIONAL COMMENTS: _____

Employee: _Jason Rigsby_          Training Deputy: _Sgt E. Pendleton_

U/673   JASON Rigsby
792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_   TRAINING DATE: _5-3_

BEGIN WORK: _4-25-06_   TRAINING DEPUTY: _Eddie Pendleton_

**TRAINING VERIFICATION**   **PASS**   **NEEDS IMPROVEMENT**   **FAIL**   **HOURS**

Orientation/P&P/Code Of Ethics: _____   _____   _____   _____

G/H Dorm: _____   _____   _____   _____

Main Control: _____   _____   _____   _____

A Pod or B Pod: _3-11_   ✓   _____   _____   ✓

Rover or Z-Dorm: _____   _____   _____   _____

Class D _____   _____   _____   _____

WILLINGNESS TO LISTEN: (Yes)  No     WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _How to Run the Broad For Head Count, How to Sign_
_for Property, How to Pass Propert, How to Fil out Truster_
_Time Sheets, How to do Cell Clean up, Tray's, Trash-n-Trays_
_How to Do Iso Checks,_

TASKS COMPLETED: _Run Broad for HIC, Did Cell Clean up, Sign for_
_Property, Pass Property, Did Iso Checks, Run Broad for_
_Trays, Meds, Discuss the other Controls of A di Broad_
_Lock Mop Closet & Lock Down Pod for the nite,_

ADDITIONAL COMMENTS: _____

Employee: _Jason Rigsby_   Training Deputy: _Sgt E. Pendleton_
_1/673   JASON Rigsby_
_792-1356_

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_ ___ TRAINING DATE: _5-4_

BEGIN WORK: _4-25-06_ ___ TRAINING DEPUTY: _Sgt Eddie Pendleton_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: _3 ll_ | 8✓ | | | 8 |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No ___ WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _Shown Differents in A Pod And B Pod Broad, Talk About Differents in Operation, of B Pod And A Pod, Run Board for H/c, Sign for Property, Passed Property Update Pod Board, Update H/C Sheet. Oranges out to wash._

TASKS COMPLETED: _Run Broad For H/C, Sign for Property, Pass Property, Tray's, Trash-n-Trash, Run Broad for Medical, Update Head Count Sheets, Update B Pod Broad, Did Clean up, Lock Mop Closet, Lock Down Pod For the Night,_

ADDITIONAL COMMENTS: _____

Employee: _Jason Rigsby_ ___ Training Deputy: _Sgt Eddie Pendleton_

1/673 JASON Rigsby
      792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby _____ TRAINING DATE: _____

BEGIN WORK: 4-25-06 _____ TRAINING DEPUTY: Sgt Eddie Pendleton

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | ___ | ___ | ___ | ___ |
| G/H Dorm: | ___ | ___ | ___ | ___ |
| Main Control: | ___ | ___ | ___ | ___ |
| A Pod or B Pod: | ✓ | ___ | ___ | 8 |
| Rover or Z-Dorm: | ___ | ___ | ___ | ___ |
| Class D | ___ | ___ | ___ | ___ |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: Run B Pod by Himself.
_____
_____
_____
_____

TASKS COMPLETED: Run Broad for H/C, Sign for Property, Passed Property, Run Broad for Trays, Did Trash-n-Trays, Did Clean up, Run Broad for Meds, Kelpt B-Pod Broad And H/C up dated, Assited Medical with, sick Call, Lock Down B Pod For the Night.

ADDITIONAL COMMENTS: _____
_____
_____
_____

Employee: Jason Rigsby _____ Training Deputy: Sgt Eddie Pendleton

U/673  JASON Rigsby
792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby _____ TRAINING DATE: 5-6 _____

BEGIN WORK: 4-25-06 _____ TRAINING DEPUTY: Sgt. Michelle Jackson

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: 7-3 | ✓ | | | 8 |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: Visitation, A side showers, staff incident reports, razor collection, hair clippers and clipper log

TASKS COMPLETED: monitored trays + headcount, showers for 46 and isolation, collected razors from inmates going to visitation, monitored razor collection, kept up with A side checks, patted down inmates for visitation, assisted medical with meds in 46.

ADDITIONAL COMMENTS: Jason done a great job. He seemed happy to assist rovers with patdowns and did an excellent job of keeping up with A side checks.

Employee: _Jason Rigsby_          Training Deputy: _Sgt. Michelle Jackson_
1/673  JASON Rigsby
        792-1356

WarrenCounty1424

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_          TRAINING DATE: _5-8_

BEGIN WORK: _4-25-06_          TRAINING DEPUTY: _Gary Madison_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D   7-3 | ✓ | | | |

WILLINGNESS TO LISTEN: (Yes)   No          WILLINGNESS TO LEARN: (Yes)   No

TASKS SHOWN: _2 hr in main control, Board, phone, Log, TV's, Phone's, 2 hr Rover, 2nd head count Tray serving, layout of Building watch Tour, Sign out sheets & Books_

TASKS COMPLETED: _Pod Board, phone, Log, TV's Phones 2nd Head Count Tray Service, worked with sign out sheets & Books_

ADDITIONAL COMMENTS: _Jason has a great deal of Talent he seems eger to Learn and catches on quickly_

Employee: _Jason Rigsby_          Training Deputy: _Gary Madison 620_
JASON Rigsby
792-1356

1/673

WarrenCounty1425

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_     TRAINING DATE: _5-9_

BEGIN WORK: _4-25-06_     TRAINING DEPUTY: _Stu Lashley_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | ✓ | ✓ | | 8 |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes) No     WILLINGNESS TO LEARN: (Yes) No

TASKS SHOWN: _How to do Isolation Check, to give out food trays, to remove trays + bars, how cleaning is done, showers + Iso. ready for C&D, Maint + Requests_

TASKS COMPLETED: _Check in Iso, pass out food trays, any out Maint + Requests, set showers for Rec. C&D were Ran run trays, made sure cleaning was done_

ADDITIONAL COMMENTS: _Should make a good Off_

Employee: _Jason Rigsby_     Training Deputy: _Stu Lashley_ 612

JASON Rigsby

792-1356

1/673

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_          TRAINING DATE: _5-10_

BEGIN WORK: _4-25-06_          TRAINING DEPUTY: _Stu Lashley_

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: 7-3 | ✓ | ✓ | | 8 |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _Was shown how to do Visitation_

TASKS COMPLETED: _Rigsby ran H dorm by himself to day. He did a good job and did not have any problem._

ADDITIONAL COMMENTS: _Good Job._

Employee: _Jason Rigsby_          Training Deputy: _Stu Lashley, GR_

U/673   JASON Rigsby
792-1356

## WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby          TRAINING DATE: 5-11

BEGIN WORK: 4-25-06          TRAINING DEPUTY: Staff Tech 680

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D  3-11 | ✓ | ✓ | | |

WILLINGNESS TO LISTEN: (Yes) No          WILLINGNESS TO LEARN: (Yes) No

TASKS SHOWN: Head Count, Passing out property, Visitation assigning extra duty task, Emergency Head Count, Cell Search & Laundry room Checks.

TASKS COMPLETED: Deputy Rigsby Assited and completed all task listed above.

ADDITIONAL COMMENTS: Deputy Rigsby takes his time and is thorough in all task conducted, Deputy Rigsby handled himself in a professional manner. Asset to the team

Employee: Jason Rigsby          Training Deputy: Staff 680

U/673   JASON Rigsby
792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: **Jason Rigsby**          TRAINING DATE: 5-18

BEGIN WORK: **4-25-06**          TRAINING DEPUTY: Victor Cassidy 608

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D  73 | ✓ | | | |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: Class D Visitation, fill out log, pat down inmates before and after visits, courtious to visitors

TASKS COMPLETED: Jason Rigsby performed very well was very courtious to visitors, was on time with visitation filled out log patted down inmates before and after visits

ADDITIONAL COMMENTS: Jason jumped right in with very little coaching did an excellent job.

Employee: _Jason Rigsby_          Training Deputy: _Vict Cassy 608_

U/673   JASON Rigsby
792-1356

WarrenCounty1429

# WARREN COUNTY REGIONAL JAIL
# TRAINING REPORT

EMPLOYEE: Jason Rigsby          TRAINING DATE: 5/15

BEGIN WORK: 4-25-06          TRAINING DEPUTY: R. MACKEN

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | ✓ | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes) No          WILLINGNESS TO LEARN: (Yes) No

TASKS SHOWN: KEY LOG, SMOKE EVAC, FIRE ALARM, MONITORING HEADCOUNTS WATCH TOURS, PROPERLY LOGGING ACTIVITIES, LOCATION OF DOORS A, G/H CHECKS, PASS A LONG, TV'S, LIGHTS AND PHONES

TASKS COMPLETED: ALL THE ABOVE. HAD HIM WORK BOARD FOR A WHILE. COMPLETED INDOOR WATCH TOUR WITH ME.

ADDITIONAL COMMENTS: JASON DID A GREAT JOB, DID A GREAT JOB WORKING THE BOARD. VERY GOOD LISTENER, WILL MAKE A GREAT ASSET TO THE JAIL.

Employee: Jason Rigsby
792-1356          Training Deputy: R. Macken

U/673

## WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby          TRAINING DATE: 5-17

BEGIN WORK: 4-25-06          TRAINING DEPUTY: Sgt Mike Richardson

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | ✓ | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No          WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: Head Count / WT / Daily Log / Key Log / Camera Log
Fire Alarm / White Emergency Phone, Incoming / Outgoing
Deputies & Agencies

TASKS COMPLETED: Ran Main Control After headcount

ADDITIONAL COMMENTS: Caught on very well; time will
make him an even better Deputy +
assett to the W.C.R.J

Employee: _Jason Rigsby_          Training Deputy: _Sgt Mike Richardson_
JASON Rigsby
792-1356

U/673

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby          TRAINING DATE: 5-18

BEGIN WORK: 4-25-06          TRAINING DEPUTY: Sgt Mike Richardson

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | ✓ | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)   No          WILLINGNESS TO LEARN: (Yes)   No

TASKS SHOWN: _____

_____

_____

_____

_____

TASKS COMPLETED: Ran Main Control From 2300-0700

_____

_____

_____

_____

ADDITIONAL COMMENTS: Needs to Remember to press Reset Tour then press Start Watch. Other than that Jason is doing GREAT

Employee: Jason Rigsby          Training Deputy: Sgt Mike Richardson

U/673   JASON Rigsby
        792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby        TRAINING DATE: _____

BEGIN WORK: 4-25-06        TRAINING DEPUTY: Sgt Mike Richardson

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | ✓ | | | |
| Main Control: | | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No        WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _____
_____
_____
_____
_____

TASKS COMPLETED: Ran Main Control 2300-0700
All paperwork, W.T.'s Cell Searches
Incoming/Outgoing Deputies/Officers
_____
_____

ADDITIONAL COMMENTS: Jason is doing a fine Job as with
everything he will become better as time goes on
_____
_____

Employee: _Jason Rigsby_        Training Deputy: _Sgt. Mike Richardson_

U/673   JASON Rigsby
        792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: Jason Rigsby _____ TRAINING DATE: _____

BEGIN WORK: 4-25-06 _____ TRAINING DEPUTY: Sgt Mike Richardson

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | | | | |
| G/H Dorm: | | | | |
| Main Control: | ✓ | | | |
| A Pod or B Pod: | | | | |
| Rover or Z-Dorm: | | | | |
| Class D | | | | |

WILLINGNESS TO LISTEN: (Yes)  No        WILLINGNESS TO LEARN: (Yes)  No

TASKS SHOWN: _____
_____
_____
_____
_____

TASKS COMPLETED: Ran Main Control from 2300-0000
_____
_____
_____
_____

ADDITIONAL COMMENTS: Jason is doing a fine job; other
Deputies need to exercise patience and
take their time
_____

Employee: _Jason Rigsby_         Training Deputy: Sgt Mike Richardson

U/673   JASON Rigsby
        792-1356

# WARREN COUNTY REGIONAL JAIL
# TRAINING REPORT

EMPLOYEE: Jason Rigsby _____ TRAINING DATE: _____

BEGIN WORK: 4-25-06 _____ TRAINING DEPUTY: _____

| TRAINING VERIFICATION | PASS | NEEDS IMPROVEMENT | FAIL | HOURS |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | _____ | _____ | _____ | _____ |
| G/H Dorm: | _____ | _____ | _____ | _____ |
| Main Control: | _____ | _____ | _____ | _____ |
| A Pod or B Pod: | _____ | _____ | _____ | _____ |
| Rover or Z-Dorm: | _____ | _____ | _____ | _____ |
| Class D | _____ | _____ | _____ | _____ |

WILLINGNESS TO LISTEN:   Yes   No       WILLINGNESS TO LEARN:   Yes   No

TASKS SHOWN: _____
_____
_____
_____
_____

TASKS COMPLETED: _____
_____
_____
_____
_____

ADDITIONAL COMMENTS: _____
_____
_____
_____

Employee: _____ Training Deputy: _____

U/673    JASON Rigsby
         792-1356

# WARREN COUNTY REGIONAL JAIL
## TRAINING REPORT

EMPLOYEE: _Jason Rigsby_____ TRAINING DATE:_____

BEGIN WORK: _4-25-06_____ TRAINING DEPUTY:_____

| **TRAINING VERIFICATION** | **PASS** | **NEEDS IMPROVEMENT** | **FAIL** | **HOURS** |
|---|---|---|---|---|
| Orientation/P&P/Code Of Ethics: | _____ | _____ | _____ | _____ |
| G/H Dorm: | _____ | _____ | _____ | _____ |
| Main Control: | _____ | _____ | _____ | _____ |
| A Pod or B Pod: | _____ | _____ | _____ | _____ |
| Rover or Z-Dorm: | _____ | _____ | _____ | _____ |
| Class D | _____ | _____ | _____ | _____ |

WILLINGNESS TO LISTEN:   Yes   No      WILLINGNESS TO LEARN:   Yes   No

TASKS SHOWN:_____
_____
_____
_____
_____

TASKS COMPLETED:  _____
_____
_____
_____
_____

ADDITIONAL COMMENTS:_____
_____
_____
_____

Employee:_____ Training Deputy:_____

U/673    JASON Rigsby

# **Main Control**

- Safety and Security first.
- Open only 1 door at a time.
- Do not anticipate deputies needing doors.
- Always address the public politely (the outside doors)
- Get the reason why the public wants in Door 10. Check with Booking for the information and Booking will let you know if they need to wait outside Door 21.
- If booking becomes tied up and cannot answer the phone Main Control will answer the phone and then advise booking of a call holding.
- If you did not understand or did not hear the requesting person ask them to repeat themselves.
- Do not let other deputies rush you, take your time; know what you are doing at all times.
- Three (3) Law Enforcement Officers and their prisoners are allowed in Booking, all others are to wait outside Door 35 in the Sallyport.
- Watch your cameras; coordinate with doors on the board or radio traffic.
- Look at the Main Control Board, notice where all the Emergency Release buttons are.
- Know where cameras are in relation to the jail.
- Clear the board; do not pull up another cell over the one showing on the board.
- Listen when the Audio Alarm goes off. Ask if they are ok; if you don't hear anything, or if you are not sure what's going on, log it, and always be on the safe side. Immediately notify your supervisor.
- Log all activity, deputies leaving and entering the Jail, deliveries, kitchen and medical staff. When releasing an inmate log whether or not it was an Adult Male or Female (1-A-M or 1-A-F) not the inmate's name.
- Fill out the Key Log, log the Deputy the unit number, the time taken and time returned.
- Check the Pass-along and ask the Deputy you are relieving, find out the day's events.

- Watch cameras for suspicious activity or any other potential problems.
- Memorize or make a list of the Deputy's unit number working on the shift with you.
- :55 minutes past the hour  Watch Tour #1
- :50 minutes past the hour  Watch Tour #2
- :45 minutes past the hour  Watch Tour #3
- :40 minutes past the hour  Watch Tour #4
- :35 minutes past the hour  Watch Tour #5
- :30 minutes past the hour  Watch Tour #6
- :25 minutes past the hour  WatchTour#7
- :20 minutes past the hour  WatchTour#8
- Also the inmates know when and how the Watch Tours are performed **change it up; such as different times or more Watch Tours get with your supervisor and work this out**
- Between the hours of 07:00 and 23:00 the watch tours are performed as normal; on third shift Watch Tours are performed a little differently.
- Watch Tour 1 is inside.    A, G4
- Watch Tour 2 is inside.    A,G4
- Watch Tour 3 is inside.    A,G4
- Watch Tour 4 is inside.    A,G4
- Watch Tour 5 is inside.    A,G4
- Watch Tour 6 is inside.    A,G4
- Watch Tour 7 is inside.    A,G4
- Watch Tour 8 is inside.    A,G4
- When you have taken power from A & B pods the Audio Alarm is to be turned on.
- At 23:00 hours all phones and TV's are to be turned off.  Only HD (Florida Room) and DT#1 are to remain on.  Z Dorm may only have "late TV' on Wednesday nights until 01:00.
- Slider 25, 27, & 45 are too remained closed unless a Deputy calls for it.
- Door 17 in Z Dorm is to remain open from 07:00 until 23:00
- On third (3rd) shift the Laundry Trustee is allowed to push intercom buttons 304 & 38 speaker buttons to inform you of the Laundry Status.
- 23:00 Double Check and make sure you have A & B side Audio Alarm is turned on.

WarrenCounty1438

- 23:00 Double Check that all phones except HD (Florida Room) and DT 1.are turned off.
- 23:00 Double Check that all TV's, exception Z Dorm on Wednesday are turned off at 01:00.
- After Headcount in each cell in G and H when all Deputies have left the cell and door is secure you are to turn off the lights in that cell.
- 03:00 wake Z Dorm up to work in the Kitchen; be aware there are three teams that work in the kitchen.
- 04:00 wake up any early transports for travel.
- 06:00 turn the lights on in G & H Dorms.
- During the last Watch Tour after the Deputy exits each individual cells the Main Control Operator may open the inner cells
- Clean your area; take your trash out before the next shift arrives.

_Sgt. Mike Richards_          5-16-06
Training Deputy                     Date

_Jason Murphy_               5-15-06
Deputy                              Date

_Jackie T Strode_
Jackie T Strode, Jailer

# White Emergency Phone

The Main Control in Class D and the Old Jail now has a *white emergency phone.*

The *white phone* is for **Emergencies** only.  Use it to report an emergency, call 911, the City Police Department (BGPD), the Fire Department, the Jailer, or Comstar.

Should the Fire Alarm be activated, use the *white emergency phone* to dial 911 and advise of the situation.

Comstar will call on the *white emergency phone* to check on the alarm status.

If the alarm is not in your building and you answer the *white emergency phone*, you are to radio the other Main Control area and advise that Deputy to pick up the call.

Log all incoming and outgoing calls received on your *white emergency phone* on your daily log.

- **Dial #99 + (number)**
- **Emergency 911**
- **Comstar 1-800-432-1429 code M1-3821**
- **Bowling Green Police Department 393-4000**
- **Jackie T. Strode, Jailer 793-9933**

_____     5-16-06
Training Sergeant             Date

_____     5-16-06
Deputy Jailer               Date

_____
Jackie T. Strode, Jailer

# Fire Alarm Instructions

When the fire alarm sounds, please follow the steps listed below.

1. **Push the Silence Button**
2. **Push the Acknowledge Button**
3. **Send a Deputy to check the fire location**
4. **Push the Reset Button**

After following the above steps, if the fire alarm continues to sound, follow the steps below:

1. **Push the Acknowledge Button**
2. **Push the Silence Button**
3. **Do Not Reset**

After doing the above steps call 911 to cancel the false alarm.

If after hours and the above steps do not correct the problem, immediately call maintenance.

_____   5-16-06
Training Sergeant                            Date

_____   5-16-06
Deputy                                              Date

_____
*Jackie T. Strode, Jailer*

# <u>Warren County Regoinal Jail</u>

## A and B Pod Training Sign off Sheet

page 1

**Pod Boards :**

_JR_  Shown how to open doors.

_JR_  Shown how to use the InterLock OverRide.

_JR_  Shown the Panel Disable buttons and was advised on  when to use them.

_JR_  Shown the Alarm Acknowledge buttons "Silence and Reset" and was advised of their  use.

_JR_  Shown  Audio Alarm buttons "Day/Night" and "On/Off" and was advised of their use.
- On/Off button stays on all the time it is never to be turned off.
- Day/Night buttons is to be turned off at 0700 and turned on at 2300 every day.

_JR_  Shown how to use the Intercom system.
- How to call down into a cell.
- How to answer a cell.
- How to use the All Call.
- How to Reset the Intercom.


**Pod Task :**

_JR_  A - Pod, Shown how to do ISO Checks and was advise 15 to 20 minutes apart no later.

_JR_  Shown how to run the Pod Boards for Head Counts.
- Open Doors, Turn Off T.V.'s and monitor deputies in cell with intercom.

_JR_  Shown how to call tray count to kitchen.

WarrenCounty1442

page 2

*JR* B - Pod, Was advised to Check Rec Log to see if any rec for B - Pod was left over from first shift and if so,

- Advise cell (or cells) to get ready for rec and send them with the deputies conducting Head Counts.

*JR* Shown how to sign for Property.

- Was advised to check to read sheet and see if all Property is there.

*JR* Shown how to pass Property.

- Was advised to check arm bands to make sure the right inmate is recieving the property.
- Was advised that I was respondable if I gave property to the wrong inmate.

*JR* Shown how to run Pod Board for Trays.

- Was advised to turn off T.V.'s, Open Doors, and Moniter and keep a visiual on the deputy at the cell door.

*JR* Shown how to do Trash- n - Trays.

- Was advised to call a cell and advise them to set out Trash-N- Trays, do 1 cell at a time, open 1 cell door at a time.
- Was advised to be sure to get the trays out of cells  48,49,50 and 46. (A- Pod)

*JR* Shown Clean Up

- Was advised Trustee's are to pick up trash and tray's and to get them ready to go back to the kitchen. Trustee's are to sweep, mop the floors and clean the windows and  Pass out trash Bags, at no time they are to enter a cell. Trustee's are to pass out Toilet Paper on B - side they're allow three rolls a shift, cells are to turn in their empty cores.

*JR* Shown how to do Cell clean Up

- Cell Clean up is conducted on day shift except Wednesday and Saturday then its conducted on 2nd shift due to visitation.
- Was advised on what cleaning supplies  to give the trustee.
- Was advised to turn off All Phones and T.V.'s until Clean up was completed in cell. when cleaning supplies are set out of door then Phones and T.V.'s can be turned on in that cell.

*JR* Shown how to Run Board for Medications.

- Was advised to Open Doors, Turn Off T.V.'s, Monitor deputies and medical personnel at cell doors.

WarrenCounty1443

Page 3

_JR_ Was advised how to update Pod Boards and Head Count Sheets

**Pod Lock Down :**

_JR_ B - Pod Was shown at 2255 turn off T.V.'s
- Make sure Day/Night Audio Alarm is turned on.
- Leave all slider doors on B - side open,  leave radio  in the pod and turned on.
- Call Main Control and advise them to take power from B - side.
- Return pod keys to booking board and turn H/C Sheets and Daily Log to Supv's Office.

_JR_ A - Pod Was shown at 2255  to call Main Control have phones turn off.
- Turn off T.V.'s.
- Make sure Day/Night Audio Alarm is turned on.
- Make sure all doors are secure including A - side Sliders, leave radio in pod and turned on.
- Call Main Control and advise them to take power form A - side.
- Complete last ISO Check.
- Return pod keys to booking board and turn H/C Sheets and Daily Log to Supv's Office.

**Safety :**

_JR_ Was Advised of these safety issues.
- Always Stay Alert.
- Open 1 door  at a time.
- When you call a inmate down to the pod make sure he returns to his cell before calling the next inmate out of his cell.
- When a inmate comes out of a cell be sure they secure the cell door .
- Study the Fire Evacuation Plan of all stations.
- All inmates needs to be patted down when leaving their cell to go to rec,attorney visits, church, library,etc.
- A - Pod, When doing showers in 46,48,49,50 collect razor, check condition, if altered contact supervisor immediately. keep razor in the pod for deputy picking up razors.

WarrenCounty1444

page 4

**Trustee's :**

_JR_ **Was Advised of these trustee rules.**
- No trustee is to enter another cell.
- Trustee is not to pass anything  from one cell to another.
- Trustee is not to stand at doors and talk to inmates through cell doors and windows.
- Trustee is to keep mop closet clean.
- Trustee is to be up by 2100.
- Only one trustee out at a time,  except for serving trays. (unless advised by supervisor)
- A - side, Trustee's are not to be in 47 hallway by himself, a deputy must be present.
- A - side Trustee's are not to be at  cell 46 by himself,  a deputy must be present.


**Some Basic  Pod Tasks :**

_JR_ **Was advised of these Basic Pod  Task.**
- Always read Pass - A - Longs every day.
- Always asked deputy you are relieving does he/she have anything to pass a long.
- Keep trustee in sight at all times.
- When doing A - Side ISO Checks take trustee with you.
- Alway's update pod board and head counts sheets when someone is added to cells or released.
- If you have to step pass the Restricted Area of the pod, lock the pod door.


**All of (A Pod) and (B Pod) task  that I have Initial have been shown to me durring my training of the pods.**
**I have also been givin a copy of the A Pod & B Pod Training Sign Off Sheet to use as a  reference to run A-Pod and B-Pod.**

**Deputy:** _Jason Rigsby_

WarrenCounty1445

# <u>Warren County Regoinal Jail</u>

## A and B Pod Training Sign off Sheet

page 1

**Pod Boards :**

_____ Shown how to open doors.

_____ Shown how to use the InterLock OverRide.

_____ Shown the Panel Disable buttons and was advised on  when to use them.

_____ Shown the Alarm Acknowledge buttons "Silence and Reset" and was advised of their  use.

_____ Shown  Audio Alarm buttons "Day/Night" and "On/Off" and was advised of their use.
- On/Off button stays on all the time it is never to be turned off.
- Day/Night buttons is to be turned off at 0700 and turned on at 2300 every day.

_____ Shown how to use the Intercom system.
- How to call down into a cell.
- How to answer a cell.
- How to use the All Call.
- How to Reset the Intercom.

**Pod Task :**

_____ A - Pod, Shown how to do ISO Checks and was advise 15 to 20 minutes apart no later.

_____ Shown how to run the Pod Boards for Head Counts.
- Open Doors, Turn Off T.V.'s and monitor deputies in cell with intercom.

_____ Shown how to call tray count to kitchen.

WarrenCounty1446

page 2

_____ B - Pod, Was advised to Check Rec Log to see if any rec for B - Pod was left over from first shift and if so,
- Advise cell (or cells) to get ready for rec and send them with the deputies conducting Head Counts.

_____ Shown how to sign for Property.
- Was advised to check to read sheet and see if all Property is there.

_____ Shown how to pass Property.
- Was advised to check arm bands to make sure the right inmate is recieving the property.
- Was advised that I was respondable if I gave property to the wrong inmate.

_____ Shown how to run Pod Board for Trays.
- Was advised to turn off T.V.'s, Open Doors, and Moniter and keep a visiual on the deputy at the cell door.

_____ Shown how to do Trash- n - Trays.
- Was advised to call a cell and advise them to set out Trash-N- Trays, do 1 cell at a time, open 1 cell door at a time.
- Was advised to be sure to get the trays out of cells 48,49,50 and 46. (A- Pod)

_____ Shown Clean Up
- Was advised Trustee's are to pick up trash and tray's and to get them ready to go back to the kitchen. Trustee's are to sweep, mop the floors and clean the windows and Pass out trash Bags, at no time they are to enter a cell. Trustee's are to pass out Toilet Paper on B - side they're allow three rolls a shift, cells are to turn in their empty cores.

_____ Shown how to do Cell clean Up
- Cell Clean up is conducted on day shift except Wednesday and Saturday then its conducted on 2nd shift due to visitation.
- Was advised on what cleaning supplies  to give the trustee.
- Was advised to turn off All Phones and T.V.'s until Clean up was completed in cell. when cleaning supplies are set out of door then Phones and T.V.'s can be turned on in that cell.

_____ Shown how to Run Board for Medications.
- Was advised to Open Doors, Turn Off T.V.'s, Monitor deputies and medical personnel at cell doors.

WarrenCounty1447

Page 3

_____ **Was advised how to update Pod Boards and Head Count Sheets**

**Pod Lock Down :**

_____ **B - Pod Was shown at 2255 turn off T.V.'s**
- **Make sure Day/Night Audio Alarm is turned on.**
- **Leave all slider doors on B - side open, leave radio in the pod and turned on.**
- **Call Main Control and advise them to take power from B - side.**
- **Return pod keys to booking board and turn H/C Sheets and Daily Log to Supv's Office.**

_____ **A - Pod Was shown at 2255 to call Main Control have phones turn off.**
- **Turn off T.V.'s.**
- **Make sure Day/Night Audio Alarm is turned on.**
- **Make sure all doors are secure including A - side Sliders, leave radio in pod and turned on.**
- **Call Main Control and advise them to take power form A - side.**
- **Complete last ISO Check.**
- **Return pod keys to booking board and turn H/C Sheets and Daily Log to Supv's Office.**

**Safety :**

_____ **Was Advised of these safety issues.**
- **Always Stay Alert.**
- **Open 1 door at a time.**
- **When you call a inmate down to the pod make sure he returns to his cell before calling the next inmate out of his cell.**
- **When an inmate comes out of a cell be sure they secure the cell door .**
- **Study the Fire Evacuation Plan of all stations.**
- **All inmates needs to be patted down when leaving their cell to go to rec,attorney visits, church, library,etc.**
- **A - Pod, When doing showers in 46,48,49,50 collect razor, check condition, if altered contact supervisor immediately. keep razor in the pod for deputy picking up razors.**

WarrenCounty1448

page 4

**Trustee's :**

_____ **Was Advised of these trustee rules.**
- **No trustee is to enter another cell.**
- **Trustee is not to pass anything  from one cell to another.**
- **Trustee is not to stand at doors and talk to inmates through cell doors and windows.**
- **Trustee is to keep mop closet clean.**
- **Trustee is to be up by 2100.**
- **Only one trustee out at a time,  except for serving trays. (unless advised by supervisor)**
- **A - side, Trustee's are not to be in 47 hallway by himself, a deputy must be present.**
- **A - side Trustee's are not to be at  cell 46 by himself,  a deputy must be present.**

**Some Basic  Pod Tasks :**

_____ **Was advised of these Basic Pod  Task.**
- **Always read Pass - A - Longs every day.**
- **Always asked deputy you are relieving does he/she have anything to pass a long.**
- **Keep trustee in sight at all times.**
- **When doing A - Side ISO Checks take trustee with you.**
- **Alway's update pod board and head counts sheets when someone is added to cells or released.**
- **If you have to step pass the Restricted Area of the pod, lock the pod door.**

**All of (A Pod) and (B Pod) task  that I have Initial have been shown to me durring my training of the pods.**
**I have also been givin a copy of the A Pod & B Pod Training Sign Off Sheet to use as a  reference to run A-Pod and B-Pod.**

**Deputy:**_____

WarrenCounty1449

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
#### Page   1   Of   1

**NAME OF STAFF:   Jason Rigsby**

**DATE:   6-30-06**                                   **TIME:   0335**

**DETAILS OF INCIDENT: On the above date and time. I Deputy Rigsby was 5 minutes late for an H Dorm Isolation Check. I will not let this happen again.**

6-30-06 For Above incident, This deputy Will Recieve A Warning. Per Jail Standard, these checks must be done + done At the correct Time. It is Expected that his Job Performance Will Improve.

**REPORTING DEPUTY:**   Jason Rigsby          _Jason Rigsby_

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**   Cpt. Baker          _Capt. W. Baker 650_

**CHIEF DEPUTY:**

**JAILER:**

# Warren County Regional Jail

Phone (502) 843-4606



WarrenCounty1452

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** Deputy Rigsby

**DATE:** 8-03-06          **TIME:** 0230

**DETAILS OF INCIDENT:** On the above date and time I Deputy Rigsby Informed Deputy Beckner that I would get her H-Dorm check, while pulling the cleaning trustee out for cleaning. I forgot to do the check, which resulted in Deputy Beckner being Six minutes Late for an H-dorm check. This well not happen in the future.

8-3-06 For Above incident, This deputy will Recieve a WARNing. Per JAil StAnderds, These checks must be done Correctly. It is Expected that his Job preforming will improve

**REPORTING DEPUTY:** Jason Rigsby _(signature)_

**STAFF MEMBER:**

**SHIFT SUPERVISOR:** Capt. W. Baker 650

**CHIEF DEPUTY:** _(signature)_ #605

**JAILER:** _(signature)_

WarrenCounty1453

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:   Jason Rigsby**

**DATE:  8-18-06**                          **TIME:   0150**

**DETAILS OF INCIDENT: On the above date and time. I Deputy Rigsby informed Deputy Dena Beckner that I would get her detox check.  Due to being busy in booking I forgot to get the check.  This resulted in the check being 15 minutes late.  I well try not to let this happen again.**

8-18-06 FOR THE ABOVE INCIDENT, THIS DEPUTY WILL RECIEVE A WARNING. PER JAIL STANDARDS, THESE CHECKS MUST BE DONE AND DONE WITHIN THE CORRECT TIME FRAME.

**REPORTING DEPUTY:**   Jason Rigsby 673

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**   Capt. Baker 650

**CHIEF DEPUTY:**

**JAILER:**

# Warren County Regional Jail
Interoffice Memo

Date: 8-10-06
From: Jason Rigsby
To: Jackie T Strode
Re: Shift Change request

Due to my duties in the Marine Corps Reserve  I would like to be moved to 2nd shift when the next spot is open,  so I can have my weekends off for drill.

Thanks,  Deputy Rigsby

_Jason Rigsby_ _____    8-10-06
Signed                                              Date

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
Page   1   Of   1

**NAME OF STAFF:**   Jason Rigsby 673

**DATE:**   10/11/06                                    **TIME:**   1600

**DETAILS OF INCIDENT:** On the above date and approximant t ime I D eputy J ason Rigsby was 30 minutes late on Observation checks in booking. I well try to keep this from happening again.


10-12-2006 FOR ABOVE INCIDENT, THIS DEPUTY WILL RECIEVE A WARNING. PER JAIL STANDARDS, THESE CHECKS MUST BE DONE AND DONE IN THE CORRECT TIME FRAME. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE.


**REPORTING DEPUTY:**   Jason Rigsby 673

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**   Capt. Greg Martin 654

**CHIEF DEPUTY:**   Gayle Eston 605

**JAILER:**   Jackie T. Strode 600

WarrenCounty1456

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** Jason Rigsby 673

**DATE:** 10/11/06                              **TIME:** 1500

**DETAILS OF INCIDENT:** On the above date and time I Deputy Jason Rigsby failed to show up for 2nd shift meeting. I have no Excuse for my absence. I will try not to let this happen in the future.

10-12-2006 FOR NOT ATTENDING THE SHIFT MEETING, THIS DEPUTY WILL RECIEVE A WARNING. HE IS EXPECTED TO ATTEND ALL FUTURE MEETINGS.

**REPORTING DEPUTY:**        Jason Rigsby 673
**STAFF MEMBER:**
**SHIFT SUPERVISOR:**   Capt. Greg Martin 654
**CHIEF DEPUTY:**       Gayle Eston 605
**JAILER:**      Jackie T. Strode 600

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:**   Jason Rigsby 673

**DATE:**  2-28-2007                                    **TIME:**  2200

**DETAILS OF INCIDENT: On 2-21-2007 and on 2-23-2007 I Deputy Jason Rigsby had filled out a inmate time sheet for Inmate Rennel Avery.  For serving trays as a Trustee.  It was brought to my attention that my penmanship is very poor and it needs to improve. I am very sorry for a troubles this may have caused.**

3-1-2007 ALL STAFF HAVE BEEN ADVISED MANY TIMES TO MAKE SURE EVERYTHING THEY PRINT WRITE IS SO EVERYONE INCLUDING THE COURT CAN READ IT. FOR THE ABOVE ACTION THIS DEPUTY WILL RECIEVE A WRITTEN REPRIMAND. SHOULD THIS HAPPEN AGAIN, HE CAN EXPECT TO BE TRANSFERRED, SUSPENDED OR DISMISSED.

**REPORTING DEPUTY:**     Jason Rigsby 673

**STAFF MEMBER:**     Deputy Jason Rigsby 673

**SHIFT SUPERVISOR:**   Captain Greg Martin 654

**CHIEF DEPUTY:**    Gayle Eston 605

**JAILER:**    Jackie T. Strode 600

Warren County Regional Jail
Inmate Time Sheet

All work performed MUST be initialed by the on-duty deputy or no pay/credit will be given!
NO INMATE CAN WORK MORE THAN 40 HOURS PER WEEK AND NO MORE THAN 160 HOURS PER MONTH!
Start Time and Finish Time MUST be filled out in ink
**IF INMATE WORKS PAST MIDNIGHT - START A NEW DAY AND A NEW TIME!!!

Name: Rennel Avery          Month/Year: 2/20/07

| Date | Start Time | Finish Time | Supv Dep/Unit # | Work Description | Total Hours |
|------|-----------|-------------|-----------------|------------------|-------------|
| 2/20/07 | 0600 | 0700 | DS 640 | Trays | 1 |
| 2/20/07 | 0700 | 1100 | PM 614 | Trays/Clean | 4 hrs |
| 2-20-07 | 1700 | 1800 | BH 635 | trays | 1 hr |
| 2-21-07 | 0600 | 0700 | DS 640 | Trays | 1 hr |
| 2-21-07 | 0700 | 1100 | PM 614 | Trays/Clean/Trash | 4 hrs. |
| 2-21-07 | 1705 | 1806 | RC 63 | Trays | 1 hr |
| 2-22-07 | 0615 | 0645 | BH 671 | Trays | 30 m |
| 2-22 | 7:00 | 12:00 | SL 617 | Trays + Clean | 5 hrs |
| 2-22-07 | 1600 | 2000 | JC 615 | Trays / Clean | 4 hr |
| 2/23/07 | 0100 | 0145 | AM 616 | Trays | 45 m |
| 2/23/07 | 1200 | 1700 | RM 636 | Clean | 5 Hrs |
| 2-23-07 | 1700 | 1800 | JC 617 | Trays | 1 hr |
| 2-24-07 | 0600 | 0700 | TM 641 | Trays | 1 hr |
| 2/24 | 0700 | 0930 | RC 610 | Clean/Trays | 2.5 hrs |
| 2/25 | 0600 | 0630 | RS 647 | Trays | 0.5 hr |
| 2/25/07 | 0800 | 1000 | SC 677 | Clean | 2 hrs |
| 2-25-07 | 1700 | 1800 | UK 677 | Trays | 1 hr |
|  |  |  |  |  |  |

*Rigsby 673, Suysanavongb55, Herrington 671,*



**UNITED STATES MARINE CORPS**
COMPANY E
4TH TANK BATTALION
4TH MARINE DIVISION
MARINE CORPS RESERVE TRAINING CENTER
BUILDING 7241
FORT KNOX, KENTUCKY 401215125

IN REPLY REFER TO:
1500
TRNG
11 MAR 07

From:   Commanding Officer/Inspector-Instructor
To:     All Hands

Subj:   **DRILL LETTER FOR 13-15 APRIL 2007.**

1.   **SITUATION**
        Company E will conduct a 3 day (6 drill) period on 13-15 APRIL 2007.

2.   **MISSION**
        On 13-15 APRIL 2007 Company E will conduct Tank Table V/VI Training.

3.   **EXECUTION**

     A.   **CONFERENCE CALL WILL BE HELD ON MONDAY, 9 APRIL AT 1930 HRS (EST).**

     B.   **FRIDAY 13 APRIL AT 0700 HRS. ALL HANDS FORMATION** at the HTC in MARPAT WOODLAND UTILITIES with sleeves up. Staff meeting in the conference room at 0630 hrs. Time line and sequence of events will be finalized at that time.

4.   **ADMIN AND LOGISTICS**

     A.   **Drill Conflicts**

        Any member of Company E who cannot attend a regularly scheduled drill period must initially notify their section head or Platoon Sergeant with the reason of absence and dates to make up the absence. The request must then receive approval from the Commanding Officer in order to be an excused absence. All other absences not approved by the CO will be considered unexcused and may result in further disciplinary action. Any Marine living outside of 50 miles who needs billeting for a drill will need to sign up for a room prior to drill. Marines needing rooms should get with their Platoon Sergeant and send your requirement up the chain of command. Otherwise, billeting will not be available.

        Any Marine who requires a letter to employer must notify their Platoon Sgt during initial formation. Platoon Sgt's must give names to Admin no later than noon chow. A "letter to employer" request must be made during drill weekend. No requests will be taken after drill weekend.

     B.   **Training**

        (1)  MCI's - All personnel delinquent in MCI courses will not be eligible for promotion, including those currently behind on their lessons. Marines with any questions about their MCI or wanting to order an MCI should contact MCI directly by calling 1-800-MCI-USMC (1-800-624-8762) or by going to their web site at www.mci.usmc.mil.

        (2)  Weight Control - All personnel assigned to weight control will be weighed in, formally counseled as to his/her progress, and have their weight control folder updated each drill. All weight control Marines will run the PFT each drill. All PFT failures will run the PFT each drill.

WarrenCounty1460

C.   PROFESSIONAL DEVELOPMENT: Great sites for knowledge enhancement and other useful motivation.
www.usmc.mil: Official site of the Marine Corps (to view publications and FM's)
www.mfr.usmc.mil: Official site of the Marine Forces Reserve
www.mcu.usmc.mil: Professional reading list
www.marinenet.usmc.mil: Professional military education
www.tecom.usmc.mil:USMC College of Continuing Education
www.mypay.dfas.mil: Pay/LES info. MyPay enrollment is a mandatory requirement for all SMCR Marines. Ensure you are enrolled and your password is current.
https://www.dmdc.osd.mil/appj/esgr/index.jsp: The Reserve Affairs website is required to update your civilian employer.

D.   MAKE UP DRILLS: If you have been excused from or have been UA during any past drill periods, you are required to make those drills up within 30 days of missed training. Contact your Platoon Sergeant for details.

E.   MOL Account: Use this account frequently to maintain password validity.

F.   MARINE MENTORING PROGRAM:  STEEL SHARPENS STEEL
     As "Steel Sharpens Steel" so do Marines strengthen and hone their fellow Marines to better serve each other, their Corps and their Country.  Visit http://www.TECOM.USMC.MIL/MENTORING for program info.

G.   USEFUL "good to know" MARINE TERMINOLOGY:

     1) MCRAMM:    Marine Corps Reserve Administrative Management Manual
     2) MORDT:     Mobilization Operational Readiness Deployment Test
     3) TNPQ:      Temporarily Not Physically Qualified
     4) APES:      Automated Performance Evaluation System
     5) ACRS:      Automated Career Retention System
     6) IDT:       Inactive Duty Training
     7) RIDT:      Rescheduled Inactive Duty Training
     8) ATP:       Additional Training Period

6.   PEACETIME/WARTIME SUPPORT TEAM OIC'S COMMENTS:

     A. MCCS One Source.  This virtual one-stop shop for information, referrals, etc., is http://www.mccsonesource.com (user ID: marines; password: semper fi).

7.   COMMAND AND SIGNAL

     A.  Future drill dates are as follows:

| Month | Date | Drills | Event |
|-------|------|--------|-------|
| May-June | 28-11 | (AT) | Annual Training (TT VII/VIII/X/XII) T4T Initial Campaign Planning |
| June | 23-24 | (4) | CCTT |
| July | 28-29 | (4) | Maintenance Stand Down |
| August | 18-19 | (4) | CCTT/PFT |
| September | 13-16 | (7) | TT XII |

*Changed → From old list* (handwritten)

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page ___1___ Of ___1___

**NAME OF STAFF:**   Jason Rigsby 673

**DATE:**  5-21-07                                  **TIME:**  0800

**DETAILS OF INCIDENT:** On the above date and time I Deputy Rigsby was one hour late for my scheduled shift.  I had forgotten that I was to work from 0700 to 1500 on 5-21-2007.  I will try harder to remember my schedule shifts.  I understand that my absence caused a heavier workload on my fellow Deputies.  For this I apologize.

5-21-07 FOR THE ABOVE INCIDENT, THIS DEPUTY WILL RECIEVE A WARNING. THE TIME WILL BE DEDUCTED.

**REPORTING DEPUTY:**     Jason Rigsby 673

**STAFF MEMBER:**     Deputy Rigsby 673

**SHIFT SUPERVISOR:**   Capt. Greg Martin 654

**CHIEF DEPUTY:**     Gayle Eston 605

**JAILER:**    Jackie T. Strode 600



# Certificate of Attendance

## This is to certify that

*Jason Rigsby*

### Has satisfactorily completed 4 hours of the
### Behavioral Health Needs in Local Jails Training

This *7th* day of *December*, *2006*

Presented By:

**LifeSkills, Inc.**

Evelyn Libe MSW, CSW

Madelene Chandler MA
Liscenced Psych. Associate

WarrenCounty1463



# UNITED STATES MARINE CORPS

COMPANY E
4TH TANK BATTALION
4TH MARINE DIVISION
MARINE CORPS RESERVE TRAINING CENTER
BUILDING 7241
FORT KNOX, KENTUCKY 401215125

IN REPLY REFER TO:
1500
TRNG
19 AUG 07

From:   Commanding Officer/Inspector-Instructor
To:     All Hands

Subj:   **DRILL LETTER FOR 14-16 SEPTEMBER 2007.**

1.   **SITUATION**

Company E will conduct Reserve Drill Training for the period of 14-16 September 2007 at the Reserve Training Center.

2.   **MISSION**

On 14-16 September 2007 Company E will conduct MOUT training.

3.   **EXECUTION**

A.   CONFERENCE CALL WILL BE HELD ON MONDAY, 10 SEPTEMBER AT 1930 HRS (EST).

B.   FRIDAY 14 SEPTEMBER AT 0700 HRS. ALL HANDS FORMATION at the HTC in MARPAT DESERT UTILITIES with sleeves up. Staff meeting in the conference room at 0630 hrs. Time line and sequence of events will be finalized at that time

4.   ADMIN AND LOGISTICS

A.   Drill Conflicts.

Any member of Company E who cannot attend a regularly scheduled drill period must initially notify their section head or Platoon Sergeant with the reason of absence and dates to make up the absence. The request must then receive approval from the Commanding Officer in order to be an excused absence. All other absences not approved by the CO will be considered unexcused and may result in further disciplinary action. Any Marine living outside of 50 miles who needs billeting for a drill will need to sign up for a room prior to drill. Marines needing rooms should get with their Platoon Sergeant and send your requirement up the chain of command. Otherwise, billeting will not be available.

Requests for Letters to Employers must be made each month for the following month's drill period. Any Marine who requires a letter to employer must notify their Platoon Sgt during initial formation. Platoon Sgt's must give names to Admin no later than noon chow. A "letter to employer" request must be made during drill weekend. No requests will be taken after drill weekend.

B.   Training

(1)   MCMAP - During Drill, Marines will be able to sustain and participate in Marine Corps Martial Arts Program (MCMAP) training **Marines will be required to bring a mouthpiece in order to participate in belt level training.** Marines will be obtaining sustainment hours necessary to advance to the next highest belt level, as well as beginning higher level training. All Marines with injuries or physical ailments will need to be cleared by medical in order to participate in martial arts field exercises. Optional gear can include but is not limited to Wrist Wraps and Personal Groin Protection. Any Marines

WarrenCounty1464

Brenda Lewis



naacp
P.O Box 1357
city           42101

JASON
RIGSBY

To whom it Concern                    Sept 26-07
My son Chris. Lewis was arrested on aug 11-07
For rape charge. recent then It been Trouble in
that Jail cell. Chris did not rape the girl he Black
she white a drug user real Bad. She did not
go to sheriff that monday Like she supose to
she been running, She tell people Chris did
not rape her chris has been in Jail 45 day's
or longer I got witness it tell how they
Beat them up But a mast over chris face
you could her him hollowing I cannot Breathe
all I ask Form you all help me get my
son out. I fell Back in march 21-06 I
Broke meknee I can hardly walk I
am a big Diebetie person Take SHot and
medication please please help me with
Chris I do not have 50 thousand dollan
For bond he lawyer tried to go with seanity
Bond for him this Past monday But the Found
the girl friday night. so they kept chris
in Jail to me it all precese to Black in
there he is a paper Form one of the
Jail emate's that was in then Saw what
happen in the Here his number (270) 586-3664
his name is Joe malone

                              Thank you
                              Brenda Lewis
                              1124 North hee St
                              City      42101
Phone (270) 546-2617

①

To Who It may concern

I Joseph malone will testify that ~~was~~ was a wittness that Criss lewis and I. plus others cell mates was called a nigger on the night of Aug. 15, 07 by one of the guards of the Jail of warren co Jail, we was miss treated and beaten and tazed, mazed all because that I was trying to get Criss some medical help during the time, Criss lewis was having some chest pain, look like he was Trying to have a ceaser, he was shaking and sweating. unresponable, so officer C. compton came In and tryed to talk to Criss. he said Criss Criss this Is officer compton, I know you dent like me but I need you to talk to me ok criss buddy hey Criss come back to me ok, but before that I was talking to officer J. Rigsby badge number 673 on the speaker about getting medical help for Criss. ~~and~~ at the time I had pushed the button about 3X. The guard whitch was J. Rigsby bage number 673. told me when he stop breathing then push the button then all of us looked at one another and said thats was wrong

WarrenCounty1467

2

during this time about 30 to 45
min. had past, larry the male nurse
came In and checked on Criss,
well they put him In the hole, and
all because I said criss do you want me
to call you mother and I ▓▓ was called
a nigger. so about 2 wks pasted
by Criss tryed to killed himself
by stuffing tolit paper down his
throut. ▓ at this time when Criss tryed
to do this he was put In the hole
and thats when they came after me
and took me down and hurt me but
back to criss. Well he was In Cell
28 sleeping on the floor I notice that
Criss didn't look well. he was trying to
tell us what happend to him the guards
made us go on to our cell that night
when Criss came back to the cell
he told us about how they miss
treated him and taze and mazed
also put that mask over his face.
when his nose started to bleed he
ask them to get this thing off
his face. we heard him from
the front to the back hollowing,

can't tell you the rest
when or needed to. ok
                wittness for Criss lewis
        c) Joseph malone

WarrenCounty1468

# WARREN COUNTY REGIONAL JAIL
### 920 KENTUCKY STREET
### BOWLING GREEN, KY. 42101-
### Phone: (270) 843-4606   Fax: (270) 843-5317
### (INTAKE)

| | | |
|---|---|---|
| Booking# | Jacket# | |
| 95518 | 56352 | |
| Cell# | Locker# | |
| 46 | | |

Social Security #: ▮▮▮▮  D.L.#: /  Date Of Birth: ▮▮▮▮ (20)  Mittimus #: 0

| | | | |
|---|---|---|---|
| Race: **B** | Sex: **M** | Height: **601** | Weight: **162** | Length: |
| Hair: **BLK** | Eye: **BRN** | Complexion: **DRK** | Hispanic: **N** | Beard: **Y** |
| Mustache: **Y** | Glasses: **Y** | Military Agency: | | Gang: **NONE** |

Race: **B**   Sex: **M**   Height: **601**   Weight: **162**   Mittimus #: 0   Length:
Hair: **BLK**   Eye: **BRN**   Complexion: **DRK**   Hispanic: **N**   Beard: **Y**
Mustache: **Y**   Glasses: **Y**   Dominant Hand: **R**   Military Agency:   Gang: **NONE**
Religion: **BAPTIST**   Marital Status: **S**   Place Of Birth: **WARREN**   Escape Risk: **N**
Country: **USA**   Diet Restriction:   Citizen: **Y**   # Of Children:
Features:
Aka:
Employer: ▮▮▮▮   Work Phone: (  ) -
Kin Name: ▮▮▮▮   Relationship: **MOTHER**
Address:
Phoned Who:   Phone #: (  ) -
Intake Date: **08/12/2007**   Time: **13:23**   Intake Officer: **CS04 - SEAT, CHRISTOPHER**
Arrest Date: **08/12/2007**   Time: **12:52**   Officer: **BUTLER**
Searching Officer: **CS04 - SEAT, CHRISTOPHER**
Arresting Agency: **WCSO**   Transporting Agency: **WCSO BUTLER 435**   Location: 451 BRISTOW RD
Bond Description: **SEE CHARGE SCREEN**   Bond Amt: **50000**
Vehicle Towed By:   Agency Responsible: 114  - WARREN
CR#:   Prison #:   Inmate Class: **C**   Suicide Watch:
Holders:
Trustee:   Mental Illness:   Weekender:   Violent:
Release Date:   Time:   Officer Id:
Released By:   Released To:   Out Weight:   Prior Bookings: 5

Transporting Officer:_____
Inmate_____ C/O _____

| CHARGE | DESCRIPTION | TERMS | BOND | WARRANT | CT | DATE | TIME | DEPT |
|---|---|---|---|---|---|---|---|---|
| 11023 | RAPE-1ST DEGREE-IDENTIFY WEAPON  [1 | ACTIVE-CASH | 50000 | | BP | / / | | 114 |
| 3005 | MENTALLY ILL & A DANGER TO SELF  [1 | NO BOND | 0 | | W | / / | | 114 |
| 11000 | RAPE 1ST DEGREE *AOC USE ONLY*  [1 | CASH | 50000 | | W | / / | | 114 |




WarrenCounty1469

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT

Page _____ Of _____

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| CHRIS LEWIS | NFU | 3B |
| | | |
| | | |
| | | |

**DATE:**  08-16-07   **TIME:**  15:30   **LOCATION:**  46

DETAILS OF INCIDENT: ON ABOVE DATE AND TIME INMATE LEWIS HAD BEEN IN A-SIDE ATTORNEY/CLIENT ROOM WITH HIS ATTORNEY. I C.D. ESTON WENT AND GOT HIM OUT OF THE ROOM AND ASK HIM WHERE HE CAME FROM AND HE REPLIED MEDICAL 46. INMATE LEWIS WAS SUPPOSE TO BE IN DETOX IN MEDICAL OBSERVATION PER MEDICAL. I WENT TO 46 AND LEWIS WAS TRYING TO USE THE PHONE. I TOOK HIM OUT OF 46 AND HE STARTED LAUGHING BECAUSE HE THOUGHT IT WAS FUNNY TO GIVE FALSE INFORMATION TO STAFF. HE WILL BE PLACED IN DISCIPLINARY ISO. FOR 24 HRS. WHEN HE IS RELEASED BY MEDICAL FOR GIVING FALSE INFORMATION TO STAFF.

USE OF FORCE CODES:
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

COMMENTS

REPORTING DEPUTY: C.D. ESTON

WITNESS: _____

SUPERVISOR: _____

CHIEF DEPUTY: _____ #605

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1470

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT

Page __1__ Of __1__

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Christopher Lewis | R C | 1-O |
| | | |
| | | |
| | | |

DATE: __9-6-2007__   TIME: __11:20__   LOCATION: __Next to 28__

**DETAILS OF INCIDENT:** On this date myself and Tom Maxwell was placing Christopher Lewis in the restraint chair he kept saying he was not done yet he was going to kill his self just like his cousin did. Chris said that his life was done that he was not ever going to see anyone or see the outside ever he was done. He told us that he was going to do the same thing over and over when he gets out of the chair and that we can't keep him in the chair forever. He said that the inmates in the medical cell told him that he was done he was never getting out and that he was getting the death chair and he should just kill hiself.

**USE OF FORCE CODES:**
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

REPORTING DEPUTY: Kevin Harrod

WITNESS: Tom Maxwell #676

SUPERVISOR: Greg Martin

CHIEF DEPUTY: Gayle Eston #605

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT
### Page __1__ Of __1__

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Chris Lewis | NFU | 4A |
| | | |
| | | |
| | | |

DATE: __09-06-07__   TIME: __1139__   LOCATION: __Restraint Chair @ 28__

**DETAILS OF INCIDENT: Inmate Lewis was placed in the restraint chair. As inmate Lewis began to vomit I held the small trashcan up for his use. This was when inmate Lewis repeatedly stated "gimme some more toilet paper," "I'm not finished," I wanna die," "will kill myself can't be stopped," "they took my newborn son," they took my medicine," "I want my moma." Deputy Phyllis Pendleton assisted and heard the above inmate state his continued comments about hurting himself.**

USE OF FORCE CODES:
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

REPORTING
DEPUTY:   Sgt. Michelle Buchanan

WITNESS:   Dep. Phyllis Pendleton

SUPERVISOR:   Capt. Greg Martin

CHIEF DEPUTY:   CD Gayle Eston

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1472

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT
Page _____ Of _____

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| CHRIS LEWIS | MR, PR, TA(laser only) | 1O |
| | | |
| | | |
| | | |

DATE: __09/06/07__   TIME: __1110__   LOCATION: __CELL #46__

DETAILS OF INCIDENT: On Thursday, September 06, 2007, approximately 1110, the Main Control Operator, Deputy Christy Ware, made an all call to cell #46. As deputies entered cell #46, inmates were pointing towards the bathroom and stating he is trying to kill himself. Deputy Gary Madison entered the bathroom and discovered I/M Chris Lewis stuffing toilet paper in his mouth and down his throat with a spoon. Madison restrained Lewis and assisted escorting him to the floor. I, Lt. Shawn Whittlesey, then gave loud clear orders to Lewis to spit out the toilet paper. I then had Madison place mechanical restraints on Lewis's hands, while I supported his head. Lewis began to struggle against Madison as he attempted to restrain his left arm in the restraints. I then activated the X-26 Taser serial #X00-153817 and placed it on Lewis left shoulder and ordered him to stop resisting. Lewis complied and was placed in restraints. I ordered all other inmates to be removed from the cell and placed in the A-side gym. Medical arrived and examined Lewis, and deemed it necessary to place Lewis on suicide watch in cell #28. Capt. Martin advised to place Lewis in the restraint chair. Lewis was placed in the restraint chair without further incident.

USE OF FORCE CODES:
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

REPORTING DEPUTY: Lt. Shawn Whittlesey

WITNESS: Deputy Gary Madison

SUPERVISOR: Capt. Greg Martin

CHIEF DEPUTY: Chief Deputy Gayle Eston

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1473

# WARREN COUNTY REGIONAL JAIL
### 920 KENTUCKY STREET
### BOWLING GREEN, KY. 42101-
Phone: (270) 843-4606   Fax: (270) 843-5317
(*RELEASE*)

| | |
|---|---|
| Booking# | Jacket# |
| **95321** | **64930** |
| Cell# | Locker# |
| **46** | |

Social Security #: ▮▮▮▮    D.L.#: **KY/M93009731**    Date Of Birth: ▮▮▮▮ **(43)**    Mittimus #: 0

| | | |
|---|---|---|
| Race: **B** | Sex: **M** | Height: **600** |

Weight: **230**    Length: **SHOT**
Hair: **BLK**    Eye: **BRN**    Complexion: **LGT**    Hispanic: **N**    Beard: **Y**
Mustache: **Y**    Glasses: **N**    Dominant Hand: **R**    Military Agency: **NONE**    Gang: **NONE**
Religion: **BAPTIST**    Marital Status: **D**    Place Of Birth: **ATHENS, AL**    Escape Risk: **N**
Country: **USA**    Diet Restriction:    Citizen: **Y**    # Of Children:
Features: **NONE**
Aka: **NONE**
Employer: **UNEMPLOYED**    Work Phone: ( )  -
Kin Name ▮▮▮▮▮▮▮▮    Relationship: **FIANCE**
Address:
Phoned Who:    Phone #: ( )  -
Intake Date: **08/05/2007**    Time: **01:32**    Intake Officer: **JG04 - GRIMES, JOSEPH "JOEY"**
Arrest Date: **08/05/2007**    Time: **01:00**    Officer: **ROBINSON**
    Searching Officer: **BB03 - BRYAN, BRANDON**

Arresting Agency: **WCSD**    Transporting Agency: **ROBINSON/ WCSD**    Location: NASHVILLE RD/ HWY
Bond Description: **SEE CHARGE SCREEN**    Bond Amt: **6,000.00**
Vehicle Towed By:    Agency Responsible: **114  - WARREN**
CR#:    Prison #:    Inmate Class: **C**    Suicide Watch: **N**
Holders:
Trustee: **N**    Mental Illness: **N**    Weekender: **N**    Violent: **N**
Release Date: **09/17/2007**    Time: **18:46**    Officer ID: **CS04**
Released By:    Released To: **999**    Out Weight:    Prior Bookings: 1
Bond Out Type: **SU**    Disposition: **REL SURETY BOND**
Transporting Officer:_____
Inmate_____    C/O_____

| CHARGE | DESCRIPTION | TERMS | BOND | WARRANT | CT | DATE | TIME | DEPT |
|---|---|---|---|---|---|---|---|---|
| 01150 | FAILURE TO APPEAR, CITATION FOR [1 | SURETY | 6000 | | MH | 11/06/2007 | 13:00 | 114 |
| 13114 | ASSAULT-3RD DEGREE-INMATE ASSAU [1 | REL COURT ORDE | 0 | | BP | / / | | 114 |
| 00796 | ASSAULT, 4TH DEGREE (MINOR INJU [1 | SEE ABOVE | 0 | | BP | / / | | 114 |
| 00796 | ASSAULT, 4TH DEGREE (MINOR INJU [1 | SEE ABOVE | 0 | | BP | / / | | 114 |




WarrenCounty1474

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT
### Page 1 Of 2

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Joe Malone | PR, MR, TA, OC, | 3A, 3I, 1C |
| | | |
| | | |
| | | |

**DATE:** 08-15-2007 **TIME:** 2150 **LOCATION:** Cell 46

**DETAILS OF INCIDENT:** On the above date and time deputy J. Rigsby and myself Deputy D. Sanders was sent to cell 46 to get the above mentioned inmate for isolation. As I entered the cell I asked this inmate if he would like to pack his property because he would be going to isolation. He then stated that " I am not going to the fucking hole yall are going to have to kill me yall are crazy". At this time Deputy J. Rigsby then called all deputies to 46 and I then gave several orders for this inmate to lay face down and put his hands behind his back. I then pulled my OC can and continued to give him orders. At this time Lt. Compton, Capt. James, Deputies C. Bray and T. Seat entered the cell and Lt. Compton ordered this inmate to lay face down and inmate refused. At this time Lt. Compton then drew his Taser and gave him several orders inmate Malone still refused to follow orders at which this time the Taser was deployed. Once the cycle was running the above inmate reached down and pulled out the probes and threw them at us because it was a ineffective shot and then Lt. Compton went in for a drive stun as Deputy Rigsby and myself was going to restrain the subject. He then punched Lt. Compton in the face along with a closed fist punch to the right side of my face and scratched my right forearm. Once Deputy Rigsby seen that myself and Lt. Compton was struggling he then stepped back and then contaminated his facial area with OC at this time but the inmate continued to fight. Once we started pulling him from under his bunk he then clinched my genitals. At this time I swatted his arm and then this inmate was sprayed with OC again and this time the OC took full affect.

8-16-07 Inmate U.11 be Put in Administrative Segregation JTS

JTS

**USE OF FORCE CODES:**
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

**REPORTING DEPUTY:** Deputy Derrick Sanders

**WITNESS:** Deputy Jason Rigsby

**SUPERVISOR:** Captain Kim James

**CHIEF DEPUTY:** Chief Deputy Gayle Easton

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1475

# WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT CONTINUATION

Page __2__ Of __2__

**NAME OF INMATE(S):** __Joe Malone__

**DATE:** __08-15-2007__          **TIME:** __2150__

**DETAILS OF INCIDENT:** The inmate was then escorted to his bunk face down and then mechanical restraints was applied by Deputy C. Bray. Once cuffed myself and Deputy Seat escorted this inmate to a single man cell in detox were he was given orders to place his hands on his head after the mechanical restraint was removed. No further incident happened. All actions were taken for the safety and the security of the Warren County Regional Jail, Staff and other inmates.

**DEPUTY SIGNATURE:**   Deputy Derrick Sanders

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT
### Page  1  Of  2

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Joe Malone | TA, PR, OC, MR | 3A, 3I, 1C |
|  |  |  |
|  |  |  |
|  |  |  |

**DATE:**  8/15/07   **TIME:**  2150   **LOCATION:**  Cell 46

**DETAILS OF INCIDENT:** On the above date and time, Deputy Derrick Sanders and myself Deputy Jason Rigsby were sent to Cell 46 to escort Inmate Joe Malone to Observation for 24hrs for disruptive and disrespectful behavior toward staff. Once entering the cell I told Inmate Joe Malone to pack his property because he was going to observation for 24hrs. Inmate Malone then stated "I'm not going to the fucking hole, yall are going to have to kill me, yall crazy" At this time I radioed for all Deputies to Cell 46. At this time Deputy Sanders gave several orders Inmate Malone to lay face down on the floor and to place his hands behind his head, Deputy Sanders then takes out is OC can and repeats his orders. At this time Captain Kim James, Lieutenant Chris Compton, and Deputies Chris Bray, and Tony Seat arrive at Cell 46 to assist. Lt. Chris Compton then told Inmate Malone that he was going to observation. Inmate Malone still refused to obey lawful orders. Lt. Chris Compton then pulls his tazer and gave Inmate Malone orders to come with us to observation. With Inmate Malone refusing to follow lawful orders Lt. Compton then deployed his Taser. Inmate Malone then pulled the probes and threw them because of a ineffective shot. At this time Lt. Compton went in for a drive stun and Inmate Malone punched Lt. Compton in the facial area. I then went to assist Lt. Compton and Deputies D. Sanders, C. Bray, and T. Seat to restrain Inmate Malone. I received some kicks to the legs in the process to restrain Inmate Malone, Inmate Malone then wrestled his way to the floor with Lt. Compton still trying to drive stun Inmate Malone to no success. At this time I deployed a burst of OC from can (MFG 04 LOT#OC05 F4B

*8-16-07 Inmate Will be Put in Administrative Segregation.* JTS
1/600

**USE OF FORCE CODES:**
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

**REPORTING DEPUTY:**  Jason Rigsby 673

**WITNESS:**  Lt. Chris Compton, Deputies Derrick Sanders, Tony Seat, Chris Bray  Lt C Compton  Derick B

**SUPERVISOR:**  Captain Kim James 698

**CHIEF DEPUTY:**  Gayle Eston 605

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

## WARREN COUNTY JAIL INMATE  INCIDENT/OFFENSE
## REPORT CONTINUATION
Page __2__ Of __2__

**NAME OF INMATE(S):**  **Joe Malone** _____  _____  __

**DATE:** __8/15/2007__          **TIME:** __2150__ _____  __

**DETAILS OF INCIDENT:** 0116294) to Inmate Malone facial area. Inmate Malone was still being combative with Deputies and quickly got under his bunk. We then ordered the other Inmates out of the cell. Then Inmate Malone exited from the bottom of his bunk and jumped up, at this time Lt. Compton deployed a burst of OC from his can into Inmate Malone's facial area. At this time Inmate Malone was placed in mechanical restraints and was escorted to observation by Deputies Derrick Sanders and Tony Seat. All actions were taken for the safety and security of the WCRJ, Inmates, and staff.

**DEPUTY SIGNATURE:**    Jason Rigsby 673 _____   _Jason Rigsby_ _____

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT

Page __1__ Of __1__

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Joseph Malone, Sr. | nfu | 3A,3I, |
| | | |
| | | |
| | | |

DATE: __08/15/07__   TIME: __2140__   LOCATION: __46__

**DETAILS OF INCIDENT:** On the above date and time, I Capt. Kim James responded to an all call to cell 46 for medical reasons. Inmate Chris Lewis was laying on his bunk crying, rocking back and forth. Inmate Joseph Malone stated, "This inmate is having a seizure and you don't care, but you will when I call his momma." I then asked this inmate if he was a doctor, with no reply. There was a foul odor in this cell at this time during the all call. I then asked if someone was eating tuna. The above inmate then stated "It is probably you," and then mumbled something else. As the inmate that was complaining of chest pains was being taken out of the room via wheelchair, the above inmate stated, "Hey Chris, give your momma's number so I can tell her what's going on and make some trouble for her (referring to me.)" The inmate that was complaining of chest pains was placed in holding for medical observation, and I, Capt. Kim James sent Dep. Jason Rigsby and Derrick Sanders to bring inmate Malone to observation for a period of 24 hours for his above behavior. This is for the safety and security of this inmate, staff, jail and other inmates. See further reports from Dep. Sanders, Dep. Rigsby, and Lt. Compton.

8-16-07  Inmate will be Put in Administrative Segregation  JTS  4/600

USE OF FORCE CODES:
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

REPORTING
DEPUTY:   Capt. Kim James   _Capt Kim James_

WITNESS:   Dep. Rigsby

SUPERVISOR:   Capt. Kim James   _Capt Kim James_

CHIEF DEPUTY:   Gayle Eston   _Gayle Eston_

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1479

## WARREN COUNTY JAIL INMATE  INCIDENT/OFFENSE REPORT
### Page _____ Of _____

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Joseph Malone | TA, OC, PR, MR | 1N, 3A, 3I |
| | | |
| | | |
| | | |

**DATE:** 8/15/07   **TIME:** 2150   **LOCATION:** 46

**DETAILS OF INCIDENT:** On the above date and approximate time, Deputy Jason Rigsby made an all call to cell 46. I already knew that Deputy Rigsby and Deputy Derrick Sanders were at 46 to escort Inmate Joseph Malone to observation for an earlier incident. Upon my arrival, I saw that Deputy Derrick Sanders had his OC spray canister out and was ordering Inmate Malone to the floor to be handcuffed. At that time, I approached the situation and Inmate Malone said that the was not going to observation. Due to the fact that Deputy Sanders had already pulled his OC canister, I drew Taser X00-176966 and pointed it at Inmate Malone and I told him that he was going to observation and I ordered him on to the ground. He refused to obey my orders. After repeating the order, I realized that Inmate Malone was not going to follow our commands so I activated the Taser with cartridge H06-494539 but the probes did not make a good contact. At that time, I went in for a drive stun to make connection and Inmate Malone began punching. He struck me in the left side of my face with a closed fist with contact that was hard enough to cause, pain, swelling, and bruising. He caused injury to Deputy Sanders by punching him in the face with a closed fist. At that time, I shouted for someone to contaminate Inmate Malone, and OC was deployed but he continued to actively fight by kicking his legs and punching. At this point, Inmate Malone kicked and made contact with Deputy Chris Bray on his right arm, causing a scrape. Inmate Malone stood up with both fists up as if he was going to continue to fight and I deployed a burst of OC to Inmate Malone's facial area. LOT FX4003647 He was taken to the ground and place in mechanical restraints and escorted to observation. Inmate Malone was charged with one count of Assault 3rd Degree and 2 counts of Assault 4th degree. Inmate Malone was placed in an observation cell for at least 48 hours or until after reviewed by the jailer, or chief deputy. All actions were taken for the safety and security of the jail, staff, and inmates.

8-16-07 Inmate will be put in Administrative Segregation.
JTS
4600

**USE OF FORCE CODES:**
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

**REPORTING DEPUTY:** Lt C Caston 696

**WITNESS:** Greg Hicks 675, _____

**SUPERVISOR:** Capt. Kim James

**CHIEF DEPUTY:** Jayfe Esh

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1480

# WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT

## Page  1  Of  1

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Joseph Malone | NFU | 4A |
|  |  |  |
|  |  |  |
|  |  |  |

DATE:   8/17/07   TIME:   1124   LOCATION:   50

**DETAILS OF INCIDENT:** At approx. 1103 I, Deputy Mackin, was serving trays on A-Side. A tray was placed in cell #50's food flap for Inmate Joseph Malone. Inmate Malone stated that he needed me to bring the tray to him because he could not move. I advised Inmate Malone that I was not going to do this and that he needed to get up and retrieve his tray. At approx. 1118 I did an A-Side isolation check. At this time I noticed that Inmate Malone's tray was no longer in his food flap. The tray was on the ground next to the inmate's bunk, and there was no food left on the tray. At approx. 1124 Capt. Greg Martin and I went into cell #50 to retrieve the inmates tray. I advised medical that Inmate Malone had moved to get his tray from his food flap. This report was written for the safety and security of the staff, facility, and other inmates of the Warren County Regional Jail.

**USE OF FORCE CODES:**
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

REPORTING
DEPUTY:   Deputy Richard Mackin

WITNESS:

SUPERVISOR:   Capt. Greg Martin

CHIEF DEPUTY:   C.D. Gayle Eston

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

WarrenCounty1481

## WARREN COUNTY JAIL INMATE INCIDENT/OFFENSE REPORT
### Page __1__ Of __1__

| NAME OF INMATE(S) | USE OF FORCE CODE(S) | OFFENSE CODE(S) |
|---|---|---|
| Joseph Malone | NFU | 4A |
| | | |
| | | |
| | | |

**DATE:** 8/16/07   **TIME:** 1043   **LOCATION:** Court Hallway

DETAILS OF INCIDENT: On the above date and at the approximate time, I Deputy Gary Madison was escorting Inmate Malone with three other inmates from the courthouse door back to their respective cell; when Mr. Malone stopped and said his legs were going numb. I helped Mr. Malone from a standing position to a setting position with his back to the wall and call for a rover to bring a wheelchair to finish the transport. While waiting for the wheelchair I explained to Mr. Malone that I was not going to remove his handcuff or leg restraints but was going to check and see if any were too tight. I checked all restraints and they were just as they were when he had walked to the Courthouse Door at 0755 earlier today. Mr. Malone stated it was not the restraints but the back problems that caused the numbness. Lieutenant Whittlesey arrived with the wheelchair and we helped Mr. Malone into the wheelchair by following his Mr. Malone's instructions, allowing him to turn on his right side and get up on his good leg.

USE OF FORCE CODES:
NFU: No Force Used
PR: Physical Restraint
RC: Restraint Chair
MR: Mechanical Restraint
OC: O.C. Spray
BA: Baton
BB: Bean Bag Round
DD: Diversionary Device
PB: Pepper Ball
TA: Taser

**REPORTING DEPUTY:** Deputy Gary Madison 620

**WITNESS:** _____

**SUPERVISOR:** Captain Greg Martin 654

**CHIEF DEPUTY:** Gayle Eston 605

***SEE REVERSE SIDE FOR OFFENSE AND CODES***

## WARREN COUNTY REGIONAL JAIL
### Inmate Grievance Form

Inmate's Name: Joseph Malone  Cell: A46  Date: 8-15-07

Nature of Grievance:

I very very pissed about the way
the pod operator when I called about
Criss Lewis heart conditson the man
In the pod was 673 Jason Rigsby
said to me when he stop Breathing
Push the button, and made Racet Remarks
about wiggers and the nurse
Kat Stalle should be removed from
Nursing because she wouldnt come
In and check on criss and give
him his medication I very pissed
about the hole sitavion youknow
I don't start any Trouble when I am
In here but it gets worse day
by day these guards talk to us

there will be something done
about This Guy if he gave
his Real Name and badge
Number.

Please make a copie
for me bring It to me


Joe Malone
Inmate's Signature

### Investigator's Response

Will Speak with the Deputy in
the Pod. Upon inquired 2 deputies.

Copy Requested - only has 4¢ on account.
Advised he can get copy
when he has money to
pay for it. DE

_Dwyle Eston_
**Investigator's Signature**

8-22-07
Date

I acknowledge that this response was to my grievance dated _____.

X _Joseph Malone_
Inmate's Signature

**********************DO NOT WRITE BELOW THIS LINE**************************

Received by: _____    Date: _____
Forwarded to: _____   Date: _____
Returned to: _____    Date: _____

WarrenCounty1484

WARREN COUNTY REGIONAL JAIL
Inmate Grievance Form

Inmate's Name: Joseph mabne Cell: A46 Date: 8-15-07

Nature of Grievance:

I very very Pissed about the way
the pod operaton when I called about
Criss Lewis heart conditson. the man
In the pod was 673. Jason Rigsby
said to me when he stop Breathing
Push the button, and made Racet Remarks
about niggers and the nurse
Kat stolle should be removed from
Nursing because she wouldnt come
In and check on criss and give
him his mecication I very Pissed
about the hole sitauiton youknow
I don't start any Trouble when I'am
In here but I Gets worse day
by day these guards talk to us

there will be something done
about This Guy if he gave
his Real name and badge
number.

Please make a copie
for me bring t + to me
soon,
Please Read +
Respond.
Joe #605

Joe Malone
Inmate's Signature

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:**   Jason Rigsby

**DATE:**  8/22/2007                                **TIME:**  2223

**DETAILS OF INCIDENT:** On 8/15/2007 while relieving Sgt. Eddie Pendelton from Main Control an inmate pushed the button for the operator. I answered and advised them that I would let medical know that and inmate was having chest pains. I advised the inmate on the speaker that I would notify medical. I then called medical (Nurse Higgins) told me that he would go by but he would need to fell out a medical request. Before I could finish my conversation with Nurse Higgins the buzzer was going off again. I then answered and told the inmate unless it was a emergency not to continue to push the button I also advised the inmate that medical was on his way but the inmate would need to fill out a medical request. I could tell that the inmate wasn't very happy with what I told him but I felt the situation was under control. At the time I was in main control I didn't know the inmates name was talking to only that the inmate who need medical was named Chris. I at no time did I make any racial comments nor did I even know that the inmate I was talking to was of a different race. I was relieved by Sgt. Eddie Pendelton shortly after talking to the inmate and responded to 46 when Nurse Higgins was summoned to assist Inmate Chris Lewis. I did until I seen the grievance that the Inmate on the speaker was Inmate Joseph Malone

**REPORTING DEPUTY:**   Jason Rigsby 673

**STAFF MEMBER:**   Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Kim James 698

**CHIEF DEPUTY:**   Gayle Eston 605

**JAILER:**   Jackie T. Strode 600

# WARREN COUNTY JAIL INMATE  INCIDENT/OFFENSE REPORT

Page _____ Of _____

**NAME OF INMATE(S):** CHRIS LEWIS + JOSEPH MALONE

**DETAILS OF INCIDENT:** Bob Dean Brought By A Complaint From Brenda Lewis Which Was Sent To The NAACP.

228 PM Talked With Deputy Sanders. He stated He Never Heard The "N___HAD SAID___" Word Used. He stated That He Heard An Inmate Say Deputy Rigsby Was Racist.

242 PM Talked With Lt. Compton. He Stated He Never Heard The "N" Word. He stated He Did Not Remember Anyone Saying Jail Staff Were Racist.

245 PM Talked With Capt Kim James. She Stated She Never Heard The "N" Word. She Did Say That Inmate Malone Stated That Jail Staff Were "White Red Neck Racist."

* Deputy Rigsby Has A Report That He Did That Day.

* x I do Not Feel Any Deputy Made Any Remarks. I Feel They Were Proffesional. At All Times.

**DEPUTY SIGNATURE:** Jack T Strol Jailer

WarrenCounty1487

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:**   Jason Rigsby 673

**DATE:**  10/11/2007                                  **TIME:**   1842

**DETAILS OF INCIDENT:** On the above date and time I Deputy Rigsby was 15 minutes late for a detox check. I will try harder not to let this happen in the future.

10-12-07  FOR ABOVE, THIS DEPUTY WILL RECIEVE A WARNING. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE. JTS

| | | |
|---|---|---|
| **REPORTING DEPUTY:** | Jason Rigsby 673 | |
| **STAFF MEMBER:** | Jason Rigsby 673 | |
| **SHIFT SUPERVISOR:** | Captain Kim James 696 | |
| **CHIEF DEPUTY:** | Gayle Eston 605 | |
| **JAILER:** | Jackie T. Strode 600 | |

WarrenCounty1488

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** Sergeant Jason Rigsby

**DATE:** 12-13-07

**TIME:** 0800

**DETAILS OF INCIDENT:** On the above date and time I Sergeant Jason Rigsby was one hour late for my scheduled duty time. I understand that my absence causes a conflict in the daily operations of the jail. I am very sorry for putting the extra workload on my coworkers. I will try to not let this happen again in the future.

12-14-07 FOR THE ABOVE INCIDENT, THIS DEPUTY WILL RECIEVE A WARNING. THE TIME (1 HOUR) WILL BE DEDUCTED.
JTS

**REPORTING DEPUTY:** Sergeant Jason Rigsby 673

**STAFF MEMBER:** Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:** Captain Greg Martin 654

**CHIEF DEPUTY:** Gayle Eston 605

**JAILER:** Jackie T. Strode 600

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** Sergeant Jason Rigsby

**DATE:** 1-22-2008                    **TIME:** 0745

**DETAILS OF INCIDENT:** On the above date and time I Sergeant Jason Rigsby was 45 minutes late for my scheduled shift. I am very sorry for my tardiness. I was late due to oversleeping I will try harder not to be late for my scheduled work shift.

1-22-08 FOR ABOVE INCIDENT, THIS SGT WILL RECIEVE A WARNING, THE TIME WILL BE DEDUCTED.

**REPORTING DEPUTY:** Sergeant Jason Rigsby 673

**STAFF MEMBER:** Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:** Captain Greg Martin 654

**CHIEF DEPUTY:** Gayle Eston 605

**JAILER:** Jackie T. Strode 600

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** Jason Rigsby

**DATE:** 3/9/08                    **TIME:** 0725

**DETAILS OF INCIDENT.** On the above date and time I Sergeant Jason Rigsby was 25 minutes late for my scheduled shift. I was late due to my alarm going off late. I understand that my actions but extra strain on my Co-Workers and required other Deputies to stay over in my place. I well try harder in the future not to let this happen again.

3-12-08 FOR ABOVE INCIDENT, ABOVE DEPUTY WILL RECIEVE A WARNING. THE TIME WILL BE DEDUCTED. JTS

**REPORTING DEPUTY:**
**STAFF MEMBER:** Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:** Captain Judy Daugherty 613

**CHIEF DEPUTY:** Gayle Eston 605

**JAILER:** Jackie T. Strode 600



**UNITED STATES MARINE CORPS**
COMPANY E
4TH TANK BATTALION
4TH MARINE DIVISION
MARINE CORPS RESERVE TRAINING CENTER
BUILDING 7241
FORT KNOX, KENTUCKY 40121-5125

JASON R

IN REPLY REFER TO:
1500
TRNG
16 APR 08

From:   Commanding Officer/Inspector-Instructor
To:     All Hands

Subj:  DRILL LETTER FOR 16-18 MAY 2008.

1.   SITUATION

Company E will conduct Reserve Drill Training for the period of 16-18 May 2008 at the Reserve Training Center.

2.   MISSION

On 16-18 May 2008 Company E will conduct Tank Table VII/VIII (Port).

3.  EXECUTION

   A.   THE CONFERENCE CALL WILL BE HELD ON MONDAY, 12 MAY AT 1800 HRS(EST).

   B.   FRIDAY 16 MAY AT 0500: ALL HANDS FORMATION at the HTC in MARPAT DESERT UTILITIES with sleeves up. There is no staff meeting scheduled at this time.

4.  ADMIN AND LOGISTICS

   A.   DRILL CONFLICTS

Any member of Company E who cannot attend a regularly scheduled drill period must initially notify their section head or Platoon Sergeant with the reason of absence and dates to make up the absence. The request must then receive approval from the Commanding Officer in order to be an excused absence. All other absences not approved by the CO will be considered unexcused and may result in further disciplinary action. Any Marine living outside of 50 miles who needs billeting for a drill will need to sign up for a room prior to drill. Marines needing rooms should get with their Platoon Sergeant and send your requirement up the chain of command. Otherwise, billeting will not be available.

Requests for Letters to Employers must be made each month for the following month's drill period. Any Marine who requires a letter to employer must notify their Platoon Sergeant during initial formation. Platoon Sergeant's must give names to Admin by no later than noon chow. A "letter to employer" request must be made during drill weekend. No requests will be taken after drill weekend.

   B.   TRAINING

      (1)   Gunnery - Firing crews need to review tasks, conditions, and standards for TT VIII. The OCT 2003 FM 3-20.12 is available via the internet or you can contact the Company Master Gunner to receive this publication electronically.

      (2)   MCMAP - During drill, Marines will be able to sustain and participate in Marine Corps Martial Arts Program (MCMAP) training. Marines will be required to bring a mouthpiece in order to participate

WarrenCounty1493

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** __Sergeant Jason Rigsby__

**DATE:** __5/1/2008__                **TIME:** __1125__

**DETAILS OF INCIDENT:** On the above date and time I Sergeant Jason Rigsby while working booking was 15 minutes late on my observation and cell 28 checks. I well try harder not to let this happen in the future.

5-2-08 FOR ABOVE INCIDENT, THIS DEPUTY WILL RECIEVE A WARNING. PER JAIL STANDARDS, THESE CHECKS MUST BE DONE AND DONE DURING THE CORRECT TIME FRAME. IT IS EXPECTED HIS JOB PREFORMANCE WILL IMPROVE. JTS

**REPORTING DEPUTY:**   Sergeant Jason Rigsby 673

**STAFF MEMBER:**   Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:**  Captain Greg Martin 654

**CHIEF DEPUTY:**   Gayle Eston 605

**JAILER:**   Jackie T. Strode 600.

**WarrenCounty1495**

WarrenCounty1496

# Warren County Regional Jail
## Interoffice Memo

Date:  5/20/2008
From: Sgt. Jason Rigsby
To: Jackie T. Strode
Subject: Drill

Jackie, I was placed on the advanced party for my June drill. I well have to report to Ft. Knox on Thursday, June 19th @ 0700, instead of Friday, June 20th. I can do a double on either Tuesday or Wednesday. Sorry about the short notice, I was just informed of this on Sunday at drill. If you need a official letterhead I can get one or if you prefer you can call my Platoon Sergeant to verify, his name is Sgt. Sickel ███████████

Thanks, Sgt. Jason Rigsby 673

_____     _____
Signed                             Date

5·20·08

WarrenCounty1498

 

### Kentucky Jailers Association Salute to our Military

The Kentucky Jailers Association proudly plans to present Medals of Appreciation to all individuals currently employed with in our Kentucky Detention Centers who are currently serving and those who have served in the United States Military since September 11, 2001, at a special ceremony to be held on Tuesday June 10, 7:00pm during the annual Kentucky Jailers Conference at the Holiday Inn in Bowling Green Kentucky.

The Pekin Community High School JROTC cadets will perform a reverent tribute to MIA, POW and those who lost their lives in performance of their duty.

Cookie Cruse/Warden at the KY Correctional Institute for Women will perform patriotic music during the ceremony.

Please feel free to wear your uniform during the ceremony, it is optional.

**IF YOU HAVE ANY QUESTIONS PLEASE CALL Mike Coffey at 309-241-6300.**

---

### Kentucky Jailers Association Medal Presentation
(Please print clearly)

NAME: _Jason Rigsby_

BRANCH: _United States Marine Corps_

RANK: _Lance Corporal_

Where you have served: _South Korea_

PHONE: ████████████          Facility _WCRJ_

Name of family member and relationship excepting the Medal in the event the recipient is unable to attend ████████████

Please complete and send the form to salute to Our Military, 1200 Redwood Drive, Pekin, Illinois 61554 or fax to 309-347-8011 or e-mail to mcoffey@provistaco.com





WarrenCounty1366

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:**   Sergeant Jason Rigsby

**DATE:**   7/19/2008                    **TIME:**   0745

**DETAILS OF INCIDENT:**   On the above date and time while I was working Class D main control I Sgt. Jason Rigsby allowed Inmate Mario Ruelas out to work on a day that wasn't on his schedule. These happen ~~do to me~~ *This* *ed due my* not checking the work release folder before he exited the building. Inmate Ruelas did return the WCRJ after being contacted. I well not let this happen again in the future.

7-21-08  FoR Above incident This deputy will Recieve A Verbal Reprimand. IT is Expected his Job Pre Formance will improve.
                    JTJ

**REPORTING DEPUTY:**   Sgt. Jason Rigsby

**STAFF MEMBER:**   Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Judy Daugherty

**CHIEF DEPUTY:**   Jeff Robbins

**JAILER:**   Jackie T. Strode

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
Page ___1___ Of ___1___

**NAME OF STAFF:**  Sergeant Jason Rigsby

**DATE:** 11/1/2008                                          **TIME:** 0800

**DETAILS OF INCIDENT: On the above date and time I Sergeant Jason Rigsby was one hour late for my assigned shift, due to over sleeping.**

11-3-08  For Above Action, This Sgt. Will Recieve A Warning. The Time Will be deducted. This deputy/sgt has been late Many Times. It is Expected that This will improve. JTH

**REPORTING DEPUTY:**   Sgt. Jason Rigsby 673

**STAFF MEMBER:**     Jason Rigsby 673

**SHIFT SUPERVISOR:**  Captain Judy Daughterly 613

**CHIEF DEPUTY:**   Chief Deputy Gayle Eston 605

**JAILER:**    Jackie T. Strode 600



*Jason Rigsby*

**UNITED STATES MARINE CORPS**
COMPANY E, 4TH TANK BATTALION, 4TH MARINE DIVISION
MARINE CORPS RESERVE TRAINING CENTER
BLDG 7241, 7TH ARMORED DIVISION CUTOFF RD
FORT KNOX, KY 40121

IN REPLY REFER TO:
1500
TRNG
25 JAN 09

From:  Commanding Officer/Inspector-Instructor
To:    All Hands

Subj:  **DRILL LETTER FOR 21-22 FEBRUARY 2009.**

1.   **SITUATION**
      Company E will conduct Reserve Drill Training for the period of 21-22
      February 2009.

2.   **MISSION**
      On 21-22 February 2009 Company E will conduct TCGST Starboard and AGTS
      Portside.

3. **EXECUTION**

      A.    **THE CONFERENCE CALL WILL BE HELD ON TUESDAY, 17 FEBRUARY AT 1800
      HRS(EST).**

      B.    **SATURDAY – 21 FEBRUARY AT 0600: ALL HANDS FORMATION at the
      Reserve Training Center in Marpat Woodland utilities, sleeves rolled
      down.**

4. **ADMIN AND LOGISTICS**

      A.  **Drill Conflicts.**

            Any member of Company E who cannot attend a regularly
      scheduled drill period must initially notify their section head or
      Platoon Sergeant with the reason of absence and dates to make up the
      absence.  The request must then receive approval from the Commanding
      Officer in order to be an excused absence.  All other absences not
      approved by the CO will be considered unexcused and may result in
      further disciplinary action.  Any Marine living outside of 50 miles who
      needs billeting for a drill will need to sign up for a room prior to
      drill.  Marines needing rooms should get with their Platoon Sergeant
      and send your requirement up the chain of command.
            Requests for Letters to Employers must be made each month for
      the following month's drill period.  Any Marine who requires a letter
      to employer must notify their Platoon Sergeant during initial
      formation.  Platoon Sergeant's must give names to Admin by no later
      than noon chow. A "letter to employer" request must be made during
      drill weekend.  No requests will be taken after drill weekend.
            Make Up Drills –
            Lcpl Elder Makeup Drill  20090220
            Lcpl Hall  Wedding 20090211; 20090212
            Lcpl Muncy Makeup Drill 20090220, 20090227
            Lcpl Klump Baseball Game 2009017, 20090128

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page  1  Of  1

**NAME OF STAFF:**  Sergeant Jason Rigsby

**DATE:**  6/28/2009                              **TIME:**  0730

**DETAILS OF INCIDENT:** On the above date and time I Sergeant Jason Rigsby was 30 minutes late for my assigned shift, due to over sleeping. I know that this caused a extra work load on my fellow Deputies,

6-29-09 FOR ABOVE ACTION THIS DEPUTY WILL RECIEVE A WARNING. THE TIME WILL BE DEDUCTED. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE.
JTS

| | |
|---|---|
| **REPORTING DEPUTY:** | Sergeant Jason Rigsby 673 |
| **STAFF MEMBER:** | Sergeant Jason Rigsby 673 |
| **SHIFT SUPERVISOR:** | Lt. Tim Wilson 629 |
| **CHIEF DEPUTY:** | Gayle Eston 605 |
| **JAILER:** | Jackie T. Strode 600 |

UNITED STATES MARINE CORPS
E COMPANY, 4TH TANK BATTALION
FT KNOX, KY 40121
PH (502) 624-6224/1762
FAX (502) 624-8548

# UNITED STATES MARINE CORPS

TO: Strode / Rigsby          FAX: 270-843-5314

FROM: I&I Staff ADMIN DATE: 20090708

RE:                          PAGES: 6

CC:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

7-8-09   Jason Advised That He Will
Be Getting More Orders To Cover
The July 10TH To July 26TH
Dates

JTS
7/8/09

WarrenCounty1505

Strode / Rigsby

WarrenCounty1506

ORIGINAL

1320
MROWS/1266260/0/1
29 JUN 2009

FROM: E CO 4THTANKBN 4THMARDIV
TO:   LANCE CORPORAL JASON D RIGSBY
      ████████████████████
      2050 CLOVER CT APT A
      BOWLING GREEN, KY 421010000

SUBJ: ORDERED TO ANNUAL TRAINING; CASE OF LANCE CORPORAL JASON D RIGSBY
      ████████████

1.  YOU ARE DIRECTED TO ENDORSE THESE NONREPORTING ORDERS "ORIGINAL ORDERS
RECEIVED", NOTING THE DATE AND PLACE OF RECEIPT.  YOU ARE ADVISED THAT THE
DISBURSING OFFICER MAY REFUSE TO ISSUE PAYMENTS IN THE ABSENCE OF THIS
ENDORSEMENT. (JFTR U4105.F2A AND U5120)  YOU ARE ASSIGNED TO ANNUAL TRAINING
ON SUCH A DATE THAT WILL ENABLE YOU TO PROCEED TO E CO 4THTANKBN 4THMARDIV,
7TH ARMOR DIV RD BLDG 7241, FORT KNOX, KY  40121 ON OR ABOUT 08 JUL 2009 FOR
DUTY WITH E CO 4THTANKEN 4THMARDIV, RUC:  21403, MCC:  SH6.  PERIOD OF DUTY:
08 JUL 2009 TO 22 JUL 2009 FOR  15 DAYS.  (MCO P1000.6_ PARA 4407 AND
P1001R.1_ PARA 4205.4).  YOU ARE A MEMBER OF RESERVE RUC:  21403, COMPANY CODE:
E AND PLATOON CODE: HDET. IF FOR ANY REASON YOU ARE UNABLE TO EXECUTE THESE
ORDERS, RETURN THEM TO YOUR ADMINISTRATIVE PARENT COMMAND NOTING THE REASON
FOR RETURN.  WHILE PERFORMING DUTY UNDER THESE ORDERS, YOU ARE SUBJECT TO THE
UNIFORM CODE OF MILITARY JUSTICE (UCMJ) (MCO P1001R.1_ PARA 5000.4).

2.  THE PLACE FROM WHICH YOU ARE ORDERED TO SUBJECT DUTY IS INDICATED AFTER
YOUR NAME.  UPON COMPLETION OF SUBJECT DUTY, WITH THE EXCEPTION OF BACK TO
BACK ORDERS, YOU WILL RETURN TO THE ADDRESS INDICATED AFTER YOUR NAME AND UPON
ARRIVAL YOU WILL STAND RELEASED FROM SUBJECT DUTY. (JFTR U7150.A1) FOR BACK TO
BACK ORDERS, UPON COMPLETION OF THE FINAL SET OF ORDERS, YOU WILL RETURN TO
THE ADDRESS INDICATED AFTER YOUR NAME AND UPON ARRIVAL, YOU WILL STAND
RELEASED FROM DUTY.  YOU MAY ELECT TRAVEL TO OR FROM AN ALTERNATE LOCATION,
REIMBURSEMENT WILL BE LIMITED TO THE LESSER OF THE ACTUAL DISTANCE TRAVELED TO
THE LOCATION OR THE DISTANCE FROM THE PLACE OF DUTY TO YOUR PMA/PLEAD. (JFTR
U5120.A AND U4105.F)

3.  APPROPRIATION FOR THE PERIOD OF 08 JUL 2009 - 22 JUL 2009 (15 DAYS) IS:
P/A:  PAYGROUP: 231   COMPONENT CODE: K4  P/A NUMBER: V92H3H
EST COST: $1,408.89
PER DIEM: AA 1791108.2731 021 11508   067443 2D V92H3G 231000074601
EST COST: $194.30          SDN: M0047909TOE2H3G

4.  TRAVEL VIA PRIVATELY OWNED CONVEYANCE (POC) TO
FORT KNOX, KY (08 JUL 2009) AND
BOWLING GREEN, KY (22 JUL 2009)
 IS AUTHORIZED AS ADVANTAGEOUS TO THE GOVERNMENT.  REIMBURSEMENT FOR MILEAGE
IS AUTHORIZED AT A RATE OF 0.550 PER MILE FOR THE OFFICIAL DISTANCE.  THE COST
OF THIS TRAVEL, $96.80, REFLECTS A COST ESTIMATE BASED ON DTOD MILEAGE BETWEEN
PLEAD/PMA AND DUTY LOCATION AND IS INCLUDED IN THE PER DIEM COSTS (JFTR
U3305.A1).

5.  RENTAL CAR NOT AUTHORIZED AT FORT KNOX, KY (08 JUL 2009 THRU 22 JUL 2009).

6.  QUARTERS ARE DIRECTED, IF AVAILABLE, AT
FORT KNOX, KY AT NO COST (08 JUL 2009 THRU 22 JUL 2009).  THE AMOUNT LISTED IS
AN ESTIMATED AMOUNT.  IF ACTUAL QUARTERS COST DIFFERS FROM THAT LISTED HEREIN
OR IF QUARTERS ARE NOT AVAILABLE CONTACT THE APPROPRIATE MILITARY
REPRESENTATIVE FOR A WRITTEN STATEMENT REGARDING THE AVAILABILITY OF ADEQUATE
GOVERNMENT QUARTERS AT THE PLACE OR PLACES AT WHICH THE SUBJECT DUTY IS
PERFORMED (JFTR U1045).  MAX DAILY LODGING IS $70.00 FOR FORT KNOX, KY.

7.  THE TRAVEL AND TRANSPORTATION REFORM ACT (TTRA) OF 1998 STIPULATES THAT
THE GOVERNMENT-SPONSORED, CONTRACTOR-ISSUED TRAVEL CARD SHALL BE USED BY ALL
U.S. GOVERNMENT PERSONNEL (CIVILIAN AND MILITARY) TO PAY FOR COSTS INCIDENT TO

ORIGINAL

1320
MROWS/1266260/0/1
29 JUN 2009

SUBJ: ORDERED TO ANNUAL TRAINING; CASE OF LANCE CORPORAL JASON D RIGSBY

OFFICIAL BUSINESS TRAVEL UNLESS SPECIFICALLY EXEMPTED BY AUTHORITY OF THE
ADMINISTRATOR OF GENERAL SERVICES OR THE HEAD OF THE AGENCY.  YOU ARE NOT A
GTCC CARDHOLDER.  YOU ARE EXEMPT FROM MANDATORY USE PROVISIONS OF THE TTRA.
YOU ARE AUTHORIZED TO OBTAIN AN ADVANCE FROM YOUR LOCAL DISBURSING OFFICE.
(DODFMR VOL 9, CHAP 3, PARA 030302 AND MARADMIN 337/00) EXCEPTION:  PERSONNEL
THAT ARE DETERMINED TO BE INFREQUENT TRAVELERS.  AN INFREQUENT TRAVELER IS ONE
WHO TRAVELS LESS THAN TWO TIMES PER YEAR.

8.   MEMBER RATES PER DIEM FOR FIRST AND LAST DAY OF DUTY ONLY.

9.   USE OF GOVERNMENT MESS FACILITIES IS DIRECTED AND AVAILABLE AT NO COST
WHILE PERFORMING DUTY AT
FORT KNOX, KY (08 JUL 2009 THRU 22 JUL 2009). SINCE GOVERNMENT MESS IS BEING
PROVIDED AT NO COST, YOU ARE NOT ENTITLED TO REIMBURSEMENT FOR THE MEAL
PORTION OF THE MEALS AND INCIDENTAL EXPENSES RATE (M&&IE) AT THIS LOCATION. IF
GOVERNMENT MESS FACILITIES ARE NOT AVAILABLE AT NO COST, YOU ARE DIRECTED TO
OBTAIN A STATEMENT FROM THE APPROPRIATE MILITARY REPRESENTATIVE REGARDING THE
AVAILABILITY OF MESS FACILITIES AT THE PLACE OR PLACES AT WHICH THE SUBJECT
DUTY IS PERFORMED (JFTR U4400). MAX DAILY M/IE IS $39.00 FOR FORT KNOX, KY.

10. WITHIN FIVE WORKING DAYS AFTER COMPLETION OF THIS DUTY, FORWARD ORIGINAL
PLUS ONE COPY OF ALL ORDERS, REPORTING AND DETACHING ENDORSEMENTS, COMPLETED
ORIGINAL DD FORM 1351-2 (TRAVEL VOUCHER) AND LEGIBLE RECEIPTS TO YOUR
ADMINISTRATIVE PARENT COMMAND.  FAILURE TO SUBMIT THESE ORDERS WITHIN 5 DAYS
MAY RESULT IN YOUR BEING ISSUED A LETTER OF INDEBTEDNESS TO THE GOVERNMENT.
(MARADMIN 229/00)

11. PHYSICAL OR MENTAL INJURY OR ILLNESS THAT WOULD PROHIBIT, HAMPER OR
PRECLUDE THE EXECUTION OF THESE ORDERS MUST BE REPORTED TO THE MEDICAL
DEPARTMENT REPRESENTATIVE FOR DETERMINATION OF PHYSICAL OR MENTAL
QUALIFICATION PRIOR TO EXECUTION.  NOTE:  IF YOU DO NOT MEET THE MARINE CORPS
STANDARDS YOU ARE DIRECTED TO RETURN THESE ORDERS TO YOUR ADMINISTRATIVE
PARENT COMMAND UNEXECUTED.

12. IF YOU ARE AFFILIATED WITH A RESERVE MILITARY UNIT, YOU ARE REQUIRED TO
OBTAIN AN ANNUAL PERIODIC HEALTH ASSESSMENT AND UPDATE YOUR PHYSICAL
EXAMINATION EVERY TWO YEARS. YOUR LAST PHYSICAL EXAM WAS COMPLETED ON 05 MAR
2006 AND YOUR LAST PERIODIC HEALTH ASSESSMENT WAS COMPLETED ON 07 APR 2008. IF
YOUR PHYSICAL HAS EXPIRED AND YOU HAVE NOT HAD AN ANNUAL PERIODIC HEALTH
ASSESSMENT WITHIN THE PAST YEAR, YOU MUST SUBMIT A COMPLETED DD FORM 2807-1
(REPORT OF MEDICAL HISTORY) THAT HAS BEEN REVIEWED BY AN APPROPRIATE MEDICAL
EXAMINER AS INDICATED IN MANMED CHAPTER 15 OR SUBMIT A DD FORM 2808 (REPORT OF
MEDICAL EXAMINATION) TO YOUR PARENT COMMAND. NONCOMPLIANCE WITH THIS
REQUIREMENT COULD RESULT IN REQUESTS FOR DUTY BEING DENIED. SUBMIT, WITHIN 10
DAYS, THE REQUIRED DOCUMENTATION TO THE APPROPRIATE ADMINISTRATIVE OFFICE
MAINTAINING YOUR SERVICE AND HEALTH RECORDS FOR UPDATING.

13. UNLESS YOU HAVE MADE AN ALTERNATE ELECTION OF REDUCED OR NO COVERAGE PRIOR
TO THE ISSUANCE OF THESE ORDERS, YOU WILL AUTOMATICALLY RECEIVE SGLI COVERAGE
IN THE AMOUNT OF $400,000 DURING THE PERIOD OF THESE ORDERS.  IF YOU DESIRE TO
CHANGE YOUR ELECTION FOR INCREASED, REDUCED, OR NO COVERAGE, FORWARD A
COMPLETED VA FORM 29-8286 TO YOUR PARENT UNIT.  WHETHER BY DEFAULT OR
ELECTION, YOU ARE LIABLE FOR PAYMENT OF SGLI PREMIUMS.  PREMIUM PAYMENTS WILL
BE AUTOMATICALLY COLLECTED FROM YOUR MILITARY PAY ACCOUNT.  UNLESS YOU ELECT
NO COVERAGE, ANY UNPAID PREMIUMS WILL APPEAR AS DEBITS ON YOUR LES.  SGLI
COVERAGE RANGES FROM $50,000 TO $400,000 AT A COST OF THREE DOLLARS AND FIFTY
CENTS ($3.50) FOR EACH $50,000 INCREMENT OF COVERAGE.  ADDITIONALLY, A PREMIUM
OF $1.00 IS AUTOMATICALLY ADDED FOR TRAUMATIC INJURY PROTECTION COVERAGE
(TSGLI).

WarrenCounty1508

ORIGINAL

1320
MROWS/1266260/0/1
29 JUN 2009

SUBJ: ORDERED TO ANNUAL TRAINING; CASE OF LANCE CORPORAL JASON D RIGSBY
      0407338083/2146 USMC

14. REQUESTOR OF THESE ORDERS WAS: LCPL N WATTS, █████████


                    RA BARCENAS
                    BY DIRECTION


3

WarrenCounty1509

RECEIVING ENDORSEMENT

I, LANCE CORPORAL RIGSBY, JASON D

CERTIFY THAT THIS DEPENDENCY CERTIFICATION IS SUBMITTED FOR THE PURPOSE OF
SUBSTANTIATING CREDIT OF BAH PROVIDED TO A MEMBER OF THE UNIFORMED SERVICES
WITH DEPENDENTS.  THE PERSON NAMED BELOW IS MY PRIMARY DEPENDENT.  THIS
DEPENDENT IS NOT A MEMBER OF THE UNIFORMED SERVICES ON ACTIVE DUTY AND THE
DEPENDENT DOES NOT OCCUPY ADEQUATE GOVERNMENT QUARTERS/HOUSING FACILITIES.

NAME/DATE OF BIRTH                                  RELATIONSHIP
------------------                                  ------------
SHANDA B BIVIN  ████████████                        WIFE
NO RECORD OF DEPENDENT CHILDREN

CERTIFY THAT I MEET THE HEIGHT/WEIGHT STANDARDS AS SET FORTH IN MCO 6100.10_,
OR THAT IF I DO NOT MEET THE HEIGHT/WEIGHT STANDARDS, I CERTIFY THAT I DO MEET
THE BODY FAT PERCENTAGE.  BY MAKING THIS CERTIFICATION, I ACKNOWLEDGE THAT I
MAY BE SUBJECT TO ADMINISTRATIVE ACTION OR DISCIPLINE UNDER THE UCMJ FOR
MAKING
A FALSE OFFICIAL STATEMENT SHOULD I BE FOUND TO HAVE A FALSE CERTIFICATION IN
THE EXECUTION OF THESE ORDERS.

(CIRCLE APPRORIATE RESPONSES)

(HAVE/HAVE NOT) HAD ANY INJURY, ILLNESS OR DISEASE WITHIN THE PAST 12 MONTHS
WHICH REQUIRED HOSPITALIZATION OR CAUSED ABSENCE FROM SCHOOL OR WORK FOR MORE
THAN 3 CONSECUTIVE DAYS.

(DO/DO NOT) HAVE ANY PHYSICAL DEFECTS WHICH I BELIEVE MIGHT RESTRICT MY
PERFORMANCE ON ACTIVE DUTY.

\DO NOT ACCEPT THESE ORDERS BASED UPON THE FOLLOWING PHYSICAL CONDITIONS:

_____

_____

HAVE NONE OF THE ABOVE LISTED PHYSICAL LIMITATIONS AND VOLUNTARILY ACCEPT

THESE ORDERS AT _____
                                    (PLACE)

_____ AT _____ ON _____
                                    (TIME)           (DATE)


                      _____
                                (SIGNATURE)

*Juckie these are the Dates, but they could change   Iwan Rissby 173*

C. MCI's

(1)   Leading Marines is required for all Pvts-LCpls. Get enrolled today at https://www.mci.usmc.mil/.  Platoon Sergeants are required to tracktheir Marines participation and progress.

(2)   All Marines need to logon to Marine.net.  See chain of command for details.


D.  PROFESSIONAL DEVELOPMENT

www.usmc.mil: Official site of the Marine Corps (to view publications and FM's)
www.mfr.usmc.mil: Official site of the Marine Forces Reserve
www.mcu.usmc.mil: Professional reading list
www.marinenet.usmc.mil: Professional military education
www.mypay.dfas.mil: Pay/LES info.  **MyPay enrollment is a mandatory requirement for all SMCR Marines.  Ensure you are enrolled and your password is current.**
https://www.dmdc.osd.mil/appj/esgr/index.jsp:  **The Reserve Affairs website is required to update your civilian employer.**


E.  MAKE UP DRILLS

If you have been excused from or have been UA during any past drill periods, you are required to make those drills up within 30 days of missed training. Contact your Platoon Sergeant for details.


F.  MARINE MENTORING PROGRAM

As "Steel Sharpens Steel" so do Marines strengthen and hone their fellow Marines to better serve each other, their Corps and their Country.  Visit http://www.tecom.usmc.mil/mentoring for program info.


6.   COMMAND AND SIGNAL


A.  FUTURE DRILL DATES ARE AS FOLLOWS

| Month | Date | Drills | Event |
|-------|------|--------|-------|
| March | 12-15 | (8) | TT IV-VIII |
| April | 16-19 | (8) | TT IV-VIII |
| May | 7-10 | (8) | Tank Table |
| July | 12-26 | | Annual Training |

WarrenCounty1511

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:**   Sergeant Jason Rigsby

**DATE:**   10-24-2009                    **TIME:**   1500

**DETAILS OF INCIDENT:** On the above date and approximate time I Sergeant Jason Rigsby was conducting headcounts on B-side. While conducting the headcount on B-side, I forgot to assign a Deputy to hand out the request forms.

11-2-09 This Is A Direct ORDer, THE Blue Folder Will Be TAKEN ON All HEAD CouNTs. As A SupV. IT IS Expected THAT you will Be A leader.
FOR Above AcTioN This DepuTy (SgT) Will Recieve A WARNiNg. IT is Expected THAT his Job PreforMANce Will improve. JTS

**REPORTING DEPUTY:**   Sergeant Jason Rigsby 673

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**   Captain Judy Daughtry 613

**CHIEF DEPUTY:**   Chief Deputy Gayle Eston 605

**JAILER:**   Jackie T. Strode 600

WarrenCounty1513

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:**  Sgt. Jason Rigsby

**DATE:**  11-20-2009

**TIME:**  2245

**DETAILS OF INCIDENT:** On 11-19-2009 I was 25 minutes late for my assigned shift, due to oversleeping. I well try harder to improve on my tardiness.

11-23-09 FOR ABOVE ACTION THE TIME WILL BE DEDUCTED. THIS DEPUTY WILL RECIEVE A WARNING. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE. THERE IS A SENSITIVE TIME SCHEDULE ON FEDERAL TRANSPORTS, IF THIS DEPUTY (SGT) CANNOT BE HERE ON TIME, I WILL ASSIGN HIS TO SOMEONE ELSE. JTS

**REPORTING DEPUTY:**   Sergeant Jason Rigsby

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**  Captain Kim James

**CHIEF DEPUTY:**  Gayle Eston

**JAILER:**   Jackie T. Strode

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
#### Page ___1___ Of ___1___

**NAME OF STAFF:**   Sergeant Jason Rigsby

**DATE:** __11-21-2009__                    **TIME:** __1715__

**DETAILS OF INCIDENT:** On the above date and time I, Sergeant Jason Rigsby was conducting headcounts on B-side. When I entered B-3 I advised the cell to stand up for headcount. The cell did stand, but was talking and being loud. I advised the cell to be quiet for head count. The cell ignored me and continued to be loud. I advised them again to be quiet and tried to start calling names. After calling the first name on the list 3 times I decided to exit the cell and come back when I was done with the bottom half if they would be quiet. I advised the B-pod operator to leave the T.V. off until we went back to finish the count. After we had finished the bottom half, I went the pod and asked the pod if they wanted to be quiet for headcount. There were many inmates speaking, complaining and using profanity about how we turned the T.V. off and left it off after headcount. I told them they should have been quite the first time and the T.V. would remain off until they decided to do so. I then decided to continue headcount on the top half of B-side. After completing that I again asked B-3 if they wanted to be quiet for headcount. Again the response was many Inmates complaining and using profanity, this made me frustrated and I then told them that if they didn't be quite for headcount that they would lose their T.V. and I would go to A side to do count before I finished headcount with them. This made them louder at this time I felt very disrespected and upset and told the cell "If ya'll would shut the fuck up I would do my headcount." I then left the pod and went to booking. I then advised Lt. Wilson how the cell was acting. He told me to bring the people causing the problems to observation. I then went to A-side to do headcount. After it was complete I went back to B-3 and completed the headcount for B-3 without incident. 11-23-09 FOR ABOVE ACTION, THIS deputy Will Recieve A WARNING. IT IS Expected THAT his JOB PreFORMANCE Will IMPROVE. FYI, Policy IS THAT IF A Cell does NOT Comply FOR head Count you Leave Cell, leave Phone & TV OFF & go back AFTER you do other Cells. IF They Still do NOT ☀

**REPORTING DEPUTY:**   Sergeant Jason Rigsby   *Sgt Jason Rigsby*

**STAFF MEMBER:** _____

**SHIFT SUPERVISOR:**  Captain Judy Daughterly   *Capt Judy Daugherty 613*

**CHIEF DEPUTY:**   Gayle Eston _____

**JAILER:**   Jackie T. Strode _____

☀ Comply, you START TAKING Things like TV ETC.    JTS

# Warren County Regional Jail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606          Fax (270) 843-5317

"Sgt. JASON RIGSBY"

4-13-09  FOR YOUR ACTIONS (DISCUSSING JAIL
INFORMATION) YOU WILL RECIEVE A WRITTEN
REPRIMAND, THE INFORMATION YOU DISCUSSED
WAS SENSITIVE INFORMATION WHICH IS
NEVER RELEASED TO THE PUBLIC, THIS IS A
DIRECT ORDER "YOU ARE TO NEVER DISCUSS
ANY INFORMATION ABOUT ANY INMATE WITH
ANY MEMBEER OF THE PUBLIC EXCEPT THE
INFORMATION YOU KNOW CAN BE RELEASED (EXAMPLE: NAME,
BOND, IN & OUT DATE, CHARGES, ARRESTING AGENCY) ETC. SHOULD
YOU VIOLATE THIS, YOU CAN EXPECT TO BE TRANSFERRED OR
DEMOTED OR SUSPENDED OR DISMISSED OR ONE OR MORE
OF THESE ACTIONS, THIS TYPE CONDUCT WILL NOT BE
ALLOWED. -

Jack T Strode

WarrenCounty1516

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __3__

**NAME OF STAFF:**   Sergeant Jason Rigsby

**DATE:**  4-12-2009                           **TIME:**  1000

**DETAILS OF INCIDENT:** On April 6, 2009 I Sergeant Jason Rigsby was off duty and at Southern Lanes Bowling Alley. I was the only Deputy from WCRJ there to the best of my knowledge. I was bowling with a group of my friends none of them were Deputies or employees of Warren County. It was approximately around 2200 when I arrived at the bowling alley. We were bowling to the best of my knowledge on lanes 7 and 8 which is on the left hand side behind the jukebox if you are standing at the counter were you pay. I do not remember seeing any other Deputies present. I never went past the jukebox and I only went to the bar area once. I did go to the restroom a few times threw out the evening. At approximately 0030 I was telling a story about a jail incident to a couple of my close friends (Sean Heathery and Kyle Smith) and my cousin (Charly Underhill), I was using some profane language while telling the story. I was then asked to keep my language down by a father there with his two kids both were under the age of 10. I then replied that didn't mean to use the language in front of his kids because I didn't notice them, and that he probable shouldn't have his kids at the bowling alley that late. After I responded nothing else was said between the father and me and neither of us raised our voices. I went back to bowling and so did he and his kids. A few minutes later I noticed that BGPD officers David Marshall 148 and Sean Girbert 133 had came in doing there normal rounds of the bowling alley. I noticed they went to the back lanes and a few bowlers left,

| | |
|---|---|
| **REPORTING DEPUTY:** | Sergeant Jason Rigsby 673 |
| **STAFF MEMBER:** | Sergeant Jason Rigsby 673 |
| **SHIFT SUPERVISOR:** | Captain Judy Daugherty 613 |
| **CHIEF DEPUTY:** | Gayle Eston 605 |
| **JAILER:** | Jackie T. Strode 600 |

# WARREN COUNTY REGIONAL JAIL
# STAFF  INCIDENT REPORT
### Page __2__ Of __3__

**NAME OF STAFF:**   Sergeant Jason Rigsby

**DATE:**  4-12-2009                               **TIME:**  1000

**CONTINUED  DETAILS  OF  INCIDENT:** so I continued to mind my business and continued bowling. I then noticed Officers Marshall and Girbert by the cashier counter; I go to talk to them to see how there night was going, I remember Officer Girbert made a joke saying I would probably see the ones they asked to leave tomorrow. I told them I didn't have to work until Wednesday but yea I probably would. I was told that they were asked to leave because they were drinking underage. This conversation didn't last but a few minutes because it was my turn to bowl again. After about approximately 30 minutes I would say some time around 0100, the owner of the bowling alley (Don Litten) ask for me to come to counter.  Don then asked me if I worked at the jail and I told him that I did, and then he asked if I knew a Captain Baker? I told him that I did that he is the 3rd shift supervisor and he should be on duty now. Don then advised me that he had called and asked if any Deputies were escorted out by BGPD. And then asked me If I was the only Deputy there. I take a quick glance around stating at the counter and told him no that I pretty sure I'm the only Deputy there.  He told me that he didn't think any Deputies from the jail were there and didn't know I was one until one of his other employees told him I was one. He also told me he told Captain Baker that the only people asked to leave that night were some underage drinkers. He then asked if I noticed any former Inmates or if I had any problems with anyone there tonight that knew I was a Deputy I told him

**REPORTING DEPUTY:**   Sergeant Jason Rigsby 673

**STAFF MEMBER:**   Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:**   Captain Judy Daugherty 613

**CHIEF DEPUTY:**   Gayle Eston 605

**JAILER:**   Jackie T. Strode 600

# WARREN COUNTY REGIONAL JAIL
# STAFF  INCIDENT REPORT
### Page   3   Of   3

**NAME OF STAFF:**   Sergeant Jason Rigsby

**DATE:**  4-12-2009                                    **TIME:**  1000

**CONTINUED DETAILS OF INCIDENT:** that it is hard to noticed Inmates because of the amount of inmates I deal with, but I then told him that I exchanged a few words with a father that was bowling beside me. He told me that he remember the father looked pretty upset when we was leaving which was a few minutes before he gotten the phone call from Captain Baker. So we both concluded that the father was trying to get me in trouble because he over heard me telling my story to my friends. I then return to my bowling game and leave with my friends when the alley closed at approximately 0145. I was never asked to leave by BGPD or by Don or any other bowling alley staff. All actions and events occurred while I was off duty. Report was written per Jailers request.

**REPORTING DEPUTY:**    Sergeant Jason Rigsby 673

**STAFF MEMBER:**    Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:**  Captain Judy Daugherty 613

**CHIEF DEPUTY:**    Gayle Eston 605

**JAILER:**    Jackie T. Strode 600

# WARREN COUNTY JAIL STAFF  INCIDENT REPORT

Page ___1___ Of ___1___

**NAME OF STAFF:** **Unknown**

**DATE:** **04/07/2009**                                   **TIME:** ___0035___

**DETAILS OF INCIDENT:** On the above date and time Deputy Sandra Blackford reported to me that an unknown male had called and said there were some Deputy Jailers at Southern Lanes drinking and cussing.  She advised him that he could call and leave a voice mail for Jailer Jackie Strode at ext. 112.  After this I, Capt. William Baker, answered a call from a woman saying that her and her boyfriend were at Southern Lanes bowling and recognized 1 Deputy from the Jail that was cursing, drinking and talking about an incident that occurred at the jail with a naked man running around and getting shot with a taser.  She said that he kept saying, "mother fucker this and mother fucker that" and that, "the naked guys d—k was flopping around."  She told me that her boyfriend asked them to stop cursing because he had his 8 year old daughter with him and there were more children on the other side of them but the person said, "Its after 12 o'clock."  The lady said her boyfriend then advised them that the children were out of school this week.  I asked if they could give me a description of any Deputy Jailer they recognized and they said, "There were a gang of them there but the only one I recognized that I know from the jail wears glasses and has tattoos on his forearm."  I asked if I could have her name so I could advise the Jailer who it was that reported this and she said, "Patsy Jarvis."  I asked for her phone number and she gave me, 270-544-7763.  I advised her that I would pass this information along to the Jailer.  I then called to Southern Lanes and spoke with the owner Don Ritten who advised me he was a Special Deputy for the Warren County Sheriff's Department.  He said that there were some Deputies there but they were not causing any trouble and that he had to kick out two under age females because they were drinking. He said, "I know your crew, they are not causing any problems."  I thanked him for his time and ended the call.  This report was written for informational purposes.

**REPORTING DEPUTY:**   Capt. William Baker 650        *Capt William Baker 650*

**STAFF MEMBER:**

**SHIFT SUPERVISOR:**   Capt. William Baker 650        *Capt. William Baker 650*

**CHIEF DEPUTY:**   Gayle Eston 605

**JAILER:**   Jackie Strode 600        *Jack T Strode*

WarrenCounty1520

In addition to the report written by myself on Unknown Staff dated 4-7-09, I was also informed by Patsy Jarvis that BGPD officers came and spoke with the Deputies after management was informed of the Cussing.

Capt. William Baker 650
4-7-09

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** __Sgt. Jason Rigsby__

**DATE:** __06-02-10__                    **TIME:** __1406__

**DETAILS OF INCIDENT:** On the above date and approximate time, Captain Shawn Whittlesey had me escort inmate James Shaw out of booking and have him sit in a chair outside of main control while I was with the inmate. Sgt. Jason Rigsby then came out of booking and called the inmate to come into booking. I told Sgt. Jason Rigsby that the inmate needed to stay where he was at due to us having an issue with a new intake and did not want the inmate to be in booking if anything happened. Sgt. Jason Rigsby then said "he needed the inmate to sign some paperwork and that he could not do it while sitting in the chair". He then said "why don't you just let me do my job I know what I am doing". Captain Whittlesey then informed Sgt. Rigsby that he was the one that had me sit him out there due to a new intake that was being combative and if he had a problem with it then he needed to speak to him. During this time we had DTF officers, a BGPD Officer, Attorneys and other inmates in booking that were being processed. Sgt. Jason Rigsby then ignored what Captain Whittlesey said and went about his business as if nothing was said to him. 6-8-10 FOR ABOVE ACTION THIS DEPUTY WILL RECIEVE A WARNING. IT IS EXPECTED THAT THIS WILL NOT HAPPEN AGAIN. JTS

**REPORTING DEPUTY:** __Lt. David Steelman 670__

**STAFF MEMBER:** __Sgt. Jason Rigsby 673__

**SHIFT SUPERVISOR:** __Capt. Shawn Whittlesey__

**CHIEF DEPUTY:** __Gayle Eston 605__

**JAILER:**

※ REVIEWED THIS REPORT + Sgt Rigsby's JTS

Jason R

6/3/10

Do A Staff Incident Report Responding to this write up. I was also told by Shawn & David that when you turned your log in they told you they needed to talk to you & you walked off. Explain this. Also include if you were told by Main Control that Shawn needed to see you or if you were told to go to Sup's office.

JTS
4/600

WarrenCounty1523

# WARREN COUNTY REGIONAL JAIL
# STAFF  INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:**   Sgt. Jason Rigsby

**DATE:**  6-2-2010                                          **TIME:**  1406

**DETAILS OF INCIDENT:** On the above date and time I Sergeant Jason Rigsby was helping back visit keep Inmates separated that had a visit at the same time. I had received a request form on my watch tour that two inmates were plain to jump another inmate during visit. The inmate that had wrote the request was placed in the Florida room to wait for his visit to start. I wanted to offer the Inmate PC and place a stay away in the computer before his visit, so I called him in to the booking area to get him away from other inmates, so I could talk to him about the situation and offer him PC. While I was trying to get the PC sheet out of the filing drawer Captain Shawn Whittlesey said told me about the female getting dressed out might give us some problems and he wanted to keep my inmate out of the way. I told Captain Whittlesey I would only be a second I just needed him to sign my PC sheet then I would sit him back in the Florida room. As I continued to look for the PC sheet in the file drawer my Inmate was placed outside booking in the deputy's chairs. At the time I didn't hear Captain Whittlesey tell Lt. Steelman to sit him out there. I don't remember what Lt. Steelman was told to go do but I remember him saying he couldn't leave my inmate there without someone watching him. I told Lt. Steelman I would take him and told my inmate to come into the booking room so I could have him sign the PC sheet and also the Inmate he was to be attacked by was about to come out of the visitation holding area. I didn't want them to see each other. As I done this I was told by Lt. Steelman that Captain Whittlesey told the inmate to sit out here. I replied that I needed him to sign a PC sheet it wouldn't take but a second. Then Captain Whittlesey told me to same thing I told them there was nothing for the Inmate to sign the sheet with and it would only be a second. At this time both Lt. Steelman and Captain Whittlesey were yelling at me about how the inmate needed to stay out there.

| | |
|---|---|
| **REPORTING DEPUTY:**   Sgt. Jason Rigsby 673 | |
| **STAFF MEMBER:**    Sgt. Jason Rigsby 673 | |
| **SHIFT SUPERVISOR:**   Captain Shawn Whittlesey | |
| **CHIEF DEPUTY:**   Gayle Eston | |
| **JAILER:**    Jackie T. Strode | |

# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
Page 2 of 2

My inmate wasn't going to be in the way if they had a problem in the dressing room; (There was 3 Deputies with the female inmate getting dressed out. And there was myself Captain Whittlesey and Lt. Steelman And Chief Deputy Eston available to respond if needed. I didn't hear any signs of the female arguing with the deputies threw the door so this is way I was trying to take care of my situation with my inmate and his PC. Also It seemed that Captain Whittlesey and Lt. Steelman were more concerned with yelling at me then the female being dress out.) I did respond to both of them that they should stop trying to delegate me so much and that I was doing my job. At this point I decided to just shut up and had my inmate sign his sheet and I then placed him in visitation away from his stay away.  After this I considered the issue over and dropped it. After the shift I don't remember either one of them asking me to stay. I remember Captain Shawn saying good job and I replied with thank you. After this I seen The Jailer and then walked to the back door. I left With Deputies Angela Pillow and Heather Miller I was not asked by Main Control to stay. I think this issue could have been handled by talking with Captain Whittlesey and Lt. Steelman. I would of stayed if I heard them ask me too. I would of apologized if they think I was intentionally being insubordinate. I have nothing but respect for Captain Whittlesey this is the first argument I had with him in 4 years since I started. I well do my best to follow orders better and not take my own initiative to get things done.



# WARREN COUNTY REGIONAL JAIL
## STAFF  INCIDENT REPORT
Page ___1___ Of ___1___

**NAME OF STAFF:**  Sergeant Jason Rigsby

**DATE:** 8-25-2010                                    **TIME:** 1300

**DETAILS OF INCIDENT: On August 11, 2010 I Sergeant Jason Rigsby trained Deputy Jody Martin in H-dorm. I forgot to fill out Deputy Martin Blue Folder for his training he received. I will try not to let this happen again in the future.**

8-25-10 IT IS VERY IMPORTANT THAT ALL TASKS SHOWN TO NEW DEPUTIES IN TRAINING BE DOCUMENTED. THIS (DEPUTY) Sgt FAILED TO DO SO.
   FOR THE ABOVE ACTION, THIS SGT WILL RECIEVE A WRITTEN REPRIMAND. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE. JTS

**REPORTING DEPUTY:**     Sergeant Jason Rigsby 673

**STAFF MEMBER:**     Sergeant Jason Rigsby 673

**SHIFT SUPERVISOR:**  Captain Greg Martin 654

**CHIEF DEPUTY:**     Gayle Eston 605

**JAILER:**     Jackie T. Strode 600



**GLASGOW URGENT CLINIC, INC**
411 S. L. Rogers Wells Blvd. • Glasgow, KY 42141
270-651-7796

**SCOTTSVILLE URGENT CLINIC**
113 E. Public Square • Scottsville, KY 42164
270-237-4899

**GREENWOOD URGENT CLINIC**
4863 B Scottsville Road • Bowling Green, KY 42104
270-843-5662

### Certificate to Return to Work/School

Date: 9/3/10

Patient: Jason Rigsby

Has been under my care from 9/3/10 to 9/3/10

Will be able to return to work/school on 9/4/10

Limitations/Remarks

_____

**Representative/Provider Signature**

119333 Wk/Sch Exc 040909

WarrenCounty1527

Here's Your Note

## Return To Work / School Certificate



Jason Rigsby was seen in my office on 09/29/2010 and may return to school/work on 09/30/2010.

Limitations / Remarks:


Doctor's Signature_____

Graves-Gilbert Clinic
Bowling Green, KY 42101

New Note



**The Medical Center**

**Emergency Department**

09/15/10
Date

PATIENT NAME:  RIGSBY,JASON _____

was seen in the Emergency Department today and may return to

Work / School on: (Date)  9-19-10 _____

_____  Regular Duty

_____  Light Duty

_____  Restrictions _____

_____  No Physical Education Through:

        (Date) _____

_____  Needs re-evaluation before returning to work/school

_____  Recheck Date _____

_____
Provider Signature

9-15-10 _____
Date

---

**The Medical Center**

9-18-10
DATE

PATIENT NAME  Jason Rigsby

was seen in the Emergency Department today and
may return to work/school on:

(Date) 9-29-10 _____

☐ REGULAR DUTY
☐ LIGHT DUTY
☐ RESTRICTIONS: _____
☐ NO PHYSICAL EDUCATION THROUGH:
   (Date) _____
☐ NEEDS RE-EVALUATION before returning to
   work / school.
☐ RECHECK DATE: _____

RIGSBY,JASON
L000018135996
E.D. PHYSICIAN       M  09/18/10
L000292538

WarrenCounty1529

# WARREN COUNTY REGIONAL JAIL

# CERTIFICATE OF COMPLETION

## Jason Rigsby

### Has successfully completed the training requirements for

# PEPPERBALL SYSTEM, DISTRACTION DEVICES, and SPECIALTY IMPACT MUNITIONS (SIMS)

### And is hereby granted certification for the use of this weapons systems

**November 2, 2010**
_____
**Date**

_____
**Lt. J. J. Martin, Instructor**

_____
**Major Misse Edmonds, Instructor**



# TASER
# TRAINING ACADEMY

---

TASER X26®

**Jason Rigsby**

Certified User

---

*This Certifies that*

**Jason Rigsby**

*is trained in the proper and safe use of the TASER® X26 Electronic Control Device*
*and has passed the requirements of the **Warren County Regional Jail** TASER X26 training program under the supervision*
*of a Certified Instructor.*

*In Witness Whereof, Certified Instructor*

**Lt. James J. Martin**
*has certified the successful completion of the training requirements this day:*

**01/07/2011**

*Certified Instructor:*

*Certified Instructor ID:*

05110425532141287 1346C

© 2010 TASER International, Inc.  TASER®, Shaped Pulse™ and the Globe & Lightning Bolt Logo are trademarks of TASER International, Inc.

WarrenCounty1531



WarrenCounty1532

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** Lieutenant Jason Rigsby

**DATE:** 3-4-2011                    **TIME:** 0735

**DETAILS OF INCIDENT: On the above date and time I, Lieutenant Jason Rigsby was conducting headcount on B-side. In cell B12 I was conducting Extra Item Detail, Spraying Disinfectant, Checking for Inmate Injuries, and Counting Inmates. During the headcount of B12 I miscounted the Inmates. I understand this is a great security risk and headcounts must be preformed without incident. I will improve my job performance and try to set a better standard for Deputies to follow.**

3-5-11 FOR ABOVE ACTION THIS DEPUTY WILL RECIEVE A WRITTEN REPRIMAND. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE. JTS

**REPORTING DEPUTY:** Lieutenant Jason Rigsby 673

**STAFF MEMBER:** Lieutenant Jason Rigsby 673

**SHIFT SUPERVISOR:** Captain Greg Martin 654

**CHIEF DEPUTY:** Gayle Eston 605

**JAILER:** Jackie T. Strode 600

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__



(1)
2011

**NAME OF STAFF:** Lieutenant Jason Rigsby

**DATE:** 3-21-2011                          **TIME:** 0728

**DETAILS OF INCIDENT:** On the above date and time I Lieutenant Jason Rigsby was 28 minutes late for my assigned shift due to vehicle problems. I am sorry for any inconveniences this may have cause to the daily operations of the jail.

3-22-11  FOR ABOVE ACTION THIS   (1)
DEPUTY WILL RECIEVE A WARNING. 2011
THE TIME WILL BE DEDUCTED.
                              JTS

**REPORTING DEPUTY:**   Lt. Jason Rigsby 673      _Lt Jason Rigsby 673_

**STAFF MEMBER:**   Lt. Jason Rigsby 673

**SHIFT SUPERVISOR:**   Captain Greg Martin 654   _Capt Greg Martin 654_

**CHIEF DEPUTY:**   Gayle Eston 605

**JAILER:**   Jackie T. Strode 600   _Jackie T. Strode_

WarrenCounty1534

**Strode, Jackie  (WARCO)**

| | |
|---|---|
| **From:** | Jason Rigsby <jrigsby@wcrescue.com> |
| **Sent:** | Wednesday, September 28, 2011 11:36 AM |
| **To:** | darwin4207@gmail.com; Strode, Jackie  (WARCO) |
| **Subject:** | Frank Barton |

Dear Grayson County Jailer Darwin Dennison,


This is Lieutenant Deputy Jason Rigsby from Warren County Regional Jail. I was asked by Warren County Jailer Jackie T. Strode to write you this Email. I received a text message from Deputy Frank Barton from phone number
1-270-589-8323. That contained an altered (photo shopped) picture of Sergeant Deputy Thomas Maxwell of Warren County Regional Jail. The photo was of Sergeant Maxwell's face on another Male's body that was wearing a black bra and black panties. I received the text message on 9-14-2011 @ 0238. I have received other pictures of Sergeant Maxwell from Deputy Barton in the past but I no longer have them.


Lieutenant Deputy Jason Rigsby
Unit 673

WarrenCounty1535

**Strode, Jackie  (WARCO)**

| | |
|---|---|
| **From:** | Darwin <darwin4207@gmail.com> |
| **Sent:** | Wednesday, September 28, 2011 9:06 AM |
| **To:** | Strode, Jackie  (WARCO) |
| **Subject:** | Re: Barton |

Jackie

If the deputy will I would like for him to write me a statement and email it to me.

Thanks
Darwin

Sent from my iPhone

On Sep 27, 2011, at 9:22 AM, "Strode, Jackie  (WARCO)" <Jackie.Strode@ky.gov> wrote:

> I WILL CHECK AND GET BACK TO YOU AS SOON AS I CAN. IT WILL BE A FEW
> DAYS.
>
> Jackie T. Strode
> Warren County Jailer
> 920 Kentucky Street
> Bowling Green, KY  42101
>
> Phone:  270-843-4606  EXT. 112
> Fax:  270-843-5317
> Email:  Jackie.Strode@ky.gov
>
> -----Original Message-----
> From: Darwin [mailto:darwin4207@gmail.com]
> Sent: Tuesday, September 27, 2011 8:07 AM
> To: Strode, Jackie (WARCO)
> Subject: Barton
>
>
> Jackie
> Have you been able to come up with anything on Barton, the deputy you
> call me about.
>
> Call me when you can
>
> Darwin
>
> 270-589-8557
>
>
>
>

1

WarrenCounty1536

>
>
> Sent from my iPhone

WarrenCounty1537

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:   Lieutenant Jason Rigsby**

**DATE:  8-18-2011**                                    **TIME:  1500**

DETAILS OF INCIDENT: On the above date and approximant time, I Lieutenant Jason Rigsby was in the CPR training in the Class D Classroom. I was sitting on the left hand side as you come in the door behind Captain William Baker and in front of Deputy Tim Russell and beside me in the middle row was Captain Greg Martin, Lieutenant Dianne Hardman, and Deputies Steve Lashlee, AJ Rees and Heather Miller.  Before the start of class and some during I sent a picture messages to Captain Greg Martin, Deputy Tommy Ferrell, and Sergeant Tom Maxwell that was a fake (photo shopped) and distasteful. Which I receive the pictures from a mutual friend of me and Sergeant Maxwell (Frank Barton). The pictures of Sergeant Maxwell were a joke between me and him that has gone on for over 3 years.  All the Deputies listed above sitting around me ask to see the pictures and I showed them. Every Deputy that was shown the pictures found it humorous and I was never told by any Deputy that they felt offended by them. During the class almost every Deputy was trying to make the best out of the class they could. There were many jokes told by several Deputies that everyone including the Instructor laughed. During a break Sergeant Maxwell told me to stop sending the pictures to the names listed above I asked him if he was upset and he told me no. I apologized to Sergeant Maxwell and told him I meant no disrespect. I don't believe Sergeant Maxwell took any offense because we have exchanged many pictures of each other that were photo shopped before. I did make a few jokes during class that might have disrupted the class room sitting but it felt ok at the time due to the class atmosphere. One joke that was told made me laugh and I tried to stop but it took me a minute to stop. I was then asked to come to the front of the class by Crystal the Instructor she didn't seem mad at me but I made the rest of the classroom laugh. She had already made Deputy Dustin Lee come to front earlier for a unknown reason to me. She also said she was watching Lieutenant JJ Martin and Sergeant Brian McPherson for a unknown reason but I believe it was to make the class laugh. I understand that my actions during class were not very professional and I did not set a good example to other Deputies during training. I am sorry for any embarrassment this might have caused this was not my intensions for acting this way I was only trying to lighten the environment class after a hard day at work. With my deepest apologies…

*10-24-11 Will Not do Fedual TRANSPORTS until*
*Further Nottie - JTS   Will Review this if a Capts*
*Slot Opens up JTS*

REPORTING DEPUTY:          Lieutenant Jason Rigsby 673          *JT Jason Rigsby*

STAFF MEMBER:

SHIFT SUPERVISOR:

CHIEF DEPUTY:          *Missie Edmonds*

JAILER:



WarrenCounty1539

**Strode, Jackie  (WARCO)**

| | |
|---|---|
| **From:** | Jason Rigsby <jrigsby@wcrescue.com> |
| **Sent:** | Friday, August 19, 2011 7:29 AM |
| **To:** | Strode, Jackie  (WARCO) |
| **Subject:** | Re: BEHAVIOR AT CPR/1ST AID CLASS |

Jackie, I would like to take responsibility for the I was showing [...] ss
I will write a report when I return from Nashville

*[handwritten: When was the last time Frank Barron sent you a picture with Tom "Cropped in it"? That day]*

On Aug 19, 2011 5:55 AM, "Strode, Jackie (WARCO)" <Jackie.
> SUPERVISORS----SHARE THIS WITH THOSE WHO DO N
>
>
>
> IF YOU WERE TO ATTEND THE CPR/FIRST AID TRAINING
> TO DO A STAFF INCIDENT REPORT AS TO WHY YOU DID
> BOTH SESSIONS.
>

*[handwritten: How many times in the past have you recieved & sent sexual pictures to Tom or about Tom? 30 to 40]*

>
> SUPER [...] T ASK EACH DEPUTY IF THEY ATTENDED
> OR NO [...] ING ME WHO YOU TALKED TO. THIS WILL
> ALSO [...] PUTIES ABOUT THE INCIDENT THAT
> OCCUR [...] EPUTY THAT ATTENDED THE CLASS TO
> WRITE [...]
>
>

*[handwritten: Sent Pictures - Sexual 12- All have Tom face]*
*[handwritten: Did you Act like you Were humping the mannequin? No]*
*[handwritten: Did you Act like you were Slapping Tommy Ferrell on the Buttocks? yes]*

> IT HAS B [...] AT SOME STAFF CHOOSE TO NOT BEHAVE
> CORRECT [...] 8-18. IT SEEMS THAT SOMEONE
> CHOOSE [...] A PICTURE OF ANOTHER STAFF MEMBER
> THAT SHO [...] AT SOME STAFF HAD TO BE MOVED
> BECAUSE [...] IT SEEMS THAT SOME STAFF WERE LOUD, LAUGHING
> AND WERE [...] ING THE ITEM USED FOR TRAINING IN [...] RAIN
> THE CORRECT WAY.

*[handwritten: As a supv, He did nothing.]*

>
>
> I AM EMBARRASSED THAT SOME OF YOU CHOSE TO D[...]                    EAKER.
>
>
> I HAVE STARTED AN INVESTIGATION INTO THIS MATTER.
>
>
> EVERY DEPUTY THAT ATTENDED THE TRAINING ON THURSDAY, 8-18-11 AT 3PM IN
> THE CLASS D CLASSROOM IS BEING GIVEN A DIRECT ORDER TO DO A STAFF

WarrenCounty1540

> INCIDENT REPORT ABOUT WHAT OCCURRED IN THAT TRAINING. IF YOU DO A REPORT
> AND YOU JUST SAY " I DID NOT SEE ANYTHING OR HEAR ANYTHING" AND OTHER
> REPORTS SHOW YOU KNEW OR DID SOMETHING, YOUR DISCIPLINARY ACTION WILL BE
> WORSE.
>
>
>
> IF YOU WERE THE STAFF THAT HAD THE PHONE, I WANT THAT IN YOUR REPORT
> ALONG WITH WHY YOU CHOSE TO DO WHAT YOU DID. I ALSO WANT TO KNOW WHO
> SENT YOU THAT TEXT/PICTURE.
>
>
>
> IF YOU SAW THE PHONE, I NEED TO KNOW IT AND TO KNOW WHO PASSED THE PHONE
> TO YOU AND WHO YOU PASSED THE PHONE TO. I WANT YOU TO TELL ME WHAT WAS
> ON THE PHONE.
>
>
>
> IF YOU WERE A STAFF MEMBER THAT WAS MOVED, I NEED TO KNOW IT AND WHAT
> YOU DID THAT CAUSED YOU TO BE MOVED.
>
>
>
> IF YOU WERE STAFF THAT CHOSE TO NOT DO THE TRAINING THE CORRECT WAY
> MEANING YOU WERE SLAPING THE ITEM OR NOT DOING IT AT ALL, I NEED TO KNOW
> IT AND WHY YOU DID IT.
>
>
>
> I KNOW THAT I HAD SEVERAL SUPERVISORS THAT ATTENDED THIS TRAINING, I
> WANT TO KNOW WHAT YOU DID, IF ANYTHING, TO CORRECT THE MISCONDUCT OF THE
> OTHERS.
>
>
>
> IF YOU CANNOT TELL BY NOW, I TAKE THIS VERY SERIOUS. I WAS PAYING MOST
> OF YOU OVERTIME TO ATTEND THIS TRAINING AND SOME OF YOU CHOSE TO NOT
> TREAT THE SPEAKER AND YOUR CO-WORKERS WITH RESPECT. THIS WILL NOT BE
> ALLOWED.
>
>
>
> AGAIN, I AM GIVING YOU A "DIRECT ORDER" TO DO A STAFF INCIDENT REPORT
> AND I AM ALSO GIVING YOU A " DIRECT ORDER " THAT YOU ARE TO BE TRUTHFUL
> WHEN DOING YOUR STAFF INCIDENT REPORT.
>
>
>
> THIS STAFF INCIDENT REPORT IS TO BE TURNED INTO ME BY MONDAY, AUGUST
> 22ND.

WarrenCounty1541

```
>
>
>
> Jackie T. Strode
>
> Warren County Jailer
>
> 920 Kentucky Street
>
> Bowling Green, KY 42101
>
>
>
> Phone: 270-843-4606 EXT. 112
>
> Fax: 270-843-5317
>
> Email: Jackie.Strode@ky.gov
>
>
>
```

3

WarrenCounty1542

**Strode, Jackie  (WARCO)**

| | |
|---|---|
| **From:** | Krystal Souders <krystal.souders@shpjails.com> |
| **Sent:** | Thursday, August 18, 2011 9:54 PM |
| **To:** | Strode, Jackie  (WARCO) |
| **Subject:** | RE: Class |

There were a couple, in all honesty they were ones I haven't seen before..I moved them to the front of the class to right in front of me so it made it a little easier to teach and harder for them to play and cut up.. Unfortuately It happens in any class you have when you get 32 people in it..There is always a couple who want to be the class clown..But when you call them on it, it embarrasses them just enough. I think moving them to the front of the class helped..I can look over the roster and find out It wasn't your older employees it was about four of your employees that I am not familiar with.
Thank you- Krystal
-----Original Message-----
From: jackie.strode@ky.gov [mailto:jackie.strode@ky.gov]
Sent: Thursday, August 18, 2011 5:54 PM
To: Krystal Souders
Subject: Class

It is my understanding some maybe many were not proffessional during class.
Please send me a list of who it was and what they did. I am truly sorry.
Sent from my BlackBerryR wireless device provided by Bluegrass Cellular

1



# GLASGOW URGENT CLINIC, INC

411 S. L. Rogers Wells Blvd. • Glasgow, KY 42141
270-651-7796

**SCOTTSVILLE URGENT CLINIC**
113 E. Public Square • Scottsville, KY 42164
270-237-4899

**GREENWOOD URGENT CLINIC**
4863 B Scottsville Road • Bowling Green, KY 42104
270-843-5662

## Certificate to Return to Work/School

Date: 5-5-12

Patient: Jason Rigsby

Has been under my care from 5-5-12 to 5-7-12

Will be able to return to work/school on 5-8-12

Limitations/Remarks _____

_____

_____

_____

**Representative/Provider Signature**

119333 Wk/Sch Exc 040909

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT

Page **1** Of **1**

**NAME OF STAFF:** Jamie Keith, Chip Olney, *Jason Rigsby*

**DATE:** 06-07-2012                                    **TIME:** 0850

**DETAILS OF INCIDENT:** On the above date and time I received a call from Judge Brent Potter questioning why Inmate Patrick Payne had been released.   According to the computer inmate was to stay until he went to court on 6/4/12.  Sgt. Miller spoke with Megan in District II on 6/4/12 and was advised that court date had been postponed until 6/7/12 and that he was not to be released until then.  I contacted Deputy Keith who stated that Inmate Payne had been brought to booking by Deputy Olney who advised he was to be released.  Deputy Keith stated she hurried when she looked in the computer and did not notice there was no release time.  I contacted Deputy Olney who stated that the inmate had told him he was to be released.  I advised both deputies that Judge Brent Potter was extremely upset and had ordered jail staff to go and located Inmate Payne.  This report is for informational purposes only.

Capt. Rigsby advised he looked at computer and approved release. He added name to this report *MCE*   WARNING *JH*

See separate Staff I/R from Sgt. Miller *MCE*

\* Deputy Jamie Keith refused to sign *MCE* 6/8/12 0703

**REPORTING DEPUTY:**   Misse Edmonds   *Misse Edmonds*
**STAFF MEMBER:**   *Jason Rigsby*  *Chip Olney*
**SHIFT SUPERVISOR:**  Captain Shawn Whittlesey  *Cpt. Shawn Whittlesey*
**CHIEF DEPUTY:**   Misse Edmonds   *Misse Edmonds*
**JAILER:**   Jackie T. Strode   *Jackie T Strode*

Capt's James, Rigsby & Wilson. Lr's Robinson & Blair.
Sgt Miles.                                                7/9/12

This WAS NOT HANDLED CORRECTLY iN ANY WAY. I EXPECT THIS TO NEVER HAPPEN AGAIN. It IS NOT YOUR DECISION TO PUT SOMEONE IN ISO LIKE THIS "3days" WITHOUT MY Approval.        JTS 4/600

You CALL me & ASK About less important Things But NO ONE Felt They Should CALL me ON This.    JTS

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:** 7-3-2012                    **TIME:** 0515

**DETAILS OF INCIDENT:** On 6-29-2012 I Captain Jason Rigsby was notified by Sergeant Doug Miles and Captain Kim James that Inmate Lloyd Kirk was suspected of having contraband in his anus due to his anus appearing to being lubricated during a strip search, and was to be in a dry cell until he produced a bowel movement. Inmate Kirk stayed in visitation booth for the night without making a bowel movement. On 6-30-2012 at approximately 0645 I had Inmate Kirk moved from the visitation booth to Detox cell Little 4 (dry cell) due to weekend shift needing the booth for visitation. I advised Lieutenant Joey Blair that if Inmate Kirk made a bowel movement and there wasn't any contraband then he could be placed in UNA with the other weekenders. After this I went to the supervisor's office to file the shift paperwork and fill out the time sheet. I was advised by Lieutenant Tim Robinson on 7-3-2012 that Deputies Chip Olney and Kendal Adwell went to check a suspected bowel movement by Inmate Kirk right before the end of the shift on 6-30-2012 but there wasn't sufficient fecal matter to prove that Inmate Kirk made a bowel movement. Lieutenant Robinson also advised me that he advised Lieutenant Blair that Inmate Kirk was to remain in the dry cell until a bowel movement had been made. This report was written for informational purposes

WarrenCounty1547

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**  7-3-2012                                **TIME:**   0515

**DETAILS OF INCIDENT:** On 6-29-2012 I Captain Jason Rigsby was notified by Sergeant Doug Miles and Captain Kim James that Inmate Lloyd Kirk was suspected of having contraband in his anus due to his anus appearing to being lubricated during a strip search, and was to be in a dry cell until he produced a bowel movement. Inmate Kirk stayed in visitation booth for the night without making a bowel movement. On 6-30-2012 at approximately 0645 I had Inmate Kirk moved from the visitation booth to Detox cell Little 4 (dry cell) due to weekend shift needing the booth for visitation. I advised Lieutenant Joey Blair that if Inmate Kirk made a bowel movement and there wasn't any contraband then he could be placed in UNA with the other weekenders. After this I went to the supervisor's office to file the shift paperwork and fill out the time sheet. I was advised by Lieutenant Tim Robinson on 7-3-2012 that Deputies Chip Olney and Kendal Adwell went to check a suspected bowel movement by Inmate Kirk right before the end of the shift on 6-30-2012 but there wasn't sufficient fecal matter to prove that Inmate Kirk made a bowel movement. Lieutenant Robinson also advised me that he advised Lieutenant Blair that Inmate Kirk was to remain in the dry cell until a bowel movement had been made. This report was written for informational purposes

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Edmonds

**JAILER:**   Jackie T. Strode

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** __Lt. Joseph Blair__

**DATE:** __06/30/12__                    **TIME:** __0645__

DETAILS OF INCIDENT: On the above date and time I Lt. Joseph Blair reported to work as I was walking to the supervisor office I noticed that Inmate Lloyd Kirk was in the visitation holding. Capt. Tim Wilson was in the supervisor office I asked what the above inmate was in holding for he advised he didn't know. I then went to booking and asked Capt. Jason Rigsby he advised that Inmate Kirk was being held until he could produce a bowel movement and show that he didn't have any contraband concealed in his rectum. I then informed Capt. Wilson of why Inmate Kirk was in holding. As I was typing the deputy list for 1st shift Lt. Robinson stated that Inmate Kirk produced a small bowel movement but was not sufficient for inmate Kirk to be moved. Inmate Kirk had one other bowel movement that I know on first shift and when deputies checked it was a small amount and was not sufficient to be moved. Capt. Wilson informed Inmate Kirk several times throughout the day that he was being housed in detox until he could produce a bowel movement that was sufficient enough to prove that he was not concealing any contraband.  He was also informed that if he did have any contraband in his rectum that he needed to inform deputies because he could be injured if the contraband was lodged inside his rectum. To my knowledge that was the only bowel movement Inmate Kirk produced on 6/30/12.  Kirk was advised to tell deputies when he had a bowel movement so we could check.  Kirk did not notify deputies that he had a bowel movement and could not flush the toilet because his water was turned off.  Not fecal matter was located in the toilet when he was released.

| | | |
|---|---|---|
| REPORTING DEPUTY: | Lt. Joseph Blair 684 | *Lt. Joseph Blair 684* |
| STAFF MEMBER: | Lt. Joseph Blair 684 | *Lt. Joseph Blair 684* |
| SHIFT SUPERVISOR: | Capt. Tim Wilson 629 | *Tim Wilson 629* |
| CHIEF DEPUTY: | Misse Edmonds 646 | |
| JAILER: | Jackie Strode 600 | *Jackie J Strode* |

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** Jason Rigsby

**DATE:** 5-28-06                     **TIME:** 0430

**DETAILS OF INCIDENT:** On the above date and time Deputy Rigsby was 5 minutes late for a G-Dorm Isolation Check, and 4 minutes late for a H-Dorm Isolation check. I was updating my daily log and lost track of time. This will not happen again in the future.

5-29-06 FOR ABOVE INCIDENT, THIS DEPUTY WILL RECIEVE A WARNING. IT IS EXPECTED THAT HIS JOB PREFORMANCE WILL IMPROVE.

**REPORTING DEPUTY:**

**STAFF MEMBER:** _Jason Rigsby_

**SHIFT SUPERVISOR:** _Lt. Tommy Hunt_  679

**CHIEF DEPUTY:**

**JAILER:** _Jack T Strode_

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** __Captain Jason Rigsby__

**DATE:** __9-18-2012__                    **TIME:** __0358__

**DETAILS OF INCIDENT:** I received an Email on 9-7-2012 regarding fingerprints that I had taken. On the slaps I scanned the Inmates hand several times to try to have the fingerprints accept into the machine. I also rescanned the individual fingers several times to try to get the system to accept. According to the print card the individual finger prints where grade C or higher which is normally a passing print. The slap scan does not tell me the quality of the print or if I need to rescan it or not. I understand this is no excuses. I will try harder to get better quality scans in the future.

REPORTING DEPUTY:          Captain Jason Rigsby

STAFF MEMBER:          Captain Jason Rigsby

SHIFT SUPERVISOR:          Captain Jason Rigsby

CHIEF DEPUTY:          Misse Edmonds

JAILER:          Jackie T. Strode

## Edmonds, Melissa  (WARCO)

**From:** Strode, Jackie  (WARCO)
**Sent:** Friday, September 07, 2012 7:02 AM
**Subject:** FW: Warren County Detention Center Fingerprint Quality Control Feedback - August 2012
**Attachments:** 114200028019q.pdf; 114200028165e.pdf; 114200028165q.pdf; 114200028243q.pdf; acceptable quality.pdf

If You are one of these, write a report as to why You did not print correctly.

Did the machine show they were ok?

Jackie T. Strode
Warren County Jailer
920 Kentucky Street
Bowling Green, KY  42101

Phone:  270-843-4606  EXT. 112
Fax:  270-843-5317
Email:  Jackie.Strode@ky.gov

-----Original Message-----
From: KSP Livescan-1
Sent: Thursday, September 06, 2012 12:24 PM
To: Strode, Jackie (WARCO)
Subject: Warren County Detention Center Fingerprint Quality Control Feedback - August 2012

Total cases submitted for August - 590.

If you have questions about what any of the comments mean please let us know. Note the attached sample of an acceptable fingerprint submission for reference. Training is provided here at AFIS for anyone wishing to learn how to use the Livescan

Confidentiality Statement
This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please return it to the sender and then delete the communication and destroy any copies.

1

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page   1   Of   2

*Jason Rigsby*

**NAME OF STAFF:**   Sergeant Jeff Davis and Deputy Jamie Keith

**DATE:**   9-19-2012                    **TIME:**   0045

DETAILS OF INCIDENT: Back in August Deputy Jamie Keith had requested to speak to me about an situation that that she was having with Sergeant Jeff Davis. Deputy Keith advised me that she was upset with Sergeant Davis due to a conversation they had regarding use of force on an Inmate. Deputy Keith told me she didn't like Sergeant Davis tone and she told me that he was being a smartass about it. Deputy Keith also told me that she felt Sergeant Davis had something against her and that he just wouldn't drop it and that she was trying too. During the conversation I told Deputy Keith that in regards to the incident that Sergeant Davis was correct but he could approach addressing the issue better and that I would speak with Sergeant Davis regarding the disagreements between them, in hopes that the issue could be put behind. I spoke with Sergeant Davis within a few days regarding the incident. The incident was with Inmate Jessica Mosley during one of the incidents Inmate Mosley was being placed in the restraint chair. Inmate Mosley was resisting Deputy Keith, Deputy Jackson, Sergeant Davis, and myself. During the incident a Lifeskills employee was present. During the incident Deputy Keith was telling Sergeant Davis to use the Taser on Inmate Mosley. After the incident I and Sergeant Davis discussed this and I agreed with Sergeant Davis that Deputy Keith shouldn't be trying to tell us when to use the Taser and that the least amount of force necessary was used to complete the task. When Sergeant Davis confronted Deputy Keith about this she got upset and stated "Well what if she would of hit me in the face?" and "Well I was tired of dealing with her I had to fight her from detox all the way to the chair." Again Sergeant Davis attempted to explain that the Taser was not necessary to restrain her to the chair and it looked unprofessional for Deputy Keith to being yelling for someone to Tase and Inmate especially when the public is present. At this point I had them drop the discussion because I could tell both of them were getting upset about it and I didn't want it to get out of hand. After a few weeks Deputy Keith came to me again about Sergeant Davis this time telling me that he made her feel uncomfortable sometimes because he would stand on the other side of the booking computer and watch her. I told her that I haven't ever noticed that and that I would start watching for it. A couple days go by and Deputy Keith was in booking and Sergeant Davis is standing on the other side of the counter filling out his log and I was watching them Sergeant Davis wasn't even looking at her when Deputy Keith asked him not to stand there. Sergeant Davis asks why? And Deputy Keith told him that it bothered her. Sergeant Davis ask why it bothered her? Deputy Keith responded I just don't like it so move. Sergeant Davis said he wasn't going to move. This started an argument between them and I had to tell them both to stop it. Since the incident with Inmate Mosley I noticed there has been tension between Sergeant Davis and Deputy Keith. Sergeant Davis and I have had conversations regarding the issues he has had

REPORTING DEPUTY:          Captain Jason Rigsby          *Capt Jason Rigsby*

STAFF MEMBER:          Sergeant Jeff Davis and Deputy Jamie Keith

SHIFT SUPERVISOR:          Captain Jason Rigsby          *Capt Jason Rigsby*

CHIEF DEPUTY:          Misse Edmonds

JAILER:          Jackie T. Strode          *Jackie T. Strode*

WarrenCounty1554

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __2__ Of __2__

**NAME OF STAFF:** **Sergeant Jeff Davis and Deputy Jamie Keith**

**DATE:** 9-19-2012

**TIME:** 0045

DETAILS OF INCIDENT: with Deputy Keith. Sergeant Davis also tells me he has nothing against her but he is going to do his job. I have told Sergeant Davis that some of the Deputies don't like the way we talks to them, and he would tell me that is just his way. The last complaint I had from Deputy Keith about Sergeant Davis was in the month of August to my recollection they have been getting along but I could tell there was still some tension between them. I was hoping that this issue was going to dissolve. I fell that Sergeant Davis is trying to do his job as a Supervisor and correct Deputy Keith if something was done incorrect. Sergeant Davis can come across a bit self-assertive or smart alec but this happens normally after someone disagrees with him or not doing what he tells them to do. I can tell this upsets him. Deputy Keith sometimes doesn't like to be corrected. I haven't had any problems addressing something with her. But I have seen that with other Sergeants and Supervisors that she doesn't like being corrected or told that she was wrong. I was also warned about this before she came to my shift. I myself have never heard Sergeant Davis yell at Deputy Keith but, there have been times they have raised voices at each other, which I have them stopped if present. I know Sergeant Davis gave her most the information about joining the Warren County Rescue Squad and wanted her to join it and helped her get started. I don't think Sergeant Davis is intentionally harassing Deputy Keith or at least not to my knowledge these are the incidents that come to mind or that have been brought to my attention. I can tell they don't like each other very much since the incident with Inmate Mosley. I would like to see both of them resolve this issue. This report was written for informational purposes per the Jailers request.

REPORTING DEPUTY:     Captain Jason Rigsby

STAFF MEMBER:     Sergeant Jeff Davis and Deputy Jamie Keith

SHIFT SUPERVISOR:     Captain Jason Rigsby

CHIEF DEPUTY:     Misse Edmonds

JAILER:     Jackie T. Strode

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page ___1___ Of ___2___

**NAME OF STAFF:**   Jamie Keith 617

**DATE:** 9-20-2012                                    **TIME:** 0100

**DETAILS OF INCIDENT:** On 7-31-2012 the Warren County Jail received an inmate by the name of Jessica Mosley. During the duration of inmate Mosley's stay here the staff on third shift had an incident with her coming out of the cell on Deputy Jamie Keith. I, Sergeant Jeff Davis, was the booking officer on that night. Lifeskills came in to evaluate Inmate Mosley because of her mental status. Jamie escorted the lifeskills employee to Inmate Mosley's location in Detox little 2. When Deputy Kieth opened the door inmate Mosley came out on her at which time Deputy Adam Jackson, who was standing by, assisted Deputy Kieth with the inmate. When I got back to the Detox area Deputy Kieth and Deputy Jackson had the inmate restrained. As we escorted Inmate Mosley to the restraint chair, Inmate Mosley tried to pull away but we had full control over her. Deputy Keith became agitated at this and started stating in an elevated voice, "Taze her Jeff." She repeated this phrase three other times before we got her to the chair. The employee from life skills witnessed her actions. Deputy Keith has been openly upset with me over the fact she felt I should have tazed inmate Mosley, and drastically changing her attitude towards me every since. I tried to explain to her in the presents of Captain Jason Rigsby that there was no reason to Taze Inmate Mosley because we had control of her and there was no need to escalate force. I also advised her that her conduct during the incident was uncalled for. She still disagrees with my judgement during the incident and has not respected me as a supervisor to this date. Before this incident myself and Deputy Keith were friends and we got along very well without any problems. She expressed interest in serving the community by joining the Warren County Rescue Dept., so I put in a good word for her and also voted her on as a member on the board of directors for the Recue Department. My decision was based on her friendly and caring demeanor that she had proven to me through the couple of years we have worked together. After her bad attitude towards me had been escalating, I did not speak to her about the Rescue Dept. for a period of time. I tried to make conversation with her about a resent training that had taken place their in relation to an opportunity she had previously expressed interest in. She stated, "I don't feel like going." in a condescending tone. I stated to her, are you not coming to rescue because you hate me. She then stated back, "I haven't been there have I". I then told her that if she wished to leave rescue because she refuses to let go of her grudge towards me, that was fine, I would prefer her not be there with her attitude. I also stated at that time that I could see why she had problems on second shift, and that she needed to learn how to tone down her attitude towards others. Another issue I have had with Deputy Keith since the Inmate Mosley incident was when I was working on my log at the end of the booking counter. Deputy Keith, who was working as booking officer, out of the blue said in an agitated tone, "Why are you standing there, your always stand right there when I'm booking." I said everyone stands at the booking counter, this is where I always update my daily

**REPORTING DEPUTY:**   Sergeant Jeff Davis 632

**STAFF MEMBER:**   Deputy Jamie Keith 617

**SHIFT SUPERVISOR:**   Captain Jason Rigsby 673

**CHIEF DEPUTY:**   Misse Edmonds 646

**JAILER:**   Jackie T. Strode 600

# Warren County Jail Staff Incident Report Continuation

**Page:** _2_ **Of:** _2_

**DETAILS OF INCIDENT:** log. She then stated, "you stand there and stare at me. I replied back that I have never stared at you. Captain Rigsby then stated to both of us to drop it at which time we did. Later Me and Rigby talked and discussed her attitude towards me as being irrational. Another incident occurred when I was filling out the processing paperwork on a new intake. All the deputies who were available were on stand by in the booking area. The intake that came in brought in a large purse and I asked Deputy Keith to search it as I was asking the intake questions. Deputy Keith became agitated with me and stated why can't you search the purse yourself. My reply to this was I don't see a problem with anyone asking for assistance when others are readily available. She just looked at me hateful and started searching the purse without saying another word to me. Another incidence was when I heard main control call over the radio that the Inmates of B05 was ready to go back to their cell from the library. Deputy Kieth called for the 46 door and the door for B05. I went down to B side to pat down the inmates before they went in but she had already placed them inside their cell. I asked her who patted the inmates down. She said nobody. I stated back to her, we have to pat down the inmates going to and from the library and that she should have waited for assistance. She then stated in a condescending elevated tone, main control asked me too so I did it. She then walked off and disregarded what I told her. Immediately after this occurrence I was sent on a medical transport and was unable to report the incident to Captain Rigsby and Lieutenant Robinson until the following day. Another incident occurred when we were releasing a Midnight release and public asked to wait inside door 10 for 15 minutes for the inmate to be released. Main control allowed this and Deputy Keith turned to me and told me I needed to train my deputies better in Main Control. I stated to her that it is perfectly fine for public to wait inside for releases. She then stated back to me in a hateful tone that was not right and I should not allow it. Once Lieutenant Robinson came into booking Deputy Keith approached him and asked if it is ok for public to wait inside for inmates to be released. Lieutenant Robinson told Deputy Keith that it was perfectly fine and that was an acceptable practice. She accepted his answer and did not argue with him as she had done with me. I have already approached her in the past trying to make peace and trying to salvage our once good friendship by apologizing if she felt I had done anything to put her in harms way and that I was simply doing my job as is expected from me by my superiors. I never had any issues with Deputy Keith with her being disrespectful until after the Inmate Mosley incident. She has spoken with every other deputy on shift and expressed her distain for me. I still treat her with respect despite her attitude, and will continue to do so.

**Reporting Deputy:** _Sgt Jeff Davis 632_

# WARREN COUNTY JAIL STAFF INCIDENT REPORT
## Page __1__ Of __1__

**NAME OF STAFF:**  Sergeant Jeff Davis

**DATE:** 9/14/2012                    **TIME:**  0058

**DETAILS OF INCIDENT:** Over the last few months Sergeant Jeff Davis had disagreed with me on certain occasions. I follow his orders and drop the disagreements, not holding a grudge, however Sgt. Davis has continued to harass me about the situations, making rude comments to get me agitated of which I ignore and continue my duties. Sgt. Davis has also been upset that I have not been putting in more time at the rescue squad. On the above date and time, I, Deputy Jamie Keith was the booking officer and Sergeant Jeff Davis was the assistant supervisor on shift and was in booking also. At 0058 this date, I was working on intakes and my log when Sgt. Davis asked me if I was going to continue being a member of the rescue squad. I said to Sgt. Davis, "I'd rather not discuss this with you right now." He said, "Well you need to tell me if you aren't and I'll take care of it." I told him again, "I don't feel comfortable discussing it with you; I'm trying to do my log." Sgt. Davis then became very agitated, raising his voice and said, "No, you're going to tell me. I don't know what your problem is with me. I can see why they hated you on second shift because of your attitude and I hope you get that job because I don't want you on this shift or at the rescue department anymore!" I did not respond to his yelling, I sat silently and continued my work. At 0218, I was talking about having dinner with a friend when Sgt. Davis made the remark, "You have to be drunk around her to put up with her attitude." I feel Sgt. Davis's remarks to me and about me to others are very unprofessional and make an unpleasant work environment for everyone. I have gone to my supervisors about the situation a few times over the months and it doesn't seem to have any effect on the situation. Even if I disagree with co-worker/supervisor or a co-worker/supervisor disagrees with me on a situation, I will discuss it with them and then forget about it because I want to work as a team with everyone.

9-25-12 Met With Jason/Jeff/Jamie. All issues Addressed.
JTS

**REPORTING DEPUTY:**   Deputy Jamie Keith

**STAFF MEMBER:**   Sergeant Jeff Davis

**SHIFT SUPERVISOR:**   Lieutenant Tim Robinson

**CHIEF DEPUTY:**   Misse Edmonds

**JAILER:**   Jackie T. Strode

WarrenCounty1558



RE: Rigsby, Jason

To Whom It May Concern,

The patient's absence is physician advised due to illness or injury. This certifies that he/she has been under our care for this problem.

Please excuse  from work/school for the following dates:

10/17/2012 _____ to 10/18/2012 _____

Sincerely,

VO Dr. Bill Hutcherny
CO40400010

ClubMD.
1065 Ashley Street, Suite 200
Bowling Green, KY 42103

WarrenCounty1559

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:** 11-7-2012                          **TIME:** 0345

**DETAILS OF INCIDENT:** On the above date and time I Captain Jason Rigsby had my Daily Log pulled up on the extra booking computer. I offer no excuse for directly violating an order. I understand that by me being the shift supervisor I am to set the example to other Deputies and should follow all orders given to be from the Jailer. By me not following orders this undermines the leadership of the Jailer and his authority. I accept full responsibility for my actions and ensure that it will not happen again.

11-7-12  (1) YOU DISOBEYED DIRECT ORDERS GIVEN TO YOU ON 10-30-12

(2) YOU SET A POOR EXAMPLE AS A SUPERVISOR

(3) YOU WILL RECIEVE A WRITTEN REPRIMAND.

(4) IF THIS OCCURS AGAIN BY YOU OR YOU ALLOW ANYONE UNDER YOU TO DO IT, YOU CAN EXPECT TO BE SUSPENDED, DEMOTED OR DISMISSED.
                                                          JTS

REPORTING DEPUTY:      Captain Jason Rigsby
STAFF MEMBER:      Captain Jason Rigsby
SHIFT SUPERVISOR:      Captain Jason Rigsby
CHIEF DEPUTY:      Misse Edmonds
JAILER:      Jackie T. Strode

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:**  **Captain Jason Rigsby**

**DATE:**  __1-31-2013__                              **TIME:**  __0647__

DETAILS OF INCIDENT: In response to Staff Incident report. On the above date and time I, Captain Jason Rigsby was the 3rd shift Supervisor. At the time listed above I was finishing a report on a new intake injury. After finishing the report I took it to the Jailer at approximately 0650. After this I started the end of shift paperwork, filled out the time sheet and collected the daily logs. After completion at approximately 0708 I stopped Steve Franklin and talked to him regarding having the lights stay on in front of the pod doors this conversation took place in front of main control and the beginning of the A pod hallway. I did not notice that the metal tray container in the hallway was the G and H dorm trays. During this time frame it's normal for the B side tray container to be setting there. After my conversation with Steve Franklin I spoke with Chief Deputy Edmonds concerning the lighting in the hallways and then the Jailer before leaving the facility. On 3rd shift the main control operator should notify all rovers when the trays come into the hall. I do not recall hearing this announcement over the radio. Deputy Adam Jackson was assigned as the main control operator. Also on 3rd shift the Rover 5 position is the one responsible for getting the trays and drink cart to G and H dorm. Sergeant Jeff Davis was assigned this position. As the 3rd shift Supervisor it is my responsibility to make sure all task are completed before the end of my shift and I failed to do so. I should have checked on the status of the trays before the end of my shift and I didn't. Trays must be served promptly after being placed into the hall for health and safety concerns of the WCRJ. My performance in this area will improve.

REPORTING DEPUTY:        Captain Jason Rigsby

STAFF MEMBER:        Captain Jason Rigsby

SHIFT SUPERVISOR:        Captain Jason Rigsby

CHIEF DEPUTY:        Misse Edmonds

JAILER:        Jackie T. Strode

# 𝕴𝔞𝔯𝔯𝔢𝔫 𝔒𝔬𝔲𝔫𝔱𝔶 𝔕𝔢𝔤𝔦𝔬𝔫𝔞𝔩 𝔍𝔞𝔦𝔩

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

# EMPLOYEE OF MONTH

# JASON RIGSBY

# MARCH 2013



WarrenCounty1562

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:** __04-11-2013__                    **TIME:** __1500__

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby missed my Taser recertification class due to over sleeping. I understand the importance of keeping my certification up to date. I am very sorry for any inconvenience this has caused I will not let this happen again.

4-12-13   Written Reprimand

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page  1  Of  1

**NAME OF STAFF:**  Captain Jason Rigsby

**DATE:**  06-26-2013                                    **TIME:**  2300

**DETAILS OF INCIDENT:** On the above date and time I Captain Jason Rigsby had noticed that Deputy Kendal Adwell was not properly shaved when he reported for his shift. As Deputy Adwell's supervisor it is my responsibility to correct Deputy Adwell for not being properly groomed. I failed to do my job as a result this could come across as me showing favoritism toward Deputy Adwell or show my disregard for jail policy. I apologize for my inattention to this issue and insure that it will not happen again in the future. I have spoken with Deputy Adwell regarding his facial hair and well conduct a coaching session.

6-27-13 FOR ABOVE JOB PREFORMANCE THIS CAPT. WILL RECIEVE A WRITTEN WARNING.
JTS

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode

*7-1-13*                                    *]st*

# WARREN COUNTY JAIL STAFF INCIDENT REPORT *Late*
### Page __1__ Of __1__                          *To*
                                              *Work*

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**   08-19-2013                    **TIME:**   2315

**DETAILS OF INCIDENT: On the above date and time I, Captain Jason Rigsby was 15 minutes late due to oversleeping. I apologize for any inconvenience this may have caused to my fellow staff. As the shift supervisor it is very important that I set the example by being to work on time. For my tardiness I well stay over 15 minutes on 8-20-2013.**

*8-20-13   WARNING*
*DEDUCT TIME*
*JTS*

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode

# 𝔚arren 𝔚ounty 𝔚egional 𝔍ail

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

Fax (270) 843-5317

# EMPLOYEES OF THE MONTH

JASON RIGSBY

DOUG MILES

JEFF BRYANT

# AUGUST 2013

7-1-13          1ST
LATE TO
WORK

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** Captain Jason Rigsby

**DATE:** 09-24-2013                **TIME:** 2342

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby was late to work due to oversleeping due to me not setting my alarm. As the shift supervisor I need to set the example to other Deputies, by being at work and ready to work on time. I failed to do this and will strive harder in the future improve my performance as a employee. I'm sorry for any inconveniences this may have caused.

9-25-13   WARNING
          DEDUCT TIME
                JTS

| | |
|---|---|
| **REPORTING DEPUTY:** | Captain Jason Rigsby |
| **STAFF MEMBER:** | Captain Jason Rigsby |
| **SHIFT SUPERVISOR:** | Captain Jason Rigsby |
| **CHIEF DEPUTY:** | Misse Causey |
| **JAILER:** | Jackie T. Strode |

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

*7-1-13*                *1st Late to Work*

Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:** __11-15-2013__

**TIME:** __2334__

**DETAILS OF INCIDENT:**   On the above date and time I, Captain Jason Rigsby was late to my assigned shift by 34 minutes due to over sleeping. I was contacted by Lt. Doug Miles at 2300 and woke up realizing I had over slept. Due to be being late this caused extra work for my coworkers and as their supervisor I need to set the proper example by reporting to work on time. I will try hard to set the proper example in the future.

*11-16-13   1st Late to Work*
*Warning*

*Deduct the Time*
*JTS*

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   C.D. Misse Causey

**JAILER:**   Jailer Jackie T. Strode

## Kentucky Divison of Corrections Training
### *Employee Training Application*

Please PRINT The Following Information

| | |
|---|---|
| **PRINT NAME** | LAST *Rigsby*   FIRST *Jason*   MI *D* |
| **JOB TILE** | *Captain* |
| **FACILITY OR DISTRICT** | *Warren County Regional Jail*   **HIRE DATE** *4-24-2006* |
| **SEX** | Check One:   ☑ MALE      ☐ FEMALE |
| **Course Title** | PREA Employee Training - Regional Training for Trainers |
| **Training Site** | Warren County Jail, Bowling Green, KY |
| **Beginning Date** | Wednesday, January 08, 2014 |
| **Ending Date** | Wednesday, January 08, 2014 |
| **Training Hours** | 8 hours |
| **Applicant's Signature** | *Capt. Jason Rigsby* |

............................................*Official Use Only*............................................

**Comments:** Co-Hosted by Jackie T. Strode, Warren County Jailer, and J. Carr Taliaferro, PREA Coordinator, Louisville Metro Department of Corrections

**INPUT INTO**

JAN 9

**CRIMCAST**

This Applicant Has Completed _____8_____ Hours Of Training.

Authorizing Signature *Kristi R Willard*      Date *1-9-14*

WarrenCounty1569

# WARREN COUNTY REGIONAL JAIL
# STAFF INCIDENT REPORT
### Page ___1___ Of ___1___

**NAME OF STAFF:** _Captain Jason Rigsby_

**DATE:** _02-06-2014_       **TIME:** _2359_

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby wrote a bond of Inmate John Huffman for a Failure to Appear case and the bond amount of $168. During processing Inmate Huffman advised me he wanted to use the $192 dollars cash he had on his person to bond out. While entering Inmate Huffman into SOMS I entered in the $192 dollars into the system and wrote Inmate Huffman bond. During bonding Inmate Huffman out I forgot to have Inmate Huffman sign a transfer of money form. Inmate Huffman did want to use his money to bond out. In the future I will make sure to have the inmate sign the proper documents before bonding

2-10-14 Warning JTS Improve Job Performance

| | | |
|---|---|---|
| **REPORTING DEPUTY:** | Captain Jason Rigsby | _Capt Jason Rigsby_ |
| **STAFF MEMBER:** | Captain Jason Rigsby | _Capt Jason Rigsby_ |
| **SHIFT SUPERVISOR:** | Captain Jason Rigsby | _Capt Jason Rigsby_ |
| **CHIEF DEPUTY:** | Pat Watt | _Pat Watt_ |
| **JAILER:** | Jackie T. Strode | _Jackie T Strode_ |

# GLASGOW URGENT CLINIC, INC

411 S. L. Rogers Wells Blvd. • Glasgow, KY 42141
270-651-7796

**SCOTTSVILLE URGENT CLINIC**
218 North Court Street • Scottsville, KY 42164
270-237-4899

**GREENWOOD URGENT CLINIC**
4863 B Scottsville Road • Bowling Green, KY 42104
270-843-5662

## Certificate to Return to Work/School

Date: 4/22/14

Patient: Jason Riggy

Has been under my care from 4/22/14 to 4/22/14

Will be able to return to work/school on 4/23/14

Limitations/Remarks _____

_____

_____

119333 Wk/Sch Exc (12.13.12)

**Representative/Provider Signature**

WarrenCounty1571

**CASH EXPRESS**
888-899-0399

JASON
Rigsby

Loans                                          Checks Cashed

Jesus saw she was getting tired
And a cure was not to be.
So He put His arms around her
And whispered, "Come with Me."
With tearful eyes we watched her suffer
And saw her fade away.
Although we loved her dearly,
We could not make her stay.
A golden heart stopped beating,
Hard working hands to rest.
Jesus broke our hearts to prove to us
He only takes the best

**In Memory of**
**JUDY RIGSBY UNDERHILL**

**Date of Birth**
**May 12, 1956**

**Date of Death**
**August 16, 2014**

**Service**
**2:00 p.m.**
**Tuesday, Aug. 19, 2014**
**Hardy & Son Funeral Home**
**Bowling Green Chapel**

**Clergy**
**Bro. Alan Motley**

**Final Resting Place**
**Boiling Springs Cemetery**

WarrenCounty1572

# WARREN COUNTY REGIONAL JAIL
# STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** Taylor Tanner, John Gorecki, Jason Rigsby

**DATE:** 09-05-14                    **TIME:** 0406-0452

**DETAILS OF INCIDENT:** This report is in response to I/M Incident Report involving Zachary Hatfield. Upon intake on 09-05-14 at approximately 0406 I/M Zachary was processed by Deputy Taylor Tanner. While I/M Zachary was seated in the Holding/Florida Room, Lt. Gorecki entered and exited multiple times. I/M Zachary appeared to empty his pockets onto the processing table at 0409. Lt. Gorecki prepared the property bag on the Booking Counter. At 0423 I/M Zachary was escorted back out to the Sallyport for B.A. with WCSD. Both Inmate Zachary and WCSD returned into Booking at 0438 at which time the WCSD officer handed I/M Zachary what appeared to be a cell phone and had I/M Zachary sit on the blue bench in the Holding/Florida Room by the restroom door. Capt. Rigsby entered Booking at 0439. Lt. Gorecki prepared more property bags at 0440. Capt. Rigsby instructed I/M Zachary to exit the Holding/Florida Room at 0451 and the two entered the prisoner dressing room. Both returned out of the dressing room at 0453. I/M Zachary was dressed in orange and Capt. Rigsby was holding I/M Zachary's shirt, shorts, and shoes. At no time did the video show I/M Zachary being searched/patted down by jail deputies. This is a major safety concern. I/M Zachary had no prior intakes to this facility and did not have a current drug charge. A thorough/proper pat down could have revealed the contraband.

_9/4 Written Reprimand_

**REPORTING DEPUTY:** Misse Causey

**STAFF MEMBER:**

**SHIFT SUPERVISOR:** Lt. Eddie Pendleton

**CHIEF DEPUTY:** Misse Causey

**JAILER:** Jackie T. Strode

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT

Page __1__ Of __1__

*2014*
*2nd*
*LATE TO WORK*

**NAME OF STAFF:** __Captain Jason Rigsby__

**DATE:** __09-01-2014__                    **TIME:** __2320__

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby was 20 minutes late for my assigned shift due to over sleeping. I apologize for any inconvenience this might have caused.

*9-2-14 Reprimand*
*Deduct Time*
*JTS*

| | | |
|---|---|---|
| **REPORTING DEPUTY:** | Captain Jason Rigsby | *Capt Jason Rigsby* |
| **STAFF MEMBER:** | Captain Jason Rigsby | *Capt Jason Rigsby* |
| **SHIFT SUPERVISOR:** | Captain Jason Rigsby | *Capt Jason Rigsby* |
| **CHIEF DEPUTY:** | Misse Causey | |
| **JAILER:** | Jackie T. Strode | *Jackie T Strode* |

WarrenCounty1574

*2014*
*1st*
*Late To Work*

# WARREN COUNTY JAIL STAFF INCIDENT REPORT
### Page   1   Of   1

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**   08-01-2014                           **TIME:**   2302

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby arrived to the WCRJ for my assigned shift 2 minutes late at 2302 due to oversleeping. I will try not to let this happen again in the future.

*8-4-14   Warning*
*JTS*

| | | |
|---|---|---|
| **REPORTING DEPUTY:** | Captain Jason Rigsby | *Capt Jason Rigsby* |
| **STAFF MEMBER:** | Captain Jason Rigsby | *Capt Jason Rigsby* |
| **SHIFT SUPERVISOR:** | Captain Jason Rigsby | *Capt Jason Rigsby* |
| **CHIEF DEPUTY:** | C.D. Misse Causey | |
| **JAILER:** | Jackie Strode | *Jackie T Strode* |

WarrenCounty1575

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page __1__ Of __1__

**NAME OF STAFF:** Captain Jason Rigsby

**DATE:** 02-26-2015                                    **TIME:** 2309

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby was late to my assigned shift due to being involved in a vehicle accident involving an unknown female pedestrians. At approximately 2240 while traveling southbound on 31W/68-80 two unknown pedestrians ran out in front of my vehicle while attempting to run across the highway in front of the L&N Depot. I attempted to avoid the pedestrians but my driver side mirror was struck by an unknown object. I stopped and pulled over to offer assistance but the pedestrians and vehicles waiting to turn into the L&N Depot fled the scene. I then notified BGPD dispatch of the incident at approximately 2242. While waiting for an Officer to respond I notified Captain Kim James of the incident and advised her that I might be late. BGPD Officer Barbiea unit #211 responded and filed a report (2015-01683). No witnesses or other parties came forward after the incident and I then reported to work and arrived at approximately 2309. I was advised that it would take 5 business days to get a copy of the report if one was needed.

**REPORTING DEPUTY:** Captain Jason Rigsby

**STAFF MEMBER:** Captain Jason Rigsby

**SHIFT SUPERVISOR:** Captain Jason Rigsby

**CHIEF DEPUTY:** Misse Causey

**JAILER:** Jackie Strode

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page __1__ Of __1__

**NAME OF STAFF:   Captain Jason Rigsby**

**DATE:** __07-02-2015__                              **TIME:** __0700__

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby, turned in incident reports to the Jailer's Mailbox. I received a memo from the Jailer requesting a response as to why the reports were not turned in until 0700. The first two reports time stamped at 0156 were regarding a cell search conducted in Cell B9. The search start time was at 0156 and this is why this time was used at the top of the report. The completion time of the cell search was not until 0346. Due to having to stop regular duties to pass out Ramadan Sacks at 0330, After Ramadan was passed all inmates were returned to B09 or were strip searched and placed in observation. After this was completed Lieutenant John Gorecki and Sergeant Jeff Bryant began working on their reports. The 3rd report started about regarding an incident on headcount but as the report states the Inmate did not attempt to manipulate staff until 0445 Sergeant Bryant also typed this report, although it seems that this report was a waste of time because the following shifts did not place the inmate in observation upon returning to the WCRJ.   I believe all three reports completed around 0530 waiting for my review. After reviewing the reports as well as typing my own report regarding a PC request. I printed all the reports and they waited in booking for signatures from all involved staff. The easiest time to get all signatures is at the end of shift when staff turns in their logs. This is a bad habit of mine and I will stop this practice. I apologize for any inconveniences this has caused the Jailer or Chief Deputy, I will try to improve my performance. But, I feel that this write up is unjust and unfair. The WCRJ Policy states in I-400 section 3 "A written report shall be made of all extraordinary or unusual occurrences within forty-eight (48) hours of the occurrence".  I personally feel writing up staff for late reports encourages staff to not want to write reports about incidents (which many staff members already don't want to do reports because of lack of know how or poor grammar skills) and encourages staff to not enforce rules that the Jailer ordered because of fear that disciplinary action will be taken against them if they don't have time to do the report because of other duties they are responsible for at the time(trays, Ramadan, processing, cleaning, etc.). This is where the common phrase I have heard from staff comes from "damned if do and damned if I don't". Do I get in trouble for the report? Or I could do nothing and hope the Supervisors or Jailer don't find out about it? I will strive to do better and get my reports to the Jailer as soon as possible.

*NO ACTION*

**REPORTING DEPUTY:**   Captain Jason Rigsby   *Capt Jason Rigsby*

**STAFF MEMBER:**   Captain Jason Rigsby   *Capt Jason Rigsby*

**SHIFT SUPERVISOR:**  Captain Jason Rigsby   *Capt Jason Rigsby*

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode   *Jackie T Strode*

WarrenCounty1577

Why do you think we do
A class on Report Writing?

Are you Telling me you think
I should not Correct Reports?

1151 pm Report ? ?

1½ hoor In A Cell Search

When Report is Finished
Can Someone not go Ahead
& get Signed

### Warren County Regiona

**Jackie T. Strode, Jailer**
920 Kentucky Street
Bowling Green, Kentucky 42101

Phone (270) 843-4606

September 12, 2002

TO:  All W.C.R.J. Deputies

FROM:  Jackie T. Strode, Jailer

SUBJECT:  Verbal and Written Changes

Any present verbal orders or memos from the Jailer, the Department of Corrections, or the Jailer's designee shall supersede any past verbal orders/memos. This applies to, but is not limited to, the Warren County Personnel Code, the Warren County Regional Jail's Policy and Procedure Manual, the Warren County Regional Jail's Employee Code of Ethics, Kentucky Administrative Regulations, Kentucky Jail Standard, and any other document which could affect the safety and security of the Jail, the inmates, and the staff.

All of these changes may not be in the possession of the employees.  If any employee has any questions, they should ask the Jailer or a Chief Deputy.  All the orders given either by memo or verbally will be incorporated into the appropriate section(s) as soon as possible.

When you looked
At Policy, did you
look At memo
About Verbal/written
changes?

Jackie T. Strode
Jackie T. Strode, Jailer

JTS/pw



WarrenCounty1578

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page   1   Of   1

2015
1ˢᵗ
Check

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**  01-15-2015                          **TIME:**   0327

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby, failed to reset the main control timer while relieving main control for a break. After returning to the floor the next A-side check was one minute late, due to me not resetting the timer. I felt this check being late was my fault. I will try harder in the future not to let this happen again in the future.

*Warning*

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page  1  Of  1

**NAME OF STAFF:**  Captain Jason Rigsby

**DATE:**  03-10-2016                                    **TIME:**  0100

**DETAILS OF INCIDENT:** On the above date and approximate time I, Captain Jason Rigsby, received information from Lieutenant John Gorecki and Deputy Katherine Armstrong that they heard from Sergeant Lindsey Bendel that Training Deputy Natalia Gines had told Sergeant Lindsey Bendel that Sergeant Darrel Pace was sleeping while she was being trained on 03-09-2016. I attempted to look in to main control throughout the night and but never noticed Sergeant Pace sleeping (It was a busy night with 10 intakes and 2 left over intakes from 2nd shift). That night I received more information form Deputy Armstrong (assumingly from Training Deputy Natalia Gines ) that Sergeant Pace had falling asleep again that night on 03-10-2016. Without being able to catch Sergeant Pace in the act of sleeping and only getting hearsay information passed along to me. I decided it was best to address the issue with Sergeant Pace with a coaching sheet and warn him of the expectations of his role and the reasons why staying awake and alert should cause safety and security concerns. I now understand this action is not the desired action that the Jailer wants and will report any rumors or accusations of sleeping directly to him.

*WARNING + Told TO DO AN incident Report IN the future JTS*

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T Strode

2nd /off

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**  08-30-2016                    **TIME:**  2335

**DETAILS OF INCIDENT:**  On the above date and time I, Captain Jason Rigsby, was late to my assigned shift due to over sleeping. I will try harder in the future to not let this happen again.

*deduct Time*
*Reprimand*

| | | |
|---|---|---|
| **REPORTING DEPUTY:** | Captain Jason Rigsby | |
| **STAFF MEMBER:** | Captain Jason Rigsby | |
| **SHIFT SUPERVISOR:** | Captain Jason Rigsby | |
| **CHIEF DEPUTY:** | Misse Causey | |
| **JAILER:** | Jackie T. Strode | |

WarrenCounty1581

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page ___1___ Of ___1___

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**   04-04-2016                    **TIME:**   2303

**DETAILS OF INCIDENT:**   On the above date and time I, Captain Jason Rigsby, was three minutes late for my assigned shift due to oversleeping. I will try not to be late again in the future.

*WARNING*

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode

WarrenCounty1582

**Strode, Jackie  (WARCO)**

| | |
|---|---|
| **From:** | Strode, Jackie  (WARCO) |
| **Sent:** | Wednesday, October 19, 2016 6:10 AM |
| **To:** | Jason Rigsby (jason.rigsby@warrencountyjail.com) |
| **Subject:** | INCIDENT INVOLVING DEP. ARMSTRONG & INMATE GATTA |

ON WEDNESDAY, OCT. 19TH, 2016 I MET WITH CAPT. RIGSBY ABOUT THIS INCIDENT. AFTER SOME DISCUSSION CAPT. RIGSBY WAS ASK IF HE WOULD DO ANYTHING DIFFERENT SHOULD AN INCIDENT LIKE THIS OCCUR AGAIN. HE STATED HE WOULD REMOVE THE DEPUTY FROM THE AREA. PART OF OUR DISCUSSION WAS ABOUT LOOKING AT THE COMPLETE PICTURE ABOUT THIS AND ALL INCIDENTS.
**
I FEEL CAPT. RIGSBY WILL HANDLE THESE TYPES OF INCIDENTS DIFFERENTLY SHOULD ONE OCCUR AGAIN.
**
I WANT HIM TO USE THIS AS A LEARNING EXPERIENCE TO HELP HIM INPROVE AS A SUPERVISOR.

Jackie T. Strode
Warren County Jailer
920 Kentucky Street
Bowling Green, KY  42101

Phone:  270-843-4606   Ext. 112
Fax:  270-843-5317

Jackie.Strode@ky.gov
www.warrencountyjail.com

WarrenCounty1583

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page __1__ Of __1__

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:** __10-11-2016__                                    **TIME:** __2343__

**DETAILS OF INCIDENT:**   In respond to staff incident report filed by Chief Deputy Misse Causey, regarding an incident involving Inmate Riley Gatta on 09-16-2016. During the incident I do not recall any staff making inappropriate comments regarding Inmate Gatta's genitals. As listed on my report on 9-16-2016, Deputy Armstrong did state that she knew Inmate Gatta previously due to working with Inmate Gatta at JC Penny and that she had been fired. Shortly after Inmate Gatta began making comments toward Deputy Armstrong about visiting her at JC Penny's while Deputy Armstrong was working and called Deputy Armstrong a "Cunt". Inmate Gatta than waited until a different female rover was available to finish up the intake processes, during which I left the booking area to search my WCRJ Emails in regards on the proper procedure for strip searching transgender inmates. I was unable to locate the email I was looking for, and decided with the course of actions that was listed in the report on 09-16-2016. As for me smiling and laughing regarding something Deputy Armstrong had said. I do not recall what the conversation topic had changed to but, it was not regarding Inmate Gatta and not about Inmate Gatta's genitals. In the future I will strive to maintain a military manner while at my post and advised Deputies to have the same mannerisms. I will order Deputies away from the area, if an inmate has a problem with a Deputy in order to de-escalate incidents.

*Capt. Rigsby was advised to respond as to why he left Booking if I/M was so disruptive MKC*

**REPORTING DEPUTY:** ___ Captain Jason Rigsby    *Capt. Jason Rigsby*

**STAFF MEMBER:**    Captain Jason Rigsby    *Capt. Jason Rigsby*

**SHIFT SUPERVISOR:**  Captain Jason Rigsby    *Capt. Jason Rigsby*

**CHIEF DEPUTY:**   Misse Causey    *Misse Causey*

**JAILER:**    Jackie T. Strode    *Jackie T. Strode*

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:**  Capt. Jason Rigsby

**DATE:** __10-7-16__                           **TIME:** __1215__

**DETAILS OF INCIDENT:** On the above date and time CD Causey was reviewing the Booking Intake Video from 9-16-16 in regards to a complaint made by I/M Riley Gatta regarding the verbal comments made of a sexual nature by Deputy Armstrong. The video was downloaded beginning at 0128 on 9-16-16. Deputy Armstrong came into booking shortly after video began. Initially Deputy Armstrong remained in Booking, however after looking towards I/M Gatt's location in the Florida Room appeared to be saying something humorous causing Capt. Rigsby and Deputy Gines to smile/laugh. Shortly after, the video shows that Deputy Armstrong did begin talking to I/M Gatta who was in the Florida Room from the Booking Counter. At one point Deputy Armstrong appeared to walk aggressively towards I/M Gatta but was intercepted by deputies Lamastus and Hussey. After this incident Capt. Rigsby was observed leaving the booking area. Again Deputy Armstrong could be seen directing her comments to I/M Gatta. I/M Gatta stood up from the bench and stood in the doorway of the Florida Room. Deputy Armstrong again walked aggressively towards I/M Gatta, grabbed her upper arms and sat her forcefully on the bench. Upon review of the video footage CD Causey feels that Deputy Armstrong's behavior escalated the situation in regards to I/M Gatta and that Capt. Rigsby failed to intervene to de-escalate the situation.

**REPORTING DEPUTY:**   Misse Causey

**STAFF MEMBER:**   Jason Rigsby

**SHIFT SUPERVISOR:**   Capt. Jason Rigsby

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode

WarrenCounty1585

# WARREN COUNTY JAIL STAFF INCIDENT REPORT

Page __1__ Of __1__

**NAME OF STAFF:** Captain Jason Rigsby

**DATE:** 1-07-2017        **TIME:** 0400

**DETAILS OF INCIDENT:** On the above date and approximate time I, Captain Jason Rigsby, was in booking and accidently spilled my drink near the supervisor computer in booking. The computer, keyboard, and screen appear to be in working order. In the future I will be sure not to have my drink near any computers.

*No Action*

**REPORTING DEPUTY:** Captain Jason Rigsby

**STAFF MEMBER:** Captian Jason Rigsby

**SHIFT SUPERVISOR:** Captain Jason Rigsby

**CHIEF DEPUTY:** Misse Causey

**JAILER:** Jackie T. Strode

WarrenCounty1586

# WARREN COUNTY JAIL STAFF INCIDENT REPORT
### Page  1  Of  1

**NAME OF STAFF:**   Captain Jason Rigsby

**DATE:**  05-08-2014                                    **TIME:**  2300

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby, placed my 2 liter soda in the employee fridge. It is posted on the employee fridge not to put your 2 liters in the fridge and I have recently received an email from the Jailer not to placed 2 liters in the employee fridge. I offer no excuses for disobeying theses orders. As a shift supervisor I should set the example to the other supervisors and Deputies under me and I have failed to do so.

5-8-14 I did NOT ASK iF This WAS The First Time This ShiFT SuPervisor hAS PuT A 2 liTTER in The Fridge disobeying AN order, AN emAil + The memo PosTed oN The Fridge. IF The ShiFT SuPerVisor does NOT Follow orders in which Those uNder him see, How does he ExPect Them To do So. For This Job PerFormANce This CAPT. will Recieve A WriTTen RePrimANd. IF he does This AgAin he will be suspended.   JTS

**REPORTING DEPUTY:**   Captain Jason Rigsby        _Capt Jason Rigsby_

**STAFF MEMBER:**   Captain Jason Rigsby        _Capt Jason Rigsby_

**SHIFT SUPERVISOR:**   Captain Jason Rigsby        _Capt Jason Rigsby_

**CHIEF DEPUTY:**   Misse Causey

**JAILER:**   Jackie T. Strode        _Jackie T Strode_



# Warren County Regional Jail
## Stephen Harmon, Jailer

## APPLICATION FOR SICK TIME DONATION

NAME OF EMPLOYEE DONOR: _Jason Rigsby_

AMOUNT OF SICK HOURS TO BE TRANSFERRED: _200.5_

NAME OF EMPLOYEE DONEE: _Jerod Borden_

PLEASE PROVIDE A REASON – TRANSFERRED LEAVE IS NEEDED,
INCLUDING A BRIEF DESCRIPTION OF CAUSE, AND ANTICIPATED
DURATION OF THE LEAVE NEEDED:

_Cancer treatments_

I HEREBY CERTIFY THAT THIS TRANSFER IS GIVEN WITHOUT
EXPECTATION OF PROMISE FOR ANY PURPOSE OTHER THEN THAT
AUTHORIZED BY WCRJ POLICY, AND I HAVE READ AND UNDERSTAND THE
WCRJ POLICY ON SICK TIME TRANSFER.

_Jason Rigsby_          _12-28-2021_
SIGNATURE OF EMPLOYEE DONOR      DATE

THIS IS TO CERTIFY THAT THE EMPLOYEE NAMED ABOVE HAS A
SUFFICIENT SICK TIME BALANCE (10 DAYS RETAINED) TO TRANSFER THE
HOURS INDICATED UNDER THE PROVISIONS OF THE WCRJ POLICY.

_Taylor Parsons_          _12-28-2021_
SIGNATURE OF APPOINTING AUTHORITY      DATE

_Stephen Harmon_          _12-28-21_
SIGNATURE OF JAILER      DATE

920 Kentucky Street | Bowling Green, Kentucky 42101 | Phone: 270.843.4606 | Fax: 270.843.5317
warrencountyjail.com | WarCoJail@ky.gov

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
Page __1__ Of __1__

**NAME OF STAFF:** __Captain Jason Rigsby__

**DATE:** __11-5-2012__                              **TIME:** __2310__

**DETAILS OF INCIDENT: On the above date and time Inmate Carlos Lopez was brought into the WCRJ by BGPD Officer Barbiea for a charge of Alcohol Intoxication. Prior to intake Inmate Lopez had thrown up on himself. After being cleared for intake by medical I took Inmate Lopez into the dressing room to remove his dirty clothes so they could be washed. During the search I missed an ATT Go phone made by Samsung that was in Inmate Lopez cargo pocket. The phone was washed in the washing machine as a result. Photos of the cell phone were taken and saved to the R-drive under "Carlos Lopez 11052012". The phone was placed into Inmate Lopez's property.**

11-7-12

IF THE INMATE REQUEST IT, THIS Cpt WILL
HAVE TO Pay FOR THE PHONE. JTS

| | | |
|---|---|---|
| **REPORTING DEPUTY:** | Captain Jason Rigsby | _Cpt Jason Rigsby_ |
| **STAFF MEMBER:** | Captain Jason Rigsby | _Cpt Jason Rigsby_ |
| **SHIFT SUPERVISOR:** | Captain Jason Rigsby | _Cpt Jason Rigsby_ |
| **CHIEF DEPUTY:** | Misse Edmonds | |
| **JAILER:** | Jackie T. Strode | _Jackie T. Strode_ |

2013
Late Chourr
1

# WARREN COUNTY REGIONAL JAIL
## STAFF INCIDENT REPORT
### Page __1__ Of __1__

**NAME OF STAFF:** Captain Jason Rigsby

**DATE:** 02-22-2013                    **TIME:** 2339

**DETAILS OF INCIDENT:** On the above date and time I, Captain Jason Rigsby was getting a Check on A side Isolation. I noticed that the prior Isolation check was done at 2317. This would but my check late by 2 minutes. At this time all other rovers were busy conducting headcount in G dorm. As the shift supervisor I should set the example and not allow checks to be late even if I am busy. My job performance needs to improve, not only for safety and security of the WCRJ, but to set the correct example to subordinates. This report was written for the safety and security of the WCRJ, Staff, and Inmates

2-22-13   WARNING

**REPORTING DEPUTY:**   Captain Jason Rigsby

**STAFF MEMBER:**   Captain Jason Rigsby

**SHIFT SUPERVISOR:**   Captain Jason Rigsby

**CHIEF DEPUTY:**   Misse Edmonds

**JAILER:**   Jackie T. Strode

**EXHIBIT**

**2**

## Incident Report

| | | |
|---|---|---|
| **Incident #:** 74516 | **Creator:** RIGSBY, JASON DAINEL | **Date:** 03/18/2019 14:00 |
| **Status:** Closed | **Closed By:** | **Closed Date:** |
| **Cell:** ISO | **Location:** | |

### Category
Medical

### Force Used
Officer Presence
Restraint Chair
Taser

### Witnesses

| Type | Name | | How Involved |
|---|---|---|---|
| Staff | BLAIR, JOSEPH A | | Witness |
| Staff | HUSSEY, JOHN S | | Witness |

### Subjects
522422 - HESTON, TIMOTHY MICHAEL

### Details
Creating Officer: RIGSBY, JASON DAINEL  Time: 03/18/2019 14:31 / Updating Officer: RIGSBY, JASON DAINEL  Time: 03/18/2019 14:31

On 3/18/2019 at approximately 1400, Inmate Timothy Heston was striking the door in a manner that could cause harm to his person. Inmate Heston was complaining that his shirt and pants didn't fit. I had Inmate Heston place his orange uniform on and advised him that it fit fine. Inmate Heston the struck the door in a manner that could cause harm to his person. Inmate Heston then began filling up his cup and throwing water under the cell door. Inmate Heston was ordered to place his hands on the wall. Inmate Heston complied. Due to Inmate Heston previous incidents I unholstered my Taser (X29004V77) and activated (laser only). I ordered Inmate Heston to exit the cell and sit in the restraint chair. Inmate Heston was secured into the restraint chair by Deputies John Hussey and Joseph Blair, while covered Inmate Heston at Taser point. Inmate Heston was secured without incident and placed in the visitation holding room. All actions were taken for the safety and security of the WCRJ, Staff, and Inmates.

### Response Assignments

Staff Responder:          Action Type:          Status:
Assigning Officer:  Time:  / Updating Officer:  Time:
Comments:

### Action Taken

| Staff Member Name | Rights Given? | Plea | Finding | Appeal By |
|---|---|---|---|---|

**Action Taken**

**Sentence**

EXHIBIT

3

# Incident Report

| | | | |
|---|---|---|---|
| Incident #: 74526 | Creator: RIGSBY, JASON DAINEL | | Date: 03/19/2019 09:53 |
| Status: Open | Closed By: | | Closed Date: |
| Cell: ISO | Location: | | |

## Category

Assaults

## Force Used

Mechanical Restraint
Officer Presence
Physical Restraint
Restraint Chair
Taser

## Witnesses

| Type | Name | How Involved |
|---|---|---|
| Staff | EMBRY, LANDON TYLER | Witness |
| Staff | HUSSEY, JOHN S | Witness |
| Staff | Lasley, Talana | Witness |
| Staff | TAYLOR, MATTHEW ALLEN | Witness |
| Staff | WHITE, MICHAEL A | Witness |

## Subjects

522422 - HESTON, TIMOTHY MICHAEL

| | Plea: | Finding: |
|---|---|---|
| Infraction: 1N - Any act which constitutes a felony under the laws of the Commonwealth of Kentucky | | |
| Action Taken: | | |
| Infraction: 2A - Non-injury physical contact: Participating in a physical altercation with other inmates whereas no injuries occur. | Plea: | Finding: |
| Action Taken: | | |
| Infraction: 3A - Disrespect or disruptive conduct: Any inappropriate behavior, comment, gesture, or action displayed to staff of other inmates. | Plea: | Finding: |
| Action Taken: | | |
| Infraction: 3I - Failure to follow facility policies or staff directives: failure to follow established facility rules or staff directive. | Plea: | Finding: |
| Action Taken: | | |

## Details

Creating Officer: RIGSBY, JASON DAINEL  Time: 03/19/2019 10:32 / Updating Officer: RIGSBY, JASON DAINEL  Time: 03/19/2019 11:18

ON 3-19-2019 at 0953 I was responding to an physical altercation between Inmate Timothy Heston and Inmate Auktavian Pruitt. Both Inmates were removed from the cell. While escorting Inmate Timothy Heston to booking he turned around and struck Deputy Mike White in the face. Inmate Heston was physically escorted to the ground and actively resisting Deputies. I deployed my Taser (X29004V77) for one cycle. The probe impact area was to the left upper leg with a follow up three-point drive to Inmate Heston back. Inmate Heston was placed in mechanical restraints and escorted to the restraint chair. While Deputies John Hussey and Matt Taylor were attempting to physically escort Inmate Heston he was passively resisting their efforts. While Inmate Heston was being placed in the restraint chair, we were attempting to remove the mechanical restraints to place Inmate Heston in the soft restraint of the restraint chair. Inmate Heston began resisting Deputies efforts. I delivered an additional three-point cycle to Inmate Heston upper back with probes still attached to gain compliance. After the cycle Inmate Heston was then able to be completing secured into the restraint chair. After securing Inmate Heston into the restraint chair, I removed the Taser probes. Nurse Talana Lasley RN checked and cleared Inmate Heston and Inmate Pruitt to remain incarcerated. All actions were taken for the safety and security of the WCRJ, Staff, and Inmates.

Creating Officer: EMBRY, LANDON TYLER  Time: 03/19/2019 11:30 / Updating Officer: EMBRY, LANDON TYLER  Time: 03/19/2019 11:42

On Tuesday 3/19/19 at approximately 0953 I, Deputy Landon Embry was responding to an All-Call in Detox Little 6 along with other Deputies for a physical altercation. Once Deputies and myself arrived on scene we opened Detox Little 6 and identified the Inmates involved which were Inmate Timothy Micheal Heston and Auktavian Devonnte Pruitt. We then told Inmate Pruitt to exit the cell first so we could get information on

what was happening. Once Inmate Pruitt was secure, Capt. Jason Rigsby gave a verbal command to Inmate Heston to leave the cell and go into Booking. Once Inmate Heston started walking towards Booking he turned around and striked Deputy Micheal White on the left side of his face. At that time I then physically escorted the above subject to the ground where I restrained him until he was secured into mechanical restraints. All actions were conducted for the safety and security of the Warren County Regional Jail staff and inmates.

---

Creating Officer: WHITE, MICHAEL A  Time: 03/19/2019 13:06 / Updating Officer: WHITE, MICHAEL A  Time: 03/19/2019 13:06

On 3/19/19 at approximately 0953 I, Deputy Mike White, responded to an "all call" in Detox cell 3 due to an altercation. Inmate Timothy Michael Heston was being escorted to the Booking area, when Inmate Heston turned around and struck me in the face. I was treated by Medical for redness to my left jaw area. Inmate Heston was escorted to the ground by deputies and placed in mechanical restraints, and was escorted to the restraint chair.

---

Creating Officer: HARMON, STEPHEN  Time: 03/20/2019 11:44 / Updating Officer: HARMON, STEPHEN  Time: 03/20/2019 11:44

I reviewed security camera footage of detox little 2 cell where Inmate Heston was when a report of a physical altercation was made.  I see three inmates that appear to be sleeping (Inmates Timothy Heston, Auktavian Pruitt, and Tyler Hudson).  For no apparent reason, Inmate Heston awake from his sleep and gets on top of Inmate Pruitt and begins striking him repeatedly with both fists.  Inmate Tyler Hudson appears to be awoken by the altercation and tries to pull Inmate Heston off of Inmate Pruitt.  An emergency all-call was made by main control and several deputies responded to the detox hall where Heston was being housed.  Inmate Heston was removed from the cell and as he was being escorted to the booking area, strikes Deputy Mike White in the left side of his face with a closed fist.  Inmate Pruitt and Deputy Mike White were both cleared by medical staff. The inmate involved in the initial incident was cleared to remain incarcerated by jail medical staff.  Heston was charged 3/19/19 with Assault Fourth Degree for the inmate assault and Assault Third - Inmate Assault on Correctional Employee for the assault on Deputy Mike White.

---

Creating Officer: HUSSEY, JOHN S  Time: 03/20/2019 12:14 / Updating Officer: HUSSEY, JOHN S  Time: 03/20/2019 12:15

On 03/19/2019 at approximately 0953, I responded to an All Call in booking in Little 2.  When I arrived deputies were removing Inmate Auktavian Pruitt from little 2 and I escorted him to booking, once Inmate Pruitt was in booking I heard yelling happening behind me and when i turned around Inmate Timothy Heston was being escorted to the floor.  I responded to assist deputies in securing Inmate Heston in mechanical restraints.  Inmate Heston was resisting deputies and that point Captain Jason Rigsby activated his Taser and deployed probes striking Inmate Heston in the back(See Captain Rigsby's Narrative).  Inmate Heston was secured in mechanical restraints and escorted to his feet.  Once on his feet myself along with Deputy Matthew Taylor escorted Inmate Heston to the restraint chair as he passively resisted by going limp and refusing to walk.  Inmate Heston was secured in the restraint chair.  We then attempted to remove mechanical restraints from Inmate Heston so that his hands could be place in soft restraints, we removed inmate Heston's left hand from mechanical restraints and Inmate Heston began to resist deputies again and Captain Rigsby administered a second cycle from his Taser applying a three point drive stun to Inmate Heston's back to gain compliance.  After that Inmate Heston was able to be secured without further incident all actions were taken for the Safety and Security of WCRJ Staff and Inmates.

---

## Response Assignments

Staff Responder:                              Action Type:                              Status:
Assigning Officer:  Time:  / Updating Officer:  Time:
Comments:

---

## Action Taken

| **Staff Member Name** | **Rights Given?** | **Plea** | **Finding** | **Appeal By** |
|---|---|---|---|---|

**Action Taken**

**Sentence**

**EXHIBIT**

**4**

# Incident Report

| | | | |
|---|---|---|---|
| **Incident #:** 74533 | **Creator:** BRYANT, JEFFREY DAVID | | **Date:** 03/19/2019 19:03 |
| **Status:** | **Closed By:** | | **Closed Date:** |
| **Cell:** | **Location:** | | |

## Category

Informational

## Force Used

Officer Presence

Physical Restraint

Taser

## Witnesses

| Type | Name | How Involved |
|---|---|---|
| Staff | BLAIR, JOSEPH A | Witness |
| Staff | HARPER, WYATT | Witness |
| Staff | MEREDITH, JOSEPH WAYNE | Witness |
| Staff | THOMAS, JACOB | Witness |

## Subjects

522422 - HESTON, TIMOTHY MICHAEL

## Details

Creating Officer: BRYANT, JEFFREY DAVID  Time: 03/19/2019 19:14 / Updating Officer: BRYANT, JEFFREY DAVID  Time: 03/19/2019 19:24

On 03/19/2019 at approximately 1843, I responded along with Deputies Joe Meredith, Wyatt Harper, Jacob Thomas, and Joseph Blair to remove Inmate Timothy Michael Heston from the Restraint Chair and dress him in a Suicide Safety Smock per Lifeskills. Inmate Heston was moved to Detox Cell I in the Restraint Chair, where he was shown the Suicide Safety Smock and informed about the procedure. Inmate Heston recognized the smock, and stated "No, that means you're suicidal, that's the wrong message." Deputy Joe Meredith repeatedly asked Inmate Heston to put on the smock; Inmate Heston stated "No, I'll just stay in the chair." I returned Inmate Heston to Booking and offered him to exercise his limbs. Inmate Heston repeatedly stated "No, that's not exercising." Inmate Heston was given three opportunities to exercise his limbs; Inmate Heston refused. Inmate Heston stated he needed to defecate; Inmate Heston was advised he could use the toilet in his cell if he was moved to Suicide Watch; Inmate Heston refused. Inmate Heston remained in the Restraint Chair for his safety until he can be placed in a Suicide Safety Smock without causing a danger to staff. All actions were taken for taken for the safety and security of the Jail, Staff, and Inmates.

Creating Officer: BRYANT, JEFFREY DAVID  Time: 03/19/2019 22:41 / Updating Officer: BRYANT, JEFFREY DAVID  Time: 03/19/2019 22:43

On 03/19/2019 at approximately 2215, I responded along with Deputies Joe Meredith, Kimo Butler, and Garrett Pickett and moved Inmate Heston's Restraint Chair in front of the Prisoner Dressing Room. I drew and activated my Taser for Deputy Safety, and instructed Inmate Heston to stand and enter the Dressing Room. Inmate Heston had urinated on himself, and also stated he needed to defecate. Inmate Heston used the toilet and showered while I covered with my Taser for Deputy safety. Inmate Heston dried off and put on a Suicide Safety Smock. Inmate Heston was escorted to, and secured inside Detox Cell I with one mat, and one blanket. A Two Deputies magnet was placed on Inmate Heston's door, and the board in Booking was marked "Two Deputies W/ Taser, Restraints for any Movements, Use Extreme Caution Per 600." All actions were taken for the safety and security of the Jail, Staff, and Inmates.

## Response Assignments

Staff Responder:                         Action Type:                         Status:
Assigning Officer:  Time:  / Updating Officer:  Time:
Comments:

## Action Taken

| Staff Member Name | Rights Given? | Plea | Finding | Appeal By |
|---|---|---|---|---|

**Action Taken**

**Sentence**

**EXHIBIT**

_5_

# Incident Report

| | | | |
|---|---|---|---|
| **Incident #:** 75378 | **Creator:** | RIGSBY, JASON DAINEL | **Date:** 06/28/2019 10:20 |
| **Status:** Open | **Closed By:** | | **Closed Date:** |
| **Cell:** UNA | **Location:** | | |

## Category

Informational

## Force Used

Officer Presence

## Subjects

| |
|---|
| 524421 - BASKERVILLE, JUSTIN DEWAYNE |
| 521490 - BEARD, DONALD WAYNE |
| 524975 - BLEDSOE, JOSHUA EUGENE |
| 524521 - BURTON, JOSHUA BRYANT |
| 524831 - CARDWELL, DUSTIN ALLEN |
| 524926 - CARNEY, PAUL ANDERSON |
| 522959 - CARPENTER, JEREMY LYNN |
| 195555 - COPAS, WESLEY DOW |
| 524933 - EATON, JOHNNY RAY |
| 524737 - FANT, NACARIUS MASHAUN |
| 523266 - FUZZELL, TIMOTHY LYNN |
| 180370 - GARCIA, JAMIE NMN |
| 524935 - GRAVEN, BRAXTON MICHAEL |
| 524851 - GREY, DERON MAURICE |
| 524432 - HALL, LASHAUN M |
| 522422 - HESTON, TIMOTHY MICHAEL |

Infraction: 4A - Any other information: Reports not involving a rule    Plea:                                    Finding:
infraction but including information from informants, medical
information and important pass along details on an inmate or
inmates.

Action Taken:

| |
|---|
| 522753 - KINGERY, DONNIE LEE |
| 194831 - MCCUTCHAN, NICHOLAS SCOTT |
| 521089 - MCWILLIAMS, CHRISTOPHER STEPHEN |
| 523351 - MORRISON, RAY ANTHONY |
| 523138 - MULLIKIN, RICKY NEAL |
| 524457 - RANDOLPH, KEIVON LAMONT |
| 523785 - RICHEY, MARK ALLEN |
| 523003 - SANDERS, JOHNNY LAMAR |
| 520677 - SHIELDS, JERRY DEWAYNE |
| 524438 - STONE, DUSTIN GENE |
| 524979 - WALDECK, RYAN JOSEPH |

## Details

Creating Officer: RIGSBY, JASON DAINEL  Time: 06/28/2019 10:25  / Updating Officer: RIGSBY, JASON DAINEL  Time: 06/28/2019 10:30

On 6-28-2019 at approximately 1000 I recieved a letter from Major McPherson and Deputy David Stucy. The letter stated that Inmate "Timmthy Hasten"(Timothy Heston) must go and was making threats to other inmates. All inmates in the cell were offered protective custody. All Inmates in UNA refused protective custody and signed protective custody refusals except for Inmate Heston. Inmate Heston advised staff that he wasn't signing anything. Inmate Heston was placed in observation for causing a disruption of jail operations. All actions were taken for the safety and security of the WCRJ, Staff, and Inmates.

## Response Assignments

Staff Responder:                                     Action Type:                          Status:
Assigning Officer:   Time:  / Updating Officer:   Time:
Comments:

**Action Taken**

| **Staff Member Name** | **Rights Given?** | **Plea** | **Finding** | **Appeal By** |
|---|---|---|---|---|

**Action Taken**

**Sentence**